# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

LINDA BENAVIDEZ,

    Plaintiff,

vs.                                                                             No. CIV 15-0922 JB/LF

SANDIA NATIONAL LABORATORIES,
VARICK TUCKER, Personally, and
TIMOTHY GARDNER, Personally,

    Defendants.

## MEMORANDUM OPINION[1]

**THIS MATTER** comes before the Court on the Plaintiff's Motion to Stay Proceedings, filed November 12, 2015 (Doc. 10)("Motion"). The Court held a hearing on January 20, 2016. The primary issue is whether the Court should stay the proceedings so that Plaintiff Linda Benavidez' counsel has time to wait for other persons employed by Defendant Sandia National Laboratories, but still needing to exhaust their administrative remedies, to become eligible to be added as Plaintiffs to this case. At the hearing, the Court ruled on the record that it would continue to work to issue a Memorandum Opinion and Order on a preemption issue raised by (i) Defendants' Motion to Dismiss, filed October 21, 2015 (Doc. 7)("Motion to Dismiss"), and the (ii) Plaintiff's Response to Defendants' Motion to Dismiss (Doc. 7), Request for Remand, and Memorandum in Support, filed November 20, 2015 (Doc. 16) -- which the Court ultimately filed, see Amended Memorandum Opinion and Order, filed June 27, 2016 (Doc. 64)("MOO"), and

---

[1]On September 14, 2016, the Court issued an Order, filed September 14, 2016 (Doc. 74)("Order") in which it denied the Plaintiff's Motion to Stay Proceedings, filed November 12, 2015 (Doc. 10), stating: "The Court will, however, at a later date issue a Memorandum Opinion more fully detailing its rationale for this decision." Order at 1 n.1. This Memorandum Opinion is the promised opinion.

Memorandum Opinion and Order, filed June 22, 2016 (Doc. 63) -- because that MOO would resolve various issues as they apply to Benavidez.[2]  The Court could then apply its Opinion to the other potential-Plaintiffs should they eventually be added to this case over the course of litigation.  The Court thus denies the Plaintiff's Motion to Stay Proceedings, filed November 12, 2015 (Doc. 10).

## FACTUAL BACKGROUND

The Court has already discussed the facts underlying this case in detail.  See MOO at 4-9.  The Court takes the following recitation of the relevant facts from the First Amended Complaint for Damages for Violation of the New Mexico Human Rights Act, and for Intentional Infliction of Emotional Distress, filed October 15, 2015 (Doc. 1-2)("Complaint").[3]

---

[2]The legal issue the Court was presented with involved the potential preemption of Benavidez' state-law claims by the Labor Management Relations Act ("LMRA").  The Supreme Court has stated that LMRA § 301 will completely preempt a state law claim when resolution of the state law claim is substantially dependent upon analysis of the terms of a Collective Bargaining Agreement between the parties.  See Caterpillar Inc. v. Williams, 482 U.S. 386, 395 (1987); Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213 (1962)(stating that preemption analysis turns on whether the action confers rights on employers or employees "independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract"); Cisneros v. ABC Rail Corp., 217 F.3d 1239, 1302 (10th Cir. 2000)(explaining that § 301 "preempts questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, . . . whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort").  "Preemption arises only when an 'evaluation of the . . . claim is inextricably intertwined with consideration of the terms of the labor contract.'" Mowry v. United Parcel Service, 415 F.3d 1149, 1152 (10th Cir. 2005)(emphasis in original).  "As long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 410 (1988).

[3]To cite the Complaint, the Court will use the CM/ECF's pagination -- i.e., the blue number in the top right-hand corner of each page -- because the Complaint does not contain internal pagination.

