## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

LINDA BENAVIDEZ,

     Plaintiff,

vs.                                       No. CIV 15-0922 JB/LF

SANDIA NATIONAL LABORATORIES;
VARICK TUCKER, Personally, and
TIMOTHY GARDNER, Personally,

     Defendants.

### MEMORANDUM OPINION[1] AND ORDER

**THIS MATTER** comes before the Court on the Plaintiff's Motion to Withdraw Prior Motion to Amend and Substituted Motion to Amend Complaint, filed August 31, 2016 (Doc. 71)("Motion to Withdraw and Amend"). The Court held a hearing on September 29, 2016. The primary issue is whether the Court should permit Plaintiff Linda Benavidez to withdraw the Plaintiff's Motion for Leave to Amend Complaint, filed February 2, 2016 (Doc. 30)("Motion for Leave to Substitute Second Amended Complaint") -- providing as an attachment the Plaintiff's

---

[1] On September 30, 2016, the Court issued an Order, filed September 30, 2016 (Doc. 80)("Order"), in which it granted in part the Motion to Withdraw Prior Motion to Amend and Substituted Motion to Amend Complaint, filed August 31, 2016 (Doc. 71), stating:

> This Order disposes of, in part, Plaintiff's Motion to Withdraw Prior Motion to Amend and Substituted Motion to Amend Complaint, filed August 31, 2016 (Doc. 71), by granting the withdrawal of Plaintiff's Motion for Leave to Amend Complaint, filed February 2, 2016 (Doc. 30). The Court will, however, at a later date issue a Memorandum Opinion more fully detailing its rationale for this decision.

Order at 1 n.1. This Memorandum Opinion is the promised opinion, and further addresses the second request in the Motion to Withdraw Prior Motion to Amend and Substituted Motion to Amend Complaint, filed August 31, 2016 (Doc. 71), which is to amend the first complaint in federal court.

Second Amended Complaint for Damages for Violation of the New Mexico Human Civil Rights Act, Title I and IV of the American with Disabilities Act of 1964, Retaliation and Intentional Infliction of Emotional Distress and the Equal Pay Act of 1963, filed February 2, 2016 (Doc. 31)("Proposed Second Amended Complaint") -- and substitute a third amended complaint that seeks to add three plaintiffs, add novel federal claims, and remove any state-law claims that the Court has already dismissed in its Amended Memorandum Opinion and Order, filed June 27, 2016 (Doc. 64)("Preemption MOO"), amending its Memorandum Opinion and Order, filed June 22, 2016 (Doc. 63).[2] Because the Court concludes that Benavidez is free to withdraw the Motion for Leave to Substitute Second Amended Complaint under the local rules, the Court will allow Benavidez to so withdraw it. The Court will further grant leave for Benavidez to file the Proposed Third Amended Complaint with respect to the federal claims she brings, on her behalf, against Defendant Sandia Laboratories, because the Court concludes that such leave should

---

[2]The legal issue that the Court addressed, in the context of Defendants' Motion to Dismiss, filed October 21, 2015 (Doc. 7)("Motion to Dismiss"), was the potential preemption of Benavidez' state law claims by the Labor Management Relations Act, 29 U.S.C. §141 ("LMRA"). The Supreme Court has stated that LMRA § 301 will completely preempt a state law claim when resolution of the state law claim is substantially dependent upon analysis of the terms of a Collective Bargaining Agreement between the parties. See Caterpillar Inc. v. Williams, 482 U.S. 386, 395 (1987); Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213 (1962)(stating that preemption analysis turns on whether the action confers rights on employers or employees "independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract"); Cisneros v. ABC Rail Corp., 217 F.3d 1239, 1302 (10th Cir. 2000)(explaining that § 301 "preempts questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, . . . whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort"). "Preemption arises only when an 'evaluation of the . . . claim is inextricably intertwined with consideration of the terms of the labor contract.'" Mowry v. United Parcel Service, 415 F.3d 1149, 1152 (10th Cir. 2005)(emphasis in original). "As long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 410 (1988).

freely be granted.  The Court will not, however, grant leave for Benavidez to file her claim under the Equal Pay Act of 1963, because it fails to state a claim and thus would be futile.  As to the proposed Plaintiffs, the Court will deny the Motion to Withdraw and Amend as it pertains to them, because their Equal Pay Act claim similarly fails to state a claim, and because the filing date of their other federal claims does not relate back to a date meeting the statutory limitation for filing such claims, thus rendering them time barred and futile.

## FACTUAL BACKGROUND

The Court has already discussed the facts underlying this case in detail.  See Preemption MOO at 4-9.  The Court takes the following recitation of the relevant facts from the First Amended Complaint for Damages for Violation of the New Mexico Human Rights Act, and for Intentional Infliction of Emotional Distress, filed October 15, 2015 (Doc. 1-2)("First Amended Complaint"), which Benavidez filed originally in the Second Judicial District Court, County of Bernalillo, State of New Mexico.  See First Amended Complaint at 1.[3]

Sandia Labs employed Benavidez, a United States citizen and a resident of Albuquerque, New Mexico.  See First Amended Complaint ¶ 8, at 6.  Defendant Varick Tucker was Benavidez' Human Resource manager, while Defendant Timothy Gardener was Benavidez' manager.  See First Amended Complaint ¶¶ 11-12, at 6.  Sandia Labs had hired Benavidez as a Neutron Generator Production Specialist on June 1, 2001, see First Amended Complaint ¶ 14, at 7, but she eventually "developed some serious medical conditions which resulted in Plaintiff's life activities being affected,"  First Amended Complaint ¶ 16, at 7.  In 2011, the requirements of Benavidez' position changed to include the need for a Trades Degree.  See First Amended

_____

[3]To cite the First Amended Complaint, the Court will use the CM/ECF's pagination -- i.e., the blue number in the top right-hand corner of each page -- because the First Amended Complaint does not contain internal pagination.

Complaint ¶ 17, at 7.  To obtain a Trades Degree, Benavidez would have had to return to school for college-level courses such as physics, trigonometry, and chemistry, which would have required her to take years of preparatory classes to qualify to take the required classes.  <u>See</u> First Amended Complaint ¶ 19, at 7; <u>id.</u> ¶ 42, at 11; <u>id.</u> ¶ 53, at 12.

Benavidez was told that, if she was unable to obtain the Trades Degree, she would be "bumped" into another similar position at Sandia Labs with the same grade level and pay.  First Amended Complaint ¶ 22, at 8.  <u>See id.</u> ¶ 42, at 11; <u>id.</u> ¶ 53, at 12.  "Instead of being 'bumped' into a similar position at Sandia Labs, though, Plaintiff was ultimately placed in a position described as a Maintenance Support Technician," which "included 'duties requiring working strenuous positions with exertions of physical effort up to 60 pounds.'"  First Amended Complaint ¶ 24, at 8.  <u>See id.</u> ¶ 43, at 11; <u>id.</u> ¶ 54, at 12.  "She and her co-workers that were put in this position, essentially as tractor/trailer drivers, were the only females working this job."  First Amended Complaint ¶ 25, at 8.  <u>See id.</u> ¶ 43, at 11; <u>id.</u> ¶ 54, at 12.  "The only other employees in this position were men, with the exception of one other woman over the age of 40 who was also being 'absorbed' into this new position, and who was ultimately terminated."  First Amended Complaint ¶ 54, at 12.

"On September 9, 2014, Ms. Benavidez filed a formal charge of discrimination on the basis of sex, age, and equal pay in violation of the New Mexico Human Rights Act, NMSA § 28-1-7 (1978), <em>et seq</em>."  First Amended Complaint ¶ 3, at 5-6.  On September 30, 2014, a doctor "with Defendant SNL advised Plaintiff that she was incapable of performing the job duties due to her permanent medical restrictions."  First Amended Complaint ¶ 31, at 9.  <u>See id.</u> ¶ 45, at 11; <u>id.</u> ¶ 57, at 13.  Accordingly, Benavidez "was placed on a realignment process and was not given any reasonable accommodation."  First Amended Complaint ¶ 32, at 9.  <u>See id.</u> ¶ 57, at 13.  On

April 16, 2015, Sandia Labs terminated Benavidez' employment.  See First Amended Complaint ¶ 36, at 10; id. ¶ 66, at 13-14.

## PROCEDURAL BACKGROUND

On August 27, 2015, Benavidez filed suit in the Second Judicial District Court.  See First Amended Complaint at 1.  Benavidez had originally failed to serve a complaint upon Defendants, which is why Benavidez instead began the lawsuit by serving the First Amended Complaint.  See Notice of Removal at 1, filed October 15, 2015 (Doc. 1).  About a month and a half later, on October 15, 2015, the Defendants removed the case to federal court, asserting federal-question jurisdiction.  See Notice of Removal at 1-7.  Benavidez asserted three causes of action against all of the Defendants: (i) discrimination on the basis of age in violation of the New Mexico Human Rights Act, N.M. Stat. Ann. §§ 28-1-1 to -14 ("NMHRA"), see First Amended Complaint ¶¶ 38-48, at 10-12 (Count I); (ii) discrimination on the basis of sex in violation of the NMHRA, see First Amended Complaint ¶¶ 49-62, at 12-13 (Count II); and (iii) intentional infliction of emotional distress, see First Amended Complaint ¶¶ 63-73, at 13-14 (Count III). Benavidez asked the Court for judgment against the Defendants "for all actual, compensatory, nominal, and emotional damages she has suffered . . . [,] punitive damages for Defendants' willful, wanton, and reckless conduct . . . [,] attorneys' and other fees, costs, and pre-and post-judgment interest accrued[,] and for such other relief as the Court finds just and proper."  First Amended Complaint at 14-15.

1. **<u>The January 20, 2016, Hearing</u>**.

The Court held a hearing on January 20, 2016. <u>See</u> Transcript of Hearing (taken January 20, 2015)("January Tr.").[4]  At the hearing, the parties largely stuck to their briefing on the Motion to Dismiss.  After the Defendants briefly set forth their argument that federal law preempts Benavidez' claims, the Court asked the Defendants whether they agree that all of Benavidez' claims are state claims and that there are no federal claims.  <u>See</u> January Tr. at 2:12-3:25 (Court, Poore).  The Defendants responded that there are only state law claims in the First Amended Complaint.  <u>See</u> January Tr. at 4:1-2 (Poore).  They further stated, however, that Benavidez had sent them a proposed second amended complaint, in which Benavidez asserts claims on behalf of herself and of three additional former Sandia Labs employees under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"); the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 to 634 ("ADEA"); and the Americans with Disabilities Act, 42 U.S.C. §§ 12201 to 12213 ("ADA").  <u>See</u> January Tr. at 4:3-15 (Court, Poore).  The Court stated that, under the preemption doctrine, one of the bases for federal court jurisdiction is that, even though the complaint's face does not raise any federal claims, if there is a preemption defense, that defense is enough for a defendant to remove a case to federal court.  <u>See</u> January Tr. at 4:19-24 (Court).  The Defendants agreed and argued that, under the artful pleading doctrine, a plaintiff cannot fail to include factual allegations to avoid federal jurisdiction.  <u>See</u> January Tr. at 4:25-5:3 (Poore).  They contended that, in this case, Benavidez fails to plead allegations to avoid federal jurisdiction by omitting the references to the CBAs.  <u>See</u> January Tr. at 5:3-5 (Poore).  The Defendants added that, with respect to Benavidez' request for remand,

---

[4]The Court's citations to the transcripts of the hearings refer to the court reporter's original, unedited version.  Any final version may have slightly different page and/or line numbers.

"there is an alternative basis for federal jurisdiction, which is that the actions took place on a federal enclave, and so remand would be inappropriate regardless of how far the Court rules on the preemption claim." January Tr. at 5:11-16 (Poore). The Defendants also confirmed that they cited that basis of jurisdiction in their notice of removal. See January Tr. at 5:17-19 (Court, Poore).

Benavidez then argued the Motion to Dismiss. See January Tr. at 6:21-23 (Court, Higgins, Poore). Benavidez began by emphasizing that "preemption is only required if the state claim is inextricably intertwined with the consideration of the terms of the labor contract." January Tr. at 6:23-7:1 (Higgins). According to Benavidez, her claims for sex and age discrimination are not inextricably intertwined with the CBA's terms, and there is nothing in the CBA that would have anything to do with discrimination. See January Tr. at 7:5-13 (Higgins). She maintained, therefore, that § 301 preemption does not apply. See January Tr. at 7:9-20 (Higgins). Benavidez then largely restated her arguments from her briefing. See January Tr. at 9:3-10:4 (Higgins). The Court expressed concern that the conduct alleged does not appear to meet the standard of being outrageous. See January Tr. at 10:5-20 (Court). Benavidez responded that it was premature to dismiss the claim and that she would like an opportunity to do some discovery. See January Tr. at 10:5-11:3 (Higgins). Benavidez also agreed that the Court can likely decide whether there is § 301 preemption in this case. See January Tr. at 12:11-13:5 (Court, Higgins).

The Court then asked Benavidez where she is going with the case by adding additional people and bringing federal claims. See January Tr. at 13:6-8 (Court). Benavidez stated that attorney Rachel Berenson was present and could better address that question. See January Tr. at 13:9-11 (Higgins). Ms. Berenson then argued. See January Tr. at 13:12-17 (Berenson, Court,

Higgins).  She agreed that the Defendants will likely prevail on the issue of federal enclave jurisdiction.  <u>See</u> January Tr. at 13:17-15:17 (Berenson, Court).  Ms. Berenson further stated that they have received additional Equal Employment Opportunity Commission right-to-sue letters regarding the three other Plaintiffs, and that they have been trying to draft a complaint to include federal claims for discrimination both for the three additional Plaintiffs and for Benavidez.  <u>See</u> January Tr. at 14:3-12 (Berenson).  Ms. Berenson explained that they could go about it in two separate ways: (i) file a separate lawsuit for the additional Plaintiffs; or (ii) file a motion for leave to amend Benavidez' Complaint to include the federal claims and incorporate the additional plaintiffs.  <u>See</u> January Tr. at 14:7-19 (Berenson).  The Court asked whether, given that the Defendants have not filed an answer, Benavidez has the ability to file an amended complaint as of right.  <u>See</u> January Tr. at 15:18-22 (Court).  Ms. Berenson responded that she believed that Benavidez would need the Court's permission, because the time frame had already lapsed even though the Defendants had not yet filed an answer.  <u>See</u> January Tr. at 15:23-16:3 (Berenson).

The Court then asked the Defendants whether, given that the Plaintiffs have indicated that the Defendants likely will prevail on the remand issue, they might allow the plaintiffs to bring their suit here in one case.  <u>See</u> January Tr. at 16:9-15 (Court).  The Defendants responded that they would prefer that all of the Plaintiffs and claims be in one case, but that all of the parties would benefit from the Court ruling on the § 301 preemption question.  <u>See</u> January Tr. at 16:16-17:2 (Poore).  The Defendants also clarified that they are arguing that, as with the intentional infliction of emotional distress claim, Benavidez' sex and age discrimination claims do not state a claim upon which relief can be granted.  <u>See</u> January Tr. at 18:23-19:19 (Poore).  The Defendants made the final point that, although Benavidez did not concede federal enclave

jurisdiction, she suggested that the intentional infliction of emotional distress claim might survive even if the Court has such jurisdiction.  See January Tr. at 20:7-11 (Poore).  According to the Defendants, however, New Mexico first recognized the tort of intentional infliction of emotional distress in 1972, well after the New Mexico Legislature passed the NMHRA in 1969.  See January Tr. at 20:7-11 (Poore).  They therefore contended that they believe that "all of the state law claims will ultimately be disposed of under federal enclave jurisdiction."  January Tr. at 20:7-19 (Poore).

Benavidez responded that they were relying on a 1937 case, which they contended allowed for damages and recognized a claim for emotional distress.  See January Tr. at 21:2-10 (Higgins).  Benavidez also clarified that the question of sex and age discrimination does not rely on the CBA.  See January Tr. at 20:25-22:4 (Higgins).  The Court responded:

> Does that require any construction of the contract?  I mean [what I] understand the plaintiffs are saying.  It's kind of irrelevant whether the contract required bumping or didn't require bumping, they don't care, they're just saying is the manager came in and said this is what occurred on the basis of what the manager said, that's where the sexual or age discrimination occurred.  Does it really require the Court to construe in any way the CBA[?]

January Tr. at 22:5-14 (Court).  The Defendants responded that they read the First Amended Complaint as arguing that Benavidez should have bumped or displaced another employee.  See January Tr. at 22:15-17 (Poore).  They further explained: "I don't believe an argument that her supervisor told her one thing and something different ended up happening has anything to do with [age] or sex discrimination, and so if you actually look at that, it's at best, a contract claim.  At worst it's not a claim at all."  January Tr. at 22:17-22 (Poore).

The Court then stated:

> Let me take a look at this.  I still have a recollection I thought it was maybe that [T]ru[] [Solutions], that [Westinghouse] case out of the [WIPP] [c]ite[,] maybe it

wasn't.  I thought I had a [§] 301 preemption and I thought I'd construed it narrowly but let me give that some thought.  It sounds like I'm going to [have] federal jurisdiction one way or another here so I'm inclined to dismiss the intentional infliction of distress[;] I think I've had enough of these in the employment context.  I'll have to look at the allegation to see whether they satisfy Iqbal an[d] Twombly.  That's really [what I] understand Sandia to be raising [about] the state law claims on the substance, but the only one I really have a feel for is maybe the intentional infliction of emotional distress.  So I'll have to give that some consideration.  It sounds like the plaintiffs are not contesting or at least indicating that this federal enclave which I have had no experience with, so I'll have to take a look at it for the first time, it sounds like that's sufficient to confer jurisdiction, so it doesn't look like it's a remand situation and the case will remain here in Federal Court.  I understand that the intentional infliction might survive or be around before the federal enclave but I'm not sure that would save it even under state law.

I'll hear the plaintif[']s motion to stay.  I'll give you my thoughts.  I guess I was inclined to think that the defendant was right, at some point I've got to decide this 301 issue.  It may not be exactly what you[r] next complaint is.  But it sound[s] like I'm going to have to get into it at some point, and I know you may be amending your complaint and things like that, but . . . those [sort] of things I've got to decide[;] it's just delaying things for me not to go ahead and decide it.  So I was inclined to deny it.  [I will g]o ahead and have Ms. Wild send out a [notice for an initial scheduling conference] and try to have the opinion out to you by the time I see you at the initial scheduling conference, so we can keep the case moving for all sides and hopefully I'll have [that] opinion out to you.  It will give you some guidance on whether we're going to have these state claims in or out and maybe by that point the plaintiffs will know what they're going to do with their complaint and be ready to go on that.

January Tr. at 22:23-24:20 (Court).

Ms. Berenson then noted the Defendants could also raise this § 301 preemption argument as to the additional claims that Benavidez and the three additional Plaintiffs will bring.  See January Tr. at 25:4-10 (Berenson).  She asserted that the Court would then have to revisit this preemption issue again with all of the additional Plaintiffs.  See January Tr. at 25:10-12 (Berenson).  The Court responded, that even if it might need to decide these § 301 preemption issues as to each Plaintiff, it might make sense to go ahead and deal with them as to Benavidez.  See January Tr. at 25:13-21 (Court).  The parties would then have the Court's thoughts on

preemption under § 301, and they could then move onto the three additional Plaintiffs.  See

January Tr. at 25:13-21 (Court).  Ms. Berenson stated that she understood that rationale, but

explained that they had not yet received right-to-sue letters from the Human Rights Division,

which would require additional time before they could bring forth all of the other Plaintiffs.  See

January Tr. at 25:24-26:5 (Berenson).  The Defendants expressed concern about having to refile

the Motion.  See January Tr. at 26:6-17 (Court, Poore).  The Court concluded by stating:

> Well, I think that it will probably be helpful to the Court and really to the parties for me to go ahead and get this 301 issue resolved.  So I'm going to deny the motion to stay.  Usually if the plaintiffs want to put their [case] on [ice], I'm pretty sympathetic to that, let them kind of control the case, but I think in this situation where we've had a hearing, we've had all the briefing, go ahead and get this issue decided, and I think it will give guidance to us down the road.  I think once I figure it out it will probably help us more expeditiously decide 301 issues for the other three plaintiffs.

January Tr. at 26:19-27:16 (Court).

### 2.    The Preemption MOO Dismissing Benevidez' State Claims.

The Court issued the Preemption MOO after the January 20, 2016, hearing.   The

Preemption MOO decided:

> First, the Court concludes that the LMRA's § 301 does not preempt Benavidez' age and sex discrimination claims brought pursuant to the NMHRA. Second, the Court concludes that the LMRA's § 301 partially preempts Benavidez' intentional-infliction-of-emotional-distress claim.    The Court concludes that, to the extent that Benavidez bases her intentional infliction of emotional distress claim on Gardener's "belittl[ing] and berat[ing]" her "for not being able to complete the course work she took in preparation for attempting to obtain a Trades Degree," § 301 does not foreclose Benavidez from asserting an intentional infliction of emotional distress claim.  See Complaint ¶ 64, at 13.  The Court concludes, however, that § 301 preempts Benavidez' intentional-infliction-of-emotional-distress claim to the extent that it is based on: (i) the Defendants' downgrading of Benavidez and putting her in a position for which she was not qualified, either by experience or physical abilities, rather than allowing her to move into another Grade 8 position, see Complaint ¶ 64, at 13; and (ii) the Defendants doing nothing to help her find another, more appropriate position after she complained to management multiple times and asked for help in her new

position, and their ultimate termination of Benavidez for being unable to perform the new position, see Complaint ¶ 65, at 13. The Court nonetheless dismisses the portion of Benavidez' intentional-infliction-of-emotional-distress claim that § 301 preempts, because Benavidez has not demonstrated that she exhausted her remedies under the CBA.[5]  See Allis-Chalmers Corp. v. Lueck, 471 U.S. [202, 220-21 (1985)](concluding that complaint should have been dismissed for failure to make use of the grievance procedure established in a collective-bargaining agreement or dismissed as pre-empted by § 301). Third, the Court concludes that Benavidez states a claim for sex and age discrimination under the NMHRA. Fourth, the Court will dismiss the claims against the individual defendants -- Gardner and Tucker -- because Benavidez has not exhausted her administrative remedies against them.   The Court concludes, however, that Benavidez has exhausted her administrative remedies for the conduct alleged in support of her NMHRA discrimination claims that took place after she filed her Charge of Discrimination on September 9, 2014.  Fifth, with respect to the portion of Benavidez' intentional-infliction-of-emotional-distress claim that § 301 does not preempt, the Court concludes that Benavidez does not state a claim upon which relief can be granted.  In sum, the Court is left with two state-law discrimination claims brought under the NMHRA.  While the Court concludes that it retains federal enclave jurisdiction over this action, and therefore denies Benavidez' request in the Response that the Court remand this action to state court, it must dismiss Benavidez' three claims -- including those brought under the NMHRA -- pursuant to the federal enclave doctrine.

Preemption MOO at 46-48.

### 3.    Motion for Leave to Substitute Second Amended Complaint.

Benavidez filed the Motion for Leave to Substitute Second Amended Complaint on February 2, 2016.  See Motion for Leave to Substitute Second Amended Complaint at 1.  The amendment deadline in the Scheduling Order was April 30, 2016.  See Scheduling Order, filed March 2, 2016 (Doc. 35).  "The Amended Complaint includes three (3) additional Plaintiffs who have similar claims arising out the same or similar conduct by their former employer, Defendant Sandia Corp. and the additional violation charge of the Equal Pay Act[, 29 U.S.C. § 206(d)]."  Motion for Leave to Substitute Second Amended Complaint at 2.  The three additional Plaintiffs

---

[5]Collective Bargaining Agreement, which governs matters such as priority placement for bargaining unit employees unable to perform their job because of physical disability developed while a Sandia Labs employee.  See Preemption MOO, passim.

have, according to the Motion for Leave to Substitute Second Amended Complaint, received "Right to Sue letters dated November 24, 2015, November 25, 2015 and November 30, 2015 and have received their letter of Non Determination from Human Rights Bureau on January 27, 2016." Motion for Leave to Substitute Second Amended Complaint at 2. The Motion for Leave to Substitute Second Amended Complaint asserts that the Court and the Defendants were aware that Benavidez was awaiting the additional Plaintiffs' "Right to Sue Letters" before she filed this impending Motion for Leave to Substitute Second Amended Complaint. Motion for Leave to Substitute Second Amended Complaint at 2-3. "Plaintiff further requests leave to amend the Complaint such that the caption may be amended to accurately reflect the nature to withdraw [sic] her claims against Defendant Gardner and Defendant Tucker and to add additional exhausted claims and additional Parties." Motion for Leave to Substitute Second Amended Complaint at 3.

The Proposed Second Amended Complaint, attached to the Motion for Leave to Substitute Second Amended Complaint, however, retains the same claims in the First Amended Complaint that the Court's Preemption MOO dismissed. See Proposed Second Amended Complaint at 1-24. Specifically, the Proposed Second Amended Complaint "essentially re-states th[e] [Intentional Infliction of Emotional Distress ("IIED")] claim, as well as the New Mexico Human Rights Act age and sex discrimination claims that are subject to the [Preemption MOO]." Defendants' Response to Plaintiff's Motion for Leave to Amend Complaint at 2, filed March 7, 2016 (Doc. 38). More specifically, the Proposed Second Amended Complaint alleges "Count I: Discrimination on the Basis of Serious Medical Condition in Violation of the New Mexico Human Rights Act and Title I of the American Disability Act," Proposed Second Amended Complaint ¶¶ 123-34, at 16-17; "Count II: Discrimination on the Basis of Sex in Violation of the

New Mexico Human Rights Act and/or Title VII of the Civil Rights Act Against Defendant Sandia Corporation," Proposed Second Amended Complaint ¶¶ 135-49, at 17-19; "Count III[:] Retaliation Against Defendant Sandia Corporation," Proposed Second Amended Complaint ¶¶ 150-58, at 19-20; "Count IV: Violation of the Age Discrimination in Employment Act," Proposed Second Amended Complaint ¶¶ 159-69, at 20-21; "Count V: Intentional Infliction of Emotional Distress," Proposed Second Amended Complaint ¶¶ 170-83, at 21-22; and "Count VI: The Equal Pay Act of 1963," Proposed Second Amended Complaint ¶¶ 184-88, at 22-23.  On July 1, 2016 -- following the Court's issuance of the Preemption MOO -- Benavidez submitted the Plaintiff's Supplemental Briefing on Doc. 30, Motion for Leave to Amend Complaint, filed July 1, 2016 (Doc. 65)("Supplemental Briefing"), making minor changes to the Proposed Second Amended Complaint.  See Supplemental Briefing at 1-2.  The Supplemental Briefing, in particular, renumbers paragraphs, discusses grievances that the Plaintiffs made before the Metal Trade Council, makes more specific allegations, adds a punitive damages claim, and changes the anticipated month of filing.  See Supplemental Briefing at 2.  Importantly, the Supplemental Briefing provides that, despite the Preemption MOO, "[i]n order to preserve the record for any appeal and on behalf of the new proposed Plaintiffs, Plaintiff has not removed the state law claims that the Court dismissed in the *Amended Memorandum Opinion and Order* [Doc. 64]." Supplemental Briefing at 2.

### 4. Motion for Leave to Substitute Second Amended Complaint Response.

Sandia Labs responded to the Motion for Leave to Substitute Second Amended Complaint with the Defendants' Response to Plaintiff's Motion for Leave to Amend Complaint, filed March 7, 2016 (Doc. 38)("Motion for Leave to Substitute Second Amended Complaint Response").  The Motion for Leave to Substitute Second Amended Complaint Response objects

to the Motion for Leave to Substitute Second Amended Complaint, because the "Plaintiff's proposed amendment would be futile, cause undue delay, and cause undue prejudice to Defendant Sandia Corporation." Motion for Leave to Substitute Second Amended Complaint Response at 1. Essentially, Sandia Labs requests that the Court not allow Benavidez to amend the First Amended Complaint until after the Court issues its Preemption MOO resolving the issues Sandia Labs raised in its Motion to Dismiss. See Motion for Leave to Substitute Second Amended Complaint Response at 3. The Motion for Leave to Substitute Second Amended Complaint Response concludes by stating:

> Plaintiff's proposed amendment is -- at least as to the state law claims -- futile. Furthermore, the filing of a second amended complaint before the Court completes and issues its decision on Defendants' motion to dismiss would moot that motion and effectively nullify the work that has gone into arguing and deciding the motion, causing undue delay and undue prejudice to Sandia. Defendants' respectfully request that the Court deny Plaintiff leave to amend her complaint until after a decision is issued on Defendants' motion to dismiss, and in no event should it be granted with regard to state law claims that Sandia has already identified as defective.

Motion for Leave to Substitute Second Amended Complaint Response at 3.

### 5.    The Motion for Leave to Substitute Second Amended Complaint Reply.

Benavidez replied to the Motion for Leave to Substitute Second Amended Complaint Response with the Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Leave to Amend Complaint, filed March 21, 2016 (Doc. 43)("Motion for Leave to Substitute Second Amended Complaint Reply"). The Motion for Leave to Substitute Second Amended Complaint Reply offers a path forward for the Court, stating initially that "Plaintiff is attempting to comply with Court's Scheduling Order [Doc. 35] deadline by moving to amend the pleadings and to join additional parties in compliance with Fed. R. Civ. P. 15(a)." Motion for Leave to Substitute Second Amended Complaint Reply at 1. Accordingly, the Motion for Leave to Substitute

Second Amended Complaint Reply explains that the

> Plaintiff's deadline to move to amend the pleadings and to join additional parties
> is April 30, 2016.  The three (3) proposed joining plaintiffs had a deadline to file
> an appeal from the Human Rights Department or the Employee Equal
> Opportunity Commission before February 24, 2016 and February 30, 2016, and
> therefore it is critical that this Court grant Plaintiff's motion for leave to amend to
> adjoin these additional three (3) plaintiffs.  If the Court does not grant Plaintiff's
> motion to amend the complaint the three (3) additional Plaintiffs' will be forced to
> file a new lawsuit and bring Defendant into separate proceedings and waste the
> Court's valuable time and resources.

Motion for Leave to Substitute Second Amended Complaint Reply at 2.  Thus, according to the

Motion for Leave to Substitute Second Amended Complaint Reply, Benavidez will, "[u]pon the

Court's decision on Defendants' motion to dismiss, . . . again amend their second amended

complaint to properly reflect the court's decision if it alters the ability to bring any of the

claims."  Motion for Leave to Substitute Second Amended Complaint Reply at 2.  Benavidez

also provides that the "[p]roposed Joining Plaintiffs request this Court to allow them to pursue

their right to adjoin and appeal their decisions of the Employee Equal Opportunity Commission

and the Human Rights Department."   Motion for Leave to Substitute Second Amended

Complaint Reply at 2.

    **6.      The May 16, 2016, and June 23, 2016, Hearings.**

    The Court held hearings on May 16, 2016, and June 23, 2016.  See Transcript of Hearing,

taken May 16, 2016 ("May Tr."); Transcript of Hearing, taken June 23, 2016 ("June Tr.").  At

the May 16, 2016, Hearing, the Court had not yet issued its Preemption MOO, so the Court

suggested:

> Since we've already argued the motion I've already given my inclination
> and think I know what I'm going to do is if I could just grant this motion for leave
> to amend the complaint and then whatever I say as to Ms. Benavidez in the
> motion to dismiss so we don't have to reinvent everything we've done, just apply
> that equally to [Defendants] Tucker and Gardener, and I think the big issue is

> going to be the intentional infliction of emotional distress and I probably am not going to find in too many employment context[s] and I did sit down and read the complaint here last night, I just am not certain I'm going to find it. But then I just enter an order, the opinion as to I can do it as to the amended complaint or I can just say it's going to apply to the amended complaint. But I'm wondering if maybe we can cut through that by assuring Sandia that they don't have to reargue this thing, whatever I say there I'll apply it to Tucker and Gardener, but go ahead and get the amended motion on file. But Ms. Berenson it's your motion if you wish to argue in support of it.

May Tr. at 3:11-4:7 (Court). Benavidez indicated, then explained, that they had added new facts to the Proposed Second Amended Complaint, and that they would be happy to have the Court allow them to file the Proposed Second Amended Complaint and then apply the Preemptive MOO, once it was filed, to that pleading as well. See May Tr. at 4:18-21 (Berenson). Yet, even though all parties agreed with that proposal, Benavidez further indicated that "it's just difficult because we've added so many more facts in regards to other plaintiffs as well. So it would be unjust for them to have a ruling" in this manner. May Tr. at 6:4-6 (Berenson). The Court agreed that its initial proposal thus would not work, and instead instructed Benavidez to "make your own decision whether you want to file separate cases" given the proposed addition of new Plaintiffs, and

> if you need to file separate cases, you can. If I get the opinions out and you want to bring it back here, us pick this up, I'll just hold this for the time being, I won't rule on it, and then you can make a decision. You'll just have to be the judge of your own time.

May Tr. at 6:7-16 (Court). The Court thus did not hear Benavidez' Motion for Leave to Substitute Second Amended Complaint at the May 16, 2016, Hearing.

The Court once more heard argument on the Motion for Leave to Substitute Second Amended Complaint at the June 23, 2016, Hearing. The Court issued the Preemption MOO on the evening before the hearing, and the Court inquired of the parties whether "if with the opinion

- 17 -

out if y'all might be able to . . . agree to whether it should be amended, but I don't know."  June Tr. at 3:1-4 (Court).  Benavidez responded that they had not yet talked to Sandia Labs, but that they probably would want the Court to set another hearing on the Motion for Leave to Substitute Second Amended Complaint, because they may need to supplement that motion in light of the guidance of the Preemption MOO, for which they needed "a little more time to digest."  June Tr. at 3:5-16 (Higgins).  Sandia Labs agreed, and the Court set a hearing for August 25, 2016.  See June Tr. at 6:10-12 (Poore, Court).

> ### 7.     The August 25, 2016, Hearing.

The Court held a hearing on August 25, 2016.  At the hearing the Court addressed, in part, the Motion for Leave to Substitute Second Amended Complaint.  See Transcript of Hearing at 2:4-5 (Court), taken August 25, 2016 ("Tr."). The Court reminded the parties that:

> We started a hearing and I tried to work out an agreement [where] we could have the motion to dismiss that was pending[,] and I have not been able to get the opinion out[,] [and the opinion] would apply to all the new people, but we weren't able to reach that agreement.  So we adjourned that hearing for motion for leave to amend the complaint.

Tr. at 2:4-11 (Court).  The Court continued: "I finished my work on that opinion, so where are we on the motion for leave to amend?  Do you still want to file this complaint?"  Tr. at 2:11-14 (Court).  Benavidez responded that she wished to argue in favor of the Motion for Leave to Substitute Second Amended Complaint and Supplemental Briefing, and that one reason that the Proposed Second Amended Complaint still contains the state claims that the Court has dismissed is, because

> [t]he February amended complaint was designed to become a federal complaint. It was designed to contain the allegations [] necessary not just to bring forth the state claims that are pending, but also to bring those [] federal claims.  And the intent has been to include everything in this amended complaint so we're not hiding the ball so we do not have to amend again . . . .

Tr. at 4:4-17 (Girard).  Further, with respect to why Benavidez filed the Motion for Leave to Substitute Second Amended Complaint instead of waiting for the Preemption MOO, Benavidez indicated that "we had three additional plaintiffs to add who had been issued their right to sue letters, and they had a statutory deadline to meet."  Tr. at 3:14-24 (Girard).  The Court was hard pressed, however, to understand "why go through all that motion if I spent a lot of time dealing with the []motion to dismiss, why put them all back in the case[,] I just don't get that."  Tr. at 4:18-21 (Court).  The Court thus asked Benavidez if she has "a complaint that you can propose to the Court and parties that conforms to the Court's opinion," Tr. at 5:1-3 (Court), to which Benavidez replied that she could "prepare that pretty quickly," Tr. at 5:4-5 (Girard).

Sandia Labs then addressed the Court, arguing that its "primary objections are the same as the courts, which is that they include and in some instances double down on the state law claims which you have already dismissed."  Tr. at 7:22-25 (Poore).  Benavidez then interjected and explained that "what I would like, at the end of this process, [is] for a ruling that makes clear or a complaint that makes clear that the new plaintiffs are also subject to the Court's prior ruling."  Tr. at 10:13-17 (Girard).  To achieve this goal, Benavidez explained that what she proposes is

> to file this complaint as written, followed by the order that says that the Court's ruling applies to all plaintiffs, the Court's previous ruling in the motion to dismiss applies to all plaintiffs and claims in this complaint.  We thought that that satisfied it and made it easier, but obviously it has not . . . .

Tr. at 10:21-11:5 (Girard).  Benavidez then reiterated that she simply wanted a clean slate, with a federal-court complaint that makes both her original state claims, and the new federal claims; and includes herself and the three additional Plaintiffs; and that in no way did she expect that the Preemption MOO would not to apply to that new complaint or to the additional Plaintiffs.  See

Tr. at 11:18-25 (Girard).

Accordingly, Benavidez apologized for causing the Court frustration and stated that, because there was not a complaint before the Court at the present time, she was not prepared to argue her First Motion to Compel Production of Documents, filed May 2, 2016 (Doc. 52)("Motion to Compel").  See Tr. at 13:1-6 (Girard).  The Court then took the Motion to Compel under advisement, without hearing argument, and stated it would "get an opinion out to you and an order denying your motion to amend and then we'll figure out how to go from there." Tr. at 13:7-13 (Court).  Upon giving the parties one last chance to address the Court, Sandia Labs provided:

> Your Honor, I do want to make sure we're also being transparent that if the motion to amend is denied, it would be our understanding that at least many of the federal claims on the additional three plaintiffs would be outside the statute of limitations.  So when I indicated that we weren't filing a motion to dismiss on the federal claims that was based on this.  I don't want to say that that would be our position for a third amended complaint.

Tr. at 13:15-24 (Poore).  Benavidez then took the opportunity to reiterate that the statutory deadline Sandia Labs mentioned was one of the motivating factors in filing the Motion for Leave to Substitute Second Amended Complaint as it did, and when it did.  See Tr. at 14:1-9 (Girard). The Court then denied the Motion for Leave to Substitute Second Amended Complaint "as to the way it's filed."  Tr. at 14:10-11 (Court).

### 8.    **The Motion to Withdraw and Amend.**

Before the Court had the opportunity to formally deny the Motion for Leave to Substitute Second Amended Complaint with a Memorandum Opinion and Order, Benavidez filed the Motion to Withdraw and Amend on August 31, 2016.  See Motion to Withdraw and Amend at 1. The Scheduling Order had been vacated on June 10, 2016.  See Order Granting Plaintiff's

- 20 -

Unopposed Motion to Vacate the Scheduling Order and Reset Deadlines and Trial Date at a New Scheduling Conference, filed June 10, 2016 (Doc. 62).  In the Motion to Withdraw and Amend, Benavidez essentially seeks to amend the Proposed Second Amended Complaint, because she recognizes that the Proposed Second Amended Complaint makes claims that the Court dismissed in the Preemption MOO, and that the Court was thus inclined to deny the Motion for Leave to Substitute Second Amended Complaint.  Benavidez relies on rule 15(a) of the Federal Rules of Civil Procedure, and requests that the Court permit her to file the Second Amended Complaint for Damages for Violation of Title I and IV of the American with Disabilities Act of 1964, Retaliation and the Equal Pay Act of 1963, filed August 31, 2016 (Doc. 71-1)("Proposed Third Amended Complaint").  See Motion to Withdraw and Amend at 1-4.  The Proposed Third Amended Complaint amends the Proposed Second Amended Complaint by eliminating state law claims in accordance with the Court's Preemption MOO.  See Motion to Withdraw and Amend at 1-2.  The Proposed Third Amended Complaint thus relates to Plaintiffs Benavidez, Baca, Luna-Casias, and Ortiz, and claims: "Count I: Discrimination on the Basis of Serious Medical Condition in Violation of Title I of the American Disability Act," Proposed Third Amended Complaint ¶¶ 127-38, at 16-17; "Count II: Discrimination on the Basis of Sex in Violation of the Civil Rights Act Against Defendant Sandia Corporation," Proposed Third Amended Complaint ¶¶ 139-53, at 17-19; "Count III[:] Retaliation Against Defendant Sandia Corporation," Proposed Third Amended Complaint ¶¶ 154-63, at 19-20; "Count IV: Violation of the Age Discrimination in Employment Act," Proposed Third Amended Complaint ¶¶ 164-74; and "Count VI: The Equal Pay Act of 1963," Proposed Third Amended Complaint ¶¶ 189-93, at 21-22.

      **9.**     **The Response.**

Sandia Labs responded to the Motion to Withdraw and Amend with the Defendant's

Response to Plaintiff's Motion to Withdraw Prior Motion to Amend and Substituted Motion to Amend Complaint, filed September 23, 2016 (Doc. 76)("Response").   The Response largely reiterates the arguments that Sandia Labs made in the Motion for Leave to Substitute Second Amended Complaint Response, and further argues that "the most recent motion to amend has been denied, so there is nothing to withdraw, and further amendment is untimely, dilatory, and futile.  Plaintiff Benavidez, Ms. Baca, Ms. Luna-Casias, and Ms. Ortiz all fail to state prima facie Equal Pay Act Claims, and the remainder of the causes of action that Ms. Baca, Ms. Luna-Casias, and Ms. Ortiz want to bring are time barred."   Response at 1.   The Response thus explains that the "amendment deadline for Plaintiff in the Scheduling Order expired on April 30, 2016. . . .   The Scheduling Order was ultimately vacated, but not until June 10, 2016."  Response at 2.  Then after a recap of the procedural history of the case, the Response asserts -- with respect to the Proposed Third Amended Complaint -- that "using ordinal counting, it marks the fifth attempt by Ms. Benavidez and the third attempt by the three putative plaintiffs at articulating a complaint."  Response at 5 (emphasis omitted).

The Response then argues that the Court should not allow Benavidez to withdraw the Motion for Leave to Substitute Second Amended Complaint, because "escaping an adverse ruling is not a legitimate basis for withdrawing a motion."  Response at 5-6 (citing Selman v. Delta Airlines, 2008 WL 6022017 (D.N.M. 2008)(Browning, J.)("Selman").   The Response provides that, in that case:

> Rather than suffer an adverse ruling on the law at the start of the case, the movant preferred to just withdraw its motion.  Finding that to be a reason that did not justify withdrawal, the Court further noted that it had already invested substantial effort and time in addressing the issues in the underlying motion and that it had an extensive draft opinion started.  It was apparent that the legal questions in the motion would need to be resolved eventually in the case anyway, and so the Court in Selman denied leave to withdraw.

Response at 6.  Accordingly, the Response contends that the facts of this case are similar, and counsel in favor of denying the Motion for Leave to Substitute Second Amended Complaint under Selman.  See Response at 6.

The Response further argues that the "[t]he Motion to Withdraw should also be denied for the additional reason that it is moot and untimely."  Response at 6-7 (citing Estate of Gonzales v. AAA Life Ins. Co., 2012 WL 1684599 (D.N.M. 2012)(Browning J.)("Gonzales"); United States v. Thomas, No. CR 03-0569 JB, Memorandum Opinion and Order at 19, filed July 8, 2004 (Doc. 242)("Thomas")).  The Response thus explains that:

> In Gonzales, the motion to strike was denied as moot, and in Thomas the motion to join was denied as untimely.  Those concepts apply with full force here.  Like an employee who says she quits after she has already been fired, Plaintiff's Motion to Withdraw is moot and late.  The motion she seeks to withdraw has already been denied.  Accordingly, for the foregoing reasons alone, the Motion to Withdraw should be denied and the case dismissed with prejudice.

Response at 6-7.

Next turning to the "amend" component of the Motion to Withdraw and Amend, the Response argues the Court should deny amendment, because "Plaintiff is late, she unduly delayed, and she was dilatory in seeking amendment."  Response at 8.  Such is true, the Response argues, because the amendment deadline had expired, the Second Proposed Amended Complaint retained the deficiencies resulting in the Court's dismissal of the First Amended Complaint in the Preemption MOO, this is the fifth attempt at some type of amendment of her complaint, and Benavidez' "choice to forgo both a tolling agreement and the option to file separate lawsuits while they still had time to do so."  Response at 8-9.  Additionally, the Response argues that "amending to add an Equal Pay Act Count is futile because Plaintiffs do not have a prima facie case."  Response at 9.  According to the Response, "[t]he Equal Pay Act,

29 U.S.C § 10 206(d)(1) ("EPA")[,] prohibits employers from 'paying wages to employees . . . at a rate less than the rate which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions' unless enumerated exceptions apply."  Response at 9-10.  In this case, the Response argues, Benavidez does "not even allege that they were paid less than men performing substantially equal work," Response at 10, and thus "Plaintiffs cannot establish a prima facie case of discrimination under the EPA," Response at 11.

Last, the Response argues that amending the First Amended Complaint to add the additional three Plaintiffs is futile, because "most of their counts are time barred."  Response at 11.  The Response explains:

> The [Proposed Third Amended Complaint] would add three new plaintiffs to the case by amendment, with causes of action under Title VII, the Americans With Disabilities Act, the Age Discrimination in Employment Act, and the New Mexico Human Rights Act, but . . . the limitations periods under those federal statutes expired in late February 2016 and for the Human Rights Act, the limitations period expired in late April 2016.  Giving Plaintiffs the benefit of the doubt and assuming that an amended complaint is deemed filed for statute of limitations purposes when the motion to amend is filed rather than when it might be granted, Koch v. Shell Oil, 8 F. Supp. 2d 1264, 1268 (D. Kan. 1998), the filing date would be August 31, 2016, the date of the Motion to Withdraw [and Amend] (Doc. No. 71) with its attached [Proposed Third Amended Complaint].  This would still leave the state claims tardy by about four months and federal claims by about six.

Response at 11-12.  Further, while "Sandia recognizes that Rule of Civil Procedure 15 allows for certain amendments to relate back to the original pleading," Sandia Labs argues that is not the case here, because

> Although that rule expressly applies to adding new defendants ("the amendment changes the party or the naming of the party against whom a claim is asserted"), the drafters contemplated its use in adding new plaintiffs as well. . . . Accordingly, courts do not dismiss out of hand proposed amendments adding plaintiffs.  Instead, they apply the same standard that would be used to add new

defendants.   One key part of that standard -- mistake concerning the proper party's identity, Rule 15(c)(1)(C)(ii) -- is absent from this case.

Response at 12.  The Response thus argues that, for the proposed additional Plaintiffs, there should not be relation back of the statute of limitations to the time the First Amended Complaint was filed.  See Response at 12-15.  The Response thus concludes by stating that "[e]nough is enough."  Response at 15.

**10.   The Reply.**

Benavidez replied to the Response with her Reply in Support of Plaintiff's Motion to Withdraw Prior Motion to Amend and Substituted Motion to Amend Complaint, filed September 28, 2016 (Doc. 79)("Reply").  The Reply begins by recapping the procedural history, specifically highlighting that Benavidez had initially pursued this lawsuit in state court pro se, that Benavidez had made sure all parties and the Court were aware of the additional Plaintiffs and their impending exhaustion of administrative remedies, and that, "[u]ntil this Response, Defendant has not objected substantively to Plaintiff's proposed amendments or the addition of the three other plaintiffs.   In their Response to this Motion, Defendants have attached evidence to attack Plaintiff's Equal Pay Act Claim, which was proposed originally in February.   Otherwise, Defendant's objections have been procedural."   Reply at 1-5.   The Reply then turns to its argument in favor of the Motion to Withdraw and Amend as that motion pertains to the withdrawal, arguing that, "[p]ursuant to Local Rule 7.7, Plaintiff may withdraw a document from consideration by the Court by filing and serving a notice of withdrawal, which identifies the document to be withdrawn and with the consent of the parties or the Court."   Reply at 5.   The Reply then cites to Selman, as did the Response, explaining that, in Selman, the Court

> denied the motion to withdraw, considering the reasons for the plaintiff's request to withdraw (to avoid an adverse ruling), the need to decide the motion at a future

date, the parties' need for an answer to the legal questions, and the effort the Court had expended in reviewing and working on the motion.

Reply at 5.  Here, the Reply argues, the Court has not "entered an order" on the Motion for Leave to Substitute Second Amended Complaint, and thus "requests this Court to permit Plaintiff to notice withdrawal of her previous pleadings related to the motion to amend and substitute with the current briefing on the issue."  Reply at 7.  Contrasting this case with Selman, the Reply contends that Benavidez is not seeking to avoid an adverse ruling, and instead

> requests withdrawal in order to (1) conform to the Court's professed preference that the proposed amended complaint exclude the state law claims that were the subject of the June orders and (2) to maintain the pendency of briefing on amendment that was begun in February 2016.  Withdrawal would not prejudice Defendant -- Plaintiff has eliminated the state law claims.  Plaintiff acted as quickly as possible after the Aug. 25, 2016 hearing to circulate and file a motion to withdraw so as to avoid the Court investing time and effort in a ruling on the pending motion to amend.

Reply at 7.

Turning next to the Motion to Withdraw and Amend's request to amend the Second Proposed Amended Complaint, the Reply argues that rule 15(a)

> permits amendment with leave of court and the court should freely give leave when justice so requires.  Generally, refusal of leave to amend is only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.

Reply at 6 (internal quotation marks and citation omitted).  The Reply then argues that the amendment should relate back to the date of the original pleading,

> because Plaintiff moved to amend the complaint to add the other plaintiffs, rather than file a separate lawsuit, because the Court and Defendant expressed a preference for that course.  During the pendency of the motion to amend, until now, Defendant has not argued that the motion to amend did not toll the time to file.  The matter was discussed in January, May, July, and August, and Defendant did not raise the issue.  Plaintiff relied on Defendant's acquiescence to the

amendment procedure in late January 2016, at a time when the other proposed plaintiffs could overcome an objection by filing separate lawsuits.

Reply at 7. Alternatively, the Reply argues, the "limitation period tolled at the filing of the motion to amend on Feb. 10, 2016." Reply at 7. Accordingly, the Reply contends that the "Plaintiff's motion to amend tolled the time to file and if Plaintiff is permitted to file the proposed amended complaint, Plaintiff's claims in the proposed complaint relate back to the original complaint under Rule 15(c)(1)(B), because Plaintiff's claims arise from the same facts as the original complaint." Reply at 7. The Reply concludes by stating that the "Plaintiff and the other proposed plaintiffs have not sat on their rights, but have actively pursued amendment and preservation of claims. Plaintiff asks that the Court view the history of proceedings," and grant the Motion to Withdraw and Amend. Reply at 10.

### 11.   <u>The Hearing</u>.

The Court held a hearing for the Motion to Withdraw and Amend on September 29, 2016. <u>See</u> Transcript of Hearing, taken September 29, 2016 ("September Tr."). The Court began the hearing by giving the parties its inclination:

> I'm inclined to grant the plaintiff's motion to withdraw the prior motion to amend. I orally denied it, but I'm going to have to [put] an opinion together, and it's going to be difficult for the Court to you know go back and try to indicate exactly what it would allow [and] what it wouldn't allow. It seems to me that there is close to agreement that the plaintiffs have pulled out most of the state law claims that the Court dismissed earlier. I know there are some disputes and we'll get to those in a moment. But I think just from a Court standpoint it's going to be a whole lot easier for the Court to deal with the substituted motion to amend complaint than try to deal with the prior motion to amend. I think I know the defendants would like an opinion on it, but it just doesn't seem to me to make sense for me to go do that work if plaintiffs haven't ask[ed] me to do it. And I think the record is clear. So I think as far as preserving the defendant's arguments about multiple motions and things, that's all clear. So I'm inclined to grant that. I tend to allow plaintiffs to be masters of their pleadings. If they don't want the Court to decide that motion, really parties in general, if they don't want the Court to decide the motion unless there is good reason. In the case that, where I did

refuse to allow a motion to withdraw in that case I was going to have to reach the issue anyway so it was one of those things where it wasn't going to save the Court any work and the Court was going to have to reach those issues and the parties were going to have to deal with them sometime.  We'd already gotten to that point, I didn't think it made sense to allow the plaintiffs to withdraw their motion, but in this case with so much work ahead, I'm inclined to do it.  As far as the substituted motion to amend the complaint you know I'm always reluctant to allow or to have claims go by the way side on things other than the merits.  So I probably will try my best where I do have discretion to allow the plaintiffs to file this amended complaint.  I guess the question I have is you know, is it truly time barred and is there, do I have any discretion here?  Is this something where it would be futile?  So I probably will treat the substituted motion to amend largely as a motion to dismiss and use you know pretty rigorous standards to see if there is a complaint and case left.  So those are my thoughts . . .  I need to probably get that motion to amend, the plaintiffs wanting to withdraw has been on my docket for a while and I probably need to get it off.  So what I'm inclined to do is grant that motion to withdraw prior motion to amend get that prior motion off my calendar and then try to turn probably not this week, but next, try to get to it in October, get you an opinion out on whether we're going to h[ear] the substituted motion to amend the complaint and whether we've still got a case here or not.  But those are my thoughts.

September Tr. at 2:1-4:9 (Court).  At this point, Benavidez indicated that her only hesitation with

the Court's inclination was whether bifurcating the Motion to Withdraw and Amend in such a

manner would create "a time lapse between the two of them.  The hope was that the substituted

motion to amend was sort of simultaneously filed to maintain that pending motion to amend

from February."  September Tr. at 4:16-23 (Wray).  Essentially, Benavidez argued that the

analysis for the tolling of the statutory limitation date differs between Benavidez and the

proposed additional Plaintiffs -- for Benavidez, she asks "the Court to relate back the new

complaint under 15(a)(1)(b) [because] it arises out of the same causes of action," and for the new

Plaintiffs, Benavidez is "not asking the Court to relate their motion back to the original filing,"

but instead argues that either "the 90-day period [after exhaustion of administrative remedies]

was waived, it was tolled and time actually still remains, or equitable tolling can apply to permit

filing of the substituted amended complaint."  September Tr. at 7:2-8:9 (Wray).  The Court then

inquired why, with the potential limitations, Benavidez did not file separate complaints, to which

Benavidez replied that, "[a]t the January hearing, we got a sort of consensus that everybody

preferred for it to happen together. . . .   If we filed new complaints even then the 90-day period

had expired and we would have to be standing in front of somebody making these arguments

. . . ."  September Tr. at 8:14-24 (Wray).  Benavidez then argued that the claims should not be

time barred, because "all the arguments are intertwined . . . and, as defendant noted in their

briefing on this issue, defendant had indicated no opposition to tolling this period."  September

Tr. at 9:3-25 (Wray).

> Sandia Labs then took up argument and argued that
>
> a motion to amend that is not granted doesn't have relation back ability. . . .
> [Y]ou can't toll a statute with a motion to amend that isn't granted and . . . that's
> what we have here.   And so what we're left with is three plaintiffs who are
> untimely and are trying to [ride the coat] tails of one plaintiff.

September Tr. at 10:13-25 (Viets).  Sandia Labs further disagreed that the parties had agreed to

toll the limitations period, because while they had originally "floated" the idea to Benavidez,

"they made a conscience decision not to engage in discussions about a tolling agreement.  [And

t]hey made a conscious decision not to file separate lawsuits."  September Tr. at 11:1-19 (Viets).

Sandia Labs then discussed with the Court its alternative arguments why, apart from it being

time barred, the Court should deny the Motion to Withdraw and Amend.  See September Tr. at

14:12-15 (Viets).  A couple of Sandia Labs' arguments were that the Motion to Withdraw and

Amend was delayed and dilatory, but the Court quickly indicated that it was not going to agree

with those arguments.  See September Tr. at 14:21-23 (Viets, Court).  Sandia Labs thus argued

that Benavidez' equal pay argument was futile, because the "plaintiffs have to allege and prove

that there were men who performed ["]substantially equal work["]. . . .  [A]nd there aren't any

allegations in even the latest iteration of the proposed complaint that there were men who performed substantially equal work, but were paid more."   September Tr. at 16:3-10 (Viets). Yet, after the Court pressed Sandia Labs whether there were futility arguments for the other claims in the Proposed Third Amended Complaint, Sandia Labs indicated that its only argument on those claims was that they were time barred, delayed, and dilatory.  See September Tr. at 17:18-22 (Viets).  To that point, Sandia Labs reminded the Court that: (i) the case management deadlines, although subsequently vacated, were missed; (ii) the Proposed Second Amended Complaint fails to remove state law claims; (iii) there have been a large number of amendments; and (iv) Sandia Labs has not agreed to any waiver or tolling of any statutory limitations.  See September Tr. at 17:23-19:22 (Viets).  Sandia Labs then turned, specifically, to the concept of relation back to the original First Amended Complaint, and explained that "when a plaintiff seeks to add another plaintiff to the lawsuit rule 15(c)(1)(c) . . . applies . . . and the case law under it requires that there [is] some kind of mistake in the identity of the plaintiffs."  September Tr. at 21:7-18 (Viets).  Thus, Sandia Labs argued, the three additional Plaintiffs were untimely, because the Motion for Leave to Substitute Second Amended Complaint has not been granted -- the only way that the additional Plaintiffs' claims could be timely.  September Tr. at 22:5-9 (Viets).  Sandia Labs, in conclusion, pointed the Court to remaining references to state law claims in the Proposed Third Amended Complaint.  See September Tr. at 23:2-20 (Viets).

Benavidez then responded, initially ensuring that all parties and the Court knew that she had intended to remove all state law claims, and that the references remaining were not claims. See September Tr. at 24:3-18 (Wray).  Benavidez further explained that the additional Plaintiffs were not sitting on their rights and that instead their strategy simply was to ensure that the Court "only has to look at one thing in front of it."  September Tr. at 25:1-11 (Wray).  Benavidez then

reminded the Court that, in this case, when the Plaintiffs filed the Motion for Leave to Substitute Second Amended Complaint, their statutory limitation period had not lapsed.  See September Tr. at 26:11-17 (Wray).  Last, Benavidez insisted that Sandia Labs' offer -- in a footnote -- to toll the limitations period for the claims of the three additional Plaintiffs, was not ignored and that Sandia Labs did not renew their offer in the hearing on the issue.  See September Tr. at 27:1-7 (Wray).  According to Benavidez, the offer to toll the limitations is irrelevant, because the parties agreed to handle the issue by instead amending the First Amended Complaint.  See September Tr. at 27:15-28:7 (Wray).   Regarding the alleged futility of the Proposed Third Amended Complaint's equal-pay argument, Benavidez argued that the claim was well pleaded and that the issue would be developed in discovery.  See September Tr. at 28:14-29:6 (Wray).  In conclusion, Benavidez indicated that she is content with the Court's suggestion that it bifurcate the Motion to Withdraw and Amend so long as, despite withdrawal, her filing of the Motion for Leave to Substitute Second Amended Complaint "tolled the 90-day period," and then while the withdrawal component of the Motion to Withdraw and Amend might have stopped the tolling -- the simultaneous amendment component of the Motion to Withdraw and Amend restarted the tolling immediately.  September Tr. at 29:17-30:3 (Wray).  The Court then took the Motion to Withdraw and Amend under advisement, indicating that it would issue an order soon after the hearing granting the Motion to Withdraw and Amend's request to withdraw the Motion for Leave to Substitute Second Amended Complaint.  See September Tr. at 30:6-31:9 (Court).

    **12.**   **The Order.**

On September 30, 2016, the Court issued an Order in which it granted in part the Motion to Withdraw Prior Motion to Amend.  The Order provided:

The Court will grant the part of the Motion to Withdraw and Amend by which

Plaintiff Linda Benavidez seeks to withdraw her prior Motion for Leave to Amend Complaint, filed February 10, 2016 (Doc. 30). The Court will take the other part of the Motion to Withdraw and Amend, by which Benavidez seeks leave to file a substituted, third amended complaint, under advisement.

Order at 1.

## LAW REGARDING MOTIONS TO AMEND

"While Rule 15 governs amendments to pleadings generally, rule 16 of the Federal Rules of Civil Procedure governs amendments to scheduling orders." Bylin v. Billings, 568 F.3d 1224, 1231 (10th Cir. 2009)(citing Fed. R. Civ. P. 16(b)). When a court has not entered a scheduling order in a particular case, rule 15 governs amendments to a plaintiff's complaint. See Fed. R. Civ. P. 15. When a scheduling order governs the case's pace, however, amending the complaint after the deadline for such amendments implicitly requires an amendment to the scheduling order, and rule 16(b)(4) governs changes to the scheduling order. See Bylin v. Billings, 568 F.3d at 1231.

Rule 15(a) of the Federal Rules of Civil Procedure provides:

**(1) Amending as a Matter of Course.** A party may amend its pleading once as a matter of course within:

    **(A)** 21 days after serving it, or

    **(B)** if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under rule 12(b), (e), or (f), whichever is earlier.

**(2) Other Amendments.** In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a)(bold and italics in original).  Further, the local rules provide that, with respect to motions to amend a pleading, "[a] proposed amendment to a pleading must accompany the motion to amend."  D.N.M.LR-Civ. 15.1.

Under rule 15(a), the court should freely grant leave to amend a pleading where justice so requires.  See In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. 571, 579-80 (D.N.M. 2010)(Browning, J.); Youell v. Russell, 2007 WL 709041, at *1-2 (D.N.M. 2007)(Browning, J.); Burleson v. ENMR-Plateau Tele. Coop., 2005 WL 3664299, at *1-2 (D.N.M. 2005)(Browning, J.).  The Supreme Court has stated that, in the absence of an apparent reason such as "undue delay, bad faith or dilatory motive . . . [,] repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.," leave to amend should be freely given.  Fomen v. Davis, 371 U.S. 178, 182 (1962).  See Curley v. Perry, 246 F.3d 1278, 1284 (10th Cir. 2001).  In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80.

A court should deny leave to amend under rule 15(a) where the proposed "amendment would be futile."  Jefferson Cnty. Sch. Dist. v. Moody's Investor's Serv., 175 F.3d 848, 859 (10th Cir. 1999).  See In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80.  An amendment is "futile" if the pleading "as amended, would be subject to dismissal."  In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80 (citing TV Commc'ns Network, Inc. v. Turner Network Television, Inc., 964 F.2d 1022, 1028 (10th Cir. 1992)).  A court may also deny leave to amend "upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, [or] failure to cure deficiencies by amendments previously allowed."  In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579 (quoting Frank v. U.S. W., Inc., 3 F.3d 1357, 1365-66 (10th Cir. 1993)).  See Youell v. Russell, 2007 WL 709041, at *2-3 (D.N.M.

2007)(Browning, J.); Lymon v. Aramark Corp., 2009 WL 1299842 (D.N.M. 2009)(Browning,

J.).  The Tenth Circuit has also noted:

> It is well settled in this circuit that untimeliness alone is a sufficient reason to
> deny leave to amend, see Woolsey v. Marion Laboratories, Inc., 934 F.2d 1452,
> 1462 (10th Cir. 1991); Las Vegas Ice & Cold Storage Co. v. Far West Bank, 893
> F.2d 1182, 1185 (10th Cir. 1990); First City Bank v. Air Capitol Aircraft Sales,
> 820 F.2d 1127, 1133 (10th Cir. 1987), especially when the party filing the motion
> has no adequate explanation for the delay, Woolsey, 934 F.2d at 1462.
> Furthermore, "[w]here the party seeking amendment knows or should have
> known of the facts upon which the proposed amendment is based but fails to
> include them in the original complaint, the motion to amend is subject to denial."
> Las Vegas Ice, 893 F.2d at 1185.

Frank v. U.S. W., Inc., 3 F.3d at 1365-66.[6]  The longer the delay, "the more likely the motion to

amend will be denied, as protracted delay, with its attendant burdens on the opponent and the

court, is itself a sufficient reason for the court to withhold permission to amend."  Minter v.

Prime Equip. Co., 451 F.3d at 1205 (citing Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st

Cir. 2004)).  Undue delay occurs where the plaintiff's amendments "make the complaint 'a

moving target.'"  Minter v. Prime Equip. Co., 451 F.3d at 1206 (quoting Viernow v. Euripides

Dev. Corp., 157 F.3d 785, 799-800 (10th Cir. 1998)).  "[P]rejudice to the opposing party need

not also be shown."  Las Vegas Ice & Cold Storage Co. v. Far W. Bank, 893 F.2d at 1185.

"Where the party seeking amendment knows or should have known of the facts upon which the

proposed amendment is based but fails to include them in the original complaint, the motion to

amend is subject to denial."  Las Vegas Ice & Cold Storage Co. v. Far W. Bank, 893 F.2d at

---

[6]The Court notes that there is older authority in the Tenth Circuit that seems to be to the
contrary.  See R.E.B., Inc. v. Ralston Purina Co., 525 F.2d 749, 751 (10th Cir. 1975)("Lateness
does not of itself justify the denial of the amendment.").  Minter v. Prime Equipment Co. seems
to clarify that the distinction is between "delay" and "undue delay."  Minter v. Prime Equipment
Co., 451 F.3d at 1205-06.  Delay is undue "when the party filing the motion has no adequate
explanation for the delay."  Minter v. Prime Equipment Co., 451 F.3d at 1206.

1185 (quoting State Distribs., Inc. v. Glenmore  Distilleries Co., 738 F.2d 405 (10th Cir. 1984)).

Along the same vein, the court will deny amendment if the party learned of the facts upon which

its proposed amendment is based and nevertheless unreasonably delayed in moving to amend its

complaint.  See Pallottino v. City of Rio Rancho, 31 F.3d 1023, 1027 (10th Cir. 1994)(noting

motion to amend filed "was not based on new evidence unavailable at the time of the original

filing").

Refusing leave to amend is generally justified only upon a showing of undue delay,

undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies

by amendments previously allowed, or futility of amendment.  See Castleglen, Inc. v. Resolution

Trust Corp., 984 F.2d 1571, 1585 (10th Cir. 1993)(citing Foman v. Davis, 371 U.S. at 182).

Again, the matter is left to the Court's discretion.  Frank v. U.S. W., Inc., 3 F.3d at 1365-66.  See

Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver, 397 F.3d 1300, 1315 (10th Cir.

2005)(quoting Frank v. U.S. West, Inc., 3 F.3d at 1365-66, and stating that resolving the issue

whether to allow a plaintiff to file a supplement to his complaint is "well within the discretion of

the district court").  "The . . . Tenth Circuit has emphasized that '[t]he purpose of [rule 15(a)] is

to provide litigants the maximum opportunity for each claim to be decided on its merits rather

than on procedural niceties.'"  B.T. ex rel. G.T. v. Santa Fe Pub. Schs., 2007 WL 1306814, at *2

(D.N.M. 2007)(Browning, J.)(quoting Minter v. Prime Equip. Co., 451 F.3d 1196, 1204 (10th

Cir. 2006)).  "Specifically, the . . . Tenth Circuit has determined that district courts should grant

leave to amend when doing so would yield a meritorious claim."  Burleson v. ENMR-Plateau

Tel. Co-op., 2005 WL 3664299 at *2 (D.N.M. 2005)(Browning, J.)(citing Curley v. Perry, 246

F.3d 1278, 1284 (10th Cir. 2001)).

## THE 90-DAY PERIOD FOR FILING SUIT UNDER TITLE VII

Title VII requires an employee alleging discrimination to exhaust his or her administrative remedies before filing an action in federal court.  See 42 U.S.C. § 2000e-5(b).  The first step is the filing of a Charge of discrimination with the EEOC "by or on behalf of a person claiming to be aggrieved, or by a member of the Commission."  42 U.S.C. § 2000e-5(b).  Upon receiving a Charge, the EEOC must provide notice of the Charge to the employer, investigate the validity of the claim, and, if the claim proves valid, attempt to remedy the discrimination through "informal methods of conference, conciliation, and persuasion."  42 U.S.C. § 2000e-5(b).  If these efforts fail and the EEOC elects not to bring a lawsuit against the employer, the employee receives notice of his or her right to sue and has ninety days to file a Title VII action.  See 42 U.S.C. § 2000e-5(f)(1).  The 90-day period for filing suit under Title VII normally begins running on the date the complainant receives actual notice of the right to sue.  See 42 U.S.C. § 2000e-5(f)(1).  See also Williams v. S. Union Gas Co., 529 F.2d 483, 487 (10th Cir. 1976).  Known as the "actual notice" rule, this rule is meant to protect a Title VII complainant from losing "the right to sue because of fortuitous circumstances or events beyond his or her control which delay receipt of the EEOC's notice."  St. Louis v. Alverno Coll., 744 F.2d 1314, 1316 (7th Cir. 1984).

## LAW REGARDING EQUITABLE TOLLING

The 90-day period for filing a Title VII lawsuit is subject to equitable tolling.  See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982).  Equitable tolling may apply where litigants could not file suit because of an extraordinary event beyond his or her control.  See Martinez v. Orr, 738 F.2d 1107, 1110 (10th Cir. 1984).  Generally, equitable tolling of a statute of limitations applies only in "rare and exceptional circumstances."  Laurson v. Leyba, 507 F.3d

1230, 1232 (10th Cir. 2007)(internal quotation marks omitted).  "Generally, equitable tolling requires a litigant to establish two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  Yang v. Archuleta, 525 F.3d 925, 928 (10th Cir. 2008)(quotations omitted).  See Ocana v. Am. Furniture Co., 2004-NMSC-018, ¶¶ 14-15,  91 P.3d 58 ("Equitable tolling typically applies in cases where a litigant was prevented from filing suit because of an extraordinary event beyond his or her control.")(citing Martinez v. Orr, 738 F.2d at 1110).  "Such extraordinary event[s] include conduct by a defendant that caused the plaintiff to refrain from filing an action during the applicable period."  Roberts v. Barreras, 484 F.3d 1236, 1241 (10th Cir. 2007)(internal quotation marks omitted).  See Gibson v. Klinger, 232 F.3d 799, 808 (10th Cir. 2000)(stating that the equitable remedy "would be appropriate, for example, when a [plaintiff] is actually innocent, when an adversary's conduct -- or other uncontrollable circumstances -- prevents a [plaintiff] from timely filing, or when a [plaintiff] actively pursues judicial remedies but files a defective pleading during the statutory period."); In re Drummond, 1997-NMCA-094, ¶ 13, 945 P.2d 457 (stating that "a party may be estopped from asserting a statute-of-limitations defense if that party's conduct has caused the plaintiff to refrain from filing an action until after the limitations period has expired.").

## LAW REGARDING THE RELATION-BACK DOCTRINE

Rule 15(c) reads:

**(1) When an Amendment Relates Back.**  An amendment to a pleading relates back to the date of the original pleading when:

    **(A)** the law that provides the applicable statute of limitations allows relation back;

    **(B)** the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out -- or attempted to be set out -- in the original pleading; or

**(C)** the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

> **(i)** received such notice of the action that it will not be prejudiced in defending on the merits; and

> **(ii)** knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c).

Rule 15(c) provides that, where an amendment would add a party, "relation back" can occur if the party to be brought in by the amendment "has received such notice of the initiation of the action that the party would not prejudice in maintaining a defense on the merits." Brown v. Uniroyal, Inc., 108 F.3d 1306, 1307 (10th Cir. 1997). Relation back is dependent upon four factors, all of which must be satisfied. Brown v. Uniroyal, Inc., 108 F.3d at 1307. The factors are as follows: (i) the basic claim must have arisen out of the conduct set forth in the original pleading; (ii) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (iii) that party must or should have known, that but for the mistake concerning identity, the action would have been brought against it; and (iv) the second and third requirement must have been fulfilled within the prescribed limitation. Brown v. Uniroyal, Inc., 108 F.3d at 1307 (citing Schiavone v. Fortune, 477 U.S. 21, 29 (1986)). "Rule 15(c), which exists to protect defendants from unfair prejudice caused by a plaintiff's tardiness in naming them, applies to pro se complaints as to any others." Pierce v. Amaranto, 276 Fed. Appx. 788, 792 (10th Cir. 2008). In Krupski v. Costa Crociere S.P.A., 560 U.S. 538 (2010), the Supreme Court held that "relation back under Rule 15(c)(1)(C) depends on what the party to be

added knew or should have known, not on the amending party's knowledge or its timeliness on

seeking to amend the pleading."   Krupski v. Costa Crociere S.P.A., 560 U.S. 553-54.   The

Supreme Court explained:

> [T]he question under Rule 15(c)(1)(C)(ii) is what the prospective defendant
> reasonably should have understood about the plaintiff's intent in filing the
> original complaint against the first defendant.  To the extent the plaintiff's post-
> filing conduct informs the prospective defendant's understanding of whether the
> plaintiff initially made a "mistake concerning the proper party's identity," a court
> may consider the conduct.  Cf. Leonard v. Parry, 219 F.3d 25, 29 (1st Cir.
> 2000)("[P]ost-filing events occasionally can shed light on the plaintiff's state of
> mind at an earlier time" and "can inform a defendant's reasonable beliefs
> concerning whether her omission from the original complaint represented a
> mistake (as opposed to a conscious choice)").  The plaintiff's postfiling conduct is
> otherwise immaterial to the question whether an amended complaint relates back.

560 U.S. 553-54.

## LAW REGARDING MODIFICATION OF SCHEDULING ORDERS

"The District Court has wide discretion in its regulation of pretrial matters."   Si-Flo, Inc.

v. SFHC, Inc., 917 F.2d 1507, 1514 (10th Cir. 1990).   Scheduling orders, however, "may be

modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).   Accord

Street v. Curry Bd. of Cty. Comm'rs, 2008 WL 2397671, at *6 (D.N.M. 2008)(Browning, J.).

The advisory committee notes to rule 16 observe:

> [T]he court may modify the schedule on a showing of good cause if it cannot
> reasonably be met despite the diligence of the party seeking the extension.  Since
> the scheduling order is entered early in the litigation, this standard seems more
> appropriate than a "manifest injustice" or "substantial hardship" test.  Otherwise,
> a fear that extensions will not be granted may encourage counsel to request the
> longest possible periods for completing pleading, joinder, and discovery.

Fed. R. Civ. P. 16(b)(4) advisory committee's note to 1983 amendment.

The Tenth Circuit has held that the concepts of good cause, excusable neglect, and

diligence are related.  "The Tenth Circuit . . . has recognized the interrelation between 'excusable

neglect' and 'good cause.'"   Pulsecard, Inc. v. Discover Card Servs. Inc., 168 F.R.D. 295, 301

(D. Kan. 1996)(Rushfelt, J.)(citing In re Kirkland, 86 F.3d 172, 175 (10th Cir. 1996)).   "Properly

construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent

efforts."   Street v. Curry Bd. of Cty. Comm'rs, 2008 WL 2397671, at *6.   See Advanced Optics

Electronics, Inc. v. Robins, 769 F. Supp. 2d 1285, 1313 (D.N.M. 2010)(Browning, J.)(noting that

the "rule 16(b) good-cause inquiry focuses on the diligence of the party seeking [to] amend the

scheduling order.").   In In re Kirkland, the Tenth Circuit dealt with the definition of "good

cause" in the context of a predecessor to modern rule 4(m) of the Federal Rules of Civil

Procedure,[7] and noted:

> [W]ithout attempting a rigid or all-encompassing definition of 'good cause,' it
> would appear to require at least as much as would be required to show excusable
> neglect, as to which simple inadvertence or mistake of counsel or ignorance of the
> rules usually does not suffice, and some showing of 'good faith on the part of the
> party seeking the enlargement and some reasonable basis for noncompliance
> within the time specified' is normally required.

86 F.3d at 175 (emphasis in original)(quoting Putnam v. Morris, 833 F.2d 903, 905 (10th Cir.

1987))(internal quotation marks omitted).   The Tenth Circuit explained that Putnam v. Morris

---

[7]Rule 4(m) provides that

If a defendant is not served within 120 days after the complaint is filed, the court
-- on motion or on its own after notice to the plaintiff -- must dismiss the action
without prejudice against that defendant or order that service be made within a
specified time.   But if the plaintiff shows good cause for the failure, the court
must extend the time for service for an appropriate period.   This subdivision (m)
does not apply to service in a foreign country under Rule 4(f) or 4(j)(1).

Fed. R. Civ. P. 4(m).   The Tenth Circuit in In re Kirkland interpreted rule 4(j), which was
substantially identical.   See 86 F.3d at 174 ("Rule 4(j) requires the court to dismiss a proceeding
if service has not been made upon the defendant within 120 days after filing and the party
responsible for service cannot show good cause why it was not made.").

"thus recognized that the two standards, although interrelated, are not identical and that 'good cause' requires a greater showing than 'excusable neglect.'"   In re Kirkland, 86 F.3d at 175.

Where a party is diligent in its discovery efforts and nevertheless cannot comply with the scheduling order, the Court has found good cause to modify the scheduling order if the requesting party timely brings forward its request.  For example, in Advanced Optics Electronics, Inc. v. Robins, the Court found that, where the defendant did not conduct discovery or make any good-faith discovery requests, and where the defendant did not make efforts "diligent or otherwise" to conduct discovery, the defendant did not, therefore, show good cause to modify the scheduling order.  769 F. Supp. 2d at 1313 n.8.  In contrast, in Street v. Curry Board Of County Commissioners, the Court found that the plaintiff had "shown good cause for a delay in seeking leave to amend," because she "was diligent in pursuing discovery . . . [and] brought to the Court's attention her identification of an additional claim in a timely manner," where she discovered the claim through "documents provided in discovery."  2008 WL 2397671, at *11. The Court arrived at a similar determination in Abraham v. WPX Production, LLC, 2016 WL 548251 (D.N.M. 2016)(Browning, J.).  There, the Court found good cause to amend a pleading when the plaintiffs had a very short amount of time to amend the pleadings, "even though discovery had only just begun."  2016 WL 548251, at *20.  "The Plaintiffs may not have obtained or reviewed all of the documents that might reveal their conspiracy claim's existence before the deadline to amend passed."  2016 WL 548251, at *20.  Furthermore, the delay was minimal and would not prejudice the defendants.  2016 WL 548251, at *20.

Overall, good cause requires diligence and a conscientious attempt to comply with the Court's scheduling order.  When parties have not done so, the Court has not found good cause. In Montoya v. Sheldon, 2012 WL 5353493 (D.N.M. 2012)(Browning, J.), the Court did not find

good cause to modify the scheduling order and reopen discovery where the plaintiffs' excuse for not disclosing their expert before the close of discovery was that they thought that the case would settle and they would thus not require expert testimony.  <u>See</u> 2012 WL 5353493, at *14.  The Court noted:

> The [plaintiffs] filed this case on April 15, 2010.  Because [Plaintiff] D. Montoya had seen the physician before that date, the fact that the [plaintiffs] are only now bringing the physician forward as a newly identified expert witness, over two years later, and over one and a half years after the deadline to disclose expert witnesses, does not evidence circumstances in which the Court can find excusable neglect nor good cause.

2012 WL 5353493, at *14.

Similarly, in <u>Scull v. Management & Training Corp.</u>, 2012 WL 1596962 (D.N.M. 2012)(Browning, J.), the Court denied a plaintiff's request for an extension of time to name an expert witness against a defendant.  The plaintiff asserted that he had waited to name an expert witness until a second defendant joined the case, but a scheduling order was in effect before the second defendant entered the case.  The Court found that the plaintiff should have known that he would need to name an expert witness against the defendant already in the case.  <u>See</u> 2012 WL 1596962, at *8.  The Court determined that the plaintiff was seeking "relief from his own disregard" for the deadline.  2012 WL 1596962, at *8.  "Despite his knowledge that [Defendant] PNA had yet to enter the case, [Plaintiff] Scull chose to allow the deadline to pass without naming expert witnesses against [Defendant] MTC."  2012 WL 1596962, at *8.  Regarding the defendant who entered the case at a later date, however, the Court allowed the plaintiff an extension of time to name an expert witness, because it "was not unreasonable for Scull to expect a new deadline to name expert witnesses upon PNA's entrance into the case because he had not yet had the opportunity to engage in discovery against PNA as he had against MTC."  2012 WL

1596962, at *9.  The Court also noted that not naming an expert witness "is a high price to pay for missing a deadline that was arguably unrealistic when it was set," as Scull could not have determined the need for an expert witness until after PNA entered the case.  2012 WL 1596962, at *9.

When serious and unforeseen events prevent a party from complying with the Court's scheduling order, however, the Court has found good cause.  In Stark-Romero v. National Railroad Passenger Co. (AMTRAK), 275 F.R.D. 544 (D.N.M. 2011)(Browning, J.), the Court found that a lawyer had shown excusable neglect when he missed a scheduling deadline because soon after his son's wedding, his father-in-law developed a tumor in his chest, the lawyer arranged his father-in-law's medical care, and, only after the lawyer returned to his work did he realize that a deadline passed.  See 275 F.R.D. 549-550.  The Court noted that the lawyer could have avoided missing the deadline had he not left his work until the last minute, just before his son's wedding, but found that the lawyer had demonstrated good faith and missed the deadline because of "life crises," and not because of his inadvertence.  275 F.R.D. 549-550.  In West v. New Mexico Taxation and Revenue Department, 2010 WL 3834341 (D.N.M. 2010)(Browning, J.), the Court allowed a plaintiff extended time to file a response to a defendant's motion for summary judgment, in part because of the difficulty the plaintiff's counsel experienced attempting to obtain depositions with certain defense witnesses, and thus it was not her fault, and in part because cross-motions on summary judgment are particularly helpful for the Court.  See 2010 WL 3834341, at *4-5.  On the other hand, in Liles v. Washington Tru Solutions, LLC, 2007 WL 2298440 (D.N.M. 2007)(Browning, J.), the Court denied a plaintiff's request for additional time to respond to a defendant's motion for summary judgment, when the only

rationale that the plaintiff provided was that his counsel's "family and medical emergencies" precluded the plaintiff from timely responding.  2007 WL 2298440, at *2.

## LAW REGARDING RULE 12(b)(6)

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994).  The sufficiency of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pled factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff."  (citing Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006))).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555)(internal quotation marks omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. at 678.  "Factual allegations must be enough to raise a right to relief above the speculative

level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (citation omitted).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted). The Tenth Circuit stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(citations omitted)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570).

Although affirmative defenses must generally be pled in the defendant's answer, not argued on a motion to dismiss, see Fed. R. Civ. P. 8(c), there are exceptions where: (i) the defendant asserts an immunity defense -- the courts handle these cases differently than other motions to dismiss, see Glover v. Gartman, 899 F. Supp. 2d 1115, 1137-39, 1141 (D.N.M.

2012)(Browning, J.)(citing Pearson v. Callahan, 555 U.S. 223 (2009); Robbins v. Oklahoma, 519 F.3d at 1242); and (ii) where the facts establishing the affirmative defense are apparent on the face of the complaint, see Miller v. Shell Oil Co., 345 F.2d 891, 893 (10th Cir. 1965)("Under Rule 12(b), a defendant may raise an affirmative defense by a motion to dismiss for the failure to state a claim.  If the defense appears plainly on the face of the complaint itself, the motion may be disposed of under this rule.").   The defense of limitations is the affirmative defense that is most likely to be established by the uncontroverted facts in the complaint.   See 5 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, A. Benjamin Spencer, Richard L. Marcus & Adam N. Steinman, Federal Practice & Procedure: Civil § 1277, at 643 (3d ed. 2016).   If the complaint sets forth dates that appear, in the first instance, to fall outside of the statutory limitations period, then the defendant may move for dismissal under rule 12(b)(6).   See Rohner v. Union Pac. R.R. Co., 225 F.2d 272, 273-75 (10th Cir. 1955); Gossard v. Gossard, 149 F.2d 111, 113 (10th Cir. 1945);  Andrew v. Schlumberger Tech. Co., 808 F. Supp. 2d 1288, 1292 (D.N.M. 2011)(Browning, J.).   The plaintiff may counter this motion with an assertion that a different statute of limitations or an equitable tolling doctrine applies to bring the suit within the statute; the Tenth Circuit has not clarified whether this assertion must be pled with supporting facts in the complaint or may be merely argued in response to the motion.   Cf. Kincheloe v. Farmer, 214 F.2d 604 (7th Cir. 1954)(holding that, once a plaintiff has pled facts in the complaint indicating that the statute of limitations is a complete or partial bar to an action, it is incumbent upon the plaintiff to plead, either in the complaint or in amendments to it, facts establishing an exception to the affirmative defense).   It appears, from case law in several circuits, that the plaintiff may avoid this problem altogether -- at least at the motion-to-dismiss stage -- by simply refraining from pleading specific or identifiable dates, see Goodman v. Praxair, Inc., 494 F.3d 458, 465-66

(4th Cir. 2007); Hollander v. Brown, 457 F.3d 688, 691 n.1 (7th Cir. 2006); Harris v. New York, 186 F.3d 243, 251 (2d Cir. 1999); Honeycutt v. Mitchell, 2008 WL 3833472 (W.D. Okla. 2008)(West, J.), and, although the Tenth Circuit has not squarely addressed this practice, the Court has permitted this practice, see Anderson Living Trust v. WPX Energy Prod., LLC, 2014 WL 2750652, at *17, *37-39 (D.N.M. 2014)(Browning, J.).

## ANALYSIS

The Court will grant in part and deny in part the Motion to Withdraw and Amend.  The Court will first allow Benavidez to withdraw the Motion for Leave to Substitute Second Amended Complaint.  The Court next concludes that leave to file the Proposed Third Amended Complaint should be freely given as to Benavidez, because the Court does not conclude that Benavidez' request results in undue delay or undue prejudice to Sandia Labs, is otherwise tainted by bad faith or dilatory motive, is entirely futile, or fails to cure deficiencies by amendments previously allowed.  Regarding futility, the Court concludes that Benavidez' claim brought under the Equal Pay Act fails to state a claim upon which relief can be granted and thus will not allow amendment as to the addition of that claim.  The Court also concludes, however, that all the claims brought by the three additional Plaintiffs would be futile, because they are time barred and because the Equal Pay Act claim fails to state a claim upon which relief can be granted.  The Court thus denies the Motion to Withdraw and Amend as to the addition of the three additional Plaintiffs' claims.

## I.   THE COURT WILL GRANT BENAVIDEZ' REQUEST TO WITHDRAW THE MOTION FOR LEAVE TO SUBSTITUTE SECOND AMENDED COMPLAINT.

The Motion to Withdraw and Amend first seeks to withdraw Benavidez' Proposed Second Amended Complaint, attached to her Motion for Leave to Substitute Second Amended

Complaint.  Benavidez argues that, "[p]ursuant to Local Rule 7.7, Plaintiff may withdraw a document from consideration by the Court by filing and serving a notice of withdrawal, which identifies the document to be withdrawn and with the consent of the parties or the Court."  Reply at 5.  Local rule 7.7 reads: "**Withdrawal of Documents.**   A party may withdraw a document from consideration by the Court by filing and serving a notice of withdrawal which specifically identifies the document being withdrawn.   Withdrawal requires consent of all other parties or approval of the Court."  D.N.M.L.R. 7.7.  Benavidez maintains that, in Selman, the Court

> denied the motion to withdraw, considering the reasons for the plaintiff's request to withdraw (to avoid an adverse ruling), the need to decide the motion at a future date, the parties' need for an answer to the legal questions, and the effort the Court had expended in reviewing and working on the motion.

Reply at 5.  Accordingly, in contrast to Selman, Benavidez contends that she is not seeking to avoid an adverse ruling, and instead

> requests withdrawal in order to (1) conform to the Court's professed preference that the proposed amended complaint exclude the state law claims that were the subject of the June orders and (2) to maintain the pendency of briefing on amendment that was begun in February 2016.  Withdrawal would not prejudice Defendant -- Plaintiff has eliminated the state law claims.  Plaintiff acted as quickly as possible after the Aug. 25, 2016 hearing to circulate and file a motion to withdraw so as to avoid the Court investing time and effort in a ruling on the pending motion to amend,

Reply at 7.  Sandia Labs alternatively argues, essentially, that Benavidez should not be able to withdraw the Motion for Leave to Substitute Second Amended Complaint, because "escaping an adverse ruling is not a legitimate basis for withdrawing a motion."   Response at 5-6 (citing Selman v. Delta Airlines, 2008 WL 6022017).

The Court is not convinced that Benavidez' request to withdraw the Motion for Leave to Substitute Second Amended Complaint is an attempt to avoid an adverse ruling, as was the case for the motion at issue in Selman.  At the hearing the Court explained that, in Selman,

> where I did refuse to allow a motion to withdraw in that case I was going to have
> to reach the issue anyway so it was one of those things where it wasn't going to
> save the Court any work and the Court was going to have to reach those issues
> and the parties were going to have to deal with them sometime. We'd already
> gotten to that point, I didn't think it made sense to allow the plaintiffs to withdraw
> their motion, but in this case with so much work ahead, I'm inclined to do it.

September Tr. 2:9-4:3 (Court). After further review of its opinion in Selman, the Court

maintains the conclusion that it made at the hearing -- permitting Benevidez' withdrawal of the

Motion for Leave to Substitute Second Amended Complaint is not allowing Benavidez to skirt

an unfavorable ruling. Although the Court acknowledges that it orally indicated at the August

25, 2016, hearing that it was denying the Motion for Leave to Substitute Second Amended

Complaint, see Tr. at 14:10-11 (Court), the Court did not issue a Memorandum Opinion and

Order to formalize that ruling before Benavidez filed her Motion to Withdraw and Amend. The

Court was certainly going to deny the motion to the extent that it was trying to add claims that it

had dismissed, but it was trying to do other things, too, such as add federal claims and parties.

The Court would have had to write an opinion about the claims it had already dismissed --

adding really nothing to anyone's edification -- and then discuss the new claims and parties.

Indeed, the Proposed Second Amended Complaint explicitly intermingles its federal claims with

the dismissed state law claims. Also, an opinion denying leave to file the Motion for Leave to

Substitute Second Amended Complaint is not otherwise going to help Benavidez and the new

Plaintiffs. The new Plaintiffs want an order dismissing the new Plaintiffs' state law claims so

they can preserve that issue for appeal. The new Plaintiffs will not get that ruling here, because

the Court is never going to let the dismissed claims back into the case. That sort of inefficiency

makes no sense. If the Court rules on the Motion for Leave to Substitute Second Amended

Complaint, all they will get is an order denying those claims coming into this case. They already

have an extensive opinion on the futility of these claims.  The Court and parties do not need

another.  Accepting that reality, Benavidez has made a procedural decision that will save the

Court a lot of work that was not going to advance the ball.  The Court, accordingly, will grant

Benavidez' Motion to Withdraw and Amend as it pertains to the withdrawal of the Motion for

Leave to Substitute Second Amended Complaint.  The Court, on August 31, 2016, did already

issue an order to that point, stating

> This Order disposes of, in part, Plaintiff's Motion to Withdraw Prior Motion to
> Amend and Substituted Motion to Amend Complaint, filed August 31, 2016 (Doc.
> 71), by granting the withdrawal of Plaintiff's Motion for Leave to Amend
> Complaint, filed February 2, 2016 (Doc. 30).  The Court will, however, at a later
> date issue a Memorandum Opinion more fully detailing its rationale for this
> decision.

Order 1 n.1.

## II.     THE COURT WILL GRANT BENAVIDEZ' REQUEST TO AMEND THE FIRST AMENDED COMPLAINT TO ADD ALL FEDERAL CLAIMS, SAVE FOR THOSE BROUGHT PURSUANT TO THE EQUAL PAY ACT.

The Motion to Withdraw and Amend seeks to substitute the Third Proposed Amended

Complaint for the First Amended Complaint.  See Motion to Withdraw and Amend at 1.  Rule

15(a)(1) regards amending a complaint, and provides that a "party may amend its pleading once

as a matter of course" in two situations: either "within: (A) 21 days after serving it, or (B) if the

pleading is one to which a responsive pleading is required, 21 days after service of a responsive

pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."

Fed. R. Civ. P. 15(a)(1).  Sandia Labs objects to the Proposed Third Amended Complaint, and

thus the Court must determine whether to grant leave to amend.  See Response at 1.

Rule 15(a)(2) provides: "In all other cases, a party may amend its pleading only with the

opposing party's written consent or the court's leave.  The court should freely give leave when

justice so requires." Fed. R. Civ. P. 15(a)(2).  Under rule 15(a), then, the court should freely grant leave to amend a pleading where justice so requires.  See In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80; Youell v. Russell, 2007 WL 709041, at *1-2; Burleson v. ENMR-Plateau Tele. Coop., 2005 WL 3664299, at *1-2.  "The . . . Tenth Circuit has emphasized that '[t]he purpose of [rule 15(a) is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'"  B.T. ex rel. G.T. v. Santa Fe Pub. Schs., 2007 WL 1306814, at *2 (quoting Minter v. Prime Equip. Co., 451 F.3d at 1204).  The Supreme Court has stated that, in the absence of an apparent reason such as "undue delay, bad faith or dilatory motive . . . [,] repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.," leave to amend should be freely given.  Fomen v. Davis, 371 U.S. at 182. Whether to grant such leave "is within the discretion of the trial court."  Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971).  Accord First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc., 820 F.2d 1127, 1132 (10th Cir. 1987).

Sandia Labs argues that "further amendment is untimely, dilatory, and futile.  Plaintiff Benavidez, Ms. Baca, Ms. Luna-Casias, and Ms. Ortiz all fail to state prima facie Equal Pay Act Claims, and the remainder of the causes of action that Ms. Baca, Ms. Luna-Casias, and Ms. Ortiz want to bring are time barred."  Response at 1.  Thus, of those aforementioned reasons to deny amendment, Sandia Labs, specifically as it pertains to Benavidez, points to Benavidez' "failure to cure deficiencies by amendments previously allowed" and the futility of the four Plaintiffs' claims under the Equal Pay Act alleged in the Proposed Third Amended Complaint.  Fomen v. Davis, 371 U.S. at 182.  See Response at 1.  Additionally, Sandia Labs argues that -- for the three proposed Plaintiffs -- an amendment to the First Amended Complaint will not relate back to the

time that Benavidez filed the First Amended Complaint and that, thus, for those Plaintiffs, amendment is futile, because they have missed the statutory limitation on their EEOC right-to-sue letters under Title VII.  See Response at 1.  The Court will address that issue regarding the proposed Plaintiffs in the next section.

The Court will grant in part the Motion to Withdraw and Amend as it pertains to Benavidez.  Despite Sandia Labs' argument that the conduct of Benavidez in pursuing the Motion to Withdraw and Amend is not tainted by dilatory motive or bad faith, the Court instead concludes that Benavidez' trial strategy thus far does not rise to such a level.  As Benavidez explained at the September hearing, the Motion to Withdraw and Amend was a reflection of her understanding that the Proposed Second Amended Complaint did not adequately remove the state-law claims -- claims that the Court dismissed in its Preemption MOO -- from the Court's consideration.  See September Tr. at 24:3-18 (Wray).  Accordingly, Benavidez, in response to the Court's admonition -- and, ostensibly upon the Court's delay in issuing a Memorandum Opinion and Order formally denying the Motion for Leave to Substitute Second Amended Complaint -- filed her Motion to Withdraw and Amend.  See Motion to Withdraw and Amend at 1.  The Motion to Withdraw and Amend, and the Proposed Third Amended Complaint, appropriately remove the state law claims that the Court dismissed in the Preemption MOO, leaving only certain few references to the state law claims for mere factual reference.  See Proposed Third Amended Complaint, passim.  "The . . . Tenth Circuit has emphasized that '[t]he purpose of [rule 15(a)] is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'"  B.T. ex rel. G.T. v. Santa Fe Pub. Schs., 2007 WL 1306814, at *2 (quoting Minter v. Prime Equip. Co., 451 F.3d at 1204).  The Court concludes that, while it would have approached the process of amending the First

Amended Complaint to remove the state-law claims in a different manner, primarily by not first filing a Proposed Second Amended Complaint that failed to remove such claims, the nature of Benavidez' choice is not a reflection of her dilatory motive.  The Court, further, has not done any substantial work on the federal claims Benavidez raises in the Proposed Third Amended Complaint, thus distinguishing this case from those where the Court has, in its discretion, denied leave to amend.  See Vondrak v. City of Las Cruces, 2009 WL 1300946, at *5-6 (denying leave to amend for undue delay where original complaint was filed four years before proposed amendment).  The Court thus grants leave to amend the First Amended Complaint so that Benavidez may add her federal claims under Title VII, the ADA, and the ADEA (Proposed Third Amended Complaint Counts I-IV).

Benavidez also seeks leave to amend the First Amended Complaint to add a claim under the Equal Pay Act.  See Proposed Amended Complaint ¶¶ 189-93, at 21-22.  As Sandia Labs argues, however, Benavidez fails to state a claim under the Equal Pay Act, which

> prohibits employers from paying wages to employees . . . at a rate less than the rate which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions unless enumerated exceptions apply.

Response at 9-10 (citing 29 U.S.C § 206(d)(1) (internal quotation marks omitted)).  Sandia Labs argued at the hearing that Benavidez' equal pay argument is futile, because the "plaintiffs have to allege and prove that there were men who performed [']substantially equal work[']. . . .  [A]nd there aren't any allegations in even the latest iteration of the proposed complaint that there were men who performed substantially equal work, but were paid more."  September Tr. at 16:3-10 (Viets).  In response, Benavidez argued that the Equal Pay Act claim is well pleaded and that the

issue would be developed in discovery.  See September Tr. at 28:14-29:6 (Wray).  The Court has

reviewed the Proposed Third Amended Complaint and notes that it alleges:

> 189.    Plaintiffs hereby incorporate all other allegations in this Complaint as if
> fully set forth herein.
>
> 190.    Plaintiffs were moved into lower pay scales than similarly situated men
> when Sandia Corporation forced both men and women to move positions.
>
> 191.    Their union grieved the pay scale downgrades, therefore Sandia
> Corporation restored their pay scales but froze their pay scale so that Plaintiffs
> could never receive a raise again.
>
> 192.    Similarly situated men who were moved did not have their pay scales
> downgraded or frozen.
>
> 193.    Plaintiffs are entitled to back pay as well as additional statutory damages
> as provided therein for the undertaking the same or substantially similar position,
> duties, and responsibilities as a co-worker of the opposite sex while receiving less
> compensation.

Proposed Third Amended Complaint ¶¶ 189-93, at 21-22.  To the Court, it appears that the

Motion to Withdraw and Amend purports to allege that similarly situated men and women were

moved into lower payscales, and that, after a successful union grievance, the payscales were

restored, but that Sandia Labs then froze the restored payscale for only Benavidez and for the

proposed Plaintiffs, resulting in them being paid less than men performing substantially equal

work.  See Proposed Third Amended Complaint ¶¶ 189-93, at 21-22.  Benavidez, however, only

tells part of the story -- the allegations speak only to payscales and do not allege that the men

without frozen payscales were performing substantially equal work.  See Proposed Third

Amended Complaint ¶¶ 189-93, at 21-22.  Indeed, as Sandia Labs explains:

> Ms. Benavidez and Ms. Baca were placed in Grade 7 Worker (Maintenance
> Support Technician) positions.  Ms. Ortiz was placed in a Grade 6 Gardener
> position.  Ms. Luna-Casias was placed in a Grade 6 Truck Driver (Heavy)
> position.   Like Plaintiffs, two male employees also failed to enter the
> apprenticeship program and were placed in new positions effective July 11, 2014.

- 54 -

> Because these employees had more seniority than Plaintiffs, they were placed in vacant Grade 8 positions: George Cordova into a Grade 8 Special Material Handler position, and Robert Hill into a Grade 8 Service Work (Fire Extinguisher) position.  Plaintiffs do not and cannot allege that they were performing the same work as Mr. Cordova or Mr. Hill, and the allegation that Plaintiffs were placed into different, lower-paid positions does not state a prima facie case under the [Equal Pay Act].

Response at 9-11 (citing Workforce Reduction Notifications at 1-6, filed September 23, 2016 (Doc. 76-1)(internal citations omitted).  Further, as Sandia Labs explains, Benavidez and the potential Plaintiffs' payscales were restored -- as the Proposed Third Amended Complaint alleges -- meaning they were being paid at a Grade 8 payscale, but for jobs classified as Grade 6 and 7.  See Response at 10-11.

In addressing whether Benavidez states a claim under the Equal Pay Act, the Court relies on the maxim that, to survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face.  See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556).  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted).  The Tenth Circuit stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the

line from conceivable to plausible."   The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(citations omitted)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570).

Even when taking them as true, the Court concludes that Benavidez' Equal Pay Act allegations, as Sandia Labs argues, fall short of satisfactorily alleging that men performing substantially similar work were paid more than the women bringing this lawsuit.  Indeed, the allegations speak only to payscales, and neglect to demonstrate facts from which a reasonable inference might be drawn that men at Sandia Labs were performing substantially similar work and were being paid at a higher rate -- in fact, as Sandia Labs suggests, Benavidez and the potential Plaintiffs were being paid at a higher payscale in comparison to the jobs they maintained.  At best, the facts support an innocent explanation for the pay difference as much as an insidious reason; they are in equipoise.  They have to nudge it in favor of the violation.  The Proposed Third Amended Complaint does not do that.  The Court, accordingly, will grant in part the Motion to Withdraw and Amend as it pertains to Benavidez, denying leave to amend only as it pertains to her Equal Pay Act claim, because Benavidez has failed to state such a claim as alleged in the Proposed Third Amended Complaint, rendering it futile.  Cf. Vondrak v. City of Las Cruces, 2009 WL 1300946, at *6 (explaining that where a plaintiff fails to state a claim on the matter he or she wishes to add to the complaint -- in that case, that an arrest was not supported by probable cause -- that amendment would be futile).

III.  **WITH RESPECT TO THE PROPOSED THREE ADDITIONAL PLAINTIFFS, THE DATE OF THE PROPOSED THIRD AMENDED COMPLAINT WILL NOT RELATE BACK TO THE DATE OF THE FILING OF THE FIRST AMENDED COMPLAINT, RENDERING AMENDMENT ADDING THEM AS PLAINTIFFS <u>FUTILE</u>.**

At the outset, given the Court's analysis in the above section, the Court will not grant leave as to the potential Plaintiffs to amend the First Amended Complaint and to add an Equal Pay Act claim.  Such a claim would be futile, as the allegations in the Proposed Third Amended Complaint fail to state a claim upon which relief might be granted.  Turning, then, to the addition of the potential Plaintiffs generally, the Court further concludes that amendment adding them to the lawsuit would be futile, because their claims are time barred.  The Court understands that Benavidez and her attorneys were in a position where they considered the claims of the three proposed Plaintiffs as being related to Benavidez' claims, and as arising from the same circumstances at Sandia Labs, and that Sandia Labs on numerous occasions indicated that they would prefer to defend one lawsuit, as opposed to four separate lawsuits.  Indeed, Sandia Labs offered to toll the statute of limitations appurtenant to the potential Plaintiffs' federal claims -- yet, Benavidez and her attorneys did not engage in any relevant colloquoy with Sandia Labs on this point or assent to that offer to toll in some other manner.  Instead, Benavidez chose to try to amend her First Amended Complaint to include the three proposed Plaintiffs as parties to the Proposed Second Amended Complaint.  The Court would not have pursued such a strategy; Benavidez and the proposed Plaintiffs were more intent on preserving the record for appeal with respect to the state law claims than they were in timely filing the proposed Plaintiffs' claims. The proposed Plaintiffs ought have recognized, or at least considered, that the Court was going to dismiss Benavidez' First Amended Complaint in its entirety, the only complaint before the Court -- particularly after receiving the Court's inclination at the January hearing.  Thus, the

potential Plaintiffs' decision to pursue their claims against Sandia Labs in this case by simply

waiting for Benavidez' receipt of leave to amend the First Amended Complaint to add them as

parties was a risky strategy given that the clock was ticking.  The Court gave Benavidez and the

proposed Plaintiffs the power to be the masters of their own lawsuit -- indeed, the Court

specifically instructed Benavidez to "make your own decision whether you want to file separate

cases" given the proposed addition of new Plaintiffs, and

> if you need to file separate cases, you can.  If I get the opinions out and you want
> to bring it back here, [we can] pick this up, I'll just hold this [Proposed Second
> Amended Complaint] for the time being, I won't rule on it, and then you can
> make a decision.  You'll just have to be the judge of your own time.

May Tr. at 6:7-16 (Court).  The prudent thing to do would have been to file a separate lawsuit to

beat the statute of limitations and then seek to consolidate if they wanted to litigate all of the

cases together.  Because Benavidez' case was first filed, and has the lowest number, the tradition

and custom in this district is to consolidate within that lowest number.  It took the Court some

time to issue the Preemption MOO, because it had not done a lot of work in the two main areas

at issue -- LMRA preemption and federal enclave jurisdiction -- and had not extensively written

on these, in this context, before.  Also, the parties argued the federal enclave issue at the hearing,

but had not extensively briefed that jurisdictional issue, which was new to the Court.  The Court

thus had to do a lot of that research on its own.  The proposed Plaintiffs had, however, the

opportunity to file separate cases before the statutory period had lapsed -- although, the Court is

aware that its admonition in May would potentially not have fixed the problem, as the statutory

period had indeed already lapsed at that time.  The Court notes, however, that, in May, the

Motion for Leave to Substitute Second Amended Complaint had not yet been withdrawn -- that

is, there may have been an argument that the statutory period had been tolled by the filing of the

state-law-claim-riddled Proposed Second Amended Complaint which the Court had indicated it would deny, at least in part, at the August hearing.  The decision not to file separate cases -- or to enter into a tolling agreement with Sandia Labs -- before the statutory period's lapse, now manifesting itself as a risky decision, has become the operative error rendering the proposed Plaintiffs' claims futile.

Given that Benavidez has now withdrawn the Motion for Leave to Substitute Second Amended Complaint, the proposed Plaintiffs' only chance at successfully getting a complaint before the Court which is not deficient on account of the lapse of the statutory period would be if the Proposed Third Amended Complaint relates back to a time before the lapse.  The Court, however, can see no sound way in which the Proposed Third Amended Complaint might somehow relate back to the timing of the First Amended Complaint -- in which the three additional Plaintiffs were not named -- or even the timing of the withdrawn Proposed Second Amended Complaint, which the Court notes would satisfy the statutory requirement.[8]  The Court's analysis of this issue is as follows.

Rule 15(c) reads:

**(1) When an Amendment Relates Back.**  An amendment to a pleading relates back to the date of the original pleading when:

    **(A)** the law that provides the applicable statute of limitations allows relation back;

---

[8]The limitations period for the federal claims brought by the proposed Plaintiffs expired in late February, 2016.  See Response at 3-4.  The limitations period at issue in this case is a 90-day deadline to file suit after receipt of a right-to-sue letter from the EEOC, and that period covers all of Benavidez' and the proposed Plaintiffs' federal claims -- save for the Equal Pay Act.  See 42 U.S.C. § 2000e-5(f)(1)(providing limitation period under Title VII); 42 U.S.C. § 12117(a) (providing limitation period for the ADA, specifically adopting Title VII's deadlines); 29 U.S.C. 626(e)(providing limitation period for ADEA).  Baca received her right-to-sue letter on November 30, 2015; Luna-Casias received hers on November 30, 2015; and Ortiz received hers on November 30, 2015.  See Proposed Amended Third Complaint ¶¶ 9-18, at 2-3.

**(B)** the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out -- or attempted to be set out -- in the original pleading; or[9]

**(C)** the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

> **(i)** received such notice of the action that it will not be prejudiced in defending on the merits; and

> **(ii)** knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c).

Rule 15(c) provides that, where an amendment would add a party, "relation back" can occur if the party to be brought in by the amendment "has received such notice of the initiation of the action that the party would not prejudice in maintaining a defense on the merits." Brown v. Uniroyal, Inc., 108 F.3d at 1307. Relation back is dependent upon four factors, all of which must be satisfied. See Brown v. Uniroyal, Inc., 108 F.3d at 1307. The express factors are as follows: (i) the basic claim must have arisen out of the conduct set forth in the original pleading; (ii) the party to be added must have received such notice that it will not be prejudiced in maintaining its defense; (iii) that party must or should have known that, but for the mistake concerning identity, the action would have been brought against it; and (iv) the second and third requirement must have been fulfilled within the prescribed limitation. See Brown v. Uniroyal, Inc., 108 F.3d at 1307 (citing Schiavone v. Fortune, 477 U.S. 21, 29 (1986)). Of course, in

---

[9]Rule 15(c)(1)(B) is why Benavidez' claims relate back to the filing date of her First Amended Complaint, which, as no parties dispute, was timely.

particular, rule 15(c)(1)(C)(i)-(ii)'s plain language[10] purports to regard only the addition of new

<u>defendants</u> by amendment.   As well, the instructions from the Tenth Circuit in <u>Brown v.</u>

<u>Uniroyal, Inc.</u> do not stray from rule 15(c)(1)(C)(i)-(ii)'s express application to the addition of

defendants by amendment.  <u>See</u> <u>Brown v. Uniroyal, Inc.</u>, 108 F.3d at 1307.

    This case, in contrast, involves the addition of new Plaintiffs.  <u>See</u> Motion to Withdraw

and Amend at 1.  The Court concludes that the plain language of rule 15(c)(1)(C) does not apply

to allow relation back of an amendment seeking to add proposed Plaintiffs as parties to this case.

Despite rule 15(c)(1)(C)'s express language, however, the Court notes that it is apparent that the

drafters of rule 15(c) appear to have contemplated its application to the addition of new

plaintiffs.  <u>See</u> Fed. R. Civ. P. 15(c) advisory committee's notes to 1966 amendment ("The

relation back of amendments changing plaintiffs is not expressly treated in revised Rule 15(c)

since the problem is generally easier.  Again the chief consideration of policy is that of the

statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants

extends by analogy to amendments changing plaintiffs.").   Accordingly, most courts do not

automatically dismiss amendments proposing to add new plaintiffs and instead generally apply

the same standard used to add new defendants -- rule 15(c)(1)(C)(i) and (ii) -- when such is

applicable.  <u>See, e.g.</u>, <u>Leachman v. Beech Aircraft Corp.</u>, 694 F.2d 1301, 1308-10 (D.C. Cir.

1982)(holding that there is a "need to limit relation back of claims asserted by new plaintiffs in

some way beyond the 'conduct, transaction, or occurrence' test that applies to relation back of

---

         [10]"The rules of statutory construction apply to the Federal Rules . . . ."  <u>In re Kubler</u>, 2012 WL 394680, at *11 (D.N.M. 2012)(Browning, J.).   <u>Accord</u> <u>Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163, 168 (1993)(applying the expressio unius est exclusio alterius canon when interpreting rule 9(b) of the Federal Rules of Civil Procedure); <u>Hillis v. Heineman</u>, 626 F.3d 1014, 1017-18 (9th Cir. 2010)("This same principle of statutory construction applies to interpreting the Federal Rules of Civil Procedure.").

amendments generally.  Without some limit, total strangers with claims arising out of a multi-victim incident might join pending actions long after the statute of limitations had lapsed.  That would allow the tardy plaintiffs to benefit from the diligence of the other victims and, more importantly, could cause defendants' liability to increase geometrically and their defensive strategy to become far more complex long after the statute of limitations had run.  Even if, as here, there were no showing of specific prejudice in the sense of lost or destroyed evidence, defendants would still be deprived of their interest in repose.  At some point, defendants should have notice of who their adversaries are," and, further stating that "[t]he point of the courts' consideration of identity of interest is that that factor ensures that the old and new plaintiffs are sufficiently related so that the new plaintiff was in effect involved in the proceedings unofficially from an early stage'" (internal citations and quotation marks omitted)(alterations omitted)); Pierce v. Long John Silver, Inc., 1996 WL 153563 (E.D. Pa. 1996)(relying on Nelson v. Cnty. of Allegheny, 60 F.3d 1010, 1014-16 (3d. Cir. 1995), and holding that no matter the plaintiff/defendant status of the party to be added, the analysis entails whether "defendants (A) received such notice that they will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought with the original claims); Ambraziunas v. Bank of Boulder, 846 F. Supp. 1459, 1467 (D. Colo. 1994)(Kane, S.J.)("They have not, however, established that Defendants had notice of their additional claims or that there was any mistake in the original complaint to merit the relation back of the claims of the new Plaintiffs to the filing of the original complaint on June 30, 1993.").  The Court is at a loss as to why rule 15(c)(1)(C)'s

plain language is still at odds with the drafter's commentary,[11] but concludes, nonetheless, that

the drafter's commentary does not, anyway, encompass the addition of these proposed Plaintiffs.

The Court's research has uncovered authority across various Courts of Appeals having

the opportunity to address this issue that indicates that deviation from rule 15(c)(1)(C)(i) and

(ii)'s express language, to account for the distinct nature of a plaintiff as compared to a

defendant, is commonplace.  See, e.g., Wright, Miller, Kane, Marcus, Spencer & Steinman, 6A

Fed. Prac. & Civ. Proc. § 1501, Relation Back of Amendments Changing Parties -- New

Plaintiffs (3d ed.)(April, 2016)(collecting cases and explaining that some courts liberally read

rule 15 to account for the addition of plaintiffs in amended complaints).

> Courts deciding whether to allow amendments changing plaintiffs to relate back
> to the filing of the original complaint seem to concentrate on the notice and
> identity-of-interest factors as they do in the case of amendments changing
> defendants.  Relation back thus will be permitted unless the court finds that
> defendant did not have adequate notice or that the new and the existing plaintiffs
> did not share a sufficient identity of interest.  Thus, an amendment substituting a
> new plaintiff has been held to relate back if the added plaintiff is the real party in
> interest.  As the Advisory Committee Note to the 1966 amendment to Rule 15(c)
> indicates, the liberal attitudes toward substitution of the real party in interest
> prescribed by both Rule 17(a) and Rule 15(c) are closely related.

Wright, Miller, Kane, Marcus, Spencer & Steinman, 6A Fed. Prac. & Civ. Proc. § 1501, Relation

Back of Amendments Changing Parties -- New Plaintiffs (3d ed.)(April, 2016).  See Plubell v.

Merck & Co., Inc., 434 F.3d 1070, 1074 (8th Cir. 2006)(involving an amended pleading,

substituting a new class representative in a class action against a manufacturer of a prescription-

pain drug alleging deceptive trade practices, and holding the amendment related back to the

---

[11]The Court wonders, for example, whether the commentary in fact purports to create a
theory by which the addition of new Plaintiffs might be accomplished by reference only to rule
15(c)(1)(B), given the general incompatibility between rule 15(c)(1)(C)'s language and the
addition of plaintiff-parties -- i.e., there is only a narrow set of facts, as narrow as that pertaining
to party-defendants, upon which relation back of amendments adding party-plaintiffs exists.  Cf.
Leachman v. Beech Aircraft Corp., 694 F.2d at 1308-10.

original filing, and thus the Class Action Fairness Act, 28 U.S.C. § 1322(d), did not apply to allow federal jurisdiction, when the claims were exactly the same in both pleadings and the newly named class representative was a member of the putative class in the original petition); Slaughter v. Southern Talc Co., 949 F.2d 167, 174-75 (5th Cir. 1991)(involving amendment to substitute widows for workers who had allegedly suffered asbestos-related injury in a products-liability and wrongful-death action, and holding that such claim unquestionably arose out of same injury as the original pleadings and thus related back to the original pleadings for purposes of the limitations period where the widows were plaintiffs in the original complaint, and the manufacturers were not prejudiced by the amendment -- also noting, however, that the result might be different if the "amendment sought to introduce an entirely unrelated party"); Avila v. I.N.S., 731 F.2d 616, 620 (9th Cir. 1984)(involving an adult incompetent's father who amended a claim against the federal government to add himself as a claimant to be reimbursed for expenses he incurred in the search for his son who had been deported, where the agency did not deny the claim as amended until two weeks later, and where the son's claim was filed within the two-year statute of limitations for the presentation of claims to the agency involved, and holding that the amendment related back to the original claim in the absence of showing prejudice accruing to the government); Brauer v. Republic Steel Corp., 460 F.2d 801, 804 (10th Cir. 1972)(involving, in a products liability suit against a defendant, what appears to be a unit operator of an oil field/owner of an oil lease (the original plaintiff), an owner of an adjacent oil lease (added plaintiff), and the retained engineering firm for a waterflood project (added plaintiff), and holding that "a close identity of interest existed among [] the original plaintiff, and [] the added plaintiffs.  They owned the leases covered by the waterflood.  The issues presented

by the original complaint and by the amended complaint arose out of the same transaction or occurrence").

Accordingly, although Sandia Labs can fairly be said to have notice of the potential claims against it by the proposed Plaintiffs, see rule 15(c)(1)(C)(i), the requirement enumerated by rule 15(c)(1)(C)(ii) is not met in this case -- there has been no "mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii).  While some courts appear to have endeavored to liberally construe rule 15(c)'s language, the Court is hard pressed to conclude that the case law regarding those additions of plaintiffs and relation back of their amendments is comparable to this case.  See, e.g., Plubell v. Merck & Co., Inc., 434 F.3d 1070; Slaughter v. Southern Talc Co., 949 F.2d 167; Avila v. I.N.S., 731 F.2d 616; Brauer v. Republic Steel Corp., 460 F.2d at 804. Generally, those cases that have allowed relation back involve factual scenarios where the added-plaintiff was a successor-in-interest, custodian, or had a close-identity interest to a victim of the same incident -- i.e., an engineering company retained by an oil-field unit operator, see Brauer v. Republic Steel Corp., 460 F.2d at 804.  In this case, each of the proposed Plaintiffs' cases is unique -- each proposed Plaintiff has her own claims against Sandia Labs, wholly independent from the other.  They are not closely intertwined, as far as the Court can tell, and are not necessary parties to each other's case.  Indeed, the Court is not yet convinced that the proposed Plaintiffs' allegations even arise out of the same occurrences under rule 15(c)(1)(B) and suffice compulsory joinder, as the drafters suggested might be the lodestar under rule 15(c) regarding the addition of Plaintiffs.  In light of rule 15(c)(1)(C)'s plain language, then, and the incompatibility of this case with the general body of case law authorizing the relation back of an amendment adding new plaintiffs under rule 15(c) at large, the Court thus concludes that the proposed Plaintiffs' complaints do not relate back to the filing of the First Amended Complaint.

Because of this conclusion, the Proposed Third Amended Complaint's addition of the proposed Plaintiffs would be futile, because -- as all parties agree -- these federal employment discrimination claims are time barred.

The Court notes that this result may seem harsh, but also notes that the proposed Plaintiffs had every opportunity to file their respective actions in federal court.  Indeed, Sandia Labs -- to no avail -- offered to toll the limitations period for these proposed Plaintiffs, stating -- in response to Benavidez' Motion to Stay Proceedings, filed November 12, 2015 (Doc. 10) -- that it was "amenable to an agreement tolling the statutes of limitations for claims that could only be brought after the exhaustion of Plaintiffs' administrative remedies, which . . . were still unexhausted or newly exhausted."  Defendants' Response to Plaintiff's Motion to Stay Proceedings at 3 n.4, filed November 25, 2015 (Doc. 19).  At the hearing, Benavidez argued that they did not take Sandia Labs up on the negotiations, because it was offered in a footnote and they thought everyone would be happy with entry of an amended complaint.  See Tr. at 26:18-28:7 (Wray).  The Supreme Court has said, in this context, that

> [p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants.  As we stated in Mohasco Corp. v. Silver, 447 U.S. 807, 826 [] (1980), "[i]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law."

Baldwin Cty. Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984).  Thus, although "motions to amend brought in district court should be freely granted," such favor for amendment does not exist where "the proposed amendment would result in unfair prejudice to the non-movant or would be futile."  Thompson v. Colorado, 60 F. Appx. 212, 215 (10th Cir. 2003).  Additionally, Benavidez and the proposed Plaintiffs suggest that the Court apply the doctrine of equitable

tolling -- which applies in "exceptional circumstances," Yang v. Archuleta, 525 F.3d at 928

("Generally, equitable tolling requires a litigant to establish two elements: (1) that he has been

pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.") --

or some form of waiver, because the Proposed Second Amended Complaint was timely filed; the

Court, however, sees no such exceptional circumstances, or sound reason to invent a waiver on

these facts because of the existence of the now-withdrawn Proposed Second Amended

Complaint.   Further, the Court has a difficult time saying that the proposed Plaintiffs acted

diligently to protect their rights.   Nothing prevented them from filing separate lawsuits to beat

the running of the limitations period or from engaging in negotiations with Sandia Labs to enter

into a tolling agreement.   And Sandia Labs did not do anything to prevent the proposed Plaintiffs

from filing separate lawsuits.   Instead, Sandia Labs unequivocally tried to help the proposed

Plaintiffs by suggesting that they enter into tolling agreement negotiations.   The proposed

Plaintiffs pursued a different strategy, and the Court should not create new equitable or waiver

doctrines to save them from this deliberate decision.   Here, the amendment to add the proposed

Plaintiffs would be futile, because, as in the case for intervening plaintiffs -- a situation similar to

this -- "an intervening plaintiff should not be permitted to 'piggyback' on the claims of an earlier

plaintiff in order to escape the statutory bar that would normally shield the defendant from

liability as to the intervenor."   Weber v. Mobil Oil Corp., 506 F.3d 1311, 1315 (10th Cir. 2007).

Under rule 15(c), the Proposed Third Amended Complaint may not relate back to a time which

satisfies the limitations period for the proposed federal claims, rendering proposed Plaintiffs'

addition futile.

        **IT IS ORDERED** that the Plaintiff's Motion to Withdraw Prior Motion to Amend and

Substituted Motion to Amend Complaint, filed August 31, 2016 (Doc. 71), is granted in part and

denied in part.  The Court will allow Benavidez to withdraw the Plaintiff's Motion for Leave to Amend Complaint, filed February 2, 2016 (Doc. 30), providing as an attachment the Plaintiff's Second Amended Complaint for Damages for Violation of the New Mexico Human Civil Rights Act, Title I and IV of the American with Disabilities Act of 1964, Retaliation and Intentional Infliction of Emotional Distress and the Equal Pay Act of 1963, filed February 2, 2016 (Doc. 31). The Court will further grant leave for Benavidez to file the Proposed Third Amended Complaint with respect to the federal claims she brings, on her behalf, against Defendant Sandia Laboratories.  The Court will not, however, grant leave for Benavidez to file her claim under the Equal Pay Act, 29 U.S.C. § 206(d).  As to the proposed Plaintiffs, the Court will deny the Motion to Withdraw and Amend as it pertains to them.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Rachel E. Higgins
Rachel E. Higgins Attorney at Law
Albuquerque, New Mexico

-- and --

Rachel Berenson
Berenson & Associates, P.C.
Albuquerque, New Mexico

-- and --

Katherine A. Wray
Jane Katherine Girard
Wray & Girard P.C.
Albuquerque, New Mexico

*Attorneys for the Plaintiff Linda Benavidez and for the Proposed Plaintiffs Patricia Baca,
    Rita Luna-Casias, and Thelma Ortiz*

Aaron C. Viets
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

-- and --

Justin E. Poore
Sandia Corporation
Albuquerque, New Mexico

*Attorneys for the Defendants*