# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

LINDA BENAVIDEZ,

     Plaintiff,

vs.                                        No. CIV 15-0922 JB/LF

SANDIA NATIONAL LABORATORIES;
VARICK TUCKER, Personally, and
TIMOTHY GARDNER, Personally,

     Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiff's Motion for Partial Reconsideration of this Court's January, 17, 2017 *Memorandum Opinion and Order*, filed February 3, 2017 (Doc. 87)("Motion to Reconsider"). The Court held a hearing on March 16, 2017. The primary issue is whether the Court should reconsider its Memorandum Opinion and Order in <u>Benavidez v. Sandia Nat'l Labs.</u>, Memorandum Opinion and Order, filed January 17, 2017 (Doc. 84), 2017 WL 2266854 (D.N.M. Jan. 17, 2017)("Amendment MOO"), wherein it granted in part and denied in part Plaintiff Linda Benavidez' Motion to Withdraw Prior Motion to Amend and Substituted Motion to Amend Complaint, filed August 31, 2016 (Doc. 71)("Motion to Withdraw and Amend"), which sought to withdraw the Plaintiff's Motion for Leave to Amend Complaint, filed February 10, 2016 (Doc. 30)("Motion for Leave to Substitute Second Amended Complaint"), which provided as an attachment the Plaintiff's Second Amended Complaint for Damages for Violation of the New Mexico Human Civil Rights Act, Title I and IV of the American with Disabilities Act of 1964, Retaliation and Intentional Infliction of Emotional Distress and the Equal Pay Act of 1963, filed February 10, 2016 (Doc.

31)("Proposed Second Amended Complaint"). The Motion to Withdraw and Amend also requested leave to substitute a proposed third amended complaint -- the Second Amended Complaint for Damages for Violation of Title I and IV of the American with Disabilities Act of 1964, Retaliation and the Equal Pay Act of 1963, filed August 31, 2016 (Doc. 71-1)("Proposed Third Amended Complaint") -- which sought addition of three plaintiffs and federal claims, and removal of any state-law claims that the Court had already dismissed in its Amended Memorandum Opinion and Order in Benavidez v. Sandia Nat'l Labs., 212 F. Supp. 1039 (D.N.M. June 27, 2016)("Preemption MOO"), amending its Memorandum Opinion and Order, filed June 22, 2016 (Doc. 63).[1] In its Amendment MOO, the Court concluded that Benavidez is free to withdraw the Motion for Leave to Substitute Second Amended Complaint under the local rules, and the Court thus allowed Benavidez to so withdraw it. See Amendment MOO at 47-50, 2017 WL 2266854, at *1. The Court also granted leave for Benavidez to file the Proposed Third

---

[1]The legal issue that the Court addressed, in the context of Defendants' Motion to Dismiss, filed October 21, 2015 (Doc. 7)("Motion to Dismiss"), was the potential preemption of Benavidez' state law claims by the Labor Management Relations Act, 29 U.S.C. § 141 ("LMRA"). The Supreme Court of the United States of America has stated that LMRA § 301 will completely preempt a state law claim when resolution of the state law claim is substantially dependent upon analysis of the terms of a Collective Bargaining Agreement between the parties. See Caterpillar Inc. v. Williams, 482 U.S. 386, 395 (1987); Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213 (1962)(stating that preemption analysis turns on whether the action confers rights on employers or employees "independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract"); Cisneros v. ABC Rail Corp., 217 F.3d 1239, 1302 (10th Cir. 2000)(explaining that § 301 "preempts questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, . . . whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort"). "Preemption arises only when an 'evaluation of the . . . claim is inextricably intertwined with consideration of the terms of the labor contract.'" Mowry v. United Parcel Service, 415 F.3d 1149, 1152 (10th Cir. 2005)(emphasis in original). "As long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 410 (1988).

Amended Complaint with respect to the federal claims she sought to bring, on her behalf, against Defendant Sandia National Laboratories, because the Court concluded that such leave should freely be granted. <u>See</u> Amendment MOO at 50-56, 2017 WL 2266854, at *1. The Court did not, however, grant leave for Benavidez to file her claim under the Equal Pay Act of 1963, 29 U.S.C § 10 206(d)(1), because the Court concluded that it fails to state a claim and thus amendment would be futile. <u>See</u> Amendment MOO at 50-56, 2017 WL 2266854, at *1. As to what the Court termed the "proposed Plaintiffs," the Court denies the Motion to Withdraw and Amend as it pertains to them, because: (i) their Equal Pay Act claim similarly failed to state a claim; and (ii) the filing date of their other federal claims did not relate back to a date meeting the statutory limitation for filing such claims, rendering them time barred and futile. <u>See</u> Amendment MOO at 57-68, 2017 WL 2266854, at *1.

Specifically, Benavidez seeks reconsideration of the Court's conclusion in the Amendment MOO that leave to substitute the Proposed Third Amended Complaint would be futile as to its proposed addition of three new plaintiff-parties -- "proposed Plaintiffs" Patricia Baca, Rita Luna-Casias, and Thelma Ortiz -- because the filing date of their federal claims did not relate back to a date meeting the statutory limitation for filing such claims, rendering them time barred and futile. Benavidez ultimately "requests the opportunity to expand her response on that issue so that the Court has the opportunity to address the effect of the 'deemed filed' doctrine and the tolling case law." Motion to Reconsider at 6. Because the Court concludes, in part, that there has not been a manifest injustice, it will deny the Motion to Reconsider in part. The Court, after a thorough review of all the issues Benavidez raises, determines that its conclusion in the Amendment MOO is sound. The Court will leave open the possibility of entering final judgment as to Benavidez' attempt to add proposed Plaintiffs at a later date.

## FACTUAL BACKGROUND

The Court has already discussed the facts underlying this case in detail. See Preemption MOO, 212 F. Supp. at 1044-48. The Court takes the following recitation of the relevant facts from the First Amended Complaint for Damages for Violation of the New Mexico Human Rights Act, and for Intentional Infliction of Emotional Distress, filed October 15, 2015 (Doc. 1-2)("First Amended Complaint"), which Benavidez filed originally in the Second Judicial District Court, County of Bernalillo, State of New Mexico. First Amended Complaint at 1.[2]

Sandia Labs employed Benavidez, a United States citizen and a resident of Albuquerque, New Mexico. See First Amended Complaint ¶ 8, at 6. Defendant Varick Tucker was Benavidez' Human Resource manager, while Defendant Timothy Gardener was Benavidez' manager. See First Amended Complaint ¶¶ 11-12, at 6. Sandia Labs had hired Benavidez as a Neutron Generator Production Specialist on June 1, 2001, see First Amended Complaint ¶ 14, at 7, but she eventually "developed some serious medical conditions which resulted in Plaintiff's life activities being affected," First Amended Complaint ¶ 16, at 7. In 2011, the requirements of Benavidez' position changed to include the need for a Trades Degree. See First Amended Complaint ¶ 17, at 7. To obtain a Trades Degree, Benavidez would have had to return to school for college-level courses such as physics, trigonometry, and chemistry, which would have required her to take years of preparatory classes to qualify to take the required classes. See First Amended Complaint ¶ 19, at 7; id. ¶ 42, at 11; id. ¶ 53, at 12.

Benavidez was told that, if she was unable to obtain the Trades Degree, she would be "bumped" into another similar position at Sandia Labs with the same grade level and pay. First

---

[2]To cite the First Amended Complaint, the Court will use CM/ECF's pagination -- i.e., the blue number in the top right-hand corner of each page -- because the First Amended Complaint does not contain internal pagination.

- 4 -

Amended Complaint ¶ 22, at 8.  See id. ¶ 42, at 11; id. ¶ 53, at 12.  "Instead of being 'bumped' into a similar position at Sandia Labs, though, Plaintiff was ultimately placed in a position described as a Maintenance Support Technician," which "included 'duties requiring working strenuous positions with exertions of physical effort up to 60 pounds.'"  First Amended Complaint ¶ 24, at 8.  See id. ¶ 43, at 11; id. ¶ 54, at 12.  "She and her co-workers that were put in this position, essentially as tractor/trailer drivers, were the only females working this job."  First Amended Complaint ¶ 25, at 8.  See id. ¶ 43, at 11; id. ¶ 54, at 12.  "The only other employees in this position were men, with the exception of one other woman over the age of 40 who was also being 'absorbed' into this new position, and who was ultimately terminated."  First Amended Complaint ¶ 54, at 12.

"On September 9, 2014, Ms. Benavidez filed a formal charge of discrimination on the basis of sex, age, and equal pay in violation of the New Mexico Human Rights Act, NMSA § 28-1-7 (1978), et seq."  First Amended Complaint ¶ 3, at 5-6.  On September 30, 2014, a doctor "with Defendant SNL advised Plaintiff that she was incapable of performing the job duties due to her permanent medical restrictions."  First Amended Complaint ¶ 31, at 9.  See id. ¶ 45, at 11; id. ¶ 57, at 13.  Accordingly, Benavidez "was placed on a realignment process and was not given any reasonable accommodation."  First Amended Complaint ¶ 32, at 9.  See id. ¶ 57, at 13.  On April 16, 2015, Sandia Labs terminated Benavidez' employment.  See First Amended Complaint ¶ 36, at 10; id. ¶ 66, at 13-14.

## PROCEDURAL BACKGROUND

On August 27, 2015, Benavidez filed suit in the Second Judicial District Court.  See First Amended Complaint at 1.  Benavidez had originally failed to serve a complaint upon Defendants, which is why Benavidez instead began the lawsuit by serving the First Amended

Complaint.  See Notice of Removal at 1, filed October 15, 2015 (Doc. 1).  About a month and a half later, on October 15, 2015, the Defendants removed the case to federal court, asserting federal-question jurisdiction.  See Notice of Removal at 1-7.  Benavidez asserted three causes of action against all of the Defendants: (i) discrimination on the basis of age in violation of the New Mexico Human Rights Act, N.M. Stat. Ann. §§ 28-1-1 to -14 ("NMHRA"), First Amended Complaint ¶¶ 38-48, at 10-12 (Count I); (ii) discrimination on the basis of sex in violation of the NMHRA, see First Amended Complaint ¶¶ 49-62, at 12-13 (Count II); and (iii) intentional infliction of emotional distress, see First Amended Complaint ¶¶ 63-73, at 13-14 (Count III).  Benavidez asked the Court for judgment against the Defendants "for all actual, compensatory, nominal, and emotional damages she has suffered . . . [,] punitive damages for Defendants' willful, wanton, and reckless conduct . . . [,] attorneys' and other fees, costs, and pre-and post-judgment interest accrued[,] and for such other relief as the Court finds just and proper."  First Amended Complaint at 14-15.

1.      **The January 20, 2016, Hearing.**

The Court held a hearing on January 20, 2016.  See Transcript of Hearing (taken January 20, 2015)("January Tr.").[3]  At the hearing the Defendants briefly set forth their argument that federal law preempts Benavidez' claims, and the Court asked the Defendants whether they agree that all of Benavidez' claims are state claims and that there are no federal claims.  See January Tr. at 2:12-3:25 (Court, Poore).  The Defendants responded that there are only state law claims in the First Amended Complaint.  See January Tr. at 4:1-2 (Poore).  They further stated, however, that Benavidez had sent them a proposed second amended complaint, in which Benavidez asserts

---

[3]The Court's citations to the transcripts of each of the hearings refer to the court reporter's original, unedited version.  Any final version may have slightly different page and/or line numbers.

claims on behalf of herself and of three additional former Sandia Labs employees under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"); the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 to 634 ("ADEA"); and the Americans with Disabilities Act, 42 U.S.C. §§ 12201 to 12213 ("ADA"). January Tr. at 4:3-15 (Court, Poore). The Court stated that, under the preemption doctrine, one of the bases for federal court jurisdiction is that, even though the complaint's face does not raise any federal claims, if there is a preemption defense, that defense is enough for a defendant to remove a case to federal court. See January Tr. at 4:19-24 (Court). The Defendants agreed and argued that, under the artful pleading doctrine, a plaintiff cannot fail to include factual allegations to avoid federal jurisdiction. See January Tr. at 4:25-5:3 (Poore). They contended that, in this case, Benavidez fails to plead allegations to avoid federal jurisdiction by omitting the references to the CBAs. See January Tr. at 5:3-5 (Poore). The Defendants added that, with respect to Benavidez' request for remand, "there is an alternative basis for federal jurisdiction, which is that the actions took place on a federal enclave, and so remand would be inappropriate regardless of how far the Court rules on the preemption claim." January Tr. at 5:11-16 (Poore). The Defendants also confirmed that they cited that basis of jurisdiction in their Notice of Removal. See January Tr. at 5:17-19 (Court, Poore).

Benavidez then argued the Motion to Dismiss. See January Tr. at 6:21-23 (Court, Higgins, Poore). Benavidez began by emphasizing that "preemption is only required if the state claim is inextricably intertwined with the consideration of the terms of the labor contract." January Tr. at 6:23-7:1 (Higgins). According to Benavidez, her claims for sex and age discrimination are not inextricably intertwined with the CBA's terms, and there is nothing in the CBA that would have anything to do with discrimination. See January Tr. at 7:5-13 (Higgins). She maintained, therefore, that § 301 preemption does not apply. See January Tr. at 7:9-20

(Higgins).  Benavidez then largely restated her arguments from her briefing.  See January Tr. at 9:3-10:4 (Higgins).  The Court expressed concern that the conduct alleged does not appear to meet the standard of being outrageous.  See January Tr. at 10:5-20 (Court).  Benavidez responded that it was premature to dismiss the claim and that she would like an opportunity to do some discovery.  See January Tr. at 10:5-11:3 (Higgins).  Benavidez also agreed that the Court can likely decide whether there is § 301 preemption in this case.  See January Tr. at 12:11-13:5 (Court, Higgins).

The Court then asked Benavidez where she is going with the case by adding additional people and bringing federal claims.  See January Tr. at 13:6-8 (Court).  Benavidez stated that attorney Rachel Berenson was present and could better address that question.  See January Tr. at 13:9-11 (Higgins).  Ms. Berenson then argued.  See January Tr. at 13:12-17 (Berenson, Court, Higgins).  She agreed that the Defendants will likely prevail on the issue of federal enclave jurisdiction.  See January Tr. at 13:17-15:17 (Berenson, Court).  She further stated that they have received additional Equal Employment Opportunity Commission right-to-sue letters regarding the three other Plaintiffs, and that they have been trying to draft a complaint to include federal claims for discrimination both for the three additional Plaintiffs and for Benavidez.  See January Tr. at 14:3-12 (Berenson).  Ms. Berenson explained that they could go about it in two separate ways: (i) file a separate lawsuit for the additional Plaintiffs; or (ii) file a motion for leave to amend Benavidez' Complaint to include the federal claims and incorporate the additional plaintiffs.  See January Tr. at 14:7-19 (Berenson).  The Court asked whether, given that the Defendants have not filed an answer, Benavidez has the ability to file an amended complaint as of right.  See January Tr. at 15:18-22 (Court).  Ms. Berenson responded that she believed that

Benavidez would need the Court's permission, because the time frame had already lapsed even though the Defendants had not yet filed an answer. See January Tr. at 15:23-16:3 (Berenson).

The Court then asked the Defendants whether, given that the Plaintiffs have indicated that the Defendants likely will prevail on the remand issue, they might allow the Plaintiffs to bring their suit here in one case. See January Tr. at 16:9-15 (Court). The Defendants responded that they would prefer that all of the Plaintiffs and claims be in one case, but that all of the parties would benefit from the Court ruling on the § 301 preemption question. See January Tr. at 16:16-17:2 (Poore). The Defendants also clarified that they are arguing that, as with the intentional-infliction-of-emotional-distress claim, Benavidez' sex-and-age discrimination claims do not state a claim upon which relief can be granted. See January Tr. at 18:23-19:19 (Poore). The Defendants made the final point that, although Benavidez did not concede federal enclave jurisdiction, she suggested that the intentional infliction of emotional distress claim might survive even if the Court has such jurisdiction. See January Tr. at 20:7-11 (Poore). According to the Defendants, however, New Mexico first recognized the tort of intentional infliction of emotional distress in 1972, well after the New Mexico Legislature passed the NMHRA in 1969. See January Tr. at 20:7-11 (Poore). They therefore contended that they believe that "all of the state law claims will ultimately be disposed of under federal enclave jurisdiction." January Tr. at 20:7-19 (Poore).

Benavidez responded that they were relying on a 1937 case, which they contended allowed for damages and recognized a claim for emotional distress. See January Tr. at 21:2-10 (Higgins). Benavidez also clarified that the question of sex-and-age discrimination does not rely on the CBA. See January Tr. at 20:25-22:4 (Higgins). The Court responded:

> Does that require any construction of the contract? I mean [what I] understand the plaintiffs are saying[, i]t's kind of irrelevant whether the contract required

bumping or didn't require bumping, they don't care, they're just saying [] the manager came in and said this is what occurred on the basis of what the manager said, [and] that's where the sexual or age discrimination occurred. Does it really require the Court to construe in any way the CBA[?]

January Tr. at 22:5-14 (Court). The Defendants responded that they read the First Amended Complaint as arguing that Benavidez should have bumped or displaced another employee. See January Tr. at 22:15-17 (Poore). They further explained: "I don't believe an argument that her supervisor told her one thing and something different ended up happening has anything to do with [age] or sex discrimination, and so if you actually look at that, it's at best, a contract claim. At worst it's not a claim at all." January Tr. at 22:17-22 (Poore).

The Court then stated:

Let me take a look at this. I still have a recollection I thought it was maybe that [T]ru[] [Solutions], that [Westinghouse] case out of the [WIPP] [c]ite[,] maybe it wasn't. I thought I had a [§] 301 preemption and I thought I'd construed it narrowly but let me give that some thought. It sounds like I'm going to [have] federal jurisdiction one way or another here so I'm inclined to dismiss the intentional infliction of distress[;] I think I've had enough of these in the employment context. I'll have to look at the allegation to see whether they satisfy Iqbal an[d] Twombly. That's really [what I] understand Sandia to be raising [about] the state law claims on the substance, but the only one I really have a feel for is maybe the intentional infliction of emotional distress. So I'll have to give that some consideration. It sounds like the plaintiffs are not contesting or at least indicating that this federal enclave which I have had no experience with, so I'll have to take a look at it for the first time, it sounds like that's sufficient to confer jurisdiction, so it doesn't look like it's a remand situation and the case will remain here in Federal Court. I understand that the intentional infliction might survive or be around before the federal enclave but I'm not sure that would save it even under state law.

I'll hear the plaintiff[']s motion to stay. I'll give you my thoughts. I guess I was inclined to think that the defendant was right, at some point I've got to decide this 301 issue. It may not be exactly what you[r] next complaint is. But it sound[s] like I'm going to have to get into it at some point, and I know you may be amending your complaint and things like that, but . . . those [sort] of things I've got to decide[;] it's just delaying things for me not to go ahead and decide it. So I was inclined to deny it. [I will g]o ahead and have Ms. Wild send out a [notice for an initial scheduling conference] and try to have the opinion out to you by the time I see you at the initial scheduling conference, so we can keep the case

> moving for all sides and hopefully I'll have [that] opinion out to you. It will give you some guidance on whether we're going to have these state claims in or out and maybe by that point the plaintiffs will know what they're going to do with their complaint and be ready to go on that.

January Tr. at 22:23-24:20 (Court).

Benavidez then noted the Defendants could also raise this § 301 preemption argument as to the additional claims that she and the three additional Plaintiffs will bring. See January Tr. at 25:4-10 (Berenson). She asserted that the Court would then have to revisit this preemption issue again with all of the additional Plaintiffs. See January Tr. at 25:10-12 (Berenson). The Court responded that, even if it might need to decide these § 301 preemption issues as to each Plaintiff, it might make sense to go ahead and deal with them as to Benavidez. See January Tr. at 25:13-21 (Court). The parties would then have the Court's thoughts on preemption under § 301, and they could then move onto the three additional Plaintiffs. See January Tr. at 25:13-21 (Court). Benavidez stated that she understood that rationale, but explained that they had not yet received right-to-sue letters from the Human Rights Division, which would require additional time before they could bring forth all of the other Plaintiffs. See January Tr. at 25:24-26:5 (Berenson). The Defendants expressed concern about having to refile the Motion. See January Tr. at 26:6-17 (Court, Poore). The Court concluded by stating:

> Well, I think that it will probably be helpful to the Court and really to the parties for me to go ahead and get this 301 issue resolved. So I'm going to deny the motion to stay. Usually if the plaintiffs want to put their [case] on [ice], I'm pretty sympathetic to that, let them kind of control the case, but I think in this situation where we've had a hearing, we've had all the briefing, go ahead and get this issue decided, and I think it will give guidance to us down the road. I think once I figure it out it will probably help us more expeditiously decide 301 issues for the other three plaintiffs.

January Tr. at 26:19-27:16 (Court).

## 2. __The Preemption MOO Dismissing Benavidez' State Claims.__

The Court issued the Preemption MOO after the January 20, 2016, hearing. The Preemption MOO decides:

First, the Court concludes that the LMRA's § 301 does not preempt Benavidez' age and sex discrimination claims brought pursuant to the NMHRA. Second, the Court concludes that the LMRA's § 301 partially preempts Benavidez' intentional-infliction-of-emotional-distress claim. The Court concludes that, to the extent that Benavidez bases her intentional infliction of emotional distress claim on Gardener's "belittl[ing] and berat[ing]" her "for not being able to complete the course work she took in preparation for attempting to obtain a Trades Degree," § 301 does not foreclose Benavidez from asserting an intentional infliction of emotional distress claim. See Complaint ¶ 64, at 13. The Court concludes, however, that § 301 preempts Benavidez' intentional-infliction-of-emotional-distress claim to the extent that it is based on: (i) the Defendants' downgrading of Benavidez and putting her in a position for which she was not qualified, either by experience or physical abilities, rather than allowing her to move into another Grade 8 position, see Complaint ¶ 64, at 13; and (ii) the Defendants doing nothing to help her find another, more appropriate position after she complained to management multiple times and asked for help in her new position, and their ultimate termination of Benavidez for being unable to perform the new position, see Complaint ¶ 65, at 13. The Court nonetheless dismisses the portion of Benavidez' intentional-infliction-of-emotional-distress claim that § 301 preempts, because Benavidez has not demonstrated that she exhausted her remedies under the CBA.[4] See Allis-Chalmers Corp. v. Lueck, 471 U.S. [202, 220-21 (1985)](concluding that complaint should have been dismissed for failure to make use of the grievance procedure established in a collective-bargaining agreement or dismissed as pre-empted by § 301). Third, the Court concludes that Benavidez states a claim for sex and age discrimination under the NMHRA. Fourth, the Court will dismiss the claims against the individual defendants -- Gardner and Tucker -- because Benavidez has not exhausted her administrative remedies against them. The Court concludes, however, that Benavidez has exhausted her administrative remedies for the conduct alleged in support of her NMHRA discrimination claims that took place after she filed her Charge of Discrimination on September 9, 2014. Fifth, with respect to the portion of Benavidez' intentional-infliction-of-emotional-distress claim that § 301 does not preempt, the Court concludes that Benavidez does not state a claim upon which relief can be granted. In sum, the Court is left with two state-law discrimination claims brought under the NMHRA. While the Court concludes that it retains federal enclave jurisdiction over this action, and therefore denies Benavidez'

---

[4]Meaning "Collective Bargaining Agreement," something which governs matters such as priority placement for bargaining unit employees unable to perform their job because of physical disability developed while a Sandia Labs employee. See Preemption MOO, passim.

request in the Response that the Court remand this action to state court, it must dismiss Benavidez' three claims -- including those brought under the NMHRA -- pursuant to the federal enclave doctrine.

Preemption MOO, 212 F. Supp. at 1044-45.

###     3.     Motion for Leave to Substitute Second Amended Complaint.

Benavidez filed the Motion for Leave to Substitute Second Amended Complaint on February 10, 2016.  See Motion for Leave to Substitute Second Amended Complaint at 1.  The amendment deadline in the Scheduling Order was April 30, 2016.  See Scheduling Order, filed March 2, 2016 (Doc. 35).  "The Amended Complaint includes three (3) additional Plaintiffs who have similar claims arising out the same or similar conduct by their former employer, Defendant Sandia Corp. and the additional violation charge of the Equal Pay Act[, 29 U.S.C. § 206(d)]."  Motion for Leave to Substitute Second Amended Complaint at 2.  The three additional Plaintiffs have, according to the Motion for Leave to Substitute Second Amended Complaint, received "Right to Sue letters dated November 24, 2015, November 25, 2015 and November 30, 2015 and have received their letter of Non Determination from Human Rights Bureau on January 27, 2016."  Motion for Leave to Substitute Second Amended Complaint at 2.  The Motion for Leave to Substitute Second Amended Complaint asserts that the Court and the Defendants were aware that Benavidez was awaiting the additional Plaintiffs' "Right to Sue Letters" before she filed this impending Motion for Leave to Substitute Second Amended Complaint.  Motion for Leave to Substitute Second Amended Complaint at 2-3.  "Plaintiff further requests leave to amend the Complaint such that the caption may be amended to accurately reflect the nature to withdraw [sic] her claims against Defendant Gardner and Defendant Tucker and to add additional exhausted claims and additional Parties."  Motion for Leave to Substitute Second Amended Complaint at 3.

The Proposed Second Amended Complaint, attached to the Motion for Leave to Substitute Second Amended Complaint, however, retains the same claims in the First Amended Complaint that the Court's Preemption MOO dismissed. <u>See</u> Proposed Second Amended Complaint at 1-24. Specifically, the Proposed Second Amended Complaint "essentially re-states th[e] [Intentional Infliction of Emotional Distress ("IIED")] claim, as well as the New Mexico Human Rights Act age and sex discrimination claims that are subject to the [Preemption MOO]." Defendants' Response to Plaintiff's Motion for Leave to Amend Complaint at 2, filed March 7, 2016 (Doc. 38). More specifically, the Proposed Second Amended Complaint alleges "Count I: Discrimination on the Basis of Serious Medical Condition in Violation of the New Mexico Human Rights Act and Title I of the American Disability Act," Proposed Second Amended Complaint ¶¶ 123-34, at 16-17; "Count II: Discrimination on the Basis of Sex in Violation of the New Mexico Human Rights Act and/or Title VII of the Civil Rights Act Against Defendant Sandia Corporation," Proposed Second Amended Complaint ¶¶ 135-49, at 17-19; "Count III[:] Retaliation Against Defendant Sandia Corporation," Proposed Second Amended Complaint ¶¶ 150-58, at 19-20; "Count IV: Violation of the Age Discrimination in Employment Act," Proposed Second Amended Complaint ¶¶ 159-69, at 20-21; "Count V: Intentional Infliction of Emotional Distress," Proposed Second Amended Complaint ¶¶ 170-83, at 21-22; and "Count VI: The Equal Pay Act of 1963," Proposed Second Amended Complaint ¶¶ 184-88, at 22-23. On July 1, 2016 -- following the Court's issuance of the Preemption MOO -- Benavidez submitted the Plaintiff's Supplemental Briefing on Doc. 30, Motion for Leave to Amend Complaint, filed July 1, 2016 (Doc. 65)("Supplemental Briefing"), making minor changes to the Proposed Second Amended Complaint. Supplemental Briefing at 1-2. The Supplemental Briefing, in particular, renumbers paragraphs, discusses grievances that the Plaintiffs made before the Metal Trade

Council, makes more specific allegations, adds a punitive damages claim, and changes the anticipated month of filing.  See Supplemental Briefing at 2.  Importantly, the Supplemental Briefing provides that, despite the Preemption MOO, "[i]n order to preserve the record for any appeal and on behalf of the new proposed Plaintiffs, Plaintiff has not removed the state law claims that the Court dismissed in the *Amended Memorandum Opinion and Order* [Doc. 64]." Supplemental Briefing at 2.

### 4.      Motion for Leave to Substitute Second Amended Complaint Response.

Sandia Labs responded to the Motion for Leave to Substitute Second Amended Complaint with the Defendants' Response to Plaintiff's Motion for Leave to Amend Complaint, filed March 7, 2016 (Doc. 38)("Motion for Leave to Substitute Second Amended Complaint Response").  The Motion for Leave to Substitute Second Amended Complaint Response objects to the Motion for Leave to Substitute Second Amended Complaint, because the "Plaintiff's proposed amendment would be futile, cause undue delay, and cause undue prejudice to Defendant Sandia Corporation."  Motion for Leave to Substitute Second Amended Complaint Response at 1.  Essentially, Sandia Labs requests that the Court not allow Benavidez to amend the First Amended Complaint until after the Court issues its Preemption MOO resolving the issues Sandia Labs raised in its Motion to Dismiss.  See Motion for Leave to Substitute Second Amended Complaint Response at 3.  The Motion for Leave to Substitute Second Amended Complaint Response concludes by stating:

> Plaintiff's proposed amendment is -- at least as to the state law claims -- futile. Furthermore, the filing of a second amended complaint before the Court completes and issues its decision on Defendants' motion to dismiss would moot that motion and effectively nullify the work that has gone into arguing and deciding the motion, causing undue delay and undue prejudice to Sandia. Defendants' respectfully request that the Court deny Plaintiff leave to amend her complaint until after a decision is issued on Defendants' motion to dismiss, and in no event should it be granted with regard to state law claims that Sandia has

already identified as defective.

Motion for Leave to Substitute Second Amended Complaint Response at 3.

### 5. <u>The Motion for Leave to Substitute Second Amended Complaint Reply</u>.

Benavidez replied to the Motion for Leave to Substitute Second Amended Complaint Response with the Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Leave to Amend Complaint, filed March 21, 2016 (Doc. 43)("Motion for Leave to Substitute Second Amended Complaint Reply"). The Motion for Leave to Substitute Second Amended Complaint Reply offers a path forward for the Court, stating initially that the "Plaintiff is attempting to comply with Court's Scheduling Order [Doc. 35] deadline by moving to amend the pleadings and to join additional parties in compliance with Fed. R. Civ. P. 15(a)." Motion for Leave to Substitute Second Amended Complaint Reply at 1. Accordingly, the Motion for Leave to Substitute Second Amended Complaint Reply explains that the

> Plaintiff's deadline to move to amend the pleadings and to join additional parties is April 30, 2016. The three (3) proposed joining plaintiffs had a deadline to file an appeal from the Human Rights Department or the Employee Equal Opportunity Commission before February 24, 2016 and February 30, 2016, and therefore it is critical that this Court grant Plaintiff's motion for leave to amend to adjoin these additional three (3) plaintiffs. If the Court does not grant Plaintiff's motion to amend the complaint the three (3) additional Plaintiffs' will be forced to file a new lawsuit and bring Defendant into separate proceedings and waste the Court's valuable time and resources.

Motion for Leave to Substitute Second Amended Complaint Reply at 2. Thus, according to the Motion for Leave to Substitute Second Amended Complaint Reply, Benavidez will, "[u]pon the Court's decision on Defendants' motion to dismiss, . . . again amend their second amended complaint to properly reflect the court's decision if it alters the ability to bring any of the claims." Motion for Leave to Substitute Second Amended Complaint Reply at 2. Benavidez also provides that the "[p]roposed Joining Plaintiffs request this Court to allow them to pursue

their right to adjoin and appeal their decisions of the Employee Equal Opportunity Commission and the Human Rights Department." Motion for Leave to Substitute Second Amended Complaint Reply at 2.

   6.     **The May 16, 2016, and June 23, 2016, Hearings.**

   The Court held hearings on May 16, 2016, and June 23, 2016. See Transcript of Hearing, taken May 16, 2016 ("May Tr."); Transcript of Hearing, taken June 23, 2016 ("June Tr."). At the May 16, 2016, Hearing, the Court had not yet issued its Preemption MOO, so the Court suggested:

> Since we've already argued the motion I've already given my inclination and think I know what I'm going to do is if I could just grant this motion for leave to amend the complaint and then whatever I say as to Ms. Benavidez in the motion to dismiss so we don't have to reinvent everything we've done, just apply that equally to Tucker and Gardener, and I think the big issue is going to be the intentional infliction of emotional distress and I probably am not going to find in too many employment context[s] and I did sit down and read the complaint here last night, I just am not certain I'm going to find it. But then I just enter an order, the opinion as to I can do it as to the amended complaint or I can just say it's going to apply to the amended complaint. But I'm wondering if maybe we can cut through that by assuring Sandia that they don't have to reargue this thing, whatever I say there I'll apply it to Tucker and Gardener, but go ahead and get the amended motion on file. But Ms. Berenson it's your motion if you wish to argue in support of it.

May Tr. at 3:11-4:7 (Court). Benavidez indicated, then explained, that they had added new facts to the Proposed Second Amended Complaint, and that they would be happy to have the Court allow them to file the Proposed Second Amended Complaint and then apply the Preemptive MOO, once it was filed, to that pleading as well. See May Tr. at 4:18-21 (Berenson). Even though all parties agreed with that proposal, Benavidez immediately backed away from that proposal and indicated that "it's just difficult because we've added so many more facts in regards to other plaintiffs as well. So it would be unjust for them to have a ruling" in this manner. May Tr. at 6:4-6 (Berenson). The Court agreed that its initial proposal thus would not work and

instructed Benavidez to "make your own decision whether you want to file separate cases" given the proposed addition of new Plaintiffs, and

> if you need to file separate cases, you can. If I get the opinions out and you want to bring it back here, us pick this up, I'll just hold this for the time being, I won't rule on it, and then you can make a decision. You'll just have to be the judge of your own time.

May Tr. at 6:7-16 (Court). The Court thus did not hear Benavidez' Motion for Leave to Substitute Second Amended Complaint at the May 16, 2016, Hearing. See May Tr. at 6:7-16 (Court).

The Court once more heard argument on the Motion for Leave to Substitute Second Amended Complaint at the June 23, 2016, Hearing. See June Tr. at 1:1 (Court). The Court issued the Preemption MOO on the evening before the hearing, and the Court inquired of the parties whether, "if with the opinion out if y'all might be able to . . . agree to whether it should be amended, but I don't know." June Tr. at 3:1-4 (Court). Benavidez responded that they had not yet talked to Sandia Labs, but that they probably would want the Court to set another hearing on the Motion for Leave to Substitute Second Amended Complaint, because they may need to supplement that motion in light of the Preemption MOO's guidance, for which they needed "a little more time to digest." June Tr. at 3:5-16 (Higgins). Sandia Labs agreed, and the Court set a hearing for August 25, 2016. See June Tr. at 6:10-12 (Poore, Court).

### 7.    The August 25, 2016, Hearing.

The Court held a hearing on August 25, 2016. At the hearing, the Court addressed, in part, the Motion for Leave to Substitute Second Amended Complaint. See Transcript of Hearing, taken August 25, 2016 at 2:4-5 (Court)("Tr."). The Court reminded the parties:

> We started a hearing and I tried to work out an agreement [where] we could have the motion to dismiss that was pending[,] and I have not been able to get the opinion out[,] [and the opinion] would apply to all the new people, but we weren't

able to reach that agreement.  So we adjourned that hearing for motion for leave
to amend the complaint.

Tr. at 2:4-11 (Court).  The Court continued: "I finished my work on that opinion, so where are

we on the motion for leave to amend?  Do you still want to file this complaint?"  Tr. at 2:11-14

(Court).  Benavidez responded that she wished to argue in favor of the Motion for Leave to

Substitute Second Amended Complaint and Supplemental Briefing, and that one reason that the

Proposed Second Amended Complaint still contains the state claims that the Court has dismissed

is because

> [t]he February amended complaint was designed to become a federal complaint.
> It was designed to contain the allegations [] necessary not just to bring forth the
> state claims that are pending, but also to bring those [] federal claims.  And the
> intent has been to include everything in this amended complaint so we're not
> hiding the ball so we do not have to amend again . . . .

Tr. at 4:4-17 (Girard).  Further, with respect to why Benavidez filed the Motion for Leave to

Substitute Second Amended Complaint instead of waiting for the Preemption MOO, Benavidez

indicated that "we had three additional plaintiffs to add who had been issued their right to sue

letters, and they had a statutory deadline to meet."  Tr. at 3:14-24 (Girard).  The Court was hard

pressed, however, to understand "why go through all that motion if I spent a lot of time dealing

with the []motion to dismiss, why put them all back in the case[,] I just don't get that."  Tr. at

4:18-21 (Court).  The Court thus asked Benavidez if she has "a complaint that you can propose

to the Court and parties that conforms to the Court's opinion," Tr. at 5:1-3 (Court), to which

Benavidez replied that she could "prepare that pretty quickly," Tr. at 5:4-5 (Girard).

Sandia Labs then addressed the Court, arguing that its "primary objections are the same

as the courts, which is that they include and in some instances double down on the state law

claims which you have already dismissed."  Tr. at 7:22-25 (Poore).  Benavidez then interjected

and explained that "what I would like, at the end of this process, [is] for a ruling that makes clear

or a complaint that makes clear that the new plaintiffs are also subject to the Court's prior ruling." Tr. at 10:13-17 (Girard). To achieve this goal, Benavidez explained that what she proposes is

> to file this complaint as written, followed by the order that says that the Court's ruling applies to all plaintiffs, the Court's previous ruling in the motion to dismiss applies to all plaintiffs and claims in this complaint. We thought that that satisfied it and made it easier, but obviously it has not . . . .

Tr. at 10:21-11:5 (Girard). Benavidez then reiterated that she simply wanted a clean slate, with a federal-court complaint that brings both her original state claims and the new federal claims, and includes herself and the three additional Plaintiffs, and that in no way did she expect that the Preemption MOO would not to apply to that new complaint or to the additional Plaintiffs. See Tr. at 11:18-25 (Girard).

Accordingly, Benavidez apologized for causing the Court frustration and stated that, because there was not a complaint before the Court at the present time, she was not prepared to argue her First Motion to Compel Production of Documents, filed May 2, 2016 (Doc. 52)("Motion to Compel"). Tr. at 13:1-6 (Girard). The Court then took the Motion to Compel under advisement, without hearing argument, and stated that it would "get an opinion out to you and an order denying your motion to amend and then we'll figure out how to go from there." Tr. at 13:7-13 (Court). Upon giving the parties one last chance to address the Court, Sandia Labs provided:

> Your Honor, I do want to make sure we're also being transparent that if the motion to amend is denied, it would be our understanding that at least many of the federal claims on the additional three plaintiffs would be outside the statute of limitations. So when I indicated that we weren't filing a motion to dismiss on the federal claims that was based on this[,] I don't want to say that that would be our position for a third amended complaint.

Tr. at 13:15-24 (Poore). Benavidez then took the opportunity to reiterate that the statutory

deadline Sandia Labs mentioned was one of the motivating factors in filing the Motion for Leave to Substitute Second Amended Complaint as it did and when it did. <u>See</u> Tr. at 14:1-9 (Girard). The Court then denied the Motion for Leave to Substitute Second Amended Complaint "as to the way it's filed." Tr. at 14:10-11 (Court).

### 8. <u>The Motion to Withdraw and Amend</u>.

Before the Court had the opportunity to formally deny by opinion and order the Motion for Leave to Substitute Second Amended Complaint with a Memorandum Opinion and Order, Benavidez filed the Motion to Withdraw and Amend on August 31, 2016. <u>See</u> Motion to Withdraw and Amend at 1. The Scheduling Order had been vacated on June 10, 2016. <u>See</u> Order Granting Plaintiff's Unopposed Motion to Vacate the Scheduling Order and Reset Deadlines and Trial Date at a New Scheduling Conference, filed June 10, 2016 (Doc. 62). In the Motion to Withdraw and Amend, Benavidez seeks to amend the Proposed Second Amended Complaint, because she recognizes that the Proposed Second Amended Complaint makes claims that the Court dismissed in the Preemption MOO and that the Court was thus inclined to deny the Motion for Leave to Substitute Second Amended Complaint. <u>See</u> Motion to Withdraw and Amend at 1-4. Benavidez relies on rule 15(a) of the Federal Rules of Civil Procedure, and requests that the Court permit her to file the Second Amended Complaint for Damages for Violation of Title I and IV of the American with Disabilities Act of 1964, Retaliation and the Equal Pay Act of 1963, filed August 31, 2016 (Doc. 71-1)("Proposed Third Amended Complaint"). Motion to Withdraw and Amend at 1-4. The Proposed Third Amended Complaint amends the Proposed Second Amended Complaint by eliminating state law claims in accordance with the Court's Preemption MOO. <u>See</u> Motion to Withdraw and Amend at 1-2. The Proposed Third Amended Complaint thus relates to Benavidez, Baca, Luna-Casias, and Ortiz, and asserts:

"Count I: Discrimination on the Basis of Serious Medical Condition in Violation of Title I of the American Disability Act," Proposed Third Amended Complaint ¶¶ 127-38, at 16-17; "Count II: Discrimination on the Basis of Sex in Violation of the Civil Rights Act Against Defendant Sandia Corporation," Proposed Third Amended Complaint ¶¶ 139-53, at 17-19; "Count III[:] Retaliation Against Defendant Sandia Corporation," Proposed Third Amended Complaint ¶¶ 154-63, at 19-20; "Count IV: Violation of the Age Discrimination in Employment Act," Proposed Third Amended Complaint ¶¶ 164-74; and "Count VI: The Equal Pay Act of 1963," Proposed Third Amended Complaint ¶¶ 189-93, at 21-22.

**9.      The Response.**

Sandia Labs responds to the Motion to Withdraw and Amend with the Defendant's Response to Plaintiff's Motion to Withdraw Prior Motion to Amend and Substituted Motion to Amend Complaint, filed September 23, 2016 (Doc. 76)("Response").  The Response largely reiterates the arguments that Sandia Labs make in the Motion for Leave to Substitute Second Amended Complaint Response, and further argues that

> the most recent motion to amend has been denied, so there is nothing to withdraw, and further amendment is untimely, dilatory, and futile.  Plaintiff Benavidez, Ms. Baca, Ms. Luna-Casias, and Ms. Ortiz all fail to state prima facie Equal Pay Act Claims, and the remainder of the causes of action that Ms. Baca, Ms. Luna-Casias, and Ms. Ortiz want to bring are time barred.

Response at 1.  The Response thus explains that the "amendment deadline for Plaintiff in the Scheduling Order expired on April 30, 2016. . . .  The Scheduling Order was ultimately vacated, but not until June 10, 2016."  Response at 2.  Then, after a recap of the case's procedural history of the case, the Response asserts -- with respect to the Proposed Third Amended Complaint -- that "using ordinal counting, it marks the fifth attempt by Ms. Benavidez and the third attempt by the three putative plaintiffs at articulating a complaint."  Response at 5 (emphasis omitted).

The Response then argues that the Court should not allow Benavidez to withdraw the Motion for Leave to Substitute Second Amended Complaint, because "escaping an adverse ruling is not a legitimate basis for withdrawing a motion." Response at 5-6 (citing Selman v. Delta Airlines, 2008 WL 6022017 (D.N.M. 2008)(Browning, J.)("Selman"). The Response provides that, in that case:

> Rather than suffer an adverse ruling on the law at the start of the case, the movant preferred to just withdraw its motion. Finding that to be a reason that did not justify withdrawal, the Court further noted that it had already invested substantial effort and time in addressing the issues in the underlying motion and that it had an extensive draft opinion started. It was apparent that the legal questions in the motion would need to be resolved eventually in the case anyway, and so the Court in Selman denied leave to withdraw.

Response at 6. Accordingly, the Response contends that this case's facts are similar and counsel in favor of denying the Motion for Leave to Substitute Second Amended Complaint under Selman. See Response at 6.

The Response further argues that the "[t]he Motion to Withdraw should also be denied for the additional reason that it is moot and untimely." Response at 6-7 (citing Estate of Gonzales v. AAA Life Ins. Co., 2012 WL 1684599 (D.N.M. 2012)(Browning J.)("Gonzales"); United States v. Thomas, No. CR 03-0569 JB, Memorandum Opinion and Order at 19, filed July 8, 2004 (Doc. 242)("Thomas")). The Response thus explains:

> In Gonzales, the motion to strike was denied as moot, and in Thomas the motion to join was denied as untimely. Those concepts apply with full force here. Like an employee who says she quits after she has already been fired, Plaintiff's Motion to Withdraw is moot and late. The motion she seeks to withdraw has already been denied. Accordingly, for the foregoing reasons alone, the Motion to Withdraw should be denied and the case dismissed with prejudice.

Response at 6-7.

Next, turning to the "amend" component of the Motion to Withdraw and Amend, the Response argues the Court should deny amendment, because the "Plaintiff is late, she unduly

delayed, and she was dilatory in seeking amendment." Response at 8. This statement is true, the Response argues, because the amendment deadline had expired, the Proposed Second Amended Complaint retains the deficiencies resulting in the Court's dismissal of the First Amended Complaint in the Preemption MOO, this amendment is the fifth attempt at some amendment of her complaint, and Benavidez' "choice to forgo both a tolling agreement and the option to file separate lawsuits while they still had time to do so." Response at 8-9. Additionally, the Response argues that "amending to add an Equal Pay Act Count is futile because Plaintiffs do not have a prima facie case." Response at 9. According to the Response,

> [t]he Equal Pay Act, 29 U.S.C § 10 206(d)(1) ("EPA")[,] prohibits employers from 'paying wages to employees . . . at a rate less than the rate which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions' unless enumerated exceptions apply.

Response at 9-10. In this case, the Response argues, Benavidez does "not even allege that they were paid less than men performing substantially equal work," Response at 10, and thus "Plaintiffs cannot establish a prima facie case of discrimination under the EPA," Response at 11.

Last, the Response argues that amending the First Amended Complaint to add the additional three Plaintiffs is futile, because "most of their counts are time barred." Response at 11. The Response explains:

> The [Proposed Third Amended Complaint] would add three new plaintiffs to the case by amendment, with causes of action under Title VII, the Americans With Disabilities Act, the Age Discrimination in Employment Act, and the New Mexico Human Rights Act, but . . . the limitations periods under those federal statutes expired in late February 2016 and for the Human Rights Act, the limitations period expired in late April 2016. Giving Plaintiffs the benefit of the doubt and assuming that an amended complaint is deemed filed for statute of limitations purposes when the motion to amend is filed rather than when it might be granted, Koch v. Shell Oil, 8 F. Supp. 2d 1264, 1268 (D. Kan. 1998), the filing date would be August 31, 2016, the date of the Motion to Withdraw [and Amend] (Doc. No. 71) with its attached [Proposed Third Amended Complaint]. This

would still leave the state claims tardy by about four months and federal claims by about six.

Response at 11-12. Further, while "Sandia recognizes that Rule of Civil Procedure 15 allows for certain amendments to relate back to the original pleading," Sandia Labs argues that relation back is not the case here, because

> Although that rule expressly applies to adding new defendants ("the amendment changes the party or the naming of the party against whom a claim is asserted"), the drafters contemplated its use in adding new plaintiffs as well. . . . Accordingly, courts do not dismiss out of hand proposed amendments adding plaintiffs. Instead, they apply the same standard that would be used to add new defendants. One key part of that standard -- mistake concerning the proper party's identity, Rule 15(c)(1)(C)(ii) -- is absent from this case.

Response at 12. The Response thus argues that, for the proposed additional Plaintiffs, there should not be relation back of the statute of limitations to the time the First Amended Complaint was filed. See Response at 12-15. The Response thus concludes by stating that "[e]nough is enough." Response at 15.

### 10. **The Reply.**

Benavidez replies to the Response with her Reply in Support of Plaintiff's Motion to Withdraw Prior Motion to Amend and Substituted Motion to Amend Complaint, filed September 28, 2016 (Doc. 79)("Reply"). The Reply begins by recapping the procedural history, specifically highlighting that Benavidez had initially pursued this lawsuit in state court pro se, that Benavidez had made sure all parties and the Court were aware of the additional Plaintiffs and their impending exhaustion of administrative remedies, and that, "[u]ntil this Response, Defendant has not objected substantively to Plaintiff's proposed amendments or the addition of the three other plaintiffs. In their Response to this Motion, Defendants have attached evidence to attack Plaintiff's Equal Pay Act Claim, which was proposed originally in February. Otherwise, Defendant's objections have been procedural." Reply at 1-5. The Reply then turns to its

argument in favor of the Motion to Withdraw and Amend, as that motion pertains to the withdrawal, arguing that, "[p]ursuant to Local Rule 7.7, Plaintiff may withdraw a document from consideration by the Court by filing and serving a notice of withdrawal, which identifies the document to be withdrawn and with the consent of the parties or the Court." Reply at 5. The Reply then cites to Selman, as did the Response, explaining that, in Selman, the Court

> denied the motion to withdraw, considering the reasons for the plaintiff's request to withdraw (to avoid an adverse ruling), the need to decide the motion at a future date, the parties' need for an answer to the legal questions, and the effort the Court had expended in reviewing and working on the motion.

Reply at 5. Here, the Reply argues, the Court has not "entered an order" on the Motion for Leave to Substitute Second Amended Complaint, and thus "requests this Court to permit Plaintiff to notice withdrawal of her previous pleadings related to the motion to amend and substitute with the current briefing on the issue." Reply at 7. Contrasting this case with Selman, the Reply contends that Benavidez is not seeking to avoid an adverse ruling, and instead

> requests withdrawal in order to (1) conform to the Court's professed preference that the proposed amended complaint exclude the state law claims that were the subject of the June orders and (2) to maintain the pendency of briefing on amendment that was begun in February 2016. Withdrawal would not prejudice Defendant -- Plaintiff has eliminated the state law claims. Plaintiff acted as quickly as possible after the Aug. 25, 2016 hearing to circulate and file a motion to withdraw so as to avoid the Court investing time and effort in a ruling on the pending motion to amend.

Reply at 7.

Turning next to the Motion to Withdraw and Amend's request to amend the Proposed Second Amended Complaint, the Reply argues that rule 15(a)

> permits amendment with leave of court and the court should freely give leave when justice so requires. Generally, refusal of leave to amend is only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.

Reply at 6 (internal quotation marks and citation omitted). The Reply then argues that the amendment should relate back to the date of the original pleading,

> because Plaintiff moved to amend the complaint to add the other plaintiffs, rather than file a separate lawsuit, because the Court and Defendant expressed a preference for that course. During the pendency of the motion to amend, until now, Defendant has not argued that the motion to amend did not toll the time to file. The matter was discussed in January, May, July, and August, and Defendant did not raise the issue. Plaintiff relied on Defendant's acquiescence to the amendment procedure in late January 2016, at a time when the other proposed plaintiffs could overcome an objection by filing separate lawsuits.

Reply at 7. Alternatively, the Reply argues, the "limitation period tolled at the filing of the motion to amend on Feb. 10, 2016." Reply at 7. Accordingly, the Reply contends that the "Plaintiff's motion to amend tolled the time to file and if Plaintiff is permitted to file the proposed amended complaint, Plaintiff's claims in the proposed complaint relate back to the original complaint under Rule 15(c)(1)(B), because Plaintiff's claims arise from the same facts as the original complaint." Reply at 7. The Reply concludes by stating that the "Plaintiff and the other proposed plaintiffs have not sat on their rights, but have actively pursued amendment and preservation of claims. Plaintiff asks that the Court view the history of proceedings," and grant the Motion to Withdraw and Amend. Reply at 10.

**11.     The Hearing.**

The Court held a hearing for the Motion to Withdraw and Amend on September 29, 2016. See Transcript of Hearing, taken September 29, 2016 ("September Tr."). The Court began the hearing by giving the parties its inclination:

> I'm inclined to grant the plaintiff's motion to withdraw the prior motion to amend. I orally denied it, but I'm going to have to [put] an opinion together, and it's going to be difficult for the Court to you know go back and try to indicate exactly what it would allow [and] what it wouldn't allow. It seems to me that there is close to agreement that the plaintiffs have pulled out most of the state law claims that the Court dismissed earlier. I know there are some disputes and we'll get to those in a moment. But I think just from a Court standpoint it's going to be a

whole lot easier for the Court to deal with the substituted motion to amend complaint than try to deal with the prior motion to amend. I think I know the defendants would like an opinion on it, but it just doesn't seem to me to make sense for me to go do that work if plaintiffs haven't ask[ed] me to do it. And I think the record is clear. So I think as far as preserving the defendant's arguments about multiple motions and things, that's all clear. So I'm inclined to grant that. I tend to allow plaintiffs to be masters of their pleadings. If they don't want the Court to decide that motion, really parties in general, if they don't want the Court to decide the motion unless there is good reason. In the case that, where I did refuse to allow a motion to withdraw in that case I was going to have to reach the issue anyway so it was one of those things where it wasn't going to save the Court any work and the Court was going to have to reach those issues and the parties were going to have to deal with them sometime. We'd already gotten to that point, I didn't think it made sense to allow the plaintiffs to withdraw their motion, but in this case with so much work ahead, I'm inclined to do it. As far as the substituted motion to amend the complaint you know I'm always reluctant to allow or to have claims go by the way side on things other than the merits. So I probably will try my best where I do have discretion to allow the plaintiffs to file this amended complaint. I guess the question I have is you know, is it truly time barred and is there, do I have any discretion here? Is this something where it would be futile? So I probably will treat the substituted motion to amend largely as a motion to dismiss and use you know pretty rigorous standards to see if there is a complaint and case left. So those are my thoughts . . . I need to probably get that motion to amend, the plaintiffs wanting to withdraw has been on my docket for a while and I probably need to get it off. So what I'm inclined to do is grant that motion to withdraw prior motion to amend get that prior motion off my calendar and then try to turn probably not this week, but next, try to get to it in October, get you an opinion out on whether we're going to h[ear] the substituted motion to amend the complaint and whether we've still got a case here or not. But those are my thoughts.

September Tr. at 2:1-4:9 (Court). At this point, Benavidez indicated that her only hesitation with the Court's inclination was whether bifurcating the Motion to Withdraw and Amend in such a manner would create "a time lapse between the two of them. The hope was that the substituted motion to amend was sort of simultaneously filed to maintain that pending motion to amend from February." September Tr. at 4:16-23 (Wray). Essentially, Benavidez argued that the analysis for the tolling of the statutory limitation date differs between Benavidez and the proposed additional Plaintiffs; for Benavidez, she asks "the Court to relate back the new complaint under 15(a)(1)(b) [because] it arises out of the same causes of action," and for the new

Plaintiffs, Benavidez is "not asking the Court to relate their motion back to the original filing," but instead argues that either "the 90-day period [after exhaustion of administrative remedies] was waived, it was tolled and time actually still remains, or equitable tolling can apply to permit filing of the substituted amended complaint." September Tr. at 7:2-8:9 (Wray). The Court then inquired why, with the potential limitations, Benavidez did not file separate complaints, to which Benavidez replied that, "[a]t the January hearing, we got a sort of consensus that everybody preferred for it to happen together. . . . If we filed new complaints even then the 90-day period had expired and we would have to be standing in front of somebody making these arguments . . . ." September Tr. at 8:14-24 (Wray). Benavidez then argued that the claims should not be time barred, because "all the arguments are intertwined . . . and, as defendant noted in their briefing on this issue, defendant had indicated no opposition to tolling this period." September Tr. at 9:3-25 (Wray).

Sandia Labs then took up argument and argued that

a motion to amend that is not granted doesn't have relation back ability. . . . [Y]ou can't toll a statute with a motion to amend that isn't granted and . . . that's what we have here. And so what we're left with is three plaintiffs who are untimely and are trying to [ride the coat] tails of one plaintiff.

September Tr. at 10:13-25 (Viets). Sandia Labs further disagreed that the parties had agreed to toll the limitations period, because, while they had originally "floated" the idea to Benavidez, "they made a conscience decision not to engage in discussions about a tolling agreement. [And t]hey made a conscious decision not to file separate lawsuits." September Tr. at 11:1-19 (Viets). Sandia Labs then discussed with the Court its alternative arguments why, apart from it being time barred, the Court should deny the Motion to Withdraw and Amend. See September Tr. at 14:12-15 (Viets). A couple of Sandia Labs' arguments were that the Motion to Withdraw and Amend was delayed and dilatory, but the Court quickly indicated that it was not going to agree

with those arguments.  See September Tr. at 14:21-23 (Viets, Court).  Sandia Labs thus argued that Benavidez' equal-pay argument is futile, because the "plaintiffs have to allege and prove that there were men who performed [']substantially equal work[']. . . .  [A]nd there aren't any allegations in even the latest iteration of the proposed complaint that there were men who performed substantially equal work, but were paid more."  September Tr. at 16:3-10 (Viets).  After the Court pressed Sandia Labs whether there were futility arguments for the other claims in the Proposed Third Amended Complaint, Sandia Labs indicated that its only argument on those claims was that they were time barred, delayed, and dilatory.  See September Tr. at 17:18-22 (Viets).  To that point, Sandia Labs reminded the Court that: (i) the case management deadlines, although subsequently vacated, were missed; (ii) the Proposed Second Amended Complaint fails to remove state law claims; (iii) there have been a large number of amendments; and (iv) Sandia Labs has not agreed to any waiver or tolling of any statutory limitations.  See September Tr. at 17:23-19:22 (Viets).  Sandia Labs then turned, specifically, to the concept of relation back to the original First Amended Complaint, and explained that "when a plaintiff seeks to add another plaintiff to the lawsuit rule 15(c)(1)(c) . . . applies . . . and the case law under it requires that there [is] some kind of mistake in the identity of the plaintiffs."  September Tr. at 21:7-18 (Viets).  Thus, Sandia Labs argued, the three additional Plaintiffs were untimely, because the Motion for Leave to Substitute Second Amended Complaint has not been granted -- the only way that the additional Plaintiffs' claims could be timely.  September Tr. at 22:5-9 (Viets).  Sandia Labs, in conclusion, pointed the Court to remaining references to state law claims in the Proposed Third Amended Complaint.  See September Tr. at 23:2-20 (Viets).

Benavidez then responded, initially ensuring that all parties and the Court knew that she had intended to remove all state law claims, and that the references remaining were not claims.

See September Tr. at 24:3-18 (Wray). Benavidez further explained that the additional Plaintiffs were not sitting on their rights and that instead their strategy simply was to ensure that the Court "only has to look at one thing in front of it." September Tr. at 25:1-11 (Wray). Benavidez then reminded the Court that, in this case, when the Plaintiffs filed the Motion for Leave to Substitute Second Amended Complaint, their statutory limitation period had not lapsed. See September Tr. at 26:11-17 (Wray). Last, Benavidez insisted that Sandia Labs' offer -- in a footnote -- to toll the limitations period for the claims of the three additional Plaintiffs was not ignored and that Sandia Labs did not renew their offer in the hearing on the issue. See September Tr. at 27:1-7 (Wray). According to Benavidez, the offer to toll the limitations is irrelevant, because the parties agreed to handle the issue by instead amending the First Amended Complaint. See September Tr. at 27:15-28:7 (Wray). Regarding the alleged futility of the Proposed Third Amended Complaint's equal-pay argument, Benavidez argued that the claim was well pled and that the issue would be developed in discovery. See September Tr. at 28:14-29:6 (Wray). In conclusion, Benavidez indicated that she is content with the Court's suggestion that it bifurcate the Motion to Withdraw and Amend so long as, despite withdrawal, her filing of the Motion for Leave to Substitute Second Amended Complaint "tolled the 90-day period," and then while the withdrawal component of the Motion to Withdraw and Amend might have stopped the tolling -- the simultaneous amendment component of the Motion to Withdraw and Amend restarted the tolling immediately. September Tr. at 29:17-30:3 (Wray). The Court then took the Motion to Withdraw and Amend under advisement, indicating that it would issue an order soon after the hearing granting the Motion to Withdraw and Amend's request to withdraw the Motion for Leave to Substitute Second Amended Complaint. See September Tr. at 30:6-31:9 (Court).

12.     **The Order**.

On September 30, 2016, the Court issued an Order in which it granted in part the Motion

to Withdraw Prior Motion to Amend.  The Order provided:

> The Court will grant the part of the Motion to Withdraw and Amend by which
> Plaintiff Linda Benavidez seeks to withdraw her prior Motion for Leave to
> Amend Complaint, filed February 10, 2016 (Doc. 30).  The Court will take the
> other part of the Motion to Withdraw and Amend, by which Benavidez seeks
> leave to file a substituted, third amended complaint, under advisement.

Order at 1.

13.     **The Amendment MOO**.

In its Amendment MOO, regarding Benavidez' request to amend and add the proposed

Plaintiffs, the Court explained:

> [T]he Court . . . concludes that amendment adding them to the lawsuit
> would be futile, because their claims are time barred.  The Court understands that
> Benavidez and her attorneys were in a position where they considered the claims
> of the three proposed Plaintiffs as being related to Benavidez' claims, and as
> arising from the same circumstances at Sandia Labs, and that Sandia Labs on
> numerous occasions indicated that they would prefer to defend one lawsuit, as
> opposed to four separate lawsuits.  Indeed, Sandia Labs offered to toll the statute
> of limitations appurtenant to the potential Plaintiffs' federal claims -- yet,
> Benavidez and her attorneys did not engage in any relevant colloquy with Sandia
> Labs on this point or assent to that offer to toll in some other manner.  Instead,
> Benavidez chose to try to amend her First Amended Complaint to include the
> three proposed Plaintiffs as parties to the Proposed Second Amended Complaint.
> The Court would not have pursued such a strategy; Benavidez and the proposed
> Plaintiffs were more intent on preserving the record for appeal with respect to the
> state law claims than they were in timely filing the proposed Plaintiffs' claims.
> The proposed Plaintiffs ought have recognized, or at least considered, that the
> Court was going to dismiss Benavidez' First Amended Complaint in its entirety,
> the only complaint before the Court -- particularly after receiving the Court's
> inclination at the January hearing.  Thus, the potential Plaintiffs' decision to
> pursue their claims against Sandia Labs in this case by simply waiting for
> Benavidez' receipt of leave to amend the First Amended Complaint to add them
> as parties was a risky strategy given that the clock was ticking.  The Court gave
> Benavidez and the proposed Plaintiffs the power to be the masters of their own
> lawsuit -- indeed, the Court specifically instructed Benavidez to "make your own
> decision whether you want to file separate cases" given the proposed addition of
> new Plaintiffs, and

> if you need to file separate cases, you can. If I get the opinions out
> and you want to bring it back here, [we can] pick this up, I'll just
> hold this [Proposed Second Amended Complaint] for the time
> being, I won't rule on it, and then you can make a decision. You'll
> just have to be the judge of your own time.

May Tr. at 6:7-16 (Court). The prudent thing to do would have been to file a separate lawsuit to beat the statute of limitations and then seek to consolidate if they wanted to litigate all of the cases together. Because Benavidez' case was first filed, and has the lowest number, the tradition and custom in this district is to consolidate within that lowest number. It took the Court some time to issue the Preemption MOO, because it had not done a lot of work in the two main areas at issue -- LMRA preemption and federal enclave jurisdiction -- and had not extensively written on these, in this context, before. Also, the parties argued the federal enclave issue at the hearing, but had not extensively briefed that jurisdictional issue, which was new to the Court. The Court thus had to do a lot of that research on its own. The proposed Plaintiffs had, however, the opportunity to file separate cases before the statutory period had lapsed -- although, the Court is aware that its admonition in May would potentially not have fixed the problem, as the statutory period had indeed already lapsed at that time. The Court notes, however, that, in May, the Motion for Leave to Substitute Second Amended Complaint had not yet been withdrawn -- that is, there may have been an argument that the statutory period had been tolled by the filing of the state-law-claim-riddled Proposed Second Amended Complaint which the Court had indicated it would deny, at least in part, at the August hearing. The decision not to file separate cases -- or to enter into a tolling agreement with Sandia Labs -- before the statutory period's lapse, now manifesting itself as a risky decision, has become the operative error rendering the proposed Plaintiffs' claims futile.

Given that Benavidez has now withdrawn the Motion for Leave to Substitute Second Amended Complaint, the proposed Plaintiffs' only chance at successfully getting a complaint before the Court which is not deficient on account of the lapse of the statutory period would be if the Proposed Third Amended Complaint relates back to a time before the lapse. The Court, however, can see no sound way in which the Proposed Third Amended Complaint might somehow relate back to the timing of the First Amended Complaint -- in which the three additional Plaintiffs were not named -- or even the timing of the withdrawn Proposed Second Amended Complaint, which the Court notes would satisfy the statutory requirement.

Amendment MOO at 59, 2017 WL 2266854, at *27. As grounds for its conclusion, the Court

provided:

> The limitations period for the federal claims brought by the proposed Plaintiffs

expired in late February, 2016. See Response at 3-4. The limitations period at issue in this case is a 90-day deadline to file suit after receipt of a right-to-sue letter from the EEOC, and that period covers all of Benavidez' and the proposed Plaintiffs' federal claims -- save for the Equal Pay Act [claim]. See 42 U.S.C. § 2000e-5(f)(1)(providing limitation period under Title VII); 42 U.S.C. § 12117(a) (providing limitation period for the ADA, specifically adopting Title VII's deadlines); 29 U.S.C. 626(e)(providing limitation period for ADEA). Baca received her right-to-sue letter on November 30, 2015; Luna-Casias received hers on November 30, 2015; and Ortiz received hers on November 30, 2015. See Proposed Amended Third Complaint ¶¶ 9-18, at 2-3.

Amendment MOO at 59, 2017 WL 2266854, at *27 n.8. The Court then considered rule 15 of the Federal Rules of Civil Procedure, which governs when an amendment to a complaint will relate back to the timing of the complaint's original filing. See Amendment MOO at 57-68, 2017 WL 2266854, at *28. For context, rule 15(c) reads:

> **(1) When an Amendment Relates Back.** An amendment to a pleading relates back to the date of the original pleading when:
>
> > **(A)** the law that provides the applicable statute of limitations allows relation back;
> >
> > **(B)** the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out -- or attempted to be set out -- in the original pleading; or
> >
> > **(C)** the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> >
> > > **(i)** received such notice of the action that it will not be prejudiced in defending on the merits; and
> > >
> > > **(ii)** knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c). The Court concluded that rule 15(c) does not provide explicit guidance regarding the addition of new plaintiff-parties. See Amendment MOO at 60-68, 2017 WL 2266854, at *28-29. The Court stated:

Despite rule 15(c)(1)(C)'s express language, however, the Court notes that it is apparent that the drafters of rule 15(c) appear to have contemplated its application to the addition of new plaintiffs. See Fed. R. Civ. P. 15(c) advisory committee's notes to 1966 amendment ("The relation back of amendments changing plaintiffs is not expressly treated in revised Rule 15(c) since the problem is generally easier. Again the chief consideration of policy is that of the statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs."). Accordingly, most courts do not automatically dismiss amendments proposing to add new plaintiffs and instead generally apply the same standard used to add new defendants -- rule 15(c)(1)(C)(i) and (ii) -- when such is applicable. See, e.g., Leachman v. Beech Aircraft Corp., 694 F.2d 1301, 1308-10 (D.C. Cir. 1982)(holding that there is a "need to limit relation back of claims asserted by new plaintiffs in some way beyond the 'conduct, transaction, or occurrence' test that applies to relation back of amendments generally. Without some limit, total strangers with claims arising out of a multi-victim incident might join pending actions long after the statute of limitations had lapsed. That would allow the tardy plaintiffs to benefit from the diligence of the other victims and, more importantly, could cause defendants' liability to increase geometrically and their defensive strategy to become far more complex long after the statute of limitations had run. Even if, as here, there were no showing of specific prejudice in the sense of lost or destroyed evidence, defendants would still be deprived of their interest in repose. At some point, defendants should have notice of who their adversaries are," and, further stating that "[t]he point of the courts' consideration of identity of interest is that that factor ensures that the old and new plaintiffs are sufficiently related so that the new plaintiff was in effect involved in the proceedings unofficially from an early stage'" (internal citations and quotation marks omitted)(alterations omitted)); Pierce v. Long John Silver, Inc., 1996 WL 153563 (E.D. Pa. 1996)(relying on Nelson v. Cnty. of Allegheny, 60 F.3d 1010, 1014-16 (3d. Cir. 1995), and holding that no matter the plaintiff/defendant status of the party to be added, the analysis entails whether "defendants (A) received such notice that they will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought with the original claims); Ambraziunas v. Bank of Boulder, 846 F. Supp. 1459, 1467 (D. Colo. 1994)(Kane, S.J.)("They have not, however, established that Defendants had notice of their additional claims or that there was any mistake in the original complaint to merit the relation back of the claims of the new Plaintiffs to the filing of the original complaint on June 30, 1993."). The Court is at a loss as to why rule 15(c)(1)(C)'s plain language is still at odds with the drafter's commentary, but concludes, nonetheless, that the drafter's commentary does not, anyway, encompass the addition of these proposed Plaintiffs.

Amendment MOO at 61-63, 2017 WL 2266854, at *28-29. The Court also stated:

The Court wonders, for example, whether the commentary in fact purports to create a theory by which the addition of new Plaintiffs might be accomplished by reference only to rule 15(c)(1)(B), given the general incompatibility between rule 15(c)(1)(C)'s language and the addition of plaintiff-parties -- i.e., there is only a narrow set of facts, as narrow as that pertaining to party-defendants, upon which relation back of amendments adding party-plaintiffs exists. Cf. Leachman v. Beech Aircraft Corp., 694 F.2d at 1308-10.

Amendment MOO at 63-64, 2017 WL 2266854, at *28-29 n.11. The Court, accordingly, concluded:

In light of rule 15(c)(1)(C)'s plain language, then, and the incompatibility of this case with the general body of case law authorizing the relation back of an amendment adding new plaintiffs under rule 15(c) at large, the Court thus concludes that the proposed Plaintiffs' complaints do not relate back to the filing of the First Amended Complaint. Because of this conclusion, the Proposed Third Amended Complaint's addition of the proposed Plaintiffs would be futile, because -- as all parties agree -- these federal employment discrimination claims are time barred.

Amendment MOO at 65-68, 2017 WL 2266854, at *30. The Court also counseled the parties that:

this result may seem harsh, but also notes that the proposed Plaintiffs had every opportunity to file their respective actions in federal court. Indeed, Sandia Labs -- to no avail -- offered to toll the limitations period for these proposed Plaintiffs, stating -- in response to Benavidez' Motion to Stay Proceedings, filed November 12, 2015 (Doc. 10) -- that it was "amenable to an agreement tolling the statutes of limitations for claims that could only be brought after the exhaustion of Plaintiffs' administrative remedies, which . . . were still unexhausted or newly exhausted." Defendants' Response to Plaintiff's Motion to Stay Proceedings at 3 n.4, filed November 25, 2015 (Doc. 19). At the hearing, Benavidez argued that they did not take Sandia Labs up on the negotiations, because it was offered in a footnote and they thought everyone would be happy with entry of an amended complaint. See Tr. at 26:18-28:7 (Wray). The Supreme Court has said, in this context, that

[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants. As we stated in Mohasco Corp. v. Silver, 447 U.S. 807, 826 [] (1980), "[i]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law."

<u>Baldwin Cty. Welcome Ctr. v. Brown</u>, 466 U.S. 147, 152 (1984). Thus, although "motions to amend brought in district court should be freely granted," such favor for amendment does not exist where "the proposed amendment would result in unfair prejudice to the non-movant or would be futile." <u>Thompson v. Colorado</u>, 60 F. App'x 212, 215 (10th Cir. 2003). Additionally, Benavidez and the proposed Plaintiffs suggest that the Court apply the doctrine of equitable tolling -- which applies in "exceptional circumstances," <u>Yang v. Archuleta</u>, 525 F.3d at 928 ("Generally, equitable tolling requires a litigant to establish two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.") -- or some form of waiver, because the Proposed Second Amended Complaint was timely filed; the Court, however, sees no such exceptional circumstances, or sound reason to invent a waiver on these facts because of the existence of the now-withdrawn Proposed Second Amended Complaint. Further, the Court has a difficult time saying that the proposed Plaintiffs acted diligently to protect their rights. Nothing prevented them from filing separate lawsuits to beat the running of the limitations period or from engaging in negotiations with Sandia Labs to enter into a tolling agreement. And Sandia Labs did not do anything to prevent the proposed Plaintiffs from filing separate lawsuits. Instead, Sandia Labs unequivocally tried to help the proposed Plaintiffs by suggesting that they enter into tolling agreement negotiations. The proposed Plaintiffs pursued a different strategy, and the Court should not create new equitable or waiver doctrines to save them from this deliberate decision. Here, the amendment to add the proposed Plaintiffs would be futile, because, as in the case for intervening plaintiffs -- a situation similar to this -- "an intervening plaintiff should not be permitted to 'piggyback' on the claims of an earlier plaintiff in order to escape the statutory bar that would normally shield the defendant from liability as to the intervenor." <u>Weber v. Mobil Oil Corp.</u>, 506 F.3d 1311, 1315 (10th Cir. 2007). Under rule 15(c), the Proposed Third Amended Complaint may not relate back to a time which satisfies the limitations period for the proposed federal claims, rendering proposed Plaintiffs' addition futile.

Amendment MOO at 66-68, 2017 WL 2266854, at *30.

**14.**     **<u>The Motion to Reconsider</u>.**

The Motion to Reconsider requests partial reconsideration of the Court's Amendment MOO under rule 59(e) of the Federal Rules of Civil Procedure, or the Court's "inherent authority to reconsider interlocutory rulings." Motion to Reconsider at 1. Benavidez, specifically,

requests reconsideration of the portion of Court's ruling that amending the complaint to include Ms. Baca, Ms. Ortiz, and Ms. Luna-Casias ("Second Plaintiffs") is futile. Specifically, Plaintiff Benavidez asserts that (1) the complaint related to Plaintiffs Ms. Baca, Ms. Ortiz, and Ms. Luna-Casias should be deemed timely for the purposes of 4 USC Section 2000e-5(f)(1)1; (2) after

entry of the January 17, 2017 Memorandum Opinion and Order, time remained on the 90-day period in which the Second Plaintiffs could act; and, (3) the time to file the Second Plaintiffs' complaint was tolled until the disposition of the motion to amend.

Motion to Reconsider at 1. After recapping what she considers were the salient procedural facts of this case, Benavidez explains that she has filed

an Amended Complaint in this case, which include[s] only Plaintiff Benavidez and conform[s] to the Court's instructions, on January 23, 2017. . . . Also on January 23, 2017, the [proposed] Plaintiffs filed separate federal lawsuits. Those three separate lawsuits were timely and appropriate, because the February 2016 motion to amend tolled the 90-day period, time remained on the period that began to run again on the entry of the Court's January 17, 2017 Order, and those complaints needed to be filed in order to preserve any time that might remain on the 90-day period.

Motion to Reconsider at 5. Benavidez asks the Court to "partially reconsider" its Amendment MOO "for three reasons." Motion to Reconsider at 5. First, Benavidez argues that the Motion to Withdraw and Amend attached "a proposed amended complaint that did nothing more than remove state law claims [from the Proposed Second Amended Complaint] pursuant to the Court's expressed preference. The withdrawal and substitution was simultaneous and the proposed [Third Amended Complaint] that was attached should have been deemed filed as of February 2, 2016," the date Benavidez filed "the original motion to amend [with the Proposed Second Amended Complaint. Nothing happened between February 2, 2016 and August 31, 2016 that would cause the 90-day period to lapse." Motion to Reconsider at 5. Second, Benavidez argues that her filing of the Motion to Withdraw and Amend "tolled the 90-day period, without lapse from February 2, 2016, until the January 17, 2017 [Order]. After entry of the Order, [the proposed] Plaintiffs had 26 days remaining in the 90-day period to take action and as a result, amendment to include [the proposed] Plaintiffs would not be futile." Motion to Reconsider at 6. Third, Benavidez contends that if the Motion to Withdraw and Amend

only tolled the 90-day period until the Court granted or denied the requested relief, that denial did not happen until January 17, 2017. The tolling therefore either stopped on January 17, 2017 and the 90-day period continued to run or the time did not expire until January 17, 2017. Under those circumstances, Plaintiff requests the Court to reconsider based on the manifest injustice.

Motion to Reconsider at 6. Accordingly, Benavidez suggests:

The parties did not face the question of when the amended complaints were to be "deemed filed" complaint [sic] and or whether the 90-day period tolled until the Aug. 25, 2016 hearing or later, until Plaintiff circulated the proposed Motion to Withdraw and [Amend] prior to filing. With the benefit of the Court's detailed explanation of the timing of events as it pertains to the Motion to Withdraw and [Amend], Plaintiff requests the opportunity to expand her response on that issue so that the Court has the opportunity to address the effect of the "deemed filed" doctrine and the tolling case law.

Motion to Reconsider at 6.

Benavidez, then, reaches her legal arguments, and first explains: "The present motion to reconsider is governed by either Fed. R. Civ. P. 59(e) or by the Court's inherent discretionary power, depending on the finality of the order." Motion to Reconsider at 6-7. Benavidez argues that, if the Amendment MOO is "a decision on the merits . . . [, a] timely motion filed pursuant to Rule 59(e) may be granted if there has been an intervening change in controlling law, new evidence is available, or there is a need to correct clear error or prevent manifest injustice." Motion to Reconsider at 7 (internal quotation marks omitted). Benavidez also argues that, if the Amendment MOO is "considered interlocutory, reconsideration is within the Court's inherent authority . . . [and t]he appropriate factors for a court to consider in exercising its inherent authority to reconsider include conservation of judicial resources and the imposition of re-litigation on the party opposing reconsideration." Motion to Reconsider at 7.

Benavidez then discusses the law regarding what she calls "suspension of the 90-day filing period and deemed filed" doctrine. Motion to Reconsider at 8 (internal quotation marks omitted). Benavidez argues "[t]he substance of the claim filed with the EEOC is jurisdictional --

the district court claim must be within the scope of the administrative claim. '[T]he untimeliness of an administrative claim, although an exhaustion issue, is not jurisdictional.'" Motion to Reconsider at 8 (quoting <u>Green v. Donahoe</u>, 760 F.3d 1135, 1140 (10th Cir. 2014)). Consequently, Benavidez contends that "the 90-day filing period for Title VII civil actions 'is subject to waiver, estoppel, and equitable tolling.'" Motion to Reconsider at 8 (quoting <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. 385, 393 (1982)). Benavidez also explains that, "[g]enerally, if a motion to amend attaches the proposed amended complaint, the amended complaint is deemed filed as of the date of the filing of the motion to amend." Motion to Reconsider at 8 (citing <u>Kane County v. United States</u>, 934 F. Supp. 2d 1344, 1363-64 (D. Ut. 2013)(Waddoups, J.)).

Here, Benavidez reiterates that she brings three arguments before the Court as grounds for reconsideration of the Amendment MOO: (i) "whether the Proposed Third Amended Complaint should be deemed filed as of Feb. 2, 2016"; (ii) "whether the [Motion for Leave to Substitute Second Amended Complaint] tolled the 90-day period until the Court ruled on Jan. 17, 2017"; and (iii) "whether time remained on the 90-day clock after the Court's Jan. 17, 2017 [Amendment MOO]." Motion to Reconsider at 9. Because the Amendment MOO is "an order that is final" as to the proposed Plaintiffs, Benavidez argues that the "Court should consider Plaintiff's request for reconsideration under Rule 1-059(e) [sic], in order to prevent manifest injustice." Motion to Reconsider at 9 (internal quotation marks omitted). Regarding her asserted first ground for reconsideration, Benavidez explains that the Motion for Leave to Substitute Second Amended Complaint, filed on February 10, 2016, "satisfied the 2000e-5(f)(1) requirement to commence an action within 90 days of the right-to-sue notice," because it "attached the proposed amended complaint, including the Second Plaintiffs' claims." Motion to

Reconsider at 10.  Benavidez further explains that the purpose of the Motion to Withdraw and Amend was merely to remove the state law claims from the Proposed Second Amended Complaint in accordance with the Court's Preemption MOO, which the Court filed June 27, 2016.  See Motion to Reconsider at 10.  Benavidez also asserts that the Motion to Withdraw and Amend "purported to eliminate the state law claims and was otherwise nearly identical to the supplemental briefing[5] filed after the Court's order on the motion to dismiss" in the Preemption MOO.  Motion to Reconsider at 10.  Benavidez thus asserts:

> Defendant and the Court anticipated a new complaint would be presented that would eliminate the state law claims.  Plaintiff's Motion to Withdraw and [Amend] sought withdrawal of the original [Motion for Leave to Substitute Second Amended Complaint] and simultaneous substitution of a nearly identical motion to amend.  Plaintiff attached a proposed complaint that eliminated the state law claims and was otherwise identical to the complaint attached to the July supplemental briefing.  For these reasons, the [Proposed] Third Amended Complaint, which was attached to the Motion to Withdraw and [Amend], should be deemed filed on the date of the original [Motion for Leave to Substitute Second Amended Complaint], February 2, 2016.

Motion to Reconsider at 11.  According to Benavidez, the proposed Plaintiffs' Proposed Third Amended Complaint

> should be "deemed filed" on February 2, 2016.  The time tolled on February 2, 2017 [sic] when the Plaintiff filed a motion to amend.  On August 31, 2016, when Plaintiff filed the Motion to [Withdraw and] Amend, the time was still tolled.  Nothing happened on August 31, 2016 that could stop the suspension of the 90-day period -- Plaintiff did not dismiss a complaint without prejudice and did not abandon any claim or argument, nor did the Court grant or deny a motion.  Thus, even if the [proposed] Plaintiffs' [Proposed Third Amended Complaint] is deemed filed August 31, 2016, the complaints were still timely because on August 31, 2016, [proposed] Plaintiffs had brought an action within the suspended 90-day period.  As a result, the time would not have expired.

---

[5]The Court notes that the Supplemental Briefing makes minor changes to the Proposed Second Amended Complaint attached to the Motion for Leave to Substitute Second Amended Complaint.  See Supplemental Briefing at 1-2.  The Supplemental Briefing, in particular, renumbers paragraphs, discusses administrative grievances the Plaintiffs made, makes more specific allegations, adds a punitive damages claim, and changes the anticipated month of filing.  See Supplemental Briefing at 2.

Motion to Reconsider at 12.

Next, Benavidez argues that she filed the Motion for Leave to Substitute Second Amended Complaint on February 2, 2016, "and the 90-day clock did not expire until February 29, 2016. As a result 26 days remained on the clock when the [Motion for Leave to Substitute Second Amended Complaint] was filed and at no time did those days continue to tick until the January 17, 2017 [Amendment MOO]." Motion to Reconsider at 12. Benavidez states that she is not seeking additional time or an exception to the 90-day limitations period, but is instead arguing that the Motion for Leave to Substitute Second Amended Complaint "suspended the clock on February 17, 2016," and that

> the clock resumed ticking on Jan. 17, 2017, and on that date, time remained for Second Plaintiffs to filed separate complaints. [The proposed] Plaintiffs filed separate complaints on Jan. 23, 2017, in order to again stop the clock from continuing to tick. If time remained on the clocks, amendment to add the [proposed] Plaintiffs would not have been futile. If, however, the [Motion for Leave to Substitute Second Amended Complaint] is treated as a dismissal with prejudice or a denied motion to intervene, the clock may have run out as of Feb. 29, 2016.

Motion to Reconsider at 13-14. If that is the case, and the clock ran, Benavidez requests the Court "enter a judgment on behalf of Second Plaintiffs so that they can pursue an appeal as a last resort." Motion to Reconsider at 13-14.

Third, Benavidez argues that the February 2, 2016, Motion for Leave to Substitute Second Amended Complaint "tolled the 90-day period until entry of the January 17, 2017," Amendment MOO. Motion to Reconsider at 14. According to Benavidez, "the parties do not appear to disagree that the February 2, 2016 [Motion for Leave to Substitute Second Amended Complaint] stopped the clock running on the 90 days until the Court could rule." Motion to Reconsider at 14. Benavidez clarifies that "the parties disagree about the effect" of the Motion

to Withdraw and Amend on the Motion for Leave to Substitute Second Amended Complaint, and

that she

> does not request the Court to reconsider its ruling that equitable tolling does not apply because of Plaintiff's understanding that the parties had stipulated to the amendment, rather than the separate complaint, procedure . . . [and i]nstead, Plaintiff relies on the generally accepted principles that a limitation period is equitably tolled during the pendency of a motion affecting that limitation period.

Motion to Reconsider at 14 n.3; n.4. Benavidez contends: "'Principles of equitable tolling usually dictate that when a time bar has been suspended and then begins to run again upon a later event, the time remaining on the clock is calculated by subtracting from the full limitations period whatever time ran before the clock was stopped.'" Motion to Reconsider at 14 (quoting United States v. Ibarra, 502 U.S. 1, 3-4 n.2 (1991)). Benavidez explains that here, however, the "partial denial of the [Motion for Leave to Substitute Second Amended Complaint] indicates that the Court viewed Plaintiff's Motion to Withdraw and Amend as an order that granted dismissal without prejudice. Complaints that are dismissed without prejudice or denied motions do not toll a limitation period." Motion to Reconsider at 15. Benavidez then argues:

> In order for the February 2, 2016 [Motion for Leave to Substitute Second Amended Complaint] to not have continuously suspended the 90-day period . . . until entry of an order granting or denying relief, this Court would have to either deem the [Motion for Leave to Substitute Second Amended Complaint] denied as of August 31, 2016 or deem the August 31, 2016 Motion to Withdraw and [Amend] to be a voluntary dismissal of the proposed amended complaint without prejudice.

Motion to Reconsider at 15. Benavidez thus maintains that the Court never dismissed or denied her Motion for Leave to Substitute Second Amended Complaint, "and, as a result, the suspension of the limitation period that began of the [sic] Feb. 2, 2016 never lapsed." Motion to Reconsider at 15. In conclusion, Benavidez requests, "[o]n this basis, . . . the Court . . . reconsider its ruling that the 90-day period had already expired and rule that the Proposed Third Amended Complaint

should be deemed filed February 2, 2016 or otherwise timely filed." Motion to Reconsider at 16.

**15.     Notice of Errata.**

Benavidez filed a Notice of Errata, filed February 6, 2017 (Doc. 89). In the Notice of Errata, Benavidez primarily explains: "The correct date that the [Motion for Leave to Substitute Second Amended Complaint] was filed was February 10, 2016 and that date should be reflected throughout the Motion for Partial Reconsideration" in place of the incorrect date February 2, 2016. Notice of Errata at 1. Consequently, Benavidez also explains that she stated in the Motion to Reconsider that "26 days remained on the 90-day clock. Using the correct filing date of February 10, 2016, 18 days remained on the clock after the [Motion for Leave to Substitute Second Amended Complaint] was filed." Notice of Errata at 1.

**16.     The Motion to Reconsider Response.**

Sandia Labs filed the Defendants' Response in Opposition to Plaintiff's Motion for Partial Reconsideration of this Court's January 17, 2017 Memorandum Opinion and Order, filed February 16, 2017 (Doc. 90)("Motion to Reconsider Response"). Sandia Labs opposes reconsideration of the Amendment MOO, because

> [t]he Court correctly determined that the claims asserted by Ms. Baca, Ms. Ortiz, and Ms. Luna-Casias were untimely. They already had full and fair opportunity to be heard on the matter, [and] have not presented any supporting authority for their position, and there is no basis for the Court to reverse itself,

and also opposes Benavidez' "alternative request for entry of a judgment that might allow them to take an immediate appeal, because as also explained below, Ms. Baca, Ms. Ortiz, and Ms. Luna-Casias have filed new lawsuits against Sandia with essentially the same causes of action that they tried to join to this case." Motion to Reconsider at 1. Sandia Labs then provides its theory of the procedural history in this case, stating:

> Plaintiffs' narrative regarding the attempt by Ms. Baca, Ms. Ortiz, and Ms. Luna-

Casias to join this case is incomplete and misleading. Plaintiffs make it seem as if their decision on August 31, 2016, to withdraw their prior motion to amend and substitute it with yet another proposed amended complaint was a chivalrous act intended to expedite the lawsuit and save work for the Court. Plaintiffs present themselves as if they were simply trying to do the right thing in finally relinquishing their state law causes of action and have been victimized for it. In fact, Plaintiffs' August 31, 2016 Motion to Withdraw Prior Motion to Amend and Substitute Motion to Amend Complaint (Doc. 71) was the product of a problem that Plaintiffs created for themselves. Plaintiffs had plenty of opportunity months earlier to seek a timely amendment with a clean complaint or discuss entry into a tolling agreement, but instead they chose to gamble.

Motion to Reconsider Response at 2. Sandia Labs also explains that, because it defended Benavidez and the proposed Plaintiffs' administrative charges, it was fully aware of the omnipresent threat of litigation by all parties, and that its

preference was that it happen in a single lawsuit. Accordingly, as early as November 25, 2015, Sandia offered to discuss the possibility of an agreement to toll the statutes of limitations so that the causes of action belonging Ms. Baca, Ms. Ortiz, and Ms. Luna-Casias would not expire while they all waited for the administrative agencies to finish up and for the Court to rule on a pending motion to dismiss the case of Ms. Benavidez.

Motion to Reconsider Response at 2. Regarding the Preemption MOO, Sandia Labs explains that it was "willing to wait," because those issues would affect Benavidez, Baca, Ortiz, and Luna-Casias, but that Benavidez and the proposed Plaintiffs "did not respond to the overture regarding tolling." Motion to Reconsider Response at 2-3. Sandia Labs also reiterates that on

November 30, 2015, the EEOC dismissed the federal administrative charges of Ms. Baca, Ms. Ortiz, and Ms. Luna-Casias. . . . The clock, therefore, began to tick. Under each of the federal statutes they invoke, Ms. Baca, Ms. Ortiz, and Ms. Luna-Casias had 90 days to sue. . . . Because they never accepted the overture to toll the limitations periods nor (until a few days ago, after they lost this case) did they file separate lawsuits, time was wasting. Yet instead of doing the obvious, Plaintiffs elected to wait for the state agency to end its investigations too. The New Mexico Human Rights Bureau did so on January 27, 2016. On February 10, 2016, Plaintiff Benavidez moved to amend a first time, the amendment being to add Ms. Baca, Ms. Ortiz, and Ms. Luna-Casias to the case.

Motion to Reconsider Response at 3. Sandia Labs then identifies that

> [t]he problem was that the attempted amendment included not just the federal counts that were nearing expiration but also state law causes of action, some of which the Court had rather plainly stated at hearings on January 20 and May 16, 2016 were not expected to survive as to Plaintiff Benavidez. And indeed, none of them did. In an opinion on the motion to dismiss issued on June 22, 2016, amended on June 27, 2016, this Court dismissed all of Plaintiff[] Benavidez's state law causes of action.

Motion to Reconsider Response at 3. Next, Sandia Labs explains, Benavidez -- after the Preemption MOO -- decided to file

> what they called "Supplemental Briefing on Doc. No. 30, Motion for Leave to Amend Complaint" [wherein] they proposed a new amended complaint. . . . Instead of excising the state law counts, Plaintiffs kept them in and piled more allegations on top for good measure. . . . This second proposed amended complaint was written as if the Court's June 22 opinion had never been issued.

Motion to Reconsider Response at 4. At an August 25, 2016, hearing, Sandia Labs characterizes Benavidez and the proposed Plaintiffs as being

> as stubborn as ever. They continued to refuse to recognize that state law causes of action had no place in the case. Not surprisingly, having just recently analyzed the state law claims carefully and having issued a thorough opinion on the matter, the Court sounded perplexed. As the January 17, 2017 [Amendment MOO] recites, "The Court was hard pressed . . . to understand 'why go through all that motion if I spent a lot of time dealing with the []motion to dismiss, why put them all back in the case[,] I just don't get that.'" [Amendment MOO, 2017 WL 2266864, at *9] (citing Tr. at 14:18-21). The August 25 hearing ended with the Court verbally denying the motion to amend as filed.

Motion to Reconsider Response at 4. Thus, Sandia Labs explains, before the Court could reduce its order to writing, Benavidez "moved to withdraw [her] previous motion to amend and substitute yet another ([her] third) proposed amended complaint." Motion to Reconsider Response at 4-5. Sandia Labs argues that this Proposed Third Amended Complaint "represented the first real attempt by Ms. Baca, Ms. Ortiz, and Ms. Luna-Casias at removing state law causes of action from the lawsuit." Motion to Reconsider Response at 5. Sandia Labs notes, then, that the Court -- a day after the August hearing regarding Benavidez' Motion to Withdraw and

Amend -- granted the "Plaintiffs permission to withdraw the prior motion to amend and took

under advisement the part of the motion requesting substitution of a new complaint." Motion to

Reconsider Response at 5. Sandia Labs argues that "a substantial part" of the August hearing

was

> devoted to argument that by Plaintiffs withdrawing their previous motion, any
> new attempt to amend would be time barred. As Sandia pointed out, under the
> "deemed filed" doctrine, a motion to amend that is eventually granted will stop
> the running of the statute of limitations, but a motion to amend that isn't granted
> won't, and this is precisely what happened when Plaintiffs squandered their
> chances to timely enter into a tolling agreement or timely propose a reasonable
> amendment and ended up withdrawing their doomed, over-inclusive amendments.
> . . . Plaintiffs' new request to amend was therefore untimely as to federal
> statutory counts -- the 90 day limitations periods expired in late February 2016 --
> and the proposed amendment did not relate back under Rule 15. . . . Plaintiffs
> took a calculated risk in not engaging in discussions about a tolling agreement and
> then allowing the limitations periods to run while refusing to let go of their state
> law claims. They took a chance, and they lost.

Motion to Reconsider Response at 5.

> Sandia Labs then turns to its legal argument and states:

> Without taking a definitive position on which standard actually applies, Plaintiffs
> invoke both Rule 59(e) and the Court's inherent authority to review interlocutory
> matters. Sandia's view is that the standard set forth in <u>New Mexico ex rel.</u>
> <u>Balderas v. Valley Meat Co.</u>, No. CIV 14-1100 JB/KBM, 2015 U.S. Dist. Lexis
> 175064 (D.N.M. Dec. 14, 201[5)], is probably the better fit, but the point is
> academic. Under no standard are Plaintiffs entitled to the relief they seek.

Motion to Reconsider Response at 5-6. According to Sandia Labs,

> [a]ll of Plaintiffs' arguments, however, including their position on equitable
> tolling . . . , collapse under the following proposition of law: a motion to amend
> that is not granted does not toll the limitations period. Accordingly, when
> Plaintiffs chose to withdraw their February 10, 2016 [Motion for Leave to
> Substitute Second Amended Complaint], they deprived themselves of the ability
> to argue that federal statutory claims were timely because the limitations periods
> expired in late February 2016. When the August 31, 2016 [Proposed Third
> Amended Complaint] did not relate back under Rule 15 -- a determination as to
> which Plaintiffs do not seek reconsideration -- the Court correctly found that their
> claims were time barred.

Motion to Reconsider Response at 8.  Sandia Labs thus contends that the effect of Benavidez'

withdrawal of the Motion for Leave to Substitute Second Amended Complaint "is not a new

issue in this case," and that "there was no error or injustice in the Court's ruling that Ms. Baca,

Ms. Ortiz and Ms. Luna-Casias are late."  Motion to Reconsider Response at 8.  It is Sandia

Labs' position, therefore, that a motion to reconsider is inappropriate, because "the parties have

already had full and fair opportunity to brief the issue raised by their current motion, and the

Court has addressed it."  Motion to Reconsider Response at 8-9.  Sandia Labs specifically points

to the fact that, at the hearing on August 25, 2016, "Sandia explained on the record that if the

[Motion for Leave to Substitute Second Amended Complaint] was denied, a new proposed

amended complaint with federal claims would at that point be outside of the statutes of

limitations," and that Benavidez "did not even attempt to address the statute of limitations bar" in

her Motion to Withdraw and Amend.  Motion to Reconsider Response at 9.  Further, Sandia

Labs asserts:

> In its brief filed on September 23, 2016, Sandia acknowledged the "deemed filed"
> principle regarding motions to amend under which an amended complaint, for
> statute of limitations purposes, is deemed filed when the motion is filed rather
> than when it is granted -- but only if it is granted. (. . . citing Koch v. Shell Oil
> Co., 8 F. Supp. 2d [at] 1268[]).  Sandia then explained, "To the extent Ms. Baca,
> Ms. Luna-Casias, and Ms. Ortiz will be tempted to argue that the filing date
> should really be deemed that of their [Motion for Leave to Substitute Second
> Amended Complaint] . . . filed on February 20, 2016, such argument is laid to rest
> by Angles v. Dollar Tree Stores, Inc., No. 10-1723, 2012 U.S. App. Lexis 19289
> (4th Cir. Sept. 13, 2012)(in case involving serial attempts to amend, Title VII's
> limitations period not tolled by motion to amend that was not granted)." . . .  At
> the hearing on September 29, 2016, Sandia made [the] same point: "[Y]ou can't
> toll a statute with a motion to amend that isn't granted . . . and that's what we
> have here." . . .  Counsel's recollection is that specific reference was made to the
> Angles case in open court.

Motion to Reconsider Response at 9.

Sandia Labs next addresses in more detail its contention that a "motion to amend that is

not granted will not toll the statute," stating initially that "there is a small body of federal case law on the effect of a motion to amend that is denied or withdrawn upon a statute of limitations." Motion to Reconsider Response at 10. Sandia Labs reiterates, however, that, "of the law that exists, the cases are uniform in the outcome" and that the Court is already apprised of Angles v. Dollar Tree Stores, Inc., where "Title VII counts were timely when the plaintiffs moved to amend, but [when that] motion was not granted, [] the Title VII counts could not be brought." Motion to Reconsider Response at 10. In addition to that case, Sandia Labs cites to United States ex rel. Mathews v. HealthSouth Corp., 332 F.3d 293 (5th Cir. 2003), where the United States Court of Appeals for the Fifth Circuit concluded that a "timely but failed attempt to amend did not stop the clock" on the limitations period for an ADEA claim. Motion to Reconsider Response at 10. Sandia Labs also cites to Goldblatt v. National Credit Union Administration, 11-CV-334, 2011 U.S. Dist. Lexis 103880 (D. Conn. Sept. 14, 2011), aff'd, No. 11-4307, 2012 U.S. App. Lexis 23110 (2d Cir. Nov. 9, 2012), where the district court concluded that "the limitations period expired . . . because the previous motion to amend had been denied." Motion to Reconsider Response at 11. According to Sandia Labs, then, "a motion to amend that is not granted does not toll the limitations period." Motion to Reconsider Response at 11.

Sandia Labs also asserts that Benavidez only cites "cases for the uncontested proposition that an amended complaint is 'deemed filed' on the date the successful motion to amend was filed. They cite nothing supporting the idea that an amended complaint is 'deemed filed' on the date of an unsuccessful motion to amend." Motion to Reconsider Response at 11. This notion is important, Sandia Labs argues, because, "[i]f the underlying motion to amend is denied -- or withdrawn -- the amended complaint is not deemed filed on any date because it is never filed. It therefore has no legal effect and cannot satisfy a statute of limitations." Motion to Reconsider

Response at 11.  Sandia Labs elaborates on the legal effect of Benavidez' withdrawal of her

Motion for Leave to Substitute Second Amended Complaint, stating that her conduct

> is actually very similar to a complaint that is withdrawn or a motion to intervene
> that is denied.  In each case, the relief requested therein is not granted.  The [Fifth
> Circuit] court in [United States ex rel. Mathews v. HealthSouth Corp.] explained
> that a withdrawn or denied document has "no legal effect.  Without legal effect, it
> cannot toll the statute of limitations."  [United States ex rel. Mathews v.
> HealthSouth Corp.], 332 F.3d at 296.  The [United States ex rel. Mathews v.
> HealthSouth Corp.] court added that this was not a situation in which a contrary
> result would be harmless due to a lack of prejudice.  Depriving the defendant of
> the affirmative defense of the statute of limitations would cause obvious
> prejudice, explained the Fifth Circuit.  [United States ex rel. Mathews v.
> HealthSouth Corp., 332 F.3d] at 296-97.  The same, of course, is true in this case.

Motion to Reconsider Response at 12.

Last, Sandia Labs requests that "rule 54(b) judgment should not be entered due to the

three new cases" that the proposed Plaintiffs have recently filed in federal court.  Motion to

Reconsider Response at 12.  According to Sandia Labs, the proposed "Plaintiffs do not cite any

law . . . nor do they really make an argument, so Sandia will address the matter only briefly to

explain that with the pendency of the three new lawsuits, it seems inappropriate to issue Ms.

Baca, Ms. Ortiz, and Ms. Luna-Casias a ticket to the Tenth Circuit," because, "under Rule 54(b),

there is a 'just reason for delay.'"  Motion to Reconsider Response at 12-13.  Sandia Labs

indicates that it

> would indeed like this Court to issue a final judgment in its favor against Ms.
> Baca, Ms. Ortiz, and Ms. Luna-Casias once and for all, and Sandia does believe
> that would be warranted, albeit not necessary because the Court's January 17,
> 2017 [Amendment MOO] appears to be "final in the sense that it is an ultimate
> disposition of an individual claim entered in the course of a multiple claims
> action."

Motion to Reconsider Response at 13 (quoting Oklahoma Turnpike Authority v. Bruner, 259

F.3d 1236, 1242 (10th Cir. 2001)).  Sandia Labs also indicates:

> Ms. Baca, Ms. Ortiz, and Ms. Luna-Casias have promised Sandia that they will

dismiss their separate lawsuits upon this Court's decision on their Motion to Reconsider no matter what that decision is, but they have not done so yet. In the present posture, Sandia would be faced with defending against Ms. Baca, Ms. Ortiz, and Ms. Luna-Casias's allegations in both the district court and the Tenth Circuit, so Sandia opposes Rule 54(b) relief at this time. Sandia is willing to reevaluate its opposition after dismissal with prejudice of Baca v. Sandia, CIV 17-1088 WPL/LF, Ortiz v. Sandia, No. CIV 17-107 SCY/WPL, and Luna-Casias v. Sandia, No. CIV 17-111 SMV/LF.

Motion to Reconsider Response at 13. Sandia Labs concludes by reasserting:

Sandia has lost count of how many opportunities Plaintiffs had to file an appropriate, timely complaint. The Court did not err in finding that time had expired, there has not been a change in the law, and no new evidence has emerged. The issue regarding the effect of a withdrawn motion to amend has been briefed by Sandia and addressed by the Court, and Plaintiffs had a full and fair opportunity to be heard. Plaintiffs still present no authority and no compelling arguments for the Court to reverse its decision that Ms. Baca, Ms. Ortiz, and Ms. Luna-Casias's proposed amendment was untimely, so their request for reconsideration of that determination should be denied.

Motion to Reconsider Response at 13-14.

### 17.  **The Motion to Reconsider Reply.**

Benavidez replied with her Reply in Support of Plaintiff's Motion for Partial Reconsideration of this Court's January 17, 2017 *Memorandum Opinion and Order*, filed March 2, 2017 (Doc. 91)("Motion to Reconsider Reply"). In the Motion to Reconsider Reply, Benavidez begins by providing "a more detailed factual recitation in order to respond to and provide an additional perspective on Defendant's perception of this case's development." Motion to Reconsider Reply at 1-2. Benavidez explains that she brought suit against Sandia Labs for the "same or related conduct" as the proposed Plaintiffs and that she individually filed a pro se Complaint in state court, and Sandia Labs "removed Plaintiff's complaint to this Court and moved to dismiss and argued in pertinent part that the federal enclave doctrine precluded Plaintiff's state law claims." Motion to Reconsider Reply at 2. Benavidez states that, at this point, she attempted to stay her proceedings "until all claims, including the claims of other

plaintiffs, completed the administrative process and until the motion to dismiss was decided," and that, in its briefing on her motion for a stay, Sandia Labs stated: "In the event that all administrative remedies for the pending charges are exhausted before the court decides the Motion to Dismiss, the parties could agree to toll the filing periods as necessary to allow the Court time to issue a decision." Motion to Reconsider Reply at 2. Apparently, Benavidez explains, she "informed Defendant on January 19, 2016 that she would either file an amended complaint or [the proposed] Plaintiffs would file a separate lawsuit and attached drafts of the amended complaint and separate lawsuit," and Sandia Labs responded that, "[o]n the question of whether this should be one lawsuit or two, Sandia's position is that a single lawsuit seems more appropriate." Motion to Reconsider Reply at 2 (internal quotation marks and citation omitted). Benavidez maintains that, at the January 20, 2016, hearing, she "notified the Court about the additional plaintiffs and the possibility for separate lawsuits or amendment of the current lawsuit," and that Sandia Labs again indicated preference for "one lawsuit." Motion to Reconsider Reply at 2. Benavidez explains that, on February 10, 2016, she filed the Motion for Leave to Substitute Second Amended Complaint, adding the proposed Plaintiffs and addressing "other pleading deficiencies," because the ninety-day period for the proposed Plaintiffs to bring their federal claims "was set to expire on February 28, 2016." Motion to Reconsider Reply at 2-3. Sandia Labs opposed the Motion for Leave to Substitute Second Amended Complaint, Benavidez explains, because Sandia Labs anticipated a ruling from the Court -- in what would be the Preemption MOO -- regarding dismissal of Benavidez' state law claims. See Motion to Reconsider Reply at 3. When the Court held a hearing on May 18, 2016, Benavidez explains, the Court and the parties "attempted to reach an agreement to apply the Court's impending dismissal order to the [Proposed Second Amended Complaint]" that ultimately resulted in

Benavidez requesting permission to filing the Supplemental Briefing, which Benavidez says she intended to use to alter the Proposed Second Amended Complaint as to Benavidez' Intentional-Infliction-of-Emotional-Distress claim. Motion to Reconsider Reply at 3. Next, however, Benavidez states that the Court issued the Preemption MOO, dismissing all of Benavidez' state-law-based claims, causing Benavidez to instead file the Supplemental Briefing to only "note[] numbering changes, plead[] facts related to grievances, and clarify the punitive damages claim. . . . Plaintiff did not remove the dismissed state law claims for the new proposed plaintiffs [] to preserve the record for any appeal." Motion to Reconsider Reply at 3. Here, Benavidez provides that, to clarify her perception of the events,

> [the Proposed Second Amended Complaint] was intended to bring *all* claims on behalf of the new plaintiffs. In hindsight, the Court and Defendant seem to consider the [S]upplemental [B]riefing to be Plaintiff's opportunity to eliminate the state law claims for Plaintiff Benavidez and abandon those claims for [the proposed] Plaintiffs. Plaintiff intended for the [S]upplemental [B]riefing to be a chance to argue that the IIED facts pleaded in the [Proposed Second Amended Complaint] cured any pleading deficiencies pointed out by the Court in the June 2016 [Preemption MOO]. The Court's June 2016 [Preemption MOO], however, was clear that the IIED claim would not survive because of the federal enclave doctrine.

Motion to Reconsider Reply at 4.

> At this point, Benavidez asserts:

> Plaintiff did not expect or intend for the Court to address the state law claims again for [the proposed] Plaintiffs. At the August 25, 2016 hearing, however, the Court indicated it would be necessary to re-visit the state law claims, because Plaintiff did not remove them from the [Proposed Second Amended Complaint]. Plaintiff explained that she had asked Defendant to stipulate to entry of the [Proposed Second Amended Complaint] and immediate dismissal of the state law claims, and she proposed the same procedure to the Court. . . . Plaintiff repeatedly stipulated to the immediate dismissal of the state law claims as to [proposed] Plaintiffs. In the May 2016 hearing, when the Court suggested applying the dismissal order to the [Proposed Second Amended Complaint], Plaintiff's only objection related to the facts supporting the IIED claims. At the end of the August 25, 2016 hearing, the Court indicated the [Motion for Leave to Substitute Second Amended Complaint] would be denied, "as to the way it was

filed."

Motion to Reconsider Reply at 4. Benavidez then states that she, "mindful of the need to maintain continuity of filing, filed Plaintiff's Motion to Withdraw [and] Amend," Motion to Reconsider Reply at 4, and that her filing the Motion to Withdraw and Amend was not the product of "a problem that Plaintiffs created for themselves," as Sandia Labs argues, but instead "the product of a misunderstanding about the purpose of the [S]upplemental [B]riefing," Motion to Reconsider Reply at 4-5. Benavidez further explains that the Motion to Withdraw and Amend served the purpose, in her opinion, of relieving the Court of the work it would need to do in order to grant in part and deny in part the Motion for Leave to Substitute Second Amended Complaint as to the state claims that the Court in the Preemption MOO had already concluded were preempted. See Motion to Reconsider Reply at 5.

Benavidez then makes her legal argument, stating essentially:

The [Proposed Third Amended Complaint] should be deemed filed February 10, 2016, because the [Motion for Leave to Substitute Second Amended Complaint] and the Motion to Withdraw and [Amend] tolled the 90-day period until the entry of the January 2017 [Amendment MOO]. The January 2017 [Amendment MOO] either stopped the tolling period or caused the time to expire, and Plaintiff asks the Court to reconsider that result based on manifest injustice.

Motion to Reconsider Reply at 5-6. Benavidez suggests:

First, the Court must decide whether any event stopped or negated the tolling begun by the February 10, 2016 [Motion for Leave to Substitute Second Amended Complaint]. Second, the Court may consider whether the time remaining on the 90-day period continued to tick after denial of the [Motion for Leave to Substitute Second Amended Complaint]. Defendant offers no authority on the first point, whether the Motion to Withdraw and [Amend] stopped and negated the tolling. Defendant's authority on the second point -- whether time continued to tick -- is unpersuasive under these circumstances. Plaintiff therefore requests this Court grant the Motion for Partial Reconsideration and rule that the [Motion to Withdraw and Amend], filed on August 31, 2016, allows the Second Plaintiffs to pursue their claims within this lawsuit. Alternatively, this Court should enter Judgment as to [the proposed] Plaintiffs.

Motion to Reconsider Reply at 6. Benavidez argues that the Motion to Withdraw and Amend did not have the effect of stopping or negating the tolling of the limitations period which she argues was started by her filing of the Motion for Leave to Substitute Second Amended Complaint on February 10, 2016. See Motion to Reconsider Reply at 6. Benavidez asserts that, in relevant part, the United States Court of Appeals for the Tenth Circuit "has indicated only that a complaint is not 'deemed filed' if a plaintiff abandons a claim by motion to dismiss without prejudice or if a motion to intervene is denied." Motion to Reconsider at 6 (citing Brown v. Hartshorne Pub. Sch. Dist. # 1, 926 F.2d 959, 960 (10th Cir. 1991); Simons v. Southwest Petro-Chem, 28 F.3d 1029 (10th Cir. 1994); McIntosh v. Boatman's First Nat'l Bank, No. 95-5260, 1996 U.S. App. LEXIS 30913 (10th Cir. 1996)). Thus, Benavidez' argument is that a motion to withdraw and amend is different than a motion to dismiss without prejudice and a motion to intervene, and that the Tenth Circuit has not foreclosed tolling in the face of a motion to withdraw and amend. See Motion to Reconsider Reply at 7. Benavidez states:

> A Court's order on a motion to intervene is final and appealable, and intervention has criteria of its own under Fed. R. Civ. P. 24. A motion to dismiss without prejudice is an abandonment of claims. A motion to amend, however, is an attempt to alter existing claims -- whether to add facts, legal substance, or even parties. A denial of a motion to amend, which is generally not final or abandonment, should not be treated as a motion to intervene or motion to dismiss without prejudice. Plaintiff did not abandon the [Motion for Leave to Substitute Second Amended Complaint]. The Court did not deny the [Motion for Leave to Substitute Second Amended Complaint] until January 17, 2017. Time therefore did not run out before, or cease to toll until, January 17, 2017.

Motion to Reconsider Reply at 7. Benavidez then concedes that Sandia Labs argues, alternatively, that the Motion to Withdraw and Amend "stopped and negated the tolling effect of the February 10, 2016 [Motion for Leave to Substitute Second Amended Complaint] and cites cases indicating that a motion to amend does not toll the 90-day period unless it is granted." Motion to Reconsider Reply at 7. Benavidez ultimately argues that the "Defendant has provided

- 55 -

no authority -- either before the January 2017 [Amendment MOO] or after -- that the Motion to Withdraw and [Amend] acted as a denial or abandonment of the amendment request."  Motion to Reconsider Reply at 9.  Benavidez also argues:

> Defendant's cases do not address the effect the Motion to Withdraw and [Amend] had on the tolling of the 90-day period.  Instead, the cases address whether a time period can be considered to have tolled if the motion that initiated the tolling is not granted.  The concept of "tolling" generally starts and stops the statutory clock based on an event and begins to run again on a later event.

Motion to Reconsider Reply at 9.  Here, according to Benavidez, the

> Plaintiff filed the [Motion for Leave to Substitute Second Amended Complaint], with 18 days remaining on the statutory clock, in order to bring [the proposed] Plaintiffs into the lawsuit and to raise the state-court pro se complaint to federal pleading standards.  Plaintiff understood the Court and Defendant to prefer the amendment rather than the separate complaint procedure, and as a result, Plaintiff did not formalize Defendant's offer (in the response to Plaintiff's Motion to Stay) to toll the 90-day period.  Defendant's response in opposition to the [Motion for Leave to Substitute Second Amended Complaint] raised no issues of timeliness, despite its being filed on March 7, 2016, a week after the natural, un-tolled, expiration of the 90-day period.  The expiration argument was not raised until the end of August and only when [the proposed] Plaintiffs could take no remedial action.  Under these circumstances, [the proposed] Plaintiffs should be credited the time remaining on the 90-day clock and the [Proposed Third Amended Complaint], with respect to [the proposed] Plaintiffs, would no longer be futile for untimeliness.

Motion to Reconsider Reply at 10.

Benavidez next argues regarding her request for final judgment as to the proposed Plaintiffs, asserting that the "January 2017 Amendment MOO is a final order as to [the proposed] Plaintiffs because it ends the litigation, and Plaintiff requests this Court to reconsider the January 2017 [Amendment MOO] pursuant to Fed. R. Civ. P[.] 1-059(e) [sic] in order to prevent manifest injustice."  Motion to Reconsider Reply at 10.  Benavidez prefers that the Court grant her Motion to Reconsider, but if it does not grant the Motion to Reconsider, she avers that the proposed Plaintiffs will dismiss their federal complaints filed subsequent to the Amendment

MOO and pursue their claims in the form of appellate relief premised on this Court's grant of final judgment as to them.  See Motion to Reconsider Reply at 11.  Benavidez also argues that, if the Court thinks the Amendment MOO was interlocutory as to proposed Plaintiffs, those factors weigh in her favor as well with respect to a grant of reconsideration.  See Motion to Reconsider Reply at 11-12.

### 18.    The March 16, 2017, Hearing.

The Court held a hearing on March 16, 2017.  See Transcript of Hearing at 1:1 (taken March 16, 2017)("March Tr.").  The Court began the hearing by giving the parties its thoughts regarding the Motion to Reconsider, providing:

> [W]hy don't we take up the motion for partial reconsideration first.  I'll hear what anybody wants to say on this motion.  I did read all the briefing and all the attachments to the briefing.  I didn't really see any arguments that I didn't carefully consider the first time around[.  A]nd understanding the consequences of what the Court is doing with its opinion[,]  I always like to get things decided on the merits rather than on procedural matters, but in this case it seems to me I'd have to be overlooking some law to allow the plaintiffs to bring in Ms. Baca . . . and Ms. Ortiz and Ms. Luna-Casias, so I'm inclined to still deny the motion.  I'm also not inclined to start piecemeal[ing] this, so I think I would not certify any order, interlocutory order at this point for the Tenth Circuit review of these three new plaintiffs [who] have filed separate actions[,] and maybe somebody will look at their situation differently than I have looked at it.  But it seems to me that [] probably the way this should proceed is [to] bring this to conclusion somehow [and] then that issue of the other three can proceed here or in separate cases.  So I'm inclined to deny the motion but those are my thoughts coming in.

March Tr. at 3:18-4:19 (Court).  Benavidez argued that the only issue that she was arguing as grounds for reconsideration regards which event "stopped past tolling and prevented future tolling" after the proposed Plaintiffs had started tolling the limitations period by Benavidez' filing of her Motion for Leave to Substitute Second Amended Complaint.  March Tr. at 5:2-6 (Wray).  In Benavidez' estimation, the Amendment MOO suggests that the Court considered the event to be the Motion to Withdraw and Amend, and she maintained that the Motion to

Withdraw and Amend "did not have the effect of either an abandonment of the proposed amended complaints as they had developed over the months, or a denial of the motion to, or a denial of the original motion to amend." March Tr. at 5:6-15 (Wray). Benavidez then addressed that the Court gave an "oral indication at the August 25 hearing that the [m]otion amendment as filed would be denied," and how she chose to beat the Court to its issuance of an opinion and thereby "voluntarily withdrew that proposed amended complaint in order to address the Court's concerns that we discussed in August at the August 25 hearing." March Tr. at 5:15-25 (Wray). Benavidez reiterated that her argument is that the Motion to Withdraw and Amend did not abandon the substance of the Motion for Leave to Substitute Second Amended Complaint or the amendment process in general, "and because plaintiff viewed the issue in the motion to withdraw and substitute as whether there had been a denial of the motion to amend, plaintiff did not address whether the motion to withdraw itself somehow stopped the tolling." March Tr. at 6:1-10 (Wray). Benavidez then asserted that her position is that "the January 17 opinion and order assumes that the motion to withdraw stopped and [e]ra[]sed the tolling that had been happening since February . . . [a]nd Plaintiff wanted to bring to the court's attention additional analysis on that topic." March Tr. at 6:10-15 (Wray).

Benavidez then argued that the proposed Plaintiffs filed their own federal complaints after the Court's Amendment MOO, because they were operating on the theory that the Amendment MOO had ceased the tolling period, but regardless they still had time on the clock, because the Motion for Leave to Substitute Second Amended Complaint was filed before the limitations period had run. See March. Tr. at 6:15-7:2 (Wray). Regarding the status of those complaints in the future, and her thinking in choosing to file them, Benavidez explained that,

> if this Court denies the . . . motion to reconsider[, t]hat is a ruling that those 3 plaintiffs' claims expired and it's necessarily a ruling that they expired in

February 2016[,] and those complaints no longer have a good faith basis. If this court[] grants [the] motion to partially reconsider[] and . . . permitted the plaintiffs to join this lawsuit those complaints also have no forward momentum[.] [I]n any case as we've stated both to defendants informally and in our pleadings [those] complaints will be dismissed [r]egardless the outcome of the motion to partially reconsider. But without having filed them, the argument that time remained on the clock, that argument would be futile because time would have ticked out at the beginning of February.

March Tr. at 7:3-18 (Wray). Accordingly, Benavidez argued that, "with respect to those three plaintiffs, the order, the January 17 order is final, it disposes of their claims and they would like the opportunity to appeal if they choose." March Tr. at 8:1-4 (Wray). Benavidez also supposed that "[i]t doesn't appear that defendants oppose judgment on behalf of those plaintiffs so long as they don't have to litigate the claims in two separate courts in district court and in the appellate courts." March Tr. at 8:5-9 (Wray). The Court commiserated, stating that

I probably should have said on that appeal[,] right [now] it seemed to me it was probably a little premature. I don't have any problem if the parties are in agreement that now is the time [to] enter some[] order[,] I don't have any problem with that. I'm not trying to make it difficult for you to appeal my order. But I do think right at the moment with those other cases it may [be we] to need to wait until those are cleared out. Then it's not premature anymore.

March Tr. at 8:19-9:3 (Court). Benavidez then inquired: "[I]s the Court indicating that if we do dismiss those complaints that we can get a judgment on those three plaintiffs in this case?"

March Tr. at 9:19-22 (Wray). The Court answered that it was:

saying that if I denied this motion for reconsideration and you went and dismissed those three cases, then they wouldn't have a problem with that and that sounded reasonable to me and I was just saying I don't have a problem with that. If they're saying they still oppose it, then I guess I need to hear why before I say, yeah, I'd still go ahead and enter an appealable order at that time.

Mar. Tr. at 9:24-10:6 (Court). The Court indicated that its further understanding was that, should the Court deny the Motion to Reconsider, and the proposed Plaintiffs then dismiss their other federal complaints -- assuming Sandia Labs' non-opposition -- Benavidez need only file with the

Court an "unopposed motion and proposed order that y'all want to then use to appeal." March Tr. at 10:21-22 (Court).

The Court then pressed Benavidez whether "you have one or two or three things that you think I didn't review, I think I thought hard about the consequences of what I was doing, but is there anything that you think I have not addressed yet that you're raising here that I haven't addressed before." March Tr. at 11:1-6 (Court). Benavidez responded that, first, after reading the Amendment MOO, "the plaintiff realized that, again, we don't exactly know what the triggering event was that stopped future and past tolling." March Tr. at 11:8-11 (Wray). Benavidez also identified that she was not sure "whether the court's oral ruling constituted a denial," when the Court gave its inclination to deny the Motion for Leave to Substitute Second Amended Complaint -- the event precipitating her filing of the Motion to Withdraw and Amend -- and that a relevant issue that "was not addressed is whether a motion to withdraw and substitute really has the [e]ffect[]" of abandoning the Motion for Leave to Substitute Second Amended Complaint. March Tr. at 11:22-12:3 (Wray). Benavidez asserted that she did not seek to abandon anything, but instead -- in her estimation -- the "mechanism of withdrawal was to reduce the workload for the Court." March Tr. at 12:14-17 (Wray). Benavidez also argued that withdrawal should have a different legal effect from denials of motions to intervene or dismiss without prejudice, and that the Motion to Withdraw and Amend should be considered as only substituting a new complaint, and not abandoning the Proposed Second Amended Complaint altogether. See March Tr. at 12:17-15:4 (Wray).

Sandia Labs then argued and addressed why "what occurred" should not constitute a "break in the tolling." March Tr. at 15:14-20 (Court, Viets). Sandia Labs cited the Tenth Circuit's unpublished opinion in McIntosh v. Boatman's First Nat'l Bank, which Sandia Labs

explained advised: "It's not . . . the filing of the motion which tolls the limitation period, rather than it's the fact that the motion is granted." March Tr. at 15:25-16:3 (Viets). Sandia Labs provided:

> So I've heard it said a number of times . . . what was the triggering event, when was there tolling, when wasn't there tolling. Unless and until a motion to amend is granted, there isn't any tolling. So this question about well, what's wrong with you know just viewing it as one continuation, and these claims have been pending the whole [time] -- or [were] teed up in a proposed amended complaint in some fashion or other, both before the limitations period ran and after. What's wrong with looking at it that way? The problem is the motion under which those claims were sought to be added to the case was withdrawn. So it's like it never happened.

March Tr. at 16:3-16 (Viets). Sandia Labs reiterated that it "cited the Court to a number of cases dealing with that proposition which [are] really similar to McIntosh, so unless and until there is a motion to amend that's actually granted, there is no tolling." March Tr. at 16:16-20 (Viets). Sandia Labs then identified that the problem Benavidez had was her choice to focus on the state law claims and that they ultimately "lost any right to claim timeliness under the deemed filed doctrine" by withdrawing the motion which the Court said it was going to deny. March Tr. at 17:1-18:7 (Viets). Sandia Labs also argued regarding the concept of abandonment and discussed Benavidez' comparison of withdrawal with voluntary dismissal, and suggested that, in voluntary dismissal cases in the Tenth Circuit the Tenth Circuit said "well, once you do that, it's as if those complaints were never filed so they don't stop the running of any statute of limitations." March Tr. at 19:20-22 (Viets). Regarding Benavidez' attempt to distinguish that case law, Sandia Labs contended that "intent is not at issue. The question is whether a motion to amend has been denied or not granted or withdrawn, whatever the reason; if it's not granted it doesn't have any effect, and so I'll just end with where I started. That's the whole holding of the McIntosh case." March Tr. at 20:16-21 (Viets). Last, regarding Benavidez' request for an appealable judgment,

Sandia Labs stated:

> [T]he Court understands Sandia's position correctly. We don't oppose entry of final judgment as to the three would be plaintiffs, they never were plaintiffs but I suppose that doesn't prevent entry of a judgment against them but only in due course. I can't stand here in good conscience knowing that they each have their own three lawsuits pending in front of three other judges now in this district and [say] let's go ahead and certify it so the Tenth Circuit can hear the same issues that's going to be in front of 3 other judges here[,] I think that's inappropriate.

March Tr. at 21:1-11 (Viets). Sandia Labs indicated, in conclusion, that, if the Court denies the Motion to Reconsider, and the proposed Plaintiffs dismiss their other federal complaints, it did not "know of any reason right at the moment that [it] could not cooperate with the plaintiffs to put together a judgment so they could appeal this issue." March Tr. at 21:25-22:4 (Court, Viets).

Benavidez argued in reply:

> McIntosh reads [that] it is not the filing of the motion which tolls the limitation period rather it is the fact that the motion is granted establishing the intervenor as a proper party to the lawsuit, which renders the subsequent complaint timely. And that's really our question. The motion to amend [--] it wasn't not granted. It wasn't denied, it wasn't denied until January of 2017. Nothing in this case in my reading of this case indicates that a motion to withdraw and simultaneously substitute with another motion is the same thing as the court taking the action to not grant it. The motion wasn't denied. It wasn't denied until January, and we would like the Court to consider those cases in that light.

March Tr. at 22:12-25 (Wray). In conclusion, Benavidez reiterated:

> [B]y August, it was removal of the state law claims. That was the issue. And that's what we did. And there was no reason to stop the tolling that started. If the motion had been granted, we would look back and say, yes, it[] was tolled. Now [if] the motion [had] been denied in January [then] we look back and say, no, it[] was never tolled. It's sort of a metaphysical scenario where something happened depending on a later action. But plaintiff's position is along the way there was nothing that happened, as happened in these other cases, that would have caused the tolling to not happen until the January 2017 order.

March Tr. at 23:22-24:9 (Wray). The Court then reiterated its inclination that

> I probably have given it the best shot I can, and it's probably time to let the Tenth review what I've done [but] let me take a look at it. I think I tried to think through all the scenarios when we wrote the first opinion back in January, but I'll

take a look at it.

March Tr. at 24:15-23 (Court).

## <u>LAW REGARDING RULE 12(b)(6)</u>

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." <u>Mobley v. McCormick</u>, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and, when considering a rule 12(b)(6) motion, a court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. <u>See</u> <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."); <u>Smith v. United States</u>, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pled factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." (citing <u>Moore v. Guthrie</u>, 438 F.3d 1036, 1039 (10th Cir. 2006))).

A complaint need not make detailed factual allegations, but a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)(citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 555)(internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level, on

the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell

Atl. Corp. v. Twombly, 550 U.S. at 555 (citation omitted).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that,

if assumed to be true, state a claim to relief that is plausible on its face.  See Bell Atl. Corp. v.

Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010).  "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal,

556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556).  "Thus, the mere

metaphysical possibility that some plaintiff could prove some set of facts in support of the

pleaded claims is insufficient; the complainant must give the court reason to believe that this

plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red

Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted).  The Tenth

Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a
> complaint: if they are so general that they encompass a wide swath of conduct,
> much of it innocent, then the plaintiffs "have not nudged their claims across the
> line from conceivable to plausible."  The allegations must be enough that, if
> assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for
> relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(citations omitted)(quoting Bell Atl.

Corp. v. Twombly, 550 U.S. at 570).

Although affirmative defenses must generally be pled in the defendant's answer, not

argued on a motion to dismiss, see Fed. R. Civ. P. 8(c), there are exceptions where: (i) the

defendant asserts an immunity defense -- the courts handle these cases differently than other

motions to dismiss, see Glover v. Gartman, 899 F. Supp. 2d 1115, 1137-39, 1141 (D.N.M.

2012)(Browning, J.)(citing Pearson v. Callahan, 555 U.S. 223 (2009); Robbins v. Oklahoma,

519 F.3d at 1242); and (ii) where the facts establishing the affirmative defense are apparent on the face of the complaint, see Miller v. Shell Oil Co., 345 F.2d 891, 893 (10th Cir. 1965)("Under Rule 12(b), a defendant may raise an affirmative defense by a motion to dismiss for the failure to state a claim.  If the defense appears plainly on the face of the complaint itself, the motion may be disposed of under this rule.").  The defense of limitations is the affirmative defense that is most likely to be established by the uncontroverted facts in the complaint.  See 5 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, A. Benjamin Spencer, Richard L. Marcus & Adam N. Steinman, Federal Practice & Procedure: Civil § 1277, at 643 (3d ed. 2016).  If the complaint sets forth dates that appear, in the first instance, to fall outside of the statutory limitations period, then the defendant may move for dismissal under rule 12(b)(6).  See Rohner v. Union Pac. R.R. Co., 225 F.2d 272, 273-75 (10th Cir. 1955); Gossard v. Gossard, 149 F.2d 111, 113 (10th Cir. 1945);  Andrew  v.  Schlumberger  Tech.  Co.,  808  F. Supp. 2d  1288,  1292  (D.N.M. 2011)(Browning, J.).  The plaintiff may counter this motion with an assertion that a different statute of limitations or an equitable tolling doctrine applies to bring the suit within the statute; the Tenth Circuit has not clarified whether this assertion must be pled with supporting facts in the complaint or may be merely argued in response to the motion.  Cf. Kincheloe v. Farmer, 214 F.2d 604 (7th Cir. 1954)(holding that, once a plaintiff has pled facts in the complaint indicating that the statute of limitations is a complete or partial bar to an action, it is incumbent upon the plaintiff to plead, either in the complaint or in amendments to it, facts establishing an exception to the affirmative defense).  It appears, from case law in several circuits, that the plaintiff may avoid this problem altogether -- at least at the motion-to-dismiss stage -- by simply refraining from pleading specific or identifiable dates, see Goodman v. Praxair, Inc., 494 F.3d 458, 465-66 (4th Cir. 2007); Hollander v. Brown, 457 F.3d 688, 691 n.1 (7th Cir. 2006); Harris v. New York,

186 F.3d 243, 251 (2d Cir. 1999); <u>Honeycutt v. Mitchell</u>, 2008 WL 3833472 (W.D. Okla. 2008)(West, J.), and, although the Tenth Circuit has not squarely addressed this practice, the Court has permitted this practice, <u>see</u> <u>Anderson Living Trust v. WPX Energy Prod., LLC</u>, 2014 WL 2750652, at *17, *37-39 (D.N.M. 2014)(Browning, J.).

## LAW REGARDING MOTIONS TO AMEND

"While Rule 15 governs amendments to pleadings generally, rule 16 of the Federal Rules of Civil Procedure governs amendments to scheduling orders." <u>Bylin v. Billings</u>, 568 F.3d 1224, 1231 (10th Cir. 2009)(citing Fed. R. Civ. P. 16(b)). When a court has not entered a scheduling order in a particular case, rule 15 governs amendments to a plaintiff's complaint. <u>See</u> Fed. R. Civ. P. 15. When a scheduling order governs the case's pace, however, amending the complaint after the deadline for such amendments implicitly requires an amendment to the scheduling order, and rule 16(b)(4) governs changes to the scheduling order. <u>See</u> <u>Bylin v. Billings</u>, 568 F.3d at 1231.

Rule 15(a) of the Federal Rules of Civil Procedure provides:

**(1) Amending as a Matter of Course.** A party may amend its pleading once as a matter of course within:

    **(A)** 21 days after serving it, or

    **(B)** if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under rule 12(b), (e), or (f), whichever is earlier.

**(2) Other Amendments.** In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a)(bold and italics in original).  Further, the local rules provide that, with respect to motions to amend a pleading, "[a] proposed amendment to a pleading must accompany the motion to amend."  D.N.M.LR-Civ. 15.1.

Under rule 15(a), the court should freely grant leave to amend a pleading where justice so requires.  See In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. 571, 579-80 (D.N.M. 2010)(Browning, J.); Youell v. Russell, 2007 WL 709041, at *1-2 (D.N.M. 2007)(Browning, J.); Burleson v. ENMR-Plateau Tele. Coop., 2005 WL 3664299, at *1-2 (D.N.M. 2005)(Browning, J.).  The Supreme Court has stated that, in the absence of an apparent reason such as "undue delay, bad faith or dilatory motive . . . [,] repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.," leave to amend should be freely given.  Fomen v. Davis, 371 U.S. 178, 182 (1962).  See Curley v. Perry, 246 F.3d 1278, 1284 (10th Cir. 2001); In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80.

A court should deny leave to amend under rule 15(a) where the proposed "amendment would be futile."  Jefferson Cnty. Sch. Dist. v. Moody's Investor's Serv., 175 F.3d 848, 859 (10th Cir. 1999).  See In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80.  An amendment is "futile" if the pleading, "as amended, would be subject to dismissal."  In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80 (citing TV Commc'ns Network, Inc. v. Turner Network Television, Inc., 964 F.2d 1022, 1028 (10th Cir. 1992)).  A court may also deny leave to amend "upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, [or] failure to cure deficiencies by amendments previously allowed."  In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579 (quoting Frank v. U.S. W., Inc., 3 F.3d 1357, 1365-66 (10th Cir. 1993)).  See Youell v. Russell, 2007 WL 709041, at *2-3; Lymon v.

Aramark Corp., 2009 WL 1299842 (D.N.M. 2009)(Browning, J.).  The Tenth Circuit has also noted:

> It is well settled in this circuit that untimeliness alone is a sufficient reason to deny leave to amend, see Woolsey v. Marion Laboratories, Inc., 934 F.2d 1452, 1462 (10th Cir. 1991); Las Vegas Ice & Cold Storage Co. v. Far West Bank, 893 F.2d 1182, 1185 (10th Cir. 1990); First City Bank v. Air Capitol Aircraft Sales, 820 F.2d 1127, 1133 (10th Cir. 1987), especially when the party filing the motion has no adequate explanation for the delay, Woolsey, 934 F.2d at 1462. Furthermore, "[w]here the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." Las Vegas Ice, 893 F.2d at 1185.

Frank v. U.S. W., Inc., 3 F.3d at 1365-66.[6]  The longer the delay, "the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend."  Minter v. Prime Equip. Co., 451 F.3d at 1205 (citing Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004)).  Undue delay occurs where the plaintiff's amendments "make the complaint 'a moving target.'"  Minter v. Prime Equip. Co., 451 F.3d at 1206 (quoting Viernow v. Euripides Dev. Corp., 157 F.3d 785, 799-800 (10th Cir. 1998)).  "[P]rejudice to the opposing party need not also be shown."  Las Vegas Ice & Cold Storage Co. v. Far W. Bank, 893 F.2d at 1185.  "Where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial."  Las Vegas Ice & Cold Storage Co. v. Far W. Bank, 893 F.2d at 1185 (quoting State Distribs., Inc. v. Glenmore  Distilleries Co., 738 F.2d 405 (10th Cir. 1984)).

---

[6]The Court notes that there is older authority in the Tenth Circuit that seems to be to the contrary.  See R.E.B., Inc. v. Ralston Purina Co., 525 F.2d 749, 751 (10th Cir. 1975)("Lateness does not of itself justify the denial of the amendment.").  Minter v. Prime Equipment Co. seems to clarify that the distinction is between "delay" and "undue delay."  Minter v. Prime Equipment Co., 451 F.3d at 1205-06.  Delay is undue "when the party filing the motion has no adequate explanation for the delay."  Minter v. Prime Equipment Co., 451 F.3d at 1206.

Along the same vein, the court will deny amendment if the party learned of the facts upon which its proposed amendment is based and nevertheless unreasonably delayed in moving to amend its complaint. See Pallottino v. City of Rio Rancho, 31 F.3d 1023, 1027 (10th Cir. 1994)(noting motion to amend filed "was not based on new evidence unavailable at the time of the original filing").

Refusing leave to amend is generally justified only upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. See Castleglen, Inc. v. Resolution Trust Corp., 984 F.2d 1571, 1585 (10th Cir. 1993)(citing Foman v. Davis, 371 U.S. at 182). Again, the matter is left to the Court's discretion. See Frank v. U.S. W., Inc., 3 F.3d at 1365-66. See Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver, 397 F.3d 1300, 1315 (10th Cir. 2005)(quoting Frank v. U.S. West, Inc., 3 F.3d at 1365-66, and stating that resolving the issue whether to allow a plaintiff to file a supplement to his complaint is "well within the discretion of the district court"). "The . . . Tenth Circuit has emphasized that '[t]he purpose of [rule 15(a)] is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" B.T. ex rel. G.T. v. Santa Fe Pub. Schs., 2007 WL 1306814, at *2 (D.N.M. 2007)(Browning, J.)(quoting Minter v. Prime Equip. Co., 451 F.3d 1196, 1204 (10th Cir. 2006)). "Specifically, the . . . Tenth Circuit has determined that district courts should grant leave to amend when doing so would yield a meritorious claim." Burleson v. ENMR-Plateau Tel. Co-op., 2005 WL 3664299, at *2 (D.N.M. 2005)(Browning, J.)(citing Curley v. Perry, 246 F.3d 1278, 1284 (10th Cir. 2001)).

## THE 90-DAY PERIOD FOR FILING SUIT UNDER TITLE VII

Title VII requires an employee alleging discrimination to exhaust his or her administrative remedies before filing an action in federal court. See 42 U.S.C. § 2000e-5(b). The first step is the filing of a Charge of discrimination with the EEOC "by or on behalf of a person claiming to be aggrieved, or by a member of the Commission." 42 U.S.C. § 2000e-5(b). Upon receiving a Charge, the EEOC must provide notice of the Charge to the employer, investigate the validity of the claim, and, if the claim proves valid, attempt to remedy the discrimination through "informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e-5(b). If these efforts fail and the EEOC elects not to bring a lawsuit against the employer, the employee receives notice of his or her right to sue, and has ninety days to file a Title VII action. See 42 U.S.C. § 2000e-5(f)(1). The ninety-day period for filing suit under Title VII normally begins running on the date the complainant receives actual notice of the right to sue. See 42 U.S.C. § 2000e-5(f)(1). See also Williams v. S. Union Gas Co., 529 F.2d 483, 487 (10th Cir. 1976). Known as the "actual notice" rule, this rule is meant to protect a Title VII complainant from losing "the right to sue because of fortuitous circumstances or events beyond his or her control which delay receipt of the EEOC's notice." St. Louis v. Alverno Coll., 744 F.2d 1314, 1316 (7th Cir. 1984).

## LAW REGARDING EQUITABLE TOLLING

The ninety-day period for filing a Title VII lawsuit is subject to equitable tolling. See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). Equitable tolling may apply where litigants could not file suit because of an extraordinary event beyond his or her control. See Martinez v. Orr, 738 F.2d 1107, 1110 (10th Cir. 1984). Generally, equitable tolling of a statute of limitations applies only in "rare and exceptional circumstances." Laurson v. Leyba,

507 F.3d 1230, 1232 (10th Cir. 2007)(internal quotation marks omitted). "Generally, equitable tolling requires a litigant to establish two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Yang v. Archuleta, 525 F.3d 925, 928 (10th Cir. 2008)(internal quotation marks omitted). See Ocana v. Am. Furniture Co., 2004-NMSC-018, ¶¶ 14-15, 91 P.3d 58 ("Equitable tolling typically applies in cases where a litigant was prevented from filing suit because of an extraordinary event beyond his or her control.")(citing Martinez v. Orr, 738 F.2d at 1110). "Such extraordinary event[s] include conduct by a defendant that caused the plaintiff to refrain from filing an action during the applicable period." Roberts v. Barreras, 484 F.3d 1236, 1241 (10th Cir. 2007)(internal quotation marks omitted). See Gibson v. Klinger, 232 F.3d 799, 808 (10th Cir. 2000)(stating that the equitable remedy "would be appropriate, for example, when a [plaintiff] is actually innocent, when an adversary's conduct -- or other uncontrollable circumstances -- prevents a [plaintiff] from timely filing, or when a [plaintiff] actively pursues judicial remedies but files a defective pleading during the statutory period."); In re Drummond, 1997-NMCA-094, ¶ 13, 945 P.2d 457 (stating that "a party may be estopped from asserting a statute-of-limitations defense if that party's conduct has caused the plaintiff to refrain from filing an action until after the limitations period has expired.").

## LAW REGARDING THE RELATION-BACK DOCTRINE

Rule 15(c) reads:

**(1) When an Amendment Relates Back.** An amendment to a pleading relates back to the date of the original pleading when:

> **(A)** the law that provides the applicable statute of limitations allows relation back;

**(B)** the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out -- or attempted to be set out -- in the original pleading; or

**(C)** the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

> **(i)** received such notice of the action that it will not be prejudiced in defending on the merits; and

> **(ii)** knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c).

Rule 15(c) provides that, where an amendment would add a party, "relation back" can occur if the party to be added by the amendment "has received such notice of the initiation of the action that the party would not be prejudiced in maintaining a defense on the merits." Brown v. Uniroyal, Inc., 108 F.3d 1306, 1307 (10th Cir. 1997). Relation back is dependent upon four factors, all of which must be satisfied. Brown v. Uniroyal, Inc., 108 F.3d at 1307. The factors are as follows: (i) the basic claim must have arisen out of the conduct set forth in the original pleading; (ii) the party to be added must have received such notice that it will not be prejudiced in maintaining its defense; (iii) that party must or should have known, that but for the mistake concerning identity, the action would have been brought against it; and (iv) the second and third requirement must have been fulfilled within the prescribed limitation. Brown v. Uniroyal, Inc., 108 F.3d at 1307 (citing Schiavone v. Fortune, 477 U.S. 21, 29 (1986)). "Rule 15(c), which exists to protect defendants from unfair prejudice caused by a plaintiff's tardiness in naming them, applies to pro se complaints as to any others." Pierce v. Amaranto, 276 F. App'x 788, 792 (10th Cir. 2008). In Krupski v. Costa Crociere S.P.A., 560 U.S. 538 (2010), the Supreme Court

held that "relation back under Rule 15(c)(1)(C) depends on what the party to be added knew or should have known, not on the amending party's knowledge or its timeliness on seeking to amend the pleading." Krupski v. Costa Crociere S.P.A., 560 U.S. 553-54. The Supreme Court explained:

> [T]he question under Rule 15(c)(1)(C)(ii) is what the prospective defendant reasonably should have understood about the plaintiff's intent in filing the original complaint against the first defendant. To the extent the plaintiff's post-filing conduct informs the prospective defendant's understanding of whether the plaintiff initially made a "mistake concerning the proper party's identity," a court may consider the conduct. *Cf. Leonard v. Parry*, 219 F.3d 25, 29 (1st Cir. 2000)("[P]ost-filing events occasionally can shed light on the plaintiff's state of mind at an earlier time" and "can inform a defendant's reasonable beliefs concerning whether her omission from the original complaint represented a mistake (as opposed to a conscious choice)"). The plaintiff's postfiling conduct is otherwise immaterial to the question whether an amended complaint relates back.

560 U.S. 553-54.

## LAW REGARDING MODIFICATION OF SCHEDULING ORDERS

"The District Court has wide discretion in its regulation of pretrial matters." Si-Flo, Inc. v. SFHC, Inc., 917 F.2d 1507, 1514 (10th Cir. 1990). Scheduling orders, however, "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Accord Street v. Curry Bd. of Cty. Comm'rs, 2008 WL 2397671, at *6 (D.N.M. 2008)(Browning, J.). The advisory committee notes to rule 16 observe:

> [T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension. Since the scheduling order is entered early in the litigation, this standard seems more appropriate than a "manifest injustice" or "substantial hardship" test. Otherwise, a fear that extensions will not be granted may encourage counsel to request the longest possible periods for completing pleading, joinder, and discovery.

Fed. R. Civ. P. 16(b)(4) advisory committee's note to 1983 amendment.

The Tenth Circuit has held that the concepts of good cause, excusable neglect, and diligence are related. "The Tenth Circuit . . . has recognized the interrelation between 'excusable

neglect' and 'good cause.'" <u>Pulsecard, Inc. v. Discover Card Servs. Inc.</u>, 168 F.R.D. 295, 301

(D. Kan. 1996)(Rushfelt, J.)(citing <u>In re Kirkland</u>, 86 F.3d 172, 175 (10th Cir. 1996)).  "Properly

construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent

efforts."  <u>Street v. Curry Bd. of Cty. Comm'rs</u>, 2008 WL 2397671, at *6.  <u>See</u> <u>Advanced Optics</u>

<u>Electronics, Inc. v. Robins</u>, 769 F. Supp. 2d 1285, 1313 (D.N.M. 2010)(Browning, J.)(noting that

the "rule 16(b) good-cause inquiry focuses on the diligence of the party seeking [to] amend the

scheduling order.").  In <u>In re Kirkland</u>, the Tenth Circuit dealt with the definition of "good

cause" in the context of a predecessor to modern rule 4(m) of the Federal Rules of Civil

Procedure[7] and noted:

> [W]ithout attempting a rigid or all-encompassing definition of 'good cause,' it
> would appear to require <u>at least as much</u> as would be required to show excusable
> neglect, as to which simple inadvertence or mistake of counsel or ignorance of the
> rules usually does not suffice, and some showing of 'good faith on the part of the
> party seeking the enlargement and some reasonable basis for noncompliance
> within the time specified' is normally required.

86 F.3d at 175 (emphasis in original)(quoting <u>Putnam v. Morris</u>, 833 F.2d 903, 905 (10th Cir.

1987))(internal quotation marks omitted).  The Tenth Circuit explained that <u>Putnam v. Morris</u>

---

[7]Rule 4(m) provides:

If a defendant is not served within 120 days after the complaint is filed, the court
-- on motion or on its own after notice to the plaintiff -- must dismiss the action
without prejudice against that defendant or order that service be made within a
specified time.  But if the plaintiff shows good cause for the failure, the court
must extend the time for service for an appropriate period.  This subdivision (m)
does not apply to service in a foreign country under Rule 4(f) or 4(j)(1).

Fed. R. Civ. P. 4(m).  The Tenth Circuit in <u>In re Kirkland</u> interpreted rule 4(j), which was
substantially identical.  <u>See</u> 86 F.3d at 174 ("Rule 4(j) requires the court to dismiss a proceeding
if service has not been made upon the defendant within 120 days after filing and the party
responsible for service cannot show good cause why it was not made.").

"thus recognized that the two standards, although interrelated, are not identical and that 'good cause' requires a greater showing than 'excusable neglect.'" In re Kirkland, 86 F.3d at 175.

Where a party is diligent in its discovery efforts and nevertheless cannot comply with the scheduling order, the Court has found good cause to modify the scheduling order if the requesting party timely brings forward its request. For example, in Advanced Optics Electronics, Inc. v. Robins, the Court concluded that, where the defendant did not conduct discovery or make any good-faith discovery requests, and where the defendant did not make efforts "diligent or otherwise" to conduct discovery, the defendant did not, therefore, show good cause to modify the scheduling order. 769 F. Supp. 2d at 1313 n.8. In contrast, in Street v. Curry Board Of County Commissioners, the Court concluded that the plaintiff had "shown good cause for a delay in seeking leave to amend," because she "was diligent in pursuing discovery . . . [and] brought to the Court's attention her identification of an additional claim in a timely manner," where she discovered the claim through "documents provided in discovery." 2008 WL 2397671, at *11. The Court arrived at a similar determination in Abraham v. WPX Production, LLC, 2016 WL 548251 (D.N.M. 2016)(Browning, J.). The Court found good cause to amend a pleading when the plaintiffs had a very short amount of time to amend the pleadings "even though discovery had only just begun." 2016 WL 548251, at *20. "The Plaintiffs may not have obtained or reviewed all of the documents that might reveal their conspiracy claim's existence before the deadline to amend passed." 2016 WL 548251, at *20. Furthermore, the delay was minimal and would not prejudice the defendants. 2016 WL 548251, at *20.

Overall, good cause requires diligence and a conscientious attempt to comply with the Court's scheduling order. When parties have not done so, the Court has not found good cause. In Montoya v. Sheldon, 2012 WL 5353493 (D.N.M. 2012)(Browning, J.), the Court did not find

good cause to modify the scheduling order and reopen discovery where the plaintiffs' excuse for not disclosing their expert before the close of discovery was that they thought that the case would settle and they would thus not require expert testimony. See 2012 WL 5353493, at *14. The Court noted:

> The [plaintiffs] filed this case on April 15, 2010. Because [Plaintiff] D. Montoya had seen the physician before that date, the fact that the [plaintiffs] are only now bringing the physician forward as a newly identified expert witness, over two years later, and over one and a half years after the deadline to disclose expert witnesses, does not evidence circumstances in which the Court can find excusable neglect nor good cause.

2012 WL 5353493, at *14.

Similarly, in Scull v. Management & Training Corp., 2012 WL 1596962 (D.N.M. 2012)(Browning, J.), the Court denied a plaintiff's request for an extension of time to name an expert witness against a defendant. The plaintiff asserted that he had waited to name an expert witness until a second defendant joined the case, but a scheduling order was in effect before the second defendant entered the case. The Court concluded that the plaintiff should have known that he would need to name an expert witness against the defendant already in the case. See 2012 WL 1596962, at *8. The Court determined that the plaintiff was seeking "relief from his own disregard" for the deadline. 2012 WL 1596962, at *8. "Despite his knowledge that [Defendant] PNA had yet to enter the case, [Plaintiff] Scull chose to allow the deadline to pass without naming expert witnesses against [Defendant] MTC." 2012 WL 1596962, at *8. Regarding the defendant who entered the case at a later date, however, the Court allowed the plaintiff an extension of time to name an expert witness, because it "was not unreasonable for Scull to expect a new deadline to name expert witnesses upon PNA's entrance into the case because he had not yet had the opportunity to engage in discovery against PNA as he had against MTC." 2012 WL 1596962, at *9. The Court also noted that not naming an expert witness "is a

high price to pay for missing a deadline that was arguably unrealistic when it was set," as Scull could not have determined the need for an expert witness until after PNA entered the case. 2012 WL 1596962, at *9.

When serious and unforeseen events prevent a party from complying with the Court's scheduling order, however, the Court has found good cause. In Stark-Romero v. National Railroad Passenger Co. (AMTRAK), 275 F.R.D. 544 (D.N.M. 2011)(Browning, J.), the Court concluded that a lawyer had shown excusable neglect when he missed a scheduling deadline, because soon after his son's wedding, his father-in-law developed a tumor in his chest, the lawyer arranged his father-in-law's medical care, and, only after the lawyer returned to his work did he realize that a deadline passed. See 275 F.R.D. 549-50. The Court noted that the lawyer could have avoided missing the deadline had he not left his work until the last minute, just before his son's wedding, but concluded that the lawyer had demonstrated good faith and missed the deadline because of "life crises," and not because of his inadvertence. 275 F.R.D. 549-50. In West v. New Mexico Taxation and Revenue Department, 2010 WL 3834341 (D.N.M. 2010)(Browning, J.), the Court allowed a plaintiff extended time to file a response to a defendant's motion for summary judgment, in part because of the difficulty the plaintiff's counsel experienced attempting to obtain depositions with certain defense witnesses, and thus it was not her fault, and in part because cross-motions on summary judgment are particularly helpful for the Court. See 2010 WL 3834341, at *4-5. On the other hand, in Liles v. Washington Tru Solutions, LLC, 2007 WL 2298440 (D.N.M. 2007)(Browning, J.), the Court denied a plaintiff's request for additional time to respond to a defendant's motion for summary judgment, when the only rationale that the plaintiff provided was that his counsel's "family and medical emergencies" precluded the plaintiff from timely responding. 2007 WL 2298440, at *2.

# LAW REGARDING MOTIONS TO RECONSIDER UNDER RULE 59(e) AND 60

Motions to reconsider in civil cases fall into three categories:

(i) a motion to reconsider filed within [twenty-eight][8] days of the entry of judgment is treated as a motion to alter or amend the judgment under rule 59(e); (ii) a motion to reconsider filed more than [twenty-eight] days after judgment is considered a motion for relief from judgment under rule 60(b); and (iii) a motion to reconsider any order that is not final is a general motion directed at the Court's inherent power to reopen any interlocutory matter in its discretion. See Price v. Philpot, 420 F.3d 1158, 1167 & n.9 (10th Cir. 2005).

Pedroza v. Lomas Auto Mall, Inc., 258 F.R.D. 453, 462 (D.N.M. 2009)(Browning, J.). See

Computerized Thermal Imaging, Inc. v. Bloomberg. L.P., 312 F.3d 1292, 1296 (10th Cir. 2002).

Courts may treat motions for reconsideration as a rule 59(e) motion when the movant files within twenty-eight days of a court's entry of judgment. See Price v. Philpot, 420 F.3d at 1167 n.9. If the movant files outside that time period, courts should treat the motion as seeking relief from judgment under rule 60(b). See Price v. Philpot, 420 F.3d at 1167 n.9. "[A] motion for reconsideration of the district court's judgment, filed within [rule 59's filing deadline], postpones the notice of appeal's effect until the motion is resolved." Jones v. United States, 355 F. App'x 117, 121 (10th Cir. 2009)(unpublished). The time limit in rule 59(e) is now twenty-

---

[8]Former rule 59 provided for a ten-day period after entry of judgment to file motions to reconsider. In 2009, the rule was amended, extending the filing period to twenty-eight days:

Experience has proved that in many cases it is not possible to prepare a satisfactory post-judgment motion in 10 days, even under the former rule that excluded intermediate Saturdays, Sundays, and legal holidays. These time periods are particularly sensitive because Appellate Rule 4 integrates the time to appeal with a timely motion under these rules. Rather than introduce the prospect of uncertainty in appeal time by amending Rule 6(b) to permit additional time, the former 10-day periods are expanded to 28 days.

Federal Rules of Civil Procedure, Rule 59, Legal Information Institute, https://www.law.cornell.edu/rules/frcp/rule_59.

eight days from the entry of a judgment.  See Fed. R. Civ. P. 59(e).

Whether a motion for reconsideration should be considered a motion under rule 59 or rule 60 is not only a question of timing, but also "depends on the reasons expressed by the movant." Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc., 680 F.3d 1194, 1200 (10th Cir. 2011).  Where the motion "involves 'reconsideration of matters properly encompassed in a decision on the merits,'" a court considers the motion under rule 59(e).  Phelps v. Hamilton, 122 F.3d 1309, 1323-24 (10th Cir. 1997)(quoting Martinez v. Sullivan, 874 F.2d 751, 753 (10th Cir. 1989)).  In other words, if the reconsideration motion seeks to alter the district court's substantive ruling, then it should be considered a rule 59 motion and be subject to rule 59's constraints.  See Phelps v. Hamilton, 122 F.3d at 1324.  In contrast, under rule 60,

> [o]n motion and just terms, the court may relieve a party or its legal representatives from a final judgment, order, or proceeding for the following reasons:
>
> > (1)    mistake, inadvertence, surprise, or excusable neglect;
> >
> > (2)    newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> >
> > (3)    fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> >
> > (4)    the judgment is void;
> >
> > (5)    the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> >
> > (6)    any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  Neither a rule 59 nor a rule 60 motion for reconsideration are appropriate vehicles to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion. . . .  Grounds warranting a motion to

> reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice.

Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000). "[A] motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." Servants of Paraclete v. Does, 204 F.3d at 1012. A district court has considerable discretion in ruling on a motion to reconsider. See Phelps v. Hamilton, 122 F.3d at 1324.

A motion for reconsideration under rule 59(e) is an "inappropriate vehicle[] to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion." Servants of Paraclete v. Does, 204 F.3d at 1012. "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." Servants of Paraclete v. Does, 204 F.3d at 1012. "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." Servants of Paraclete v. Does, 204 F.3d at 1012. A district court has considerable discretion in ruling on a motion to reconsider under rule 59(e). See Phelps v. Hamilton, 122 F.3d at 1324.

Rule 60 authorizes a district court to, "[o]n motion and just terms[,] . . . relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons," including "any other reason that justifies relief." Fed. R. Civ. P. 60(b). A court cannot enlarge the time for filing a rule 59(e) motion. See Brock v. Citizens Bank of Clovis, 841 F.2d 344, 347 (10th Cir. 1988)(holding that district courts lack jurisdiction over untimely rule 59(e) motions); Plant Oil Powered Diesel Fuel Sys., Inc. v. ExxonMobil Corp., 2012 WL 869000, at *2 (D.N.M.

2012)(Browning, J.)("The Court may not extend the time period for timely filing motions under Rule 59(e) . . . ."). "A motion under rule 59 that is filed more than 28 days after entry of judgment may be treated as a Rule 60(b) motion for relief from judgment." 12 James Wm. Moore, Moore's Federal Practice § 59.11[4][b], at 59-32 (3d ed. 2012)(citations omitted). Nevertheless, a court will not generally treat an untimely rule 59(e) motion as a rule 60(b) motion when the party is seeking "'reconsideration of matters properly encompassed in a decision on the merits' contemplated by Rule 59(e)." Jennings v. Rivers, 394 F.3d 850, 854 (10th Cir. 2005).

Under some circumstances, parties can rely on rule 60(b)(1) for a mistake by their attorney or when their attorney acted without their authority. See Yapp v. Excel Corp., 186 F.3d 1222, 1231 (10th Cir. 1999)("Rule 60(b)(1) motions premised upon mistake are intended to provide relief to a party . . . when the party has made an excusable litigation mistake or an attorney has acted without authority . . . ."). Mistake in this context entails either acting without the client's consent or making a litigation mistake, such as failing to file or to comply with deadlines. See Yapp v. Excel Corp., 186 F.3d at 1231. If the alleged incident entails a mistake, then it must be excusable, meaning that the party was not at fault. See Pioneer Inv. Servs. v. Brunswick Assocs. LP, 507 U.S. 380, 394 (1993); Cashner v. Freedom Stores, Inc., 98 F.3d 572, 577 (10th Cir. 1996)("If the mistake alleged is a party's litigation mistake, we have declined to grant relief under Rule 60(b)(1) when the mistake was the result of a deliberate and counseled decision by the party."); Pelican Prod. Corp. v. Marino, 893 F.2d 1143, 1146 (10th Cir. 1990)(holding that attorney carelessness is not a basis for relief under rule 60(b)(1)).

Courts will not grant relief when the mistake of which the movant complains is the result of an attorney's deliberate litigation tactics. See Cashner v. Freedom Stores, Inc., 98 F.3d at 577.

This rule exists because a party

> voluntarily chose [the] attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.

Pioneer Inv. Servs. v. Brunswick Assocs. LP, 507 U.S. at 397 (quoting Link v. Wabash R.R. Co., 370 U.S. 626, 633-34 (1962))(internal quotation marks omitted). The Tenth Circuit has held that there is nothing "novel" about "the harshness of penalizing [a client] for his attorney's conduct" and has noted that those "who act through agents are customarily bound," even though, when "an attorney is poorly prepared to cross-examine an expert witness, the client suffers the consequences." Gripe v. City of Enid, Okla., 312 F.3d 1184, 1189 (10th Cir. 2002). The Court has previously stated:

> There is a tension between how the law treats attorney actions that are without authority, thus permitting relief under rule 60(b), and how the law treats those attorney actions which are inexcusable litigation decisions, thus failing to qualify for relief; although the distinction between those actions may not always be logical, it is well established.

Wilson v. Jara, 2012 WL 1684595, at *7 (D.N.M. 2012)(Browning, J.).

Rule 60(b)(6) is a "grand reservoir of equitable power to do justice in a particular case." Van Skiver v. United States, 952 F.2d 1241, 1244 (10th Cir. 1991)(internal quotation marks omitted). "If the reasons offered for relief from judgment could be considered under one of the more specific clauses of Rule 60(b)(1)-(5), those reasons will not justify relief under Rule 60(b)(6)." Moore, supra, § 60.48[2], at 60-182. Accord Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863 n.11 (1988)("This logic, of course, extends beyond clause (1) and suggests that clause (6) and clauses (1) through (5) are mutually exclusive."). "The Rule does not particularize the factors that justify relief, but we have previously noted that it provides

courts with authority 'adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice,' while also cautioning that it should only be applied in 'extraordinary circumstances.'" Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. at 863 (quoting Ackermann v. United States, 340 U.S. 193, 202 (1950)).

Generally, the situation must be one beyond the control of the party requesting relief under rule 60(b)(6) to warrant relief. See Ackermann v. United States, 340 U.S. 193, 202 (1950)("The comparison [of prior precedent] strikingly points up the difference between no choice and choice; imprisonment and freedom of action; no trial and trial; no counsel and counsel; no chance for negligence and inexcusable negligence. Subsection 6 of Rule 60(b) has no application to the situation of petitioner."). Legal error that provides a basis for relief under rule 60(b)(6) must be extraordinary, as the Tenth Circuit discussed in Van Skiver v. United States:

> The kind of legal error that provides the extraordinary circumstances justifying relief under Rule 60(b)(6) is illustrated by Pierce [v. Cook & Co., 518 F.2d 720, 722 (10th Cir. 1975)(en banc)]. In that case, this court granted relief under 60(b)(6) when there had been a post-judgment change in the law "arising out of the same accident as that in which the plaintiffs . . . were injured." Pierce v. Cook & Co., 518 F.2d at 723. However, when the post-judgment change in the law did not arise in a related case, we have held that "[a] change in the law or in the judicial view of an established rule of law" does not justify relief under Rule 60(b)(6). Collins v. City of Wichita, 254 F.2d 837, 839 (10th Cir. 1958).

Van Skiver v. United States, 952 F.2d at 1244-45.

## LAW REGARDING MOTIONS TO RECONSIDER INTERLOCUTORY ORDERS

Considerable confusion exists among the bar regarding the proper standard for a district court to apply when ruling on a motion to reconsider one of its prior "interlocutory" or "interim" orders, i.e., an order that a district court issues while the case is ongoing, as distinguished from a final judgment. This confusion originates from the fact that the Federal Rules of Civil Procedure

do not mention motions to reconsider, let alone set forth a specific procedure for filing them or a standard for analyzing them. A loose conflation in terminology in <u>Servants of the Paraclete v. Does</u>, which refers to rule 59(e) motions -- "motion[s] to alter or amend a <u>judgment</u>" -- as "motions to reconsider,"[9] compounded that baseline confusion. Fed. R. Civ. P. 59(e) (emphasis added); <u>Servants of the Paraclete v. Does</u>, 204 F.3d at 1005.

Final judgments are different from interlocutory orders. <u>See</u> Fed. R. Civ. P. 54(a) ("'Judgment' as used in these rules includes a decree and any order <u>from which an appeal lies</u>.")(emphasis added). In addition to ripening the case for appeal, <u>see</u> 28 U.S.C. § 1291 ("The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts . . . ."), the entry of final judgment narrows the district court's formerly plenary jurisdiction over the case in three ways. First, for the first twenty-eight days after the entry of judgment, when the court can entertain motions under rules 50(b), 52(b), 59, and 60, the district

---

[9]The Honorable Paul J. Kelly, Jr., United States Circuit Judge for the Tenth Circuit, who authored <u>Servants of the Paraclete v. Does</u>, refers to rule 59(e) motions as "motions to reconsider" several times throughout the opinion. <u>See</u>, <u>e.g.</u>, 204 F.3d at 1005. He uses the term "motion to reconsider" as an umbrella term that can encompass three distinct motions: (i) motions to reconsider an interlocutory order, which no set standard governs, save that the district court must decide them "before the entry of . . . judgment," Fed. R. Civ. P. 54(b); (ii) motions to reconsider a judgment made within twenty-eight days of the entry of judgment, which the <u>Servants of the Paraclete v. Does</u> standard governs; and (iii) motions to reconsider a judgment made more than twenty-eight days after the entry of judgment, which rule 60(b) governs. There is arguably a fourth standard for motions to reconsider filed more than a year after the entry of judgment, as three of the rule 60(b) grounds for relief expire at that point.

Much confusion could be avoided by using the term "motion to reconsider" exclusively to refer to the first category, "motion to amend or alter the judgment" exclusively to refer to the second category, and "motion for relief from judgment" exclusively to refer to the third category (and arguable fourth category). These are the terms that the Federal Rules of Civil Procedure -- and other Circuits -- use to describe (ii) and (iii). The Court agrees with Judge Kelly -- and all he likely meant by using motion to reconsider as an umbrella term is -- that, if a party submits a motion captioned as a "motion to reconsider" after an entry of final judgment, the court should evaluate it under rule 59(e) or 60(b), as appropriate, rather than rejecting it as untimely or inappropriate.

court's jurisdiction trumps that of the Court of Appeals. See Fed. R. App. P. 4(a)(4)(B). Even if a party files a notice of appeal, the Court of Appeals will wait until after the district court has ruled on the post-judgment motion to touch the case. See Fed. R. App. P. 4(a)(4)(B). Second, after twenty-eight days, when the court may consider motions under rule 60, if a party has filed a notice of appeal, the Court of Appeals' jurisdiction trumps the district court's, and the district court needs the Court of Appeals' permission even to grant a rule 60 motion. Third, after twenty-eight days, if no party has filed a notice of appeal, district courts may consider motions under rule 60.

Final judgments implicate two important concerns militating against giving district courts free reign to reconsider their judgments. First, when a case is not appealed, there is an interest in finality. The parties and the lawyers expect to go home, quit obsessing about the dispute, and put the case behind them, and the final judgment -- especially once the twenty-eight day window of robust district court review and the thirty-day window of appeal have both closed -- is the disposition upon which they are entitled to rely. Second, when a case is appealed, there is the need for a clean jurisdictional handoff from the district court to the Court of Appeals. "[A] federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously," as doing so produces a "danger [that] a district court and a court of appeals w[ill] be simultaneously analyzing the same judgment." Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58-59 (1982).

The Court of Appeals needs a fixed record on which to base its decisions -- especially given the collaborative nature of appellate decisionmaking -- and working with a fixed record requires getting some elbow room from the district court's continued interference with the case. The "touchstone document" for this jurisdictional handoff is the notice of appeal, not the final

judgment, see Griggs v. Provident Consumer Discount Co., 459 U.S. at 58 ("The filing of a notice of appeal is an event of jurisdictional significance -- it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." (citations omitted)); Garcia v. Burlington N. R.R. Co., 818 F.2d 713, 721 (10th Cir. 1987)("Filing a timely notice of appeal pursuant to Fed. R. App. P. 3 transfers the matter from the district court to the court of appeals. The district court is thus divested of jurisdiction. Any subsequent action by it is null and void." (citations omitted)); Kirtland v. J. Ray McDermott & Co., 568 F.2d 1166, 1170 (5th Cir. 1978)("[I]t is the filing of the appeal, not the entering of a final judgment, that divests the district court of jurisdiction." (citations omitted)), but, because the final judgment starts the parties' thirty-day clock for filing a timely notice of appeal, the Federal Rules and the Tenth Circuit have chosen to curtail the district court's jurisdiction over the case in the roughly month-long period of potentially overlapping trial- and appellate-court jurisdiction that immediately follows the entry of final judgment, see Servants of the Paraclete v. Does, 204 F.3d at 1009 (noting that post-final judgment motions at the district court level are "not intended to be a substitute for direct appeal").

Basically, rather than suddenly divesting the district court of all jurisdiction over the case -- potentially resulting in the district court being unable to rectify easily fixable problems with the final judgment before the case goes to the Tenth Circuit, or even requiring appeal of a case that might otherwise not need to be appealed -- the Federal Rules set forth a jurisdiction phased de-escalation process, wherein the district court goes from pre-final judgment plenary jurisdiction, to limited review for the first twenty-eight days post-final judgment, and, finally, to solely rule 60 review after twenty-eight days. In defining the "limited review" that rule 59(e) allows a district court to conduct in the 28-day flux period, the Tenth Circuit, in Servants of the

Paraclete v. Does, incorporated traditional law-of-the-case grounds -- the same grounds that inform whether a court should depart from an appellate court's prior decision in the same case -- into rule 59(e).  See United States v. Alvarez, 142 F.3d 1243, 1247 (10th Cir. 1998)(departing from the law of the case doctrine in three exceptionally narrow circumstances: "(1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice")(citation omitted); Servants of the Paraclete v. Does, 204 F.3d at 1012 (incorporating those grounds into rule 59(e)).

Neither of these concerns -- finality nor jurisdictional overlap -- is implicated when a district court reconsiders one of its own interlocutory orders.  The Federal Rules do not specifically mention motions to reconsider interlocutory orders, but rule 54(b) makes the following open-ended proclamation about their mutability:

> When an action presents more than one claim for relief -- whether as a claim, counterclaim, crossclaim, or third-party claim -- or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.  Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b) (emphases added).  Rule 54(b) thus (i) provides that a district court can freely reconsider its prior rulings; and (ii) puts no limit or governing standard on the district court's ability to do so, other than that it must do so "before the entry of judgment."  Fed. R. Civ. P. 54(b).

The Tenth Circuit has not cabined district courts' discretion beyond what rule 54(b) provides: "[D]istrict courts generally remain free to reconsider their earlier interlocutory orders."

Been v. O.K. Indus., 495 F.3d at 1225.  In the Tenth Circuit, "law of the case doctrine has <u>no</u> bearing on the revisiting of interlocutory orders, even when a case has been reassigned from one judge to another."  <u>Rimbert v. Eli Lilly & Co.</u>, 647 F.3d 1247, 1252 (10th Cir. 2011)(emphasis added)(citing <u>Been v. O.K. Indus., Inc.</u>, 495 F.3d at 1225).  In this context, "the doctrine is merely a 'presumption, one whose strength varies with the circumstances.'"  <u>Been v. O.K. Indus., Inc.</u>, 495 F.3d at 1225 (quoting <u>Avitia v. Metro. Club of Chi., Inc.</u>, 49 F.3d 1219, 1227 (7th Cir. 1995)).  In short, a district court can use whatever standard it wants to review a motion to reconsider an interlocutory order.  It can review the earlier ruling de novo and essentially reanalyze the earlier motion from scratch, it can review the ruling de novo but limit its review, it can require parties to establish one of the law-of-the-case grounds, or it can refuse to entertain motions to reconsider altogether.

The best approach, in the Court's eyes -- and which it announced, as follows, in <u>Anderson Living Tr. v. WPX Energy Prod., LLC</u>, 308 F.R.D. 410, 430-35 (D.N.M. 2015)(Browning, J.) -- is to analyze motions to reconsider differently depending on three factors. <u>Cf.</u> <u>Been v. O.K. Indus., Inc.</u>, 495 F.3d at 1225 ("[T]he doctrine is merely a 'presumption, one whose strength varies with the circumstances.'")(citation omitted).  First, the Court should restrict its review of a motion to reconsider a prior ruling in proportion to how thoroughly the earlier ruling addressed the specific findings or conclusions that the motion to reconsider challenges.  How "thoroughly" a point was addressed depends both on the amount of time and energy the Court spent on it, and on the amount of time and energy the parties spent on it -- in briefing and orally arguing the issue, but especially if they developed evidence on the issue.  A movant for reconsideration thus faces a steeper uphill challenge when the prior ruling was on a

criminal suppression motion, class certification motion, or preliminary injunction,[10] than when

the prior ruling is, e.g., a short discovery ruling. The Court should also look, not to the overall

thoroughness of the prior ruling, but to the thoroughness with which the Court addressed the

exact point or points that the motion to reconsider challenges. A movant for reconsideration thus

faces an easier task when he or she files a targeted, narrow-in-scope motion asking the Court to

reconsider a small, discrete portion of its prior ruling than when he or she files a broad motion to

reconsider that rehashes the same arguments from the first motion, and essentially asks the Court

to grant the movant a mulligan on its earlier failure to present persuasive argument and evidence.

Second, the Court should consider the case's overall progress and posture, the motion for

reconsideration's timeliness relative to the ruling it challenges, and any direct evidence the

parties may produce, and use those factors to assess the degree of reasonable reliance the

opposing party has placed in the Court's prior ruling. See 18B CHARLES ALAN WRIGHT,

ARTHUR R. MILLER, EDWARD H. COOPER, VIKRAM DAVID AMAR, RICHARD D. FREER, HELEN

---

[10]The Court typically makes findings of fact and conclusions of law in ruling on these motions. At first glance, it appears that the Federal Rules of Civil Procedure set forth additional standards -- beyond that which applies to other interlocutory orders -- for amending findings of fact and conclusions of law:

> **Amended or Additional Findings.** On a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings -- or make additional findings -- and may amend the judgment accordingly. The motion may accompany a motion for a new trial under Rule 59.

Fed. R. Civ. P. 52(b). This rule appears to limit motions to reconsider orders with findings of fact and conclusions of law to twenty-eight days. The rule's use of the term "entry of judgment," its reference to rule 59, and its adoption of the same time period that applies to motions to alter or amend a judgment, all lead the Court to conclude, however, that rule 52(b) -- and its 28-day time limit -- does not apply to interlocutory orders. The time limit applies only to findings of fact and conclusions of law supporting a case-ending judgment -- such as those entered after a bench trial -- and to those giving rise to an interlocutory appeal that, if filed, divests the district court of its jurisdiction -- such as those entered in support of a preliminary injunction.

HERSHKOFF, JOAN E. STEINMAN & CATHERINE T. STRUVE, FEDERAL PRACTICE & PROCEDURE § 4478.1 (2d ed.)("Stability becomes increasingly important as the proceeding nears final disposition . . . . Reopening should be permitted, however, only on terms that protect against reliance on the earlier ruling."). For example, if a defendant (i) spends tens of thousands of dollars removing legacy computer hardware from long-term storage; then (ii) obtains a protective order in which the Court decides that the defendant need not produce the hardware in discovery; then (iii) returns the hardware to long-term storage, sustaining thousands more in expenses; and (iv) several months pass, then the plaintiffs should face a higher burden in moving the Court to reconsider its prior ruling that they faced in fighting the motion for protective order the first time.

Third, the Court should consider the Servants of the Paraclete v. Does grounds. The Court should be more inclined to grant motions for reconsideration if the movant presents (i) new controlling authority -- especially if the new authority overrules prior law or sets forth an entirely new analytical framework; (ii) new evidence -- especially if the movant has a good reason why the evidence was not presented the first time around; or (iii) a clear indication -- one that manifests itself without the need for in-depth analysis or review of the facts -- that the Court erred.

These three factors should influence the degree to which the Court restricts its review of a prior ruling, but they do not necessarily mean that the Court should always apply a deferential standard of review. The Court should pause before applying a standard of review to its own interlocutory orders that is more deferential than the standard that the Court of Appeals will apply to it, unless the Court concludes that the alleged error in the prior ruling was harmless, or the party moving for reconsideration waived their right to appeal the alleged error by not raising the appropriate argument. Even in circumstances where the Court concludes that it is insulated

from reversal on appeal, there are principled reasons for applying a de novo standard. After all, if the Court was wrong in its earlier decision, then, generally speaking, it is unjust to maintain that result -- although the Court should weigh this injustice against any injustice that would result from upending the parties' reliance on the earlier ruling, which is the balancing test that the three factors above represent.

What the Court means by "restricting its review" is less about applying a deferential standard of review -- although that may be appropriate in some circumstances -- and more about reducing (i) the depth of the Court's analysis the second time around -- thus conserving judicial resources; and (ii) the impositions that relitigation of the prior ruling will impose on the party opposing the motion for reconsideration. The Court should consider the time and expense that the party opposing reconsideration spent in winning the earlier ruling, and should try to prevent that party from having to bear the same impositions again. Basically, even if the Court ultimately analyzes a motion to reconsider under the same standard that it analyzed the motion that produces the earlier ruling, it should analyze the motion in a different way -- one focused on reducing the litigation burdens of the party opposing reconsideration. For example, when a party moves the Court for a preliminary injunction, standard practice is that the Court holds an evidentiary hearing as a matter of course, regardless whether it looks as if the party has a good chance of prevailing. If the party loses and the Court denies the injunction, however, and the party moves for reconsideration, the party should not be entitled to the presumption of an evidentiary hearing merely because he or she received that presumption the first time the Court considered the motion.

In light of these statements, it is perhaps better to characterize the increased burden that a movant for reconsideration faces as one of production, and not of persuasion. The Court

analyzes motions to reconsider by picking up where it left off in the prior ruling -- not by starting anew. Parties opposing reconsideration can do the same, and they may stand on whatever evidence and argument they used to win the earlier ruling. Movants for reconsideration, on the other hand, carry the full burden of production: they must persuade the Court, using only the evidence and argument they put before it, that it should change its prior ruling; they must do all of the legwork, and not rely on the Court to do any supplemental fact-finding or legal research; and they must convincingly refute both the counterarguments and evidence that the opposing party used to win the prior ruling and any new arguments and evidence that the opposing party produces while opposing the motion to reconsider. Unlike the motion that produced the prior ruling, a motion to reconsider is not -- and is not supposed to be -- a fair fight procedurally. The deck is stacked against a movant for reconsideration, and if such a movant hopes to prevail, he or she must have not only a winning legal position, but the work ethic and tenacity to single-handedly lead the Court to his or her way of thinking. See Pueblo of Pojoaque v. State, 2017 WL 2266857 (D.N.M. 2017)(Browning, J.).

## ANALYSIS

The Court will deny the Motion to Reconsider. The Court already considered the issues that Benavidez now raises in her Motion to Reconsider in the Court's Amendment MOO. The Court concluded in the Amendment MOO that Benavidez' withdrawal of the Motion for Leave to Substitute Second Amended Complaint rendered leave to amend the First Amended Complaint futile as to the proposed Plaintiffs, because the limitations period on their federal claims had lapsed. The Court noted in the Amendment MOO that

> it understands that Benavidez and her attorneys were in a position where they considered the claims of the three proposed Plaintiffs as being related to Benavidez' claims, and as arising from the same circumstances at Sandia Labs, and that Sandia Labs on numerous occasions indicated that they would prefer to

defend one lawsuit, as opposed to four separate lawsuits. Indeed, Sandia Labs offered to toll the statute of limitations appurtenant to the potential Plaintiffs' federal claims -- yet, Benavidez and her attorneys did not engage in any relevant colloquy with Sandia Labs on this point or assent to that offer to toll in some other manner. Instead, Benavidez chose to try to amend her First Amended Complaint to include the three proposed Plaintiffs as parties to the Proposed Second Amended Complaint. The Court would not have pursued such a strategy; Benavidez and the proposed Plaintiffs were more intent on preserving the record for appeal with respect to the state law claims than they were in timely filing the proposed Plaintiffs' claims. The proposed Plaintiffs ought have recognized, or at least considered, that the Court was going to dismiss Benavidez' First Amended Complaint in its entirety, the only complaint before the Court -- particularly after receiving the Court's inclination at the January hearing. Thus, the potential Plaintiffs' decision to pursue their claims against Sandia Labs in this case by simply waiting for Benavidez' receipt of leave to amend the First Amended Complaint to add them as parties was a risky strategy given that the clock was ticking. The Court gave Benavidez and the proposed Plaintiffs the power to be the masters of their own lawsuit -- indeed, the Court specifically instructed Benavidez to "make your own decision whether you want to file separate cases" given the proposed addition of new Plaintiffs, and

> if you need to file separate cases, you can. If I get the opinions out and you want to bring it back here, [we can] pick this up, I'll just hold this [Proposed Second Amended Complaint] for the time being, I won't rule on it, and then you can make a decision. You'll just have to be the judge of your own time.

May Tr. at 6:7-16 (Court). The prudent thing to do would have been to file a separate lawsuit to beat the statute of limitations and then seek to consolidate if they wanted to litigate all of the cases together. Because Benavidez' case was first filed, and has the lowest number, the tradition and custom in this district is to consolidate within that lowest number. It took the Court some time to issue the Preemption MOO, because it had not done a lot of work in the two main areas at issue -- LMRA preemption and federal enclave jurisdiction -- and had not extensively written on these, in this context, before. Also, the parties argued the federal enclave issue at the hearing, but had not extensively briefed that jurisdictional issue, which was new to the Court. The Court thus had to do a lot of that research on its own. The proposed Plaintiffs had, however, the opportunity to file separate cases before the statutory period had lapsed -- although, the Court is aware that its admonition in May would potentially not have fixed the problem, as the statutory period had indeed already lapsed at that time. The Court notes, however, that, in May, the Motion for Leave to Substitute Second Amended Complaint had not yet been withdrawn -- that is, there may have been an argument that the statutory period had been tolled by the filing of the state-law-claim-riddled Proposed Second Amended Complaint which the Court had indicated it would deny, at least in part, at the August hearing. The decision not

to file separate cases -- or to enter into a tolling agreement with Sandia Labs --
before the statutory period's lapse, now manifesting itself as a risky decision, has
become the operative error rendering the proposed Plaintiffs' claims futile.

Amendment MOO at 57-59, 2017 WL 2266854, at *27. Benavidez argues in the Motion to

Reconsider that the Court did not fully consider the effect of her withdrawal of the Motion for

Leave to Substitute Second Amended Complaint or the nature of the tolling of the limitations

period by her filing the Motion for Leave to Substitute Second Amended Complaint. Benavidez

points, in particular, to the Court's discussion whether "the statutory period had been tolled by

the filing of the state-law-claim-riddled Proposed Second Amended Complaint which the Court

had indicated it would deny, at least in part, at the August hearing." Amendment MOO at 58-59,

2017 WL 2266854, at *27. Benavidez, then, ultimately asks the Court to reconsider whether (i)

there was any event that stopped or negated the tolling that she argues occurred during the time

from when she filed the Motion for Leave to Substitute Second Amended Complaint until the

time when the Court entered the Amendment MOO denying that motion (meaning that there

would still be eighteen days after the Amendment MOO left to file within the limitations period);

and, alternatively, whether (ii) the Proposed Third Amended Complaint should be deemed filed

when the Proposed Second Amended Complaint was filed, notwithstanding Benavidez'

withdrawal of the Motion for Leave to Substitute Second Amended Complaint to which the

Proposed Second Amended Complaint was attached. See Motion to Reconsider Reply at 6.

Again, the Court is convinced that it considered -- in full -- the nature and impact of

Benavidez' withdrawal of the Motion for Leave to Substitute Second Amended Complaint by the

Court's grant in the Amendment MOO of the withdrawal request in her Motion to Withdraw and

Amend -- which, of course, was only confirming its grant of withdrawal by its September 30,

2016, Order without Opinion. Before reaching its analysis underlying its conclusion, the Court

must first resolve an apparent dispute amongst the parties regarding the proper standard for reconsideration of the Court's order in this case. The Court's reasoning is as follows.

## I. THE COURT WILL RECONSIDER ITS AMENDMENT MOO AS AN INTERLOCUTORY ORDER.

Benavidez suggests that "[t]he present motion to reconsider is governed by either Fed. R. Civ. P. 59(e) or by the Court's inherent discretionary power, depending on the finality of the order." Motion to Reconsider at 6-7. Accordingly, Benavidez argues that, if the Amendment MOO is "a decision on the merits . . . [, a] timely motion filed pursuant to Rule 59(e) may be granted if there has been an intervening change in controlling law, new evidence is available, or there is a need to correct clear error or prevent manifest injustice." Motion to Reconsider at 7 (internal quotation marks omitted). In particular, Benavidez "asks the Court to reconsider [the Amendment MOO's] result based on manifest injustice." Motion to Reconsider Reply at 6. Benavidez alternatively argues that, if the Amendment MOO is "considered interlocutory, reconsideration is within the Court's inherent authority . . . [and t]he appropriate factors for a court to consider in exercising its inherent authority to reconsider include conservation of judicial resources and the imposition of re-litigation on the party opposing reconsideration." Motion to Reconsider at 7.

Sandia Labs provides that,

[w]ithout taking a definitive position on which standard actually applies, Plaintiffs invoke both Rule 59(e) and the Court's inherent authority to review interlocutory matters. Sandia's view is that the standard set forth in New Mexico ex rel. Balderas v. Valley Meat Co. . . . is probably the better fit, but the point is academic. Under no standard are Plaintiffs entitled to the relief they seek.

Motion to Reconsider Response at 4-5. The standard to which Sandia Labs refers is the Court's inherent authority to reconsider interlocutory orders. See Motion to Reconsider Response at 5. Notably, according to Sandia Labs, the rule 59 factors nonetheless find their way into the Court's

analysis of an interlocutory order, in addition to the Court's consideration of "how thoroughly the earlier ruling addressed the specific findings or conclusions that the motion to reconsider challenges," "the case's overall progress and posture [and] the motion for reconsideration's timeliness relative to the ruling it challenges, and any direct evidence the parties may produce," which the Court should consider and use "to assess the degree of reasonable reliance the opposing party has placed in the Court's prior ruling." Motion to Reconsider Response at 6-7.

The Court, here, will consider the Motion to Reconsider in the context of reconsideration of an interlocutory order. The Court understands that, effectively, the Amendment MOO has ended this litigation as far as the proposed Plaintiffs are concerned. The Court's Amendment MOO, however, is more properly considered as an interlocutory order, as it is premised on procedural requirements related to the limitations period for the proposed Plaintiffs' federal claims, and it did not end the litigation as to all parties and claims. The fact that the proposed Plaintiffs ask the Court to reconsider its Amendment MOO suggests that they think that the Court can change its interlocutory ruling and add the proposed Plaintiffs to this case, too, and Sandia Labs thus argues that the standard should be the one for interlocutory orders. See Motion to Reconsider Response at 6-7. Rule 54(b) allows a district court to freely reconsider its prior interlocutory rulings. See Fed. R. Civ. P. 54(b)(stating that any order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"); Anderson Living Tr. v. WPX Energy Prod., LLC, 308 F.R.D. at 434. Rule 54(b) puts no limit or governing standard on the district court's ability to reconsider its prior rulings, other than that it must do so "before the entry of judgment." Fed. R. Civ. P. 54(b). Rule 54(b) also allows a court to enter a final judgment where "it expressly determines that there is no just

reason for delay." Fed. R. Civ. P. 54(b). In that sense, the Court "can use whatever standard it wants to review a motion to reconsider an interlocutory order," and "it can refuse to entertain motions to reconsider altogether." Anderson Living Tr. v. WPX Energy Prod., LLC, 308 F.R.D. at 434 (describing how the Court reviews motions to reconsider its own interlocutory orders). Ultimately, the Court also agrees with Sandia Labs that the distinction which Benavidez identifies, practically, does not noticeably alter the Court's analysis, because it will nonetheless take into consideration the rule 59 factors as the Court conducts its reconsideration of the Amendment MOO. The Court, accordingly, will reconsider its Amendment MOO in that context.

**II.    THE COURT WILL DENY THE MOTION TO RECONSIDER, BECAUSE IT HAS ALREADY CONSIDERED THE OPERATIVE EFFECT OF BENAVIDEZ' MOTION TO WITHDRAW AND AMEND ON HER MOTION FOR LEAVE TO SUBSTITUTE SECOND AMENDED COMPLAINT, THAT EFFECT BEING MOST AKIN TO THE EFFECT OF A VOLUNTARY DISMISSAL IN THIS CONTEXT.**

Benavidez has not adduced any legal authority in favor of her position in the Motion to Reconsider. Ultimately, she requests that the Court rethink its conclusion in the Amendment MOO granting her Motion to Withdraw and Amend -- which is that the grant of withdrawal had the procedural effect of withdrawing from the Court's consideration the content and legal argument in the Motion for Leave to Substitute Second Amended Complaint and rendering any tolling effect that motion might have otherwise had inoperative -- and instead conclude that tolling of the limitations period occurred from the date she filed the Motion for Leave to Substitute Second Amended Complaint until the date the Court filed the Amendment MOO, or alternatively, that the Proposed Third Amended Complaint attached to the Motion to Withdraw and Amend should be deemed filed on the date that she filed the Motion for Leave to Substitute Second Amended Complaint. In consideration of an opinion as an interlocutory order, as the

Court provided in <u>Anderson Living Tr. v. WPX Energy Prod., LLC</u>, district courts can use whatever standard they want to review a motion to reconsider an interlocutory order.  <u>See</u> 308 F.R.D. at 434.  They can review the earlier ruling de novo and essentially reanalyze the earlier motion from scratch, review the ruling de novo but limit its review, require parties to establish one of the law-of-the-case grounds, or refuse to entertain motions to reconsider altogether. Accordingly, the Court's approach is generally to analyze motions to reconsider differently depending on its consideration of three factors.  <u>Cf.</u> <u>Been v. O.K. Indus., Inc.</u>, 495 F.3d at 1225. First, the Court can generally restrict its review of a motion to reconsider a prior ruling in proportion to how thoroughly the earlier ruling addressed the specific findings or conclusions that the motion to reconsider challenges.  <u>See</u> <u>Anderson Living Tr. v. WPX Energy Prod., LLC</u>, 308 F.R.D. at 434.  How "thoroughly" a point was addressed depends both on the amount of time and energy the Court spent on it, and on the amount of time and energy the parties spent on it -- in briefing and orally arguing the issue, but especially if they developed evidence on the issue.  308 F.R.D. at 434.  In its review, the Court can also look, not to the overall thoroughness of the prior ruling, but to the thoroughness with which the Court addressed the exact point or points that the motion to reconsider challenges.  <u>See</u> 308 F.R.D. at 434.  A movant for reconsideration thus faces an easier task when he or she files a targeted, narrow-in-scope motion asking the Court to reconsider a small, discrete portion of its prior ruling than when he or she files a broad motion to reconsider that rehashes the same arguments from the first motion, and essentially asks the Court to grant the movant a mulligan on its earlier failure to present persuasive argument and evidence.  <u>See</u> 308 F.R.D. at 434.  Here, the Court issued a 115-page opinion concerning the relation back of the claims of plaintiffs seeking to be added to a case, an

issue the Court reached because it had already disagreed with the precedent analysis which Benavidez now proffers in her Motion to Reconsider regarding tolling and the like.

Second, the Court can consider the case's overall progress and posture, the motion for reconsideration's timeliness relative to the ruling it challenges, and any direct evidence the parties may produce, and use those factors to assess the degree of reasonable reliance the opposing party has placed in the Court's prior ruling. See 18B Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Vikram David Amar, Richard D. Freer, Helen Hershkoff, Joan E. Steinman & Catherine T. Struve, FEDERAL PRACTICE & PROCEDURE § 4478.1 (2d ed.)("Stability becomes increasingly important as the proceeding nears final disposition . . . . Reopening should be permitted, however, only on terms that protect against reliance on the earlier ruling."). See also Anderson Living Tr. v. WPX Energy Prod., LLC, 308 F.R.D. at 434. In this case, the Court is cognizant of the fact that its Amendment MOO resulted in the inability of the proposed Plaintiffs to bring their employment discrimination claims before the Court. The Court also notes, however, that this litigation has been commenced for more than a year, at this point.

Third, the Court can consider the Servants of the Paraclete v. Does grounds. See Anderson Living Tr. v. WPX Energy Prod., LLC, 308 F.R.D. at 434. The Court will be more inclined to grant motions for reconsideration if the movant presents (i) new controlling authority -- especially if the new authority overrules prior law or sets forth an entirely new analytical framework; (ii) new evidence -- especially if the movant has a good reason why the evidence was not presented the first time around; or (iii) a clear indication -- one that manifests itself without the need for in-depth analysis or review of the facts -- that the Court erred. See Anderson Living Tr. v. WPX Energy Prod., LLC, 308 F.R.D. at 434. Here, the Court notes that

the Motion to Reconsider does not present any new controlling law or new evidence, and instead relies on its proffer of manifest injustice, because proposed Plaintiffs could not enter this case.

In sum, these three factors -- (i) how thoroughly it considered an issue; (ii) the case's progression; and (iii) the Servants of the Paraclete v. Does factors (new controlling authority, new evidence or a clear indication that the Court erred) -- will influence the degree to which the Court will potentially restrict its review of its prior ruling in the Amendment MOO. To the extent that the Court will restrict its de novo review, the potential restriction is less about applying a deferential standard of review -- although that may be appropriate in some circumstances -- and more about reducing (i) the depth of the Court's analysis the second time around -- thus conserving judicial resources; and (ii) the impositions that relitigation of the prior ruling will impose on the party opposing the motion for reconsideration. See Anderson Living Tr. v. WPX Energy Prod., LLC, 308 F.R.D. at 434. The Court will consider the time and expense that the party opposing reconsideration spent in winning the earlier ruling, and should try to prevent that party from having to bear the same impositions again. See 308 F.R.D. at 434. Basically, even if the Court ultimately analyzes a motion to reconsider under the same standard that it analyzed the motion that produces the earlier ruling, it may in places analyze the motion in a different way -- one focused on reducing the litigation burdens of the party opposing reconsideration. See 308 F.R.D. at 434. The Court analyzes motions to reconsider by picking up where it left off in the prior ruling -- not by starting anew. See 308 F.R.D. at 434. Parties opposing reconsideration can do the same, and they may stand on whatever evidence and argument they used to win the earlier ruling, and the Court will give Sandia Labs that benefit. See 308 F.R.D. at 434. Movants for reconsideration, like Benavidez, carry the full burden of production: they must persuade the Court, using only the evidence and argument they put before

it, that it should change its prior ruling; they must do all of the legwork, and not rely on the Court to do any supplemental fact-finding or legal research; and they must convincingly refute both the counterarguments and evidence that the opposing party used to win the prior ruling and any new arguments and evidence that the opposing party produces while opposing the motion to reconsider. See 308 F.R.D. at 434. Unlike the motion that produced the prior ruling, a motion to reconsider is not -- and is not supposed to be -- a fair fight procedurally. See 308 F.R.D. at 434. The deck is stacked against the movant for reconsideration, and if the movant hopes to prevail, he or she must have not only a winning legal position, but the work ethic and tenacity to single-handedly lead the Court to his or her way of thinking. See 308 F.R.D. at 434. The Court, in its analysis pursuant to Anderson Living Tr. v. WPX Energy Prod., LLC, is not persuaded that Benavidez' Motion to Reconsider has met the requirements for reconsideration. The Court thoroughly treated the issues in the Amendment MOO, that Sandia Labs has been defending these claims for some time now and has offered -- at one time -- to toll the proposed Plaintiffs' limitations period, and Benavidez has only proffered the existence of manifest injustice by reference to the harsh result of her own procedural decisions in this case.

Thus, while Benavidez' Motion to Reconsider does not meet any of the standards for reconsideration of interlocutory orders that the Court established in Anderson Living Tr. v. WPX Energy Prod., LLC, she also does not establish that the Court has done anything wrong. Benavidez' arguments all dovetail into one desired conclusion, that conclusion being that the proposed Plaintiffs satisfactorily lodged a complaint before the Court within the ninety-day limitations period. By the Amendment MOO, the Court concluded that they had not timely filed claims, because they subsequently withdrew the only complaint -- the Proposed Second Amended Complaint -- that they filed before the limitations period , and the Court was unable to

reach a conclusion under the Federal Rules of Civil Procedure that the filing date of the Proposed Third Amended Complaint, which Benavidez and the proposed Plaintiffs filed after the limitations period had lapsed, otherwise related back to a filing date before the limitations period's lapse, as far as the proposed Plaintiffs were concerned. By the Motion to Reconsider, Benavidez asks the Court to reconsider the effect of her withdrawal of the Proposed Second Amended Complaint, suggesting that, by virtue of her filing that Proposed Second Amended Complaint before the limitations period, tolling of that limitations period occurred or, alternatively, the Proposed Third Amended Complaint should be deemed filed as of the same date. While it is apparent that Benavidez and the proposed Plaintiffs do not meet the Anderson Living Tr. v. WPX Energy Prod., LLC requirements for reconsideration of an interlocutory order, the Court will, to be fully fair to the proposed Plaintiffs, not restrict its review of the operative legal arguments and issues at stake in this case, because they all depend upon one another. The Court ultimately concludes, however, that it is not convinced that Benavidez has made any novel legal or factual arguments in support of the proposed Plaintiffs' position which persuade the Court that it erred in its conclusion in the Amendment MOO as to those proposed Plaintiffs. The Court first addresses, in its reconsideration of the Amendment MOO, why the tolling which Benavidez espouses did not occur, why withdrawal of the Proposed Second Amended Complaint counsels against a conclusion that the Proposed Third Amended Complaint should be deemed filed as of the filing date of the Proposed Second Amended Complaint, and why the Proposed Third Amended Complaint's filing date does not relate back to a filing date which satisfied the limitations period as to the proposed Plaintiffs.

**A.  BENAVIDEZ' WITHDRAWAL OF THE MOTION FOR LEAVE TO SUBSTITUTE SECOND AMENDED COMPLAINT AND THE PROPOSED PLAINTIFFS' FAILURE TO FILE A FEDERAL COMPLAINT BEFORE THE LIMITATIONS PERIOD HAD LAPSED RESULTED IN PROPOSED PLAINTIFFS' FAILURE TO SATISFY THE LIMITATIONS PERIOD FOR FILING THEIR FEDERAL DISCRIMINATION CLAIMS, BECAUSE TOLLING DID NOT OCCUR.**

Both Benavidez and Sandia Labs devoted considerable space within their Motion to Reconsider briefing regarding their separate proffers of the abnormal procedural history in this case.  Accordingly, the Court considers it prudent to set forth the salient procedural facts. Benavidez filed her First Amended Complaint in state court on August 27, 2015, see First Amended Complaint at 1, and Sandia Labs removed the First Amended Complaint on October 15, 2015, see Notice of Removal at 1.  In the First Amended Complaint, Benavidez asserts three causes of action against Sandia Labs: (i) discrimination on the basis of age in violation of the NMHRA §§ 28-1-1 to -14, see First Amended Complaint ¶¶ 38-48, at 10-12 (Count I); (ii) discrimination on the basis of sex in violation of the NMHRA, see First Amended Complaint ¶¶ 49-62, at 12-13 (Count II); and (iii) intentional infliction of emotional distress, see First Amended Complaint ¶¶ 63-73, at 13-14 (Count III).  The Court, after a January 20, 2016, hearing, dismissed all of Benavidez' state claims by issuing its Preemption MOO, 212 F. Supp. at 1044-45, on June 27, 2016.  It took the Court some time to issue the Preemption MOO, because it had not done a lot of work in the two main areas at issue -- LMRA preemption and federal-enclave jurisdiction -- and had not extensively written on those issues, in this context, in any of its earlier cases.  Also, the parties argued the federal-enclave issue at the hearing, but had not extensively briefed that jurisdictional issue, which was new to the Court.  The Court thus had to do a lot of that research on its own.

In the meantime, Benavidez filed her Motion for Leave to Substitute Second Amended

Complaint on February 10, 2016, which, in relevant part, adds claims under federal discrimination laws and names the proposed Plaintiffs in addition to Benavidez. See Proposed Second Amended Complaint ¶¶ 123-34, at 16-17; id. ¶¶ 135-49, at 17-19; id. ¶¶ 150-58, at 19-20; id. ¶¶ 159-69, at 20-21; id. ¶¶ 170-83, at 21-22; id. ¶¶ 184-88, at 22-23; Supplemental Briefing at 1-2. It is the Court's understanding that Benavidez and her attorneys were in a position where they considered the claims of the three proposed Plaintiffs as being related to Benavidez' claims and as arising from the same circumstances at Sandia Labs, and that Sandia Labs on several informal occasions indicated that they would prefer to defend one lawsuit by the four women, as opposed to four separate lawsuits. See Amendment MOO at 57, 2017 WL 2266854, at *27. Indeed, the Court notes that Sandia Labs offered to toll the statute of limitations appurtenant to the proposed Plaintiffs' federal claims, yet, Benavidez and her attorneys did not engage in any meaningful colloquy with Sandia Labs on this point or assent to that offer to toll in some other manner. See 2017 WL 2266854, at *27. Instead, Benavidez chose to try to amend her First Amended Complaint to include the three proposed Plaintiffs as parties to the Proposed Second Amended Complaint. See 2017 WL 2266854, at *27. The Court's issue with the Proposed Second Amended Complaint, however, was that it retained all of the state claims that the Court told Benavidez at the January 20, 2016, hearing that it was going to dismiss and formally dismissed in June, 2016, with its Preemption MOO. See 2017 WL 2266854, at *27. The Court would not have pursued such a strategy; Benavidez and the proposed Plaintiffs were more intent on preserving the record for appeal with respect to the state law claims than they were in timely filing the proposed Plaintiffs' claims in a clean federal complaint. See 2017 WL 2266854, at *27. The proposed Plaintiffs ought have recognized, or at least considered, that the Court was going to dismiss Benavidez' First Amended Complaint in its

entirety, the only complaint before the Court -- particularly after receiving the Court's inclination at that January hearing. See 2017 WL 2266854, at *27.

The Court held various hearings subsequent to Benavidez' filing of the Motion for Leave to Substitute Second Amended Complaint, as it details in the Procedural Section, supra. At those hearings, it became apparent that the reason that Benavidez filed the Motion for Leave to Substitute Second Amended Complaint in the fashion she did -- retaining the state law claims, but also adding the three proposed Plaintiffs -- was because "we had three additional plaintiffs to add who had been issued their right to sue letters, and they had a statutory deadline to meet." Tr. at 3:14-24 (Girard). For context, the limitations period for the federal claims brought by the proposed Plaintiffs expired in late February, 2016. See Response at 3-4. The limitations period at issue in this case is a ninety-day deadline to file suit after receipt of a right-to-sue letter from the EEOC, and that period covers all of Benavidez' and the proposed Plaintiffs' federal claims, save for the Equal Pay Act claim. See 42 U.S.C. § 2000e-5(f)(1)(providing limitation period under Title VII); 42 U.S.C. § 12117(a) (providing limitation period for the ADA, specifically adopting Title VII's deadlines); 29 U.S.C. 626(e)(providing limitation period for ADEA). Baca received her right-to-sue letter on November 30, 2015; Luna-Casias received hers on November 30, 2015; and Ortiz received hers on November 30, 2015. See Proposed Third Amended Complaint ¶¶ 9-18, at 2-3. The limitation period expired on February 29, 2016. See Motion to Reconsider at 12.

The Court, as it recognized in its Amendment MOO, considered the proposed Plaintiffs' decision to pursue their claims against Sandia Labs in this case by simply waiting for Benavidez' receipt of leave to amend the First Amended Complaint to add them as parties was a risky strategy given that the clock was ticking. See Amendment MOO at 58, 2017 WL 2266854, at

*27.  The Court gave Benavidez and the proposed Plaintiffs the power to be the masters of their own lawsuit at the January 20, 2016, hearing, and, albeit after the limitations period, admonished Benavidez in May to "make your own decision whether you want to file separate cases" given the proposed addition of new Plaintiffs, and

> if you need to file separate cases, you can.  If I get the opinions out and you want to bring it back here, [we can] pick this up, I'll just hold this [Proposed Second Amended Complaint] for the time being, I won't rule on it, and then you can make a decision.  You'll just have to be the judge of your own time.

May Tr. at 6:7-16 (Court).  A prudent option would have been to file a separate lawsuit to beat the statute of limitations and then seek to consolidate if they wanted to litigate all of the cases together.  <u>See</u> Amendment MOO at 58, 2017 WL 2266854, at *27.  Because Benavidez' case was first filed, and has the lowest number, the tradition and custom in this district is to consolidate within that lowest number.  <u>See</u> 2017 WL 2266854, at *27.  The proposed Plaintiffs had, however, the opportunity to file separate cases before the statutory period had lapsed.  The Court is aware that its admonition in May, 2016, likely could not have fixed the proposed Plaintiffs' problem, as the limitations period had already lapsed at that time, but, regardless, at no point during the January 20, 2016, hearing did the Court counsel Benavidez to pursue the strategy she chose or in any other way mislead her.  <u>See</u> 2017 WL 2266854, at *27.  The Court notes, however, that, in May, 2016, the Motion for Leave to Substitute Second Amended Complaint had not yet been withdrawn -- that is, there may have been an argument that the proposed Plaintiffs' statutory period was tolled by their filing of the state-law-claim-riddled Proposed Second Amended Complaint that the Court had indicated it would deny, at least in part, at the August, 2016 motion hearing regarding the Motion for Leave to Substitute Second Amended Complaint.  <u>See</u> 2017 WL 2266854, at *27.

Following that August, 2016, hearing, wherein the Court expressed frustration that the Proposed Second Amended Complaint attached to the Motion for Leave to Substitute Second Amended Complaint still had the state law claims it indicated at the January 20, 2016, hearing, were preempted, and confirmed were preempted in its June, 2016, Preemption MOO, Benavidez filed her Motion to Withdraw and Amend. See 2017 WL 2266854, at *27. By her Motion to Withdraw and Amend, the Court understood Benavidez' intention to remove from its consideration the Motion for Leave to Substitute Second Amended Complaint altogether, and to instead have the Court rule only as to the Proposed Third Amended Complaint -- which removed the preempted state-law claims -- attached to the Motion to Withdraw and Amend. In its Order without Opinion, which the Court entered on September 30, 2016, the Court granted Benavidez' request to withdraw the Motion for Leave to Substitute Second Amended Complaint to which she had attached her Proposed Second Amended Complaint. See Order at 1. A few months later, in the Amendment MOO, the Court explained its rationale for entering the September 30, 2016, Order granting Benavidez' request in the Motion to Withdraw and Amend to withdraw the Motion for Leave to Substitute Second Amended Complaint, and also granted in part and denied in part leave to amend the First Amended Complaint with the Proposed Third Amended Complaint. See Amendment MOO at 47-56, 2017 WL 2266854, at *23-27. In relevant part, because the Motion for Leave to Substitute Second Amended Complaint had been withdrawn, the Court concluded that leave to amend to add proposed Plaintiffs to this lawsuit would be futile, because the proposed Plaintiffs had missed their limitations period. See Amendment MOO at 56-68, 2017 WL 2266854, at *27-30. The Court concluded that the effect of the withdrawal of the Motion for Leave to Substitute Second Amended Complaint -- which had been filed within the limitations period -- was to undo any tolling of that limitations period which

might have been ongoing. <u>See</u> 2017 WL 2266854, at *28-30. The crux of the Court's conclusion was that the filing date for the Proposed Third Amended Complaint could not, under rule 15, relate back to a filing date which satisfied the limitations period. <u>See</u> 2017 WL 2266854, at *28-30. The decision not to file separate cases -- or to enter into a tolling agreement with Sandia Labs -- before the statutory period's lapse, the Court concluded, manifested itself as a risky decision, and became the operative error rendering the proposed Plaintiffs' claims futile. <u>See</u> 2017 WL 2266854, at *28-30.

This conclusion brings the Court to the present Motion to Reconsider, by which Benavidez asks the Court to reconsider its Amendment MOO in two specific respects: (i) reconsider whether tolling of the limitations period occurred by the filing of the Motion for Leave to Substitute Second Amended Complaint and whether that tolling persisted through withdrawal of the Motion for Leave to Substitute Second Amended Complaint; and (ii) reconsider whether the Proposed Third Amended Complaint should be "deemed filed" on the date which Benavidez filed the Proposed Second Amended Complaint with her Motion for Leave to Substitute Second Amended Complaint. As the Court indicated, it will first consider Benavidez' arguments in favor of tolling of the limitations period, and then turn to her arguments about deeming the Proposed Third Amended Complaint filed and her former arguments about relation back.

To this point, Benavidez simply argues that that, because she filed the Motion for Leave to Substitute Second Amended Complaint on February 10, 2016, "and the 90-day clock did not expire until February 29, 2016 . . . [eighteen] days remained on the clock when the [Motion for Leave to Substitute Second Amended Complaint] was filed and at no time did those days continue to tick until the January 17, 2017 [Amendment MOO]." Motion to Reconsider at 12.

See Notice of Errata at 1.  Benavidez states that she is not seeking additional time or an exception to the ninety-day limitations period, but is instead arguing that the Motion for Leave to Substitute Second Amended Complaint "suspended the clock on February 10, 2016," and that

> the clock resumed ticking on Jan. 17, 2017, and on that date, time remained for Second Plaintiffs to filed separate complaints.  [The proposed] Plaintiffs filed separate complaints on Jan. 23, 2017, in order to again stop the clock from continuing to tick.  If time remained on the clock[], amendment to add the [proposed] Plaintiffs would not have been futile.  If, however, the [Motion for Leave to Substitute Second Amended Complaint] is treated as a dismissal with prejudice or a denied motion to intervene, the clock may have run out as of Feb. 29, 2016.

Motion to Reconsider at 13-14.  Accordingly, Benavidez argues that the February 10, 2016, Motion for Leave to Substitute Second Amended Complaint "tolled the 90-day period until entry of the January 17, 2017," Amendment MOO.  Motion to Reconsider at 14.  According to Benavidez, "the parties do not appear to disagree that the February [10], 2016 [Motion for Leave to Substitute Second Amended Complaint] stopped the clock running on the 90 days until the Court could rule."  Motion to Reconsider at 14.  See Notice of Errata at 1.  Benavidez also clarifies that "the parties disagree about the effect" of the Motion to Withdraw and Amend on the Motion for Leave to Substitute Second Amended Complaint, and that she

> does not request the Court to reconsider its ruling that equitable tolling does not apply because of Plaintiff's understanding that the parties had stipulated to the amendment, rather than the separate complaint, procedure . . . [and i]nstead, Plaintiff relies on the generally accepted principles that a limitation period is equitably tolled during the pendency of a motion affecting that limitation period.

Motion to Reconsider at 14 n.3; n.4.  Benavidez contends: "'Principles of equitable tolling usually dictate that when a time bar has been suspended and then begins to run again upon a later event, the time remaining on the clock is calculated by subtracting from the full limitations period whatever time ran before the clock was stopped.'"  Motion to Reconsider at 14 (quoting United States v. Ibarra, 502 U.S. at 3-4 n.2).  Benavidez explains that here, however, the "partial

denial of the [Motion for Leave to Substitute Second Amended Complaint] indicates that the Court viewed Plaintiff's Motion to Withdraw and Amend as an order that granted dismissal without prejudice. Complaints that are dismissed without prejudice or denied motions do not toll a limitation period." Motion to Reconsider at 15. Benavidez, in sum, concedes:

> In order for the February [10], 2016 [Motion for Leave to Substitute Second Amended Complaint] to not have continuously suspended the 90-day period . . . until entry of an order granting or denying relief, this Court would have to either deem the [Motion for Leave to Substitute Second Amended Complaint] denied as of August 31, 2016 or deem the August 31, 2016 Motion to Withdraw and [Amend] to be a voluntary dismissal of the proposed amended complaint without prejudice.

Motion to Reconsider at 15. See Notice of Errata at 1. Benavidez thus maintains that the Court never dismissed or denied her Motion for Leave to Substitute Second Amended Complaint, "and, as a result, the suspension of the limitation period that began o[n] Feb. [10], 2016 never lapsed." Motion to Reconsider at 15. See Notice of Errata at 1.

Sandia Labs disagrees with Benavidez' conception of the effect that the Motion to Withdraw and Amend had as to the proposed Plaintiffs' complaint. According to Sandia Labs,

> [a]ll of Plaintiffs' arguments, however, including their position on equitable tolling . . . , collapse under the following proposition of law: a motion to amend that is not granted does not toll the limitations period. Accordingly, when Plaintiffs chose to withdraw their February 10, 2016 [Motion for Leave to Substitute Second Amended Complaint], they deprived themselves of the ability to argue that federal statutory claims were timely because the limitations periods expired in late February 2016. When the August 31, 2016 [Proposed Third Amended Complaint] did not relate back under Rule 15 -- a determination as to which Plaintiffs do not seek reconsideration -- the Court correctly found that their claims were time barred.

Motion to Reconsider Response at 8. Sandia Labs thus contends that the effect of Benavidez' withdrawal of the Motion for Leave to Substitute Second Amended Complaint "is not a new issue in this case," and that "there was no error or injustice in the Court's ruling that Ms. Baca, Ms. Ortiz and Ms. Luna-Casias are late." Motion to Reconsider Response at 8. Ultimately, it is

Sandia Labs position that a "motion to amend that is not granted will not toll the statute"; that "there is a small body of federal case law on the effect of a motion to amend that is denied or withdrawn upon a statute of limitations"; and that the small body of case law is uniform in holding that "a motion to amend that is not granted does not toll the limitations period." Motion to Reconsider Response at 10-11.

The Court agreed with Sandia Labs' position in its Amendment MOO, and, in its reconsideration of its position, will maintain its conclusion in the Amendment MOO that the operative effect of its September 30, 2016, Order granting Benavidez' request to withdraw the Motion for Leave to Substitute Second Amended Complaint removed from its consideration -- for the balance of this litigation -- that motion and its attachment, the Proposed Second Amended Complaint. Benavidez concedes that "dismissals without prejudice and motions to intervene do not toll the clock and if such dismissal orders are entered, it is as if the motion were not filed and the time has simply continued to run." Motion to Reconsider at 13. That concession credits a small body of case law which the Court has uncovered adhering to that very maxim. In particular, the United States Court of Appeals for the Fourth Circuit, in the unpublished opinion Angles v. Dollar Tree Stores, which Judge Shedd authored and Judge Diaz joined, concluded that, although the plaintiffs' Title VII counts were timely when the plaintiffs moved to amend, when those plaintiffs' motion to amend was not granted, those Title VII counts could no longer be brought, because they had become untimely. See 494 F. App'x at 327-32. The plaintiffs in that case had filed in 2008 a complaint in federal court under the Equal Pay Act, and, ninety days after receiving right-to-sue letters regarding other federal discrimination claims, the plaintiffs, in February, 2009, moved to amend the original complaint to add their Title VII claims. See 494 F. App'x at 327-29. In June, 2009, however, the district court concluded in a hearing that the

plaintiffs' motion to amend would probably be denied for improper venue. See 494 F. App'x at 327-29. After the district court gave its inclination, when fourteen days remained on the ninety-day period for some of the plaintiffs' federal claims in July, 2009, the plaintiffs chose to file yet another motion to amend before the very same federal district court. See 494 F. App'x at 327-29. In September, 2009, the district court denied the first motion to amend as moot and denied the second motion for improper venue, and then the Plaintiffs' voluntarily dismissed their case in that venue. See 494 F. App'x at 327-29. The plaintiffs then filed a new complaint in the correct federal venue, arguing that the previous motions to amend had tolled the ninety-day limitations period, but the new district court disagreed, and "rejected the Plaintiffs' argument that moving to amend their complaint in [the first case] tolled Title VII's statute of limitations and noted that the case was not one that turns on a plaintiff missing the filing deadline by a few days." 494 F. App'x at 327-29 (internal quotation marks omitted). The Court notes that, subsequent to Angles v. Dollar Tree Stores, that maxim has been followed faithfully in the Fourth Circuit, creating a "general rule that a Title VII complaint that has been filed but then dismissed without prejudice does not toll the 90 day limitations period." Crain v. Gaston Cnty. Bd. of Educ., 2015 WL 6449413, at *3 (W.D.N.C. 2015)(Mullen, J.)(citing Angles v. Dollar Tree Stores, 494 F. App'x at 329; Birch v. Peters, 25 F. App'x 122, 123 (4th Cir. 2001)(per curiam); Nwaobasi v. First Sec. Fed. Sav. Bank, Inc., 105 F.3d 647 (4th Cir. 1997); Minnette v. Time Warner, 997 F.2d 1023, 1027 (2nd Cir. 1993); Berry v. CIGNA/RSI-CIGNA, 975 F.2d 1188, 1191 (5th Cir. 1992); Brown v. Hartshorne Pub. Sch. Dist. No. 1, 926 F.2d 959, 961 (10th Cir. 1991), abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002); O'Donnell v. Vencor Inc., 466 F.3d 1104, 1111 (9th Cir. 2006)(reaching the same holding in Title VII and

ADEA contexts); <u>Chico-Velez v. Roche Prods., Inc.</u>, 139 F.3d 56, 59 (1st Cir. 1998)(reaching the same holding the same in ADA context)).

The Fifth Circuit, in <u>United States ex rel Matthews v. HealthSouth Corp.</u>, also held a complaint untimely where a plaintiff delivered -- but failed to ultimately receive leave of the court, because he did not file a concurrent motion for leave to amend -- his amended complaint before the limitations period ran on an employment discrimination claim.  <u>See</u> 332 F.3d at 294.  Although the clerk of the court alerted the plaintiff to the error, when he finally redelivered a motion for leave to amend, the limitations period had already run.  <u>See</u> 332 F.3d at 294.  The Fifth Circuit thus affirmed the district court's dismissal of the complaint, because it was time barred -- the timely but failed attempt to amend did not toll the limitations period.  <u>See</u> 332 F.3d at 297.

In another out-of-circuit case involving limitations periods and dismissed complaints, a Connecticut district court concluded that a motion to amend that it had denied could not toll or otherwise satisfy a statute of limitations.  <u>See</u> <u>Goldblatt v. Nat'l Credit Union Admin.</u>, 2011 WL 4101470, at *1-4 (D. Conn. 2011)(Eginton, J.), <u>aff'd</u> 502 F. App'x 53 (2d Cir. 2012).   In that litigation, brought pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b), a plaintiff had originally sued a number of banks in a different lawsuit and then moved to amend the complaint to add as a defendant the National Credit Union Administration.  <u>See</u> <u>Goldblatt v. Nat'l Credit Union Admin.</u>, 2011 WL 4101470, at *1-2.  That district court denied the motion to amend, positing that a different lawsuit would be the more appropriate forum.  <u>See</u> 2011 WL 4101470, at *1-2.  Accordingly, when faced with a complaint that was filed more than six months after the statute of limitations had expired, the district court concluded that, "[i]n this instance, the motion

to amend was denied and therefore filing such motion does not toll the Section 2401(b)'s limitation period." 2011 WL 4101470, at *3. The district court also suggested that the

> Plaintiffs' motion to amend the prior filed complaint against Wells Fargo does not constitute commencement of an action against the NCUA. If th[e] Court had granted the leave to amend the complaint to add the action against the NCUA, the timeliness of plaintiffs' NCUA action would have been considered in light of the strict requirements of Section 2401(b). Plaintiffs' action would have related back to the original pleading, which was filed prior to the denial of the administrative claim. Fed. R. Civ. P. 15 ("An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading"). Accordingly, plaintiffs' claim would have been untimely and would have been dismissed.

2011 WL 4101470 at *3.

The Tenth Circuit reached a similar conclusion as that of the Fourth Circuit in <u>Brown v. Hartshorne Pub. Sch. Dist. No. 1</u>, 926 F.2d at 961. The Tenth Circuit, in that case, was considering a plaintiff's suit against the Hartshorne School District, under Title VII and 42 U.S.C. § 1983, which the district court, in relevant part, dismissed, "concluding that the suit was barred by the applicable statute of limitations." 926 F.2d at 961. The case had a tortured procedural history, which the Tenth Circuit described as follows:

> We previously considered Brown's claims and set out the history of her attempts to seek relief under Title VII and section 1983 in *Brown v. Hartshorne Pub. School Dist. No. 1*, 864 F.2d 680, 681 (10th Cir. 1988)(Brown I), as follows:
>
>> "She filed her first EEOC charge alleging national origin discrimination in January 1979, and filed her first suit in April of that year. That suit was dismissed without prejudice. Brown refiled the suit in November 1980, and it was again dismissed in September 1981. She filed a second administrative charge of discrimination with respect to the 1984-85 school year on August 7, 1984, received a right-to-sue letter from the EEOC October 5, 1985, and filed this action January 2, 1986. In the instant complaint, Brown seeks relief under Title VII and section 1983, alleging both that the District has discriminated against her during the last ten years because she is Mexican-American, and that the

District refused to hire her for the 1985-86 school year in retaliation for her previous suits."

Thus, Brown received her most recent right-to-sue letter on October 5, 1985, and filed a timely action on January 2, 1986. On appeal in that action we reversed the district court's grant of summary judgment in favor of the school district and remanded for further proceedings. Following our remand and shortly before trial was to begin, Brown filed a motion for voluntary dismissal because her attorney was incapacitated with a back injury. The case was dismissed without prejudice on October 18, 1989, and Brown filed the instant action on November 17, 1989.

Brown v. Hartshorne Pub. Sch. Dist. No. 1, 926 F.2d at 960-61. Without much discussion, the

Tenth Circuit quickly concluded:

The district court was correct . . . in holding Brown's Title VII claim barred by the applicable statute of limitations. Title VII requires that a plaintiff bring a judicial action within ninety days of receipt of a right-to-sue letter. *See* 42 U.S.C. §§ 2000e-5(f)(1) (1988). It is hornbook law that, as a general rule, a voluntary dismissal without prejudice leaves the parties as though the action had never been brought. *See, e.g.*, *Robinson v. Willow Glen Academy*, 895 F.2d 1168, 1169 (7th Cir. 1990); *Dupree v. Jefferson*, 666 F.2d 606, 611 (D.C. Cir. 1981); 5 J. Moore & J. Lucas, Moore's Federal Practice ¶ 41.05[2] at 41-66 to -67 (2d ed. 1990); 9 C. Wright & A. Miller, Federal Practice & Procedure § 2367 at 186 (1971). In the absence of a statute to the contrary, the limitation period is not tolled during the pendency of the dismissed action. *See id.*; *see also Willard v. Wood*, 164 U.S. 502, 523[] (1896); *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 33-34 (11th Cir. 1982). Courts have specifically held that the filing of a complaint that is dismissed without prejudice does not toll the statutory filing period of Title VII. *See Price v. Digital Equip. Corp.*, 846 F.2d 1026, 1027 (5th Cir. 1988)(per curiam); *Wilson v. Grumman Ohio Corp.*, 815 F.2d 26, 28 (6th Cir. 1987)(per curiam). We agree.

Brown v. Hartshorne Pub. Sch. Dist. No. 1, 926 F.2d at 961. The Tenth Circuit also concluded,

however, that, with respect to the plaintiff's § 1983 claim, there was no similar limitations

period, and so it reversed and remanded the judgment as to those claims. See 926 F.2d at 961.

The Court notes that, subsequent to the Tenth Circuit's opinion in Brown v. Hartshorne Pub.

Sch. Dist. No. 1, the Tenth Circuit has recognized an abrogation of some major employment-

discrimination precedent that had been applicable at the time of that opinion by the Supreme

Court in Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 114.

> [T]he Supreme Court in *National Railroad Passenger Corp. v. Morgan* . . . effected fundamental changes to the doctrine allowing administratively unexhausted claims in Title VII actions. . . . *Morgan* abrogates the continuing violation doctrine as previously applied to claims of discriminatory or retaliatory actions by employers, and replaces it with the teaching that each discrete incident of such treatment constitutes its own unlawful employment practice for which administrative remedies must be exhausted.

Keeler v. Cereal Food Processors, 250 F. App'x 857, 860-61 (10th Cir. 2007). The Court also notes that, in Keeler v. Cereal Food Processors, the Tenth Circuit -- despite recognizing an abrogation -- reaffirmed that the maxim that "the filing of a complaint that is dismissed without prejudice does not toll the statutory filing period of Title VII," as it was announced by Brown v. Hartshorne Pub. Sch. Dist. No. 1, was unaffected by the abrogation. Keeler v. Cereal Food Processors, 250 F. App'x at 859 ("Mr. Keeler does not identify any error in this portion of the district court's ruling and we therefore affirm the dismissal of his claims alleged in his First, Second, and Third Charges as untimely.").

The Tenth Circuit has reached the same conclusion as to the effect of a denied motion to intervene. In McIntosh v. Boatman's First Nat'l Bank of Okla., 1996 WL 685655, at *1 (10th Cir. 1996), which the Tenth Circuit, in an unpublished opinion, considered an untimely complaint that a plaintiff brought under the Fair Housing Act, 42 U.S.C. § 3601. See 1996 WL 685655, at *1. Although the plaintiff had missed the time to satisfy the statute of limitations, the plaintiff nonetheless persisted, because, as he argued, "his unsuccessful attempts to intervene as a party plaintiff in another FHA case against the same Defendant tolled the running of the limitations period in this action." 1996 WL 685655, at *1. The Tenth Circuit summarily disagreed with the plaintiff's logic, explaining:

> It is not the filing of the motion qua motion which tolls the limitations period; rather, it is the fact that that motion is granted, establishing the intervenor as a proper party to the lawsuit, which renders the subsequent complaint timely. Mr. McIntosh's attempt to intervene in the *Parker* case was denied because he had no

standing in that lawsuit -- and his complaint was dismissed without prejudice. The filing of a complaint that is dismissed without prejudice does not toll the statutory filing period.

1996 WL 685655, at *1 (citing <u>Simons v. Southwest Petro-Chem, Inc.</u>, 28 F.3d 1029, 1030 (10th Cir. 1994)(holding that the filing of a complaint that is dismissed without prejudice does not toll Title VII's statutory filing period); <u>Brown v. Hartshorne Public Sch. Dist. # 1</u>, 926 F.2d at 961)).

More recently the Tenth Circuit has also held:

> The purpose of the statute of limitations is to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. In other words, even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation. To effectuate this purpose, those jurisdictions that have adopted the rule have necessarily reasoned that an intervening plaintiff should not be permitted to "piggyback" on the claims of an earlier plaintiff in order to escape the statutory bar that would normally shield the defendant from liability as to the intervenor.

<u>Weber v. Mobil Oil Corp.</u>, 506 F.3d 1311, 1315 (10th Cir. 2007).

In light of these resolute maxims -- that neither the filing of a complaint that is dismissed without prejudice nor a motion to intervene which is not granted will toll a limitations period -- Benavidez is asking the Court to distinguish the operative effect of her decision to withdraw the Motion for Leave to Substitute Second Amended Complaint. <u>See</u> Motion to Reconsider at 1-2. The Court is convinced that the effect of withdrawal is to remove from its consideration the withdrawn pleading, which is akin to a voluntary dismissal of an action or a denied attempt to intervene as a party or to amend a complaint. In either of these cases, it is as though the action or motion was not brought in the first place. <u>Cf.</u> <u>McIntosh v. Boatman's First Nat'l Bank of Okla.</u>, 1996 WL 685655, at *1 ("It is not the filing of the motion qua motion which tolls the limitations period; rather, it is the fact that that motion is granted . . . ."); <u>Brown v. Hartshorne Pub. Sch. Dist. No. 1</u>, 926 F.2d at 961 ("It is hornbook law that, as a general rule, a voluntary dismissal

without prejudice leaves the parties as though the action had never been brought."). Further, Benavidez provides no authority to support her contention that the principles underlying the Tenth Circuit authority regarding the effect of a complaint dismissed without prejudice or a denied motion to intervene should not apply to her initial motion to amend. The Court can see no sound reason why the effect of the withdrawal of a motion for leave to amend should be meaningfully distinguished from the effect of a voluntary dismissal in this context. Indeed, when looking closely at the logic underlying the Fourth Circuit's opinion in Angles v. Dollar Tree Stores, the Court is hard pressed to apply a different maxim of law to this case.

In Angles v. Dollar Tree Stores, the district court told the plaintiff it was inclined to deny a motion to amend a complaint to add Title VII claims, because of improper venue. See 494 F. App'x at 327-29. After the district court gave its inclination in Angles v. Dollar Tree Stores, however, the plaintiff chose not to do the prudent thing -- voluntarily dismiss and file a new complaint in the proper venue (or, perhaps, as the Angles v. Dollar Tree Stores dissent argued, the district court should have transferred the case on its own) -- but instead hung tough and filed yet another motion to amend before the very same federal district court. See 494 F. App'x at 327-29. When the district court formally denied the first motion to amend as moot and denied the second motion to amend for improper venue, the plaintiffs finally voluntarily dismissed their case in that venue. See 494 F. App'x at 327-29. When the plaintiffs then filed a new complaint in the correct federal venue, the limitations period had lapsed, leaving them only to argue that the previous motions to amend and add those claims in the other case had tolled the ninety-day limitations period, but the new district court disagreed, and "rejected the Plaintiffs' argument that moving to amend their complaint in [the first case] tolled Title VII's statute of limitations and noted that the case was not one that turns on a plaintiff missing the filing deadline by a few

days." 494 F. App'x at 327-29 (internal quotation marks omitted). The facts of this case are not as dissimilar as Benavidez would like.

Here, the Court gave its inclination at the January, 2016, hearing that it was going to conclude that the state-law claims which Benavidez had alleged were preempted. See January Tr. at 22:23-24:20 (Court). Nonetheless, Benavidez, when faced with the proposed Plaintiffs' need to file their federal employment discrimination claims against Sandia Labs before the limitations period lapsed, made a decision to file the Motion for Leave to Substitute Second Amended Complaint and attached a Proposed Second Amended Complaint which failed to rectify the deficiencies in the First Amended Complaint and added as parties the proposed Plaintiffs. See Motion for Leave to Substitute Second Amended Complaint at 1. Upon review of the Proposed Second Amended Complaint, the Court was prepared to deny leave to amend -- at least in part -- because it failed to rectify any of the First Amended Complaint's deficiencies. See Tr. at 14:10-11 (Court)(denying the Motion for Leave to Substitute Second Amended Complaint as to the way it was filed). Benavidez and the proposed Plaintiffs moved first, however, and filed their Motion to Withdraw and Amend. See Motion to Withdraw and Amend at 1. The Court, as requested, then granted withdrawal in its September 30, 2016, Order. See Order at 1-2. At this point in the litigation, the Court can discern no meaningful distinction between the effect of the Court's granted withdrawal of the proposed amended complaint adding proposed Plaintiffs and their federal employment discrimination claims and, for example, the denial of multiple motions to amend for lack of venue and subsequent voluntary dismissal -- the circumstances in Angles v. Dollar Tree Stores. See 494 F. App'x at 327-29. Indeed, as the Tenth Circuit has stated,"[i]t is hornbook law that, as a general rule, a voluntary dismissal without prejudice leaves the parties as though the action had never been brought." Brown v.

Hartshorne Pub. Sch. Dist. No. 1, 926 F.2d at 961.  The Court is thus convinced and concludes that the effect of withdrawal can similarly be styled as leaving the parties as though the withdrawn motion for leave to amend the complaint had never been brought.  Cf. McIntosh v. Boatman's First Nat'l Bank of Okla., 1996 WL 685655, at *1 ("It is not the filing of the motion qua motion which tolls the limitations period; rather, it is the fact that that motion is granted . . . ."); Weber v. Mobil Oil Corp., 506 F.3d at 1315 ("[A]n intervening plaintiff should not be permitted to 'piggyback' on the claims of an earlier plaintiff in order to escape the statutory bar that would normally shield the defendant from liability as to the intervenor.").  Accordingly, no motion for leave to amend the complaint came before the Court before the proposed Plaintiffs' deadline and thus there can be no tolling of the proposed Plaintiffs' claims' limitations period.  See McIntosh v. Boatman's First Nat'l Bank of Okla., 1996 WL 685655, at *1.  The proposed Plaintiffs' limitations period lapsed on February 29, 2016, and the Court has no complaint, or motion for leave to amend the First Amended Complaint, for its consideration which was filed before the proposed Plaintiffs' limitations period lapsed.  When the Court granted Benavidez' request to withdraw the Motion for Leave to Substitute Second Amended Complaint in its September 30, 2016, Order, it was as if the Proposed Second Amended Complaint had never been brought, and, consequently, no complaint existed to toll the limitations period.  See McIntosh v. Boatman's First Nat'l Bank of Okla., 1996 WL 685655, at *1.

As to Benavidez' argument regarding the time that might still remain on the clock, because the Motion for Leave to Substitute Second Amended Complaint was filed on February 10, 2016, and because the limitations period was not going to lapse until February 29, 2016, and because the Motion to Withdraw and Amend -- as it pertains to the Proposed Third Amended Complaint -- was not denied until the Court entered the Amendment MOO on January 17, 2017,

the Court cannot agree that time might still remain. Benavidez, by that argument, essentially asks the Court to allow her to skirt pleading standards, and authorize a plaintiff to -- in perpetuity -- (i) hastily file a proposed deficient amended complaint to meet a limitations period deadline; (ii) realize their proposal's futility; and then (iii) move to withdraw the deficient complaint and, contemporaneously, substitute another proposed amended complaint curing the deficiencies. All the while, the Defendant -- here, Sandia Labs -- must wait and litigate. This procedure is particularly unfair when, as happened here, the Court alerted the Plaintiffs to their pleading deficiencies which they have nonetheless maintained in a proposed amended complaint. The Court, accordingly, considers the best result to be that which it has reached here; when the Court granted Benavidez' request to withdraw the Motion for Leave to Substitute Second Amended Complaint in its September 30, 2016, Order, it was as if the Proposed Second Amended Complaint had never been brought, and, consequently, no complaint remains to toll the limitations period.

The Court recognizes that the ninety-day filing period for Title VII civil actions can also be "subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). See Gad v. Kan. State Univ., 787 F.3d 1032, 1036-37 (10th Cir. 2015). Here, however, although Benavidez does not request that the Court reconsider its conclusion not to apply equitable tolling, the Court reiterates that it would not reconsider that conclusion. The doctrine of equitable tolling applies only in "exceptional circumstances." Yang v. Archuleta, 525 F.3d at 928 ("Generally, equitable tolling requires a litigant to establish two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."). Benavidez originally requested some form of waiver or equitable tolling, because the Proposed Second Amended Complaint was timely filed; the Court sees, however, no

such exceptional circumstances, nor sound reason to invent a waiver on these facts because of the existence of the now-withdrawn Proposed Second Amended Complaint. Further, the Court has a difficult time saying that the proposed Plaintiffs acted diligently to protect their rights. Nothing prevented them from filing separate lawsuits to beat the running of the limitations period or from engaging in negotiations with Sandia Labs to enter into a tolling agreement. Sandia Labs did not do anything to prevent the proposed Plaintiffs from filing separate lawsuits. Instead, Sandia Labs tried to help the proposed Plaintiffs by suggesting that they enter into tolling agreement negotiations. The proposed Plaintiffs pursued a different strategy, and the Court will not create new equitable or waiver doctrines to save them from their deliberate decisions.

**B.      THE COURT WILL NOT DEEM FILED THE PROPOSED THIRD AMENDED COMPLAINT ON THE DATE BENAVIDEZ FILED THE PROPOSED SECOND AMENDED COMPLAINT.**

Benavidez next advances, as grounds for reconsideration of the Amendment MOO, her argument that the Motion for Leave to Substitute Second Amended Complaint, filed on February 10, 2016, "satisfied the 2000e-5(f)(1) requirement to commence an action within 90 days of the right-to-sue notice," because it "attached the proposed amended complaint, including the Second Plaintiffs' claims." Motion to Reconsider at 10. Benavidez' argument, at its core, is the same as her argument for continued tolling of the limitations period by her filing of the Motion for Leave to Substitute Second Amended Complaint. See Motion to Reconsider, passim. According to Benavidez, the purpose of the Motion to Withdraw and Amend was merely to remove the state law claims from the Proposed Second Amended Complaint in accordance with the Court's Preemption MOO, which the Court filed June 27, 2016, about which it gave its inclination at the January, 2016, hearing. See Motion to Reconsider at 10. Benavidez thus asserts:

> Defendant and the Court anticipated a new complaint would be presented that
> would eliminate the state law claims. Plaintiff's Motion to Withdraw and
> [Amend] sought withdrawal of the original [Motion for Leave to Substitute
> Second Amended Complaint] and simultaneous substitution of a nearly identical
> motion to amend. Plaintiff attached a proposed complaint that eliminated the
> state law claims and was otherwise identical to the complaint attached to the July
> supplemental briefing. For these reasons, the [Proposed] Third Amended
> Complaint, which was attached to the Motion to Withdraw and [Amend], should
> be deemed filed on the date of the original [Motion for Leave to Substitute
> Second Amended Complaint], February [10], 2016.

Motion to Reconsider at 11. See Notice of Errata at 1. According to Benavidez, then, the

proposed Plaintiffs' Proposed Third Amended Complaint

> should be "deemed filed" on February [10], 2016. The time tolled on February
> [10], 201[6] when the Plaintiff filed a motion to amend. On August 31, 2016,
> when Plaintiff filed the Motion to [Withdraw and] Amend, the time was still
> tolled. Nothing happened on August 31, 2016 that could stop the suspension of
> the 90-day period -- Plaintiff did not dismiss a complaint without prejudice and
> did not abandon any claim or argument, nor did the Court grant or deny a motion.
> Thus, even if the [proposed] Plaintiffs' [Proposed Third Amended Complaint] is
> deemed filed August 31, 2016, the complaints were still timely because on August
> 31, 2016, [proposed] Plaintiffs had brought an action within the suspended 90-day
> period. As a result, the time would not have expired.

Motion to Reconsider at 12. Further, Benavidez asserts, the Tenth Circuit "has indicated only

that a complaint is not 'deemed filed' if a plaintiff abandons a claim by motion to dismiss

without prejudice or if a motion to intervene is denied." Motion to Reconsider at 6.

Sandia Labs responds to this line of Benavidez' argumentation with the same arguments

it made against survival of tolling after a motion is withdrawn. See Motion to Reconsider,

passim. In particular, Sandia Labs acknowledges that, regarding the "deemed filed" principle,

for the purposes of a motion to amend, a court will deem filed an amended complaint, for statute

of limitations purposes, on the date the motion is filed rather than when it is eventually granted --

but only if the motion is eventually granted. Motion to Reconsider Response at 9 (citing Koch v.

Shell Oil Co., 8 F. Supp. 2d at 1268). Sandia Labs thus rests its opposition on the notion that,

because a motion or complaint which is denied or dismissed cannot toll a limitations period, the Proposed Third Amended Complaint should not be deemed filed as of the date of a Proposed Second Amended Complaint which was withdrawn after the Plaintiffs realized they had made a mistake by including state law claims that the Court was inclined to conclude were preempted.

The Court, once more, has trouble agreeing with Benavidez. Again, the Court has already explored case law establishing maxims that that neither the filing of a complaint that is dismissed without prejudice nor a motion to intervene which is not granted will toll a limitations period. The Court has also concluded that the withdrawal of a motion for leave to amend, similarly, will not toll a limitations period given its similarity to the circumstances in those scenarios. Cf. McIntosh v. Boatman's First Nat'l Bank of Okla., 1996 WL 685655, at *1 ("It is not the filing of the motion qua motion which tolls the limitations period; rather, it is the fact that that motion is granted . . . ."); Weber v. Mobil Oil Corp., 506 F.3d at 1315 ("[A]n intervening plaintiff should not be permitted to 'piggyback' on the claims of an earlier plaintiff in order to escape the statutory bar that would normally shield the defendant from liability as to the intervenor."). What Benavidez asks, essentially, is for the Court to reconsider its conclusion that the effect of the Court's grant of withdrawal in the September 30, 2016, Order, be ignored. Benavidez argues: "Nothing happened on August 31, 2016 that could stop the suspension of the 90-day period -- Plaintiff did not dismiss a complaint without prejudice and did not abandon any claim or argument, nor did the Court grant or deny a motion." Motion to Reconsider at 12. To use Benavidez' own phrase, the Court did, however, "grant or deny a motion" on September 30, 2016, which withdrew from its consideration the Proposed Second Amended Complaint. Motion to Reconsider at 12. See Order at 1-2. Benavidez' support for her argument -- "[i]f a proposed amended complaint is attached to the motion to amend, the amended complaint is deemed filed

as of the date of the filing of the motion to amend," <u>Kane County v. United States</u>, 934 F. Supp. 2d at 1363-64 -- here fails, because, at best, the Court could only conclude that the Proposed Third Amended Complaint should be deemed filed on August 31, 2016, when Benavidez filed the Motion to Withdraw and Amend. That date, August 31, 2016, does not satisfy the limitations period of February 29, 2016. To be sure, the Proposed Second Amended Complaint, attached to the Motion for Leave to Substitute Second Amended Complaint, would have been deemed filed on February 10, 2016, and not on the date which the Court eventually granted the Motion for Leave to Substitute Second Amended Complaint, should the Court have granted it. That is the process about which <u>Kane County v. United States</u>, 934 F. Supp. 2d at 1363-64, is concerned, and not, as Benavidez would have the Court conclude, the process by which Benavidez proceeded in this case. As a consequence, the Court cannot soundly conclude that the Proposed Third Amended Complaint can be deemed filed as of the filing date of the Proposed Second Amended Complaint -- Benavidez withdrew the Proposed Second Amended Complaint. As the Court held with respect to potential tolling, the Court -- in its reconsideration of the Amendment MOO -- will not change its conclusion regarding the effect of the motion's withdrawal. The Court is convinced and concludes that the withdrawal's effect can be styled as leaving the parties as though the withdrawn motion for leave to amend the complaint had never been brought. <u>Cf.</u> <u>McIntosh v. Boatman's First Nat'l Bank of Okla.</u>, 1996 WL 685655, at *1 ("It is not the filing of the motion qua motion which tolls the limitations period; rather, it is the fact that that motion is granted . . . ."); <u>Weber v. Mobil Oil Corp.</u>, 506 F.3d at 1315 ("[A]n intervening plaintiff should not be permitted to 'piggyback' on the claims of an earlier plaintiff in order to escape the statutory bar that would normally shield the defendant from liability as to the intervenor.").

## C. THE COURT WILL MAINTAIN ITS CONCLUSION THAT THE PROPOSED THIRD AMENDED COMPLAINT, AS IT PERTAINS TO THE PROPOSED PLAINTIFFS, WILL NOT RELATE BACK TO A DATE WHICH SATISFIES THE LIMITATIONS PERIOD.

Last, in the interest of justice -- even though Benavidez does not request the Court reconsider its conclusion regarding relation back under rule 15(c) -- the Court will take a hard look at its analysis nonetheless. Essentially, because the Court concluded that the effect of its grant of the Motion to Withdraw and Amend on September 30, 2016, was to remove from its consideration the only proposed complaint which was timely filed, the Court further concluded that amendment adding the proposed Plaintiffs to the lawsuit at this time would be futile, because their claims are time barred. See Amendment MOO at 57-67, 2017 WL 2266854, at *27-30. The Court considered that, given that Benavidez had withdrawn the Motion for Leave to Substitute Second Amended Complaint, the proposed Plaintiffs' only chance at successfully getting a complaint before the Court which is not deficient on account of the lapse of the statutory period would be if the Proposed Third Amended Complaint could relate back to a time before the limitations period had lapsed. See Amendment MOO at 57-67, 2017 WL 2266854, at *27-30. The Court, in the Amendment MOO, however, saw no sound way in which the Proposed Third Amended Complaint might somehow relate back to the timing of the First Amended Complaint -- in which the three additional Plaintiffs were not named -- or even to the timing of the withdrawn Proposed Second Amended Complaint, which the Court has now reconsidered exhaustively in the present Memorandum Opinion. After reviewing the case law on the matter, the Court maintains the analysis of the relation-back doctrine upon which it relied in the Amendment MOO. See Amendment MOO at 57-67, 2017 WL 2266854, at *27-30. The Court's reconsideration analysis of this issue is as follows.

Rule 15(c) reads:

**(1) When an Amendment Relates Back.**  An amendment to a pleading relates back to the date of the original pleading when:

>**(A)** the law that provides the applicable statute of limitations allows relation back;

>**(B)** the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out -- or attempted to be set out -- in the original pleading; or[11]

>**(C)** the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

>>**(i)** received such notice of the action that it will not be prejudiced in defending on the merits; and

>>**(ii)** knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c).

Rule 15(c) provides that, where an amendment would add a party, "relation back" can occur if the party to be added by the amendment "has received such notice of the initiation of the action that the party would not prejudice in maintaining a defense on the merits."  Brown v. Uniroyal, Inc., 108 F.3d at 1307.  Relation back is dependent upon four factors, all of which must be satisfied.  See Brown v. Uniroyal, Inc., 108 F.3d at 1307.  The express factors are as follows: (i) the basic claim must have arisen out of the conduct set forth in the original pleading; (ii) the party to be added must have received such notice that it will not be prejudiced in maintaining its defense; (iii) that party must or should have known that, but for the mistake concerning identity, the action would have been brought against it; and (iv) the second and third

---

[11]Rule 15(c)(1)(B) is why Benavidez' claims relate back to the filing date of her First Amended Complaint, which, as no parties dispute, was timely.

requirement must have been fulfilled within the prescribed limitation.  See Brown v. Uniroyal, Inc., 108 F.3d at 1307 (citing Schiavone v. Fortune, 477 U.S. 21, 29 (1986)).  Of course, in particular, rule 15(c)(1)(C)(i)-(ii)'s plain language[12] purports to regard only the addition of new defendants by amendment.  As well, the instructions from the Tenth Circuit in Brown v. Uniroyal, Inc. do not stray from rule 15(c)(1)(C)(i)-(ii)'s express application to the addition of defendants by amendment.  See Brown v. Uniroyal, Inc., 108 F.3d at 1307.

This case, in contrast, involves the addition of new Plaintiffs.  See Amendment MOO at 59-66, 2017 WL 2266854, at *28.  In the Amendment MOO, the Court concluded that rule 15(c)(1)(C)'s plain language did not apply to allow relation back of an amendment seeking to add proposed Plaintiffs as parties to this case.  See Amendment MOO at 59-66, 2017 WL 2266854, at *28.  Despite its exploration of rule 15(c)(1)(C)'s express language, the Court also noted that it was apparent that 15(c)(1)(C)'s drafters appear to have nonetheless contemplated its application to the addition of new plaintiffs.  See Amendment MOO at 59-66, 2017 WL 2266854, at *28.  The drafter's amendment notes state:

> The relation back of amendments changing plaintiffs is not expressly treated in revised Rule 15(c) since the problem is generally easier.  Again the chief consideration of policy is that of the statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs.

Amendment MOO at 61, 2017 WL 2266854, at *28 (quoting Fed. R. Civ. P. 15(c) advisory committee's notes to 1966 amendment).  Accordingly, the Court provided that most courts do not automatically dismiss amendments proposing to add new plaintiffs and instead generally

---

[12]"The rules of statutory construction apply to the Federal Rules . . . ."  In re Kubler, 2012 WL 394680, at *11 (D.N.M. 2012)(Browning, J.).  Accord Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993)(applying the expressio unius est exclusio alterius canon when interpreting rule 9(b) of the Federal Rules of Civil Procedure); Hillis v. Heineman, 626 F.3d 1014, 1017-18 (9th Cir. 2010)("This same principle of statutory construction applies to interpreting the Federal Rules of Civil Procedure.").

apply the same standard used to add new defendants -- rule 15(c)(1)(C)(i) and (ii) -- when such is

applicable.  See Amendment MOO at 61, 2017 WL 2266854, at *28 (citing Leachman v. Beech

Aircraft Corp., 694 F.2d 1301, 1308-10 (D.C. Cir. 1982)).  The Court explained, for example,

that the D.C. Circuit has held that there is a

> need to limit relation back of claims asserted by new plaintiffs in some way
> beyond the "conduct, transaction, or occurrence" test that applies to relation back
> of amendments generally.  Without some limit, total strangers with claims arising
> out of a multi-victim incident might join pending actions long after the statute of
> limitations had lapsed.  That would allow the tardy plaintiffs to benefit from the
> diligence of the other victims and, more importantly, could cause defendants'
> liability to increase geometrically and their defensive strategy to become far more
> complex long after the statute of limitations had run.  Even if, as here, there were
> no showing of specific prejudice in the sense of lost or destroyed evidence,
> defendants would still be deprived of their interest in repose.  At some point,
> defendants should have notice of who their adversaries are . . . [and] [t]he point of
> the courts' consideration of identity of interest is that that factor ensures that the
> old and new plaintiffs are sufficiently related so that the new plaintiff was in
> effect involved in the proceedings unofficially from an early stage.

Leachman v. Beech Aircraft Corp., 694 F.2d 1301, 1308-10 (internal citations, quotation marks

and alterations omitted).  See Pierce v. Long John Silver, Inc., 1996 WL 153564 (E.D. Pa.

1996)(Dalzell, J.)(relying on Nelson v. Cnty. of Allegheny, 60 F.3d 1010, 1014-16 (3d. Cir.

1995), and holding that no matter the plaintiff/defendant status of the party to be added, the

analysis entails whether defendants (i) received such notice that they will not be prejudiced in

maintaining a defense on the merits; and (ii) knew or should have known that, but for a mistake

concerning the identity of the proper party, the action would have been brought with the original

claims); Ambraziunas v. Bank of Boulder, 846 F. Supp. 1459, 1467 (D. Colo. 1994)(Kane,

S.J.)("They have not, however, established that Defendants had notice of their additional claims

or that there was any mistake in the original complaint to merit the relation back of the claims of

the new Plaintiffs to the filing of the original complaint on June 30, 1993.").  After that analysis,

the Court noted its uncertainty why rule 15(c)(1)(C)'s plain language would be at odds with the

drafter's commentary in that fashion,[13] but concluded, nonetheless, that even the drafter's commentary did not, anyway, encompass the addition of the proposed Plaintiffs to this case. See Amendment MOO at 63, 2017 WL 2266854, at *28. The Court explained:

> The Court's research has uncovered authority across various Courts of Appeals having the opportunity to address this issue that indicates that deviation from rule 15(c)(1)(C)(i) and (ii)'s express language, to account for the distinct nature of a plaintiff as compared to a defendant, is commonplace. See, e.g., Wright, Miller, Kane, Marcus, Spencer & Steinman, 6A Fed. Prac. & Civ. Proc. § 1501, Relation Back of Amendments Changing Parties -- New Plaintiffs (3d ed.)(April, 2016)(collecting cases and explaining that some courts liberally read rule 15 to account for the addition of plaintiffs in amended complaints).

>> Courts deciding whether to allow amendments changing plaintiffs to relate back to the filing of the original complaint seem to concentrate on the notice and identity-of-interest factors as they do in the case of amendments changing defendants. Relation back thus will be permitted unless the court finds that defendant did not have adequate notice or that the new and the existing plaintiffs did not share a sufficient identity of interest. Thus, an amendment substituting a new plaintiff has been held to relate back if the added plaintiff is the real party in interest. As the Advisory Committee Note to the 1966 amendment to Rule 15(c) indicates, the liberal attitudes toward substitution of the real party in interest prescribed by both Rule 17(a) and Rule 15(c) are closely related.

> Wright, Miller, Kane, Marcus, Spencer & Steinman, 6A Fed. Prac. & Civ. Proc. § 1501, Relation Back of Amendments Changing Parties -- New Plaintiffs (3d ed.)(April, 2016). See Plubell v. Merck & Co., Inc., 434 F.3d 1070, 1074 (8th Cir. 2006)(involving an amended pleading, substituting a new class representative in a class action against a manufacturer of a prescription-pain drug alleging deceptive trade practices, and holding the amendment related back to the original filing, and thus the Class Action Fairness Act, 28 U.S.C. § 1322(d), did not apply to allow federal jurisdiction, when the claims were exactly the same in both pleadings and the newly named class representative was a member of the putative class in the original petition); Slaughter v. Southern Talc Co., 949 F.2d 167, 174-75 (5th Cir. 1991)(involving amendment to substitute widows for workers who

---

[13]The Court questions, for example, whether the commentary in fact purports to create a theory by which the addition of new Plaintiffs might be accomplished by reference only to rule 15(c)(1)(B), given the general incompatibility between rule 15(c)(1)(C)'s language and the addition of plaintiff-parties -- i.e., there is only a narrow set of facts, as narrow as that pertaining to party-defendants, upon which relation back of amendments adding party-plaintiffs exists. Cf. Leachman v. Beech Aircraft Corp., 694 F.2d at 1308-10.

had allegedly suffered asbestos-related injury in a products-liability and wrongful-death action, and holding that such claim unquestionably arose out of same injury as the original pleadings and thus related back to the original pleadings for purposes of the limitations period where the widows were plaintiffs in the original complaint, and the manufacturers were not prejudiced by the amendment -- also noting, however, that the result might be different if the "amendment sought to introduce an entirely unrelated party"); Avila v. I.N.S., 731 F.2d 616, 620 (9th Cir. 1984)(involving an adult incompetent's father who amended a claim against the federal government to add himself as a claimant to be reimbursed for expenses he incurred in the search for his son who had been deported, where the agency did not deny the claim as amended until two weeks later, and where the son's claim was filed within the two-year statute of limitations for the presentation of claims to the agency involved, and holding that the amendment related back to the original claim in the absence of showing prejudice accruing to the government); Brauer v. Republic Steel Corp., 460 F.2d 801, 804 (10th Cir. 1972)(involving, in a products liability suit against a defendant, what appears to be a unit operator of an oil field/owner of an oil lease (the original plaintiff), an owner of an adjacent oil lease (added plaintiff), and the retained engineering firm for a waterflood project (added plaintiff), and holding that "a close identity of interest existed among [] the original plaintiff, and [] the added plaintiffs. They owned the leases covered by the waterflood. The issues presented by the original complaint and by the amended complaint arose out of the same transaction or occurrence").

Amendment MOO at 63-65, 2017 WL 2266854, at *28-29. Accordingly, although Sandia Labs can fairly be said to have notice of the potential claims against it by the proposed Plaintiffs, see rule 15(c)(1)(C)(i), the Court determined that the requirement enumerated by rule 15(c)(1)(C)(ii) was not met in this case -- there has not been a "mistake concerning the proper party's identity," Amendment MOO at 65, 2017 WL 2266854, at *30 (citing Fed. R. Civ. P. 15(c)(1)(C)(ii)). While some courts appear to have endeavored to liberally construe rule 15(c)'s language, the Court is still hard pressed to conclude that the case law regarding those additions of plaintiffs and relation back of their amendments is favorably comparable to this case. See Amendment MOO at 65-67, 2017 WL 2266854, at *30 (citing, e.g., Plubell v. Merck & Co., Inc., 434 F.3d 1070; Slaughter v. Southern Talc Co., 949 F.2d at 167; Avila v. I.N.S., 731 F.2d at 616; Brauer v. Republic Steel Corp., 460 F.2d at 804). The Court's conclusion in the Amendment MOO regarding this issue is as follows:

> Generally, those cases that have allowed relation back involve factual scenarios where the added-plaintiff was a successor-in-interest, custodian, or had a close-identity interest to a victim of the same incident -- i.e., an engineering company retained by an oil-field unit operator, see Brauer v. Republic Steel Corp., 460 F.2d at 804. In this case, each of the proposed Plaintiffs' cases is unique -- each proposed Plaintiff has her own claims against Sandia Labs, wholly independent from the other. They are not closely intertwined, as far as the Court can tell, and are not necessary parties to each other's case. Indeed, the Court is not yet convinced that the proposed Plaintiffs' allegations even arise out of the same occurrences under rule 15(c)(1)(B) and suffice compulsory joinder, as the drafters suggested might be the lodestar under rule 15(c) regarding the addition of Plaintiffs. In light of rule 15(c)(1)(C)'s plain language, then, and the incompatibility of this case with the general body of case law authorizing the relation back of an amendment adding new plaintiffs under rule 15(c) at large, the Court thus concludes that the proposed Plaintiffs' complaints do not relate back to the filing of the First Amended Complaint. Because of this conclusion, the Proposed Third Amended Complaint's addition of the proposed Plaintiffs would be futile, because -- as all parties agree -- these federal employment discrimination claims are time barred.

Amendment MOO at 65-66, 2017 WL 2266854, at *30. The Court, in its reconsideration of the case law underpinning rule 15, is still not persuaded that the guidance of Wright and Miller, upon whom it relied on in the Amendment MOO, should be undone at this time. Wright and Miller explain that:

> Courts deciding whether to allow amendments changing plaintiffs to relate back to the filing of the original complaint seem to concentrate on the notice and identity-of-interest factors as they do in the case of amendments changing defendants. Relation back thus will be permitted unless the court finds that defendant did not have adequate notice or that the new and the existing plaintiffs did not share a sufficient identity of interest. Thus, an amendment substituting a new plaintiff has been held to relate back if the added plaintiff is the real party in interest. As the Advisory Committee Note to the 1966 amendment to Rule 15(c) indicates, the liberal attitudes toward substitution of the real party in interest prescribed by both Rule 17(a) and Rule 15(c) are closely related.

Wright, Miller, Kane, Marcus, Spencer & Steinman, 6A Fed. Prac. & Civ. Proc. § 1501, Relation Back of Amendments Changing Parties -- New Plaintiffs (3d ed.)(April 2016). Here, Benavidez has not appeared to argue in her Motion to Reconsider that the Court reached a deficient conclusion when it provided that, at this time,

> [i]n this case, each of the proposed Plaintiffs' cases is unique -- each proposed Plaintiff has her own claims against Sandia Labs, wholly independent from the other. They are not closely intertwined, as far as the Court can tell, and are not necessary parties to each other's case. Indeed, the Court is not yet convinced that the proposed Plaintiffs' allegations even arise out of the same occurrences under rule 15(c)(1)(B) and suffice compulsory joinder, as the drafters suggested might be the lodestar under rule 15(c) regarding the addition of Plaintiffs.

Amendment MOO at 65, 2017 WL 2266854, at *30. The Court has also not uncovered any new case law or controlling authority pressuring the Court to reconsider its rule 15 analysis. Accordingly, the Court will not undo its Amendment MOO analysis on the issue at this time, because neither rule 15(c)'s plain language -- which does not purport to consider relation back as to new plaintiffs -- nor the body of case law nonetheless allowing relation back for new plaintiffs have changed at this time to comport with the proposed Plaintiffs' dilemma in this case. Indeed, the body of case law nonetheless allowing relation back for new plaintiffs still generally entails factual scenarios where the added-plaintiff is a successor-in-interest, custodian, or had a close-identity interest to a victim of the same incident -- i.e., an engineering company retained by an oil-field unit operator. See Plubell v. Merck & Co., Inc., 434 F.3d at 1074 (involving an amended pleading, substituting a new class representative in a class action against a manufacturer of a prescription-pain drug alleging deceptive trade practices, and holding the amendment related back to the original filing, and thus the Class Action Fairness Act, 28 U.S.C. § 1322(d), did not apply to allow federal jurisdiction, when the claims were exactly the same in both pleadings and the newly named class representative was a member of the putative class in the original petition); Slaughter v. Southern Talc Co., 949 F.2d at 174-75 (involving amendment to substitute widows for workers who had allegedly suffered asbestos-related injury in a products-liability and wrongful-death action, and holding that such claim unquestionably arose out of same injury as the original pleadings and thus related back to the original pleadings for

purposes of the limitations period where the widows were plaintiffs in the original complaint, and the manufacturers were not prejudiced by the amendment; also noting, however, that the result might be different if the "amendment sought to introduce an entirely unrelated party"); Avila v. I.N.S., 731 F.2d at 620 (involving an adult incompetent's father who amended a claim against the federal government to add himself as a claimant to be reimbursed for expenses he incurred in the search for his son who had been deported, where the agency did not deny the claim as amended until two weeks later, and where the son's claim was filed within the two-year statute of limitations for the presentation of claims to the agency involved, and holding that the amendment related back to the original claim in the absence of showing prejudice accruing to the government); Brauer v. Republic Steel Corp., 460 F.2d at 804 (involving, in a products liability suit against a defendant, what appears to be a unit operator of an oil field/owner of an oil lease (the original plaintiff), an owner of an adjacent oil lease (added plaintiff), and the retained engineering firm for a waterflood project (added plaintiff), and holding that "a close identity of interest existed among [] the original plaintiff, and [] the added plaintiffs. They owned the leases covered by the waterflood. The issues presented by the original complaint and by the amended complaint arose out of the same transaction or occurrence").

The Court, in its Amendment MOO, also noted the apparent harshness of the result of its analysis, but reiterated that the proposed Plaintiffs had every opportunity to file their respective actions in federal court. See Amendment MOO at 66-67, 2017 WL 2266854, at *30. The Court also reiterated that Sandia Labs -- to no avail -- had offered to toll the limitations period for these proposed Plaintiffs, stating -- in response to Benavidez' Motion to Stay Proceedings, filed November 12, 2015 (Doc. 10) -- that it was "'amenable to an agreement tolling the statutes of limitations for claims that could only be brought after the exhaustion of Plaintiffs' administrative

remedies, which . . . were still unexhausted or newly exhausted.'"  Amendment MOO at 66-67, 2017 WL 2266854, at *30 (quoting Defendants' Response to Plaintiff's Motion to Stay Proceedings at 3 n.4, filed November 25, 2015 (Doc. 19)).  The Court also reminds the parties that the Supreme Court has said, in this context, that

> [p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants.  As we stated in Mohasco Corp. v. Silver, 447 U.S. 807, 826 [] (1980), "[i]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law."

Amendment MOO at 66-67, 2017 WL 2266854, at *30 (quoting Baldwin Cty. Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984)).  The Court maintains that, although "'motions to amend brought in district court should be freely granted,'" such favor for amendment does not exist where "'the proposed amendment would result in unfair prejudice to the non-movant or would be futile.'"  Amendment MOO at 66-67, 2017 WL 2266854, at *30 (quoting Thompson v. Colorado, 60 F. App'x 212, 215 (10th Cir. 2003)).

Ultimately, in her Motion to Reconsider, Benavidez does not proffer any reason for the Court to reconsider its conclusion that, under rule 15(c), the Proposed Third Amended Complaint may not relate back to a time which satisfies the limitations period for the proposed federal claims, rendering the proposed Plaintiffs' addition futile.  See Motion to Reconsider, passim; March Tr. at 5:2-6 (Wray).  Instead, Benavidez has contested only the Court's conclusion regarding the effect of the withdrawal of the Proposed Second Amended Complaint.  The Court has, however, endeavored to undergo a thorough review regarding its conclusion pertaining to rule 15 and has reached the same conclusion at this time.

III. **THE COURT IS OPEN TO ENTERING A FINAL JUDGMENT AT A LATER DATE WHEN THE PROPOSED PLAINTIFFS NO LONGER HAVE COMPLAINTS PENDING WHICH THEY FILED SUBSEQUENT TO THE AMENDMENT MOO.**

Benavidez, in the event that the Court declines to agree with her arguments in its reconsideration of its Amendment MOO, also requests final judgment as to the proposed Plaintiffs, asserting that the "January 2017 Amendment MOO is a final order as to [the proposed] Plaintiffs because it ends the litigation . . . ." Motion to Reconsider Reply at 10. Benavidez prefers that the Court grants her Motion to Reconsider, but if it does not grant the Motion to Reconsider, she explains that the proposed Plaintiffs will dismiss their federal complaints which they have filed in federal court subsequent to the Amendment MOO to pursue solely their claims in the form of appellate relief from this Court's Amendment MOO. See Motion to Reconsider Reply at 11. At the hearing, the Court discovered that Sandia Labs' only reason for objecting to the Court entering a final judgment as to the proposed Plaintiffs was the pendency of the actions that the proposed Plaintiffs filed subsequent to the Amendment MOO. See March Tr. at 21:1-11 (Viets). Sandia Labs stated:

> [T]he Court understands Sandia's position correctly. We don't oppose entry of final judgment as to the three would be plaintiffs, they never were plaintiffs but I suppose that doesn't prevent entry of a judgment against them but only in due course. I can't stand here in good conscience knowing that they each have their own three lawsuits pending in front of three other judges now in this district and [say] let's go ahead and certify it so the Tenth Circuit can hear the same issues that's going to be in front of 3 other judges here[,] I think that's inappropriate.

March Tr. at 21:1-11 (Viets). Sandia Labs also suggested that, if the Court denies the Motion to Reconsider, and the proposed Plaintiffs dismiss their other federal complaints, it did not "know of any reason right at the moment that [it] could not cooperate with the plaintiffs to put together a judgment so they could appeal this issue." March Tr. at 21:25-22:4 (Court, Viets). The Court, accordingly, will deny the Motion to Reconsider and, if the proposed Plaintiffs dismiss their

other federal complaints, Benavidez and the proposed Plaintiffs need only file with the Court an "unopposed motion and proposed order" upon which an appeal may be premised. March Tr. at 10:21-22 (Court).

IT IS ORDERED that the Plaintiff's Motion for Partial Reconsideration of this Court's January, 17, 2017 *Memorandum Opinion and Order*, filed February 3, 2017 (Doc. 87), is granted in part and denied in part. The Court has reconsidered its Memorandum Opinion and Order, filed January 17, 2017 (Doc. 84), and the Court will not alter its analysis of these issues at this time or its order in the Amendment MOO.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Timothy L. White
Valdez & White Law Firm, LLC
Albuquerque, New Mexico

-- and --

Rachel E. Higgins
Rachel E. Higgins Attorney at Law
Albuquerque, New Mexico

-- and --

Rachel Berenson
Berenson & Associates, P.C.
Albuquerque, New Mexico

-- and --

Katherine A. Wray
Jane Katherine Girard
Wray & Girard P.C.
Albuquerque, New Mexico

*Attorneys for the Plaintiff Linda Benavidez and for the Proposed Plaintiffs Patricia Baca, Rita Luna-Casias, and Thelma Ortiz*

Justin E. Poore
Sandia Corporation
Albuquerque, New Mexico

-- and --

Aaron C. Viets
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

*Attorneys for the Defendants*