Sandia Labs employed Benavidez, a United States citizen and a resident of Albuquerque, New Mexico. See Complaint ¶ 8, at 6. Defendant Varick Tucker was Benavidez' Human Resource manager, while Defendant Timothy Gardener was Benavidez' manager. See Complaint ¶¶ 11-12, at 6. Sandia Labs had hired Benavidez as a Neutron Generator Production Specialist on June 1, 2001, see Complaint ¶ 14, at 7, but she eventually "developed some serious medical conditions which resulted in Plaintiff's life activities being affected," Complaint ¶ 16, at 7. In 2011, the requirements of Benavidez' position changed to include the need for a Trades Degree. See Complaint ¶ 17, at 7. To obtain a Trades Degree, Benavidez would have had to return to school for college-level courses such as physics, trigonometry, and chemistry, which would have required her to take years of preparatory classes to qualify to take the required classes. See Complaint ¶ 19, at 7; id. ¶ 42, at 11; id. ¶ 53, at 12.

Benavidez was told that, if she was unable to obtain the Trades Degree, she would be "bumped" into another similar position at Sandia Labs with the same grade level and pay. Complaint ¶ 22, at 8. See id. ¶ 42, at 11; id. ¶ 53, at 12. "Instead of being 'bumped' into a similar position at Sandia Labs, though, Plaintiff was ultimately placed in a position described as a Maintenance Support Technician," which "included 'duties requiring working strenuous positions with exertions of physical effort up to 60 pounds.'" Complaint ¶ 24, at 8. See id. ¶ 43, at 11; id. ¶ 54, at 12. "She and her co-workers that were put in this position, essentially as tractor/trailer drivers, were the only females working this job." Complaint ¶ 25, at 8. See id. ¶ 43, at 11; id. ¶ 54, at 12. "The only other employees in this position were men, with the exception of one other woman over the age of 40 who was also being 'absorbed' into this new position, and who was ultimately terminated." Complaint ¶ 54, at 12.

"On September 9, 2014, Ms. Benavidez filed a formal charge of discrimination on the basis of sex, age, and equal pay in violation of the New Mexico Human Rights Act, NMSA § 28-1-7 (1978), *et seq*." Complaint ¶ 3, at 5-6. On September 30, 2014, a doctor "with Defendant SNL advised Plaintiff that she was incapable of performing the job duties due to her permanent medical restrictions." Complaint ¶ 31, at 9. See id. ¶ 45, at 11; id. ¶ 57, at 13. Accordingly, Benavidez "was placed on a realignment process and was not given any reasonable accommodation." Complaint ¶ 32, at 9. See id. ¶ 57, at 13. On April 16, 2015, Sandia Labs terminated Benavidez' employment. See Complaint ¶ 36, at 10; id. ¶ 66, at 13-14.

## PROCEDURAL BACKGROUND

On August 27, 2015, Benavidez filed suit in the Second Judicial District Court, County of Bernalillo, State of New Mexico. See Complaint at 1. About a month and a half later, on October 15, 2015, the Defendants removed the case to federal court, asserting federal-question jurisdiction. See Notice of Removal, filed October 15, 2015 (Doc. 1). Benavidez asserted three causes of action against all of the Defendants: (i) discrimination on the basis of age in violation of the New Mexico Human Rights Act, NMSA §§ 28-1-1 to -14 ("NMHRA"), see Complaint ¶¶ 38-48, at 10-12 (Count I); (ii) discrimination on the basis of sex in violation of the NMHRA, see Complaint ¶¶ 49-62, at 12-13 (Count II); and (iii) intentional infliction of emotional distress, see Complaint ¶¶ 63-73, at 13-14 (Count III). Benavidez asked the Court for judgment against the Defendants "for all actual, compensatory, nominal, and emotional damages she has suffered . . . [,] punitive damages for Defendants' willful, wanton, and reckless conduct . . . [,] attorneys' and other fees, costs, and pre-and post-judgment interest accrued[,] and for such other relief as the Court finds just and proper." Complaint at 14-15.

**1.     The Motion.**

Benavidez requests in her Motion that the Court stay all proceedings in this matter for 120 days so that she can amend her Complaint.  See Motion at 1.  In support of her Motion, Benavidez in part explains that she received her right to sue letter on April 2, 2015, with a deadline to file suit of July 2, 2015.  See Motion at 1.  She then, pro se, attempted to file a law suit on July 1, 2015, but failed to serve process.  See Motion at 1.  She was able to file the instant Complaint on August 27, 2015, and on October 15, 2015, the suit was removed to federal court.  See Motion at 1.  On November 3, 2015, Benavidez' counsel requested a right-to-sue letter from the Equal Employment Opportunity Commission, because there was still a charge pending.  See Motion at 1.  Then, the Defendants filed their Motion to Dismiss, and as of the date of this Motion, the "Plaintiff has not yet filed her response to Defendant's Motion to Dismiss because all of Plaintiff's potential claims have not yet been brought forth which could be subject to the Defendant's Motion to Dismiss."  Motion at 2.  Additionally, the Motion argues that there are two other potential-Plaintiffs, whose claims arise from the same set of facts, awaiting their right to sue letters from the EEOC.  See Motion at 2.  The letters were requested on November 3, 2015.  See Motion at 2.  In light of these facts, Benavidez argues that there is "significant need" for a stay, because "Plaintiff is requesting additional time to bring forth all the parties and all the claims so that if there is a Motion to Dismiss that it would not have to be litigated multiple times."  Motion at 2.

**2.     The Response.**

The Defendants argue in the Defendants' Response to Plaintiff's Motion to Stay Proceedings at 1, filed November 25, 2015 (Doc. 19)("Response"), that the Court should deny

Benavidez' Motion. The Defendants assert that the stay would prejudice them, and would result in unnecessary delay and duplication. See Response at 1. The Response begins by arguing that, because Benavidez knew about these potential new claims and new Plaintiffs, yet waited until well after the Defendants had removed the case to federal court to file the Motion, the Court should deny the Motion, because to do otherwise would prejudice the Defendants. See Response at 1. Further, according to Defendants, Benavidez cannot make out a "clear case of hardship in being required to go forward," because adding additional claims and individuals will not, as the Motion argues, result in duplicative litigation. Response at 2. To grant the stay, the Response argues, would force the Defendants to reissue a new, duplicative Motion to Dismiss. See Response at 2. The Response maintains that there will likely need to be answer after answer with respect to Benavidez' amendments of the Complaint. See Response at 2-3. Defendants thus argue that this process would result in prejudice to them and would not alleviate any undue hardship to Benavidez. See Response at 3. The Response thus concludes that the Court should not wait to make a dispositive ruling regarding preemption as it applies as to the claims which only Benavidez brings. See Response at 3.

### 3. **The Reply.**

The Plaintiff's Reply to Defendants' Response (Doc. 19) to Plaintiff's Motion to Stay Proceedings (Doc. 10), filed December 9, 2015 (Doc. 22)("Reply"), argues that "what is clear is that the Court will be forced to hear duplicative motions to dismiss on the same or similar issues." Reply at 1. The Reply maintains that, despite the Response's argument that a stay would result in prejudice to the Defendants, and force the Defendants to file duplicative motions, the stay is necessary to avoid the Court's needing to hear duplicative motions. See Reply at 1.

According to the Reply, "[a] stay will simplify the issues because all the plaintiffs will be in one lawsuit and not require separate filings and complaints for all plaintiffs." Reply at 2. That prospect, the Reply argues, outweighs any potential prejudice or disadvantage that the Defendants may assert. See Reply at 2.

### 4. The Hearing.

The Court held a hearing on January 20, 2016. See Transcript of Hearing (taken January 20, 2015)("Tr.").[4] With respect to the Motion, Benavidez told the Court that she had received additional EEOC right-to-sue letters regarding three other Plaintiffs, and that they have been trying to draft a complaint to include federal claims for discrimination both for the three additional plaintiffs and for an additional charge that will pertain to Benavidez. See Tr. 14:3-12 (Berenson). She explained that they could go about the task in two separate ways: (i) file a separate lawsuit for the additional plaintiffs; or (ii) file a motion for leave to amend Benavidez' Complaint to include the federal claims and incorporate the additional Plaintiffs. See Tr. 14:7-19 (Berenson). The Court asked whether, given that the Defendants have not filed an answer to her Complaint, Benavidez has the ability to file an amended complaint as of right. See Tr. 15:18-22 (Court). Benavidez' counsel, Rachel Berenson, responded that she believed that Benavidez would need permission from the Court, because the timeframe to freely amend had already lapsed, even though the Defendants had not yet filed an answer. See Tr. 15:23-16:3 (Berenson).

The Defendants responded that they would prefer that all of the Plaintiffs and claims be tried in one case, but that all of the parties would benefit from the Court ruling on the § 301 preemption question. See Tr. 16:16-17:2 (Poore). Further, the Defendants contended that they

---

[4]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final version may have slightly different page and/or line numbers.

believed "all of the state law claims will ultimately be disposed of under federal enclave jurisdiction,"[5] if not under § 301 preemption.  Tr. 20:7-19 (Poore).

Ms. Berenson replied that the Defendants could also raise this § 301 preemption argument as to the additional claims that Benavidez and the three additional Plaintiffs will bring. See Tr. 25:4-10 (Berenson).  She asserted that the Court would then have to revisit this preemption issue again with all of the additional plaintiffs.  See Tr. 25:10-12 (Berenson).  The Court responded that, even if it might need to decide these § 301 preemption issues as to each Plaintiff again in the future, it might still make sense to proceed to deal with it as to Benavidez. See Tr. 25:13-21 (Court).  The Court explained that the parties would then have its thoughts on preemption under § 301, and they could then move onto the three additional Plaintiffs.  See Tr. 25:21-13 (Court).  Ms. Berenson stated that she understood that rationale, but explained that they had not yet received right-to-sue letters from the EEOC, which would require additional time before they could bring forth all of the other Plaintiffs.  See Tr. 25:24-26:5 (Berenson).  The Court concluded by stating:

> Well, I think that it will probably be helpful to the Court and really to the parties for me to go ahead and get this 301 issue resolved.  So I'm going to deny the motion to stay.  Usually if the plaintiffs want to put theirs on [ice], I'm pretty sympathetic to that, let them kind of control the case, but I think in this situation where we've had a hearing, we've had all the briefing, go ahead and get this issue decided, and I think it will give guidance to us down the road.  I think once I figure it out it will probably help us more expeditiously decide 301 issues for the other three plaintiffs.

Tr. 26:19-27:16 (Court).

---

[5]With respect to Benavidez' state-law claims, this doctrine provides an alternative basis for federal jurisdiction, because the actions took place on a federal enclave, over which Congress has exclusive regulatory authority.  See MOO at 90.

**5.     The MOO.**

The Court issued a MOO after the January 20, 2016, hearing that did not address the Motion.  The MOO addressed, however, the dispositive issues that the Court concluded were important to promptly resolve without staying the proceedings.

> First, the Court concludes that the [Labor Management Relations Act]'s § 301 does not preempt Benavidez' age and sex discrimination claims brought pursuant to the NMHRA.  Second, the Court concludes that the LMRA's § 301 partially preempts Benavidez' intentional-infliction-of-emotional-distress claim.  The Court concludes that, to the extent that Benavidez bases her intentional infliction of emotional distress claim on Gardener's "belittl[ing] and berat[ing]" her "for not being able to complete the course work she took in preparation for attempting to obtain a Trades Degree," § 301 does not foreclose Benavidez from asserting an intentional infliction of emotional distress claim.  See Complaint ¶ 64, at 13.  The Court concludes, however, that § 301 preempts Benavidez' intentional-infliction-of-emotional-distress claim to the extent that it is based on: (i) the Defendants' downgrading of Benavidez and putting her in a position for which she was not qualified, either by experience or physical abilities, rather than allowing her to move into another Grade 8 position, see Complaint ¶ 64, at 13; and (ii) the Defendants doing nothing to help her find another, more appropriate position after she complained to management multiple times and asked for help in her new position, and their ultimate termination of Benavidez for being unable to perform the new position, see Complaint ¶ 65, at 13.  The Court nonetheless dismisses the portion of Benavidez' intentional-infliction-of-emotional-distress claim that § 301 preempts, because Benavidez has not demonstrated that she exhausted her remedies under the CBA.[6]  See Allis-Chalmers Corp. v. Lueck, 471 U.S. [202, 220-21 (1985)](concluding that complaint should have been dismissed for failure to make use of the grievance procedure established in a collective-bargaining agreement or dismissed as pre-empted by § 301).  Third, the Court concludes that Benavidez states a claim for sex and age discrimination under the NMHRA.  Fourth, the Court will dismiss the claims against the individual defendants -- Gardner and Tucker -- because Benavidez has not exhausted her administrative remedies against them.  The Court concludes, however, that Benavidez has exhausted her administrative remedies for the conduct alleged in support of her NMHRA discrimination claims that took place after she filed her Charge of Discrimination on September 9, 2014.  Fifth, with respect to the portion of Benavidez' intentional-infliction-of-emotional-distress claim that § 301 does

---

[6]Collective Bargaining Agreement, which governs matter such as priority placement for bargaining unit employees unable to perform their job because of physical disability developed while employed by Sandia Labs.

not preempt, the Court concludes that Benavidez does not state a claim upon which relief can be granted.  In sum, the Court is left with two state-law discrimination claims brought under the NMHRA.  While the Court concludes that it retains federal enclave jurisdiction over this action, and therefore denies Benavidez' request in the Response that the Court remand this action to state court, it must dismiss Benavidez' three claims -- including those brought under the NMHRA -- pursuant to the federal enclave doctrine.

MOO at 46-48.

## LAW REGARDING STAYS

A court has broad discretion in managing its docket, which includes decisions regarding issuing stays for all or part of a proceeding.  See Clinton v. Jones, 520 U.S. 681, 706 (1997)("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." (citing Landis v. N. Am. Co., 299 U.S. 248, 254 (1936))).

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

Landis v. N. Am. Co., 299 U.S. at 254-55.  Recognizing that district courts must exercise moderation in issuing stays, the Supreme Court has noted that there are no strict rules for the district court to apply, because "[s]uch a formula . . . is too mechanical and narrow."  Landis v. N. Am. Co., 299 U.S. at 255.

The party seeking a stay generally faces a difficult burden.  See Clinton v. Jones, 520 U.S. at 708 ("The proponent of a stay bears the burden of establishing its need."); S2 Automation LLC v. Micron Tech., Inc., No. CIV 11-0884 JB/WDS, 2012 WL 3150412, at *2 (D.N.M. July 23, 2012)(Browning, J.)(citing Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d 1477, 1484 (10th Cir. 1983)).  "In particular, where a movant seeks relief

- 10 -

that would delay court proceedings by other litigants he must make a strong showing of necessity because the relief would severely affect the rights of others." Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d at 1484. "The underlying principle clearly is that 'the right to proceed in court should not be denied except under the most extreme circumstances.'" Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d at 1484 (alterations omitted)(quoting Klein v. Adams & Peck, 436 F.2d 337, 339 (2d Cir. 1971)).

The United States Court of Appeals for the Tenth Circuit has acknowledged a district court's discretion in issuing discovery stays. In Cole v. Ruidoso Municipal Schools, 43 F.3d 1373 (10th Cir. 1994), the defendants argued "that they had an absolute right to a stay of discovery" after they filed a motion for qualified immunity and appealed to the Tenth Circuit because the district court imposed conditions on the stay. 43 F.3d at 1386. The Tenth Circuit rebuffed the strict rules that the defendants suggested:

> As a general rule, discovery rulings are within the broad discretion of the trial court. The trial court's decision on discovery matters will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.

Cole v. Ruidoso Mun. Sch., 43 F.3d at 1386 (citations omitted)(internal quotation marks omitted).

Whether to issue a discovery stay depends greatly on the facts and progress in each case. In S2 Automation LLC v. Micron Technology, Inc., the Court granted in part and denied in part a motion to stay discovery, to extend pretrial deadlines, to vacate the trial setting, and to issue a protective order. See 2012 WL 3150412, at *1. The Court denied the motion to the extent it

requested a discovery stay, because, "[u]ltimately, a stay is unnecessary." 2012 WL 3150412, at *3. The parties had made "significant progress on the disputed matters," and the Court had "issued rulings on many of the motions that Micron Technology contended needed to be resolved before the case proceeded." 2012 WL 3150412, at *3. Instead of granting the discovery stay, the Court extended deadlines that it had previously set in the case based on the case's increasing complexity. See 2012 WL 3150412, at *3. In Walker v. THI of New Mexico at Hobbs Center, No. CIV 09–0060 JB/KBM, 2011 WL 2728326 (D.N.M. June 28, 2011)(Browning, J.), the Court evaluated whether to stay deposition discovery until thirty days after it ruled on the motions to dismiss two of the defendants, which would determine whether those defendants would remain in the suit and participate in discovery. See 2011 WL 2728326, at *1. The plaintiffs argued that the Court had already extended discovery deadlines and that issuing a stay would require rescheduling deadlines. See 2011 WL 2728326, at *1. The Court denied the motion to stay, because it did "not see a benefit to staying discovery." 2011 WL 2728326, at *2. The Court noted that counsel for the two defendants who were subject to the motions to dismiss had already indicated that they would not participate in deposition discovery. See 2011 WL 2728326, at *2. The Court stated: "There is thus no benefit to staying deposition discovery, and staying deposition discovery would further delay the case." 2011 WL 2728326, at *2. See also Martin v. City of Albuquerque, ___ F. Supp. 3d ___, 2015 WL 7803616, at *5 (D.N.M., Nov. 9, 2015)(Browning, J.); Fabara v. GoFit, LLC, 2015 WL 3544296, at *3-5 (D.N.M., May 13, 2015).

## ANALYSIS

The Court denies the Plaintiff's Motion to Stay Proceedings, filed November 12, 2015

(Doc. 10).  As it stated on the record at the hearing, the Court concluded that it would be "helpful to the Court and really to the parties for me to go ahead and get this 301 [preemption] issue resolved."  Tr. 26:19-27:16 (Court).  The Court has broad discretion in managing its docket, and in this instance, Benavidez has not met her burden of "establishing [her] need" for a stay.  Clinton v. Jones, 520 U.S. at 706.  Instead, the Court is persuaded that moving the proceedings along by making a ruling as to the preemption of certain claims as applied to Benavidez would be the most efficient way to manage its docket.  There is no reason to put the Defendants to the trouble and expense of having to wait and file another motion -- largely regarding the same issues that are already before the Court in the pending Motion to Dismiss -- while the Plaintiffs get all of their ducks in a row.  The Court has, in fact, now made that preemption ruling.  See MOO at 46-48.

**IT IS ORDERED** that the Plaintiff's Motion to Stay Proceedings, filed November 12, 2015 (Doc. 10) is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*

Katherine A. Wray
Jane Katherine Girard
Wray & Girard P.C.
Albuquerque, New Mexico

--and--

Rachel Berenson
Berenson & Associates, P.C.
Albuquerque, New Mexico

--and--

Rachel E. Higgins
Rachel E. Higgins Attorney at Law
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Aaron C. Viets
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

--and--

Justin E. Poore
Sandia Corporation
Albuquerque, New Mexico

    *Attorneys for the Defendants